RCD E97306 RDS

SANDUSKY MUNICIPAL COURT

**2008 APR 17 PM 12 39**

IN THE SANDUSKY MUNICIPAL COURT
ERIE COUNTY, OHIO

PEGGY A. RICE, CLERK

| | | |
|---|---|---|
| Midland Funding LLC | ) | |
| | ) | |
| 8875 Aero Drive | ) | CASE NUMBER: *CVF0800975* |
| San Diego, CA 92123- | ) | |
| | ) | JUDGE: |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | COMPLAINT FOR MONEY |
| Andrea L. Brent | ) | |
| 3902 Donair Drive | ) | |
| Sandusky, OH 44870- | ) | |
| | ) | |
| – | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

1. Plaintiff acquired, for a valuable consideration, all right, title and interest in and to the claim set forth below originally owed by Defendant(s) to CITIBANK USA
As a result of the assignment, Plaintiff became, and now is, the owner of account number xxxx-xxxx-xxxx-9001.

2. Prior to November 10, 2000, Defendant(s) entered into a written contract with assignor, a copy of which is attached as Exhibit "A" and incorporated by reference.

3. Under the terms of this contract, Plaintiff agreed to extend to Defendant(s) the use of assignor's credit and issued to Defendant(s) a credit card, No. xxxx-xxxx-xxxx-9001, for Defendant(s)' use.
Defendant(s), by accepting and using the credit card thus issued, agreed to perform the terms and conditions of the specified contract.

4. Among the terms and conditions of the contract, Defendant(s) agreed to pay promptly, on rendition of a statement, all charges made with Defendant(s)' credit card.

5. Attached hereto as Exhibit "B" is an affidavit attesting to the amount owed the Plaintiff. The account records are not attached hereto because, upon information and belief: (a) Plaintiff is not the original creditor and does not have possession, custody or control of said records; (b)copies were sent monthly to the Defendant(s), and are or were in Defendant(s)' possession, custody or control; and/or (c) said account records may be voluminous.

6. There is presently due the Plaintiff from the Defendant(s) on the contract, the sum of $4,516.57.

7. Plaintiff notified Defendant(s) of the assignment and demanded that Defendant(s) pay the balance due on the account, but no part of the foregoing balance has been paid.

8. Defendant(s) is in default on this repayment obligation.

9. Although due demand has been made, the Defendant(s) has failed to liquidate the balance due and owing.

WHEREFORE, the Plaintiff prays for a Judgment against the Defendant(s) in the amount of $4,516.57, with interest at the rate of 8.00% per annum from November 10, 2000, costs of this action, and such other and further relief as the Court deems just and proper under the circumstances.

```
-----------------------------------
```
Brian C Block, SCR # 0076526
Melissa Hager,   SCR# 0072388
Attorneys for Plaintiff
Javitch, Block & Rathbone LLP
1100 Superior Ave, 19Th Floor
Cleveland OH 44114-2518
(216) 687-1199
CLE@JBANDR.COM
FAX 216-623-0190

SUITAC11



97506 Citibank card

# CITIBANK CARD AGREEMENT

This Agreement and the folder containing the card are your Citibank Card Agreement. The folder contains important account information, including the annual percentage rate and the amount of any membership fee. Please read and keep the folder and this Agreement for your records.

To simplify the rest of this Agreement for you, the following definitions will apply. The words *you, your,* and *yours* mean the person responsible for this Agreement, to whom we direct the billing statement. The word *card* means one or more cards which we have issued with your account number. The words *we, us,* and *our* mean Citibank (South Dakota), N.A. The words *Citibank checks* mean one or more checks that we may provide to access your Citibank card account. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

## Using Your Account and Your Credit Line:

The card must be signed to be used. Your initial credit line appears on the folder containing the card. A portion of your credit line, called the cash advance limit, is available for cash advances. At our discretion and at any time, we may change your credit line or cash advance limit. We will notify you if we do, either by mail or through a billing statement sent either before or after the change takes effect. You may request a change to your credit line or cash advance limit by contacting Customer Service by telephone or mail.

The full amount of your credit line is available to buy or lease goods or services wherever the card is honored. Your cash advance limit is available for cash through any bank or automated teller machine that accepts the card or by using Citibank checks. The total amount charged on your account, including purchases, balance transfers, cash advances, finance charges, fees, or other charges, must always remain below your credit line. However, if that total amount exceeds your credit line you must still pay us.

## Additional Cards:

You may request additional cards on your account for yourself or others and you may permit another person to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke permission for any person you previously authorized to use your account. If you tell us to revoke another person's use of your account, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

## Membership Fee:

The folder containing the card indicates whether your account is subject to a membership fee. If it is, the fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing date of the billing statement on which the fee is billed.



### Billing:

Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current credit line and cash advance limit; an itemized list of current charges, Citibank checks, payments and credits; a summary showing separately the purchase and cash advance balances; and finance charges on each balance; and other important information. If your default under the Agreement, we may at our sole discretion, stop sending you billing statements and we may convert it to an outside collection agency or attorney for collection.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one mailing address.

### How We Determine the Balance:

The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the total outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any new purchases and cash advances and subtract any payments and credits that we receive. We then add the appropriate finance charges and fees and make other applicable adjustments.

### Annual Percentage Rate for Purchases:

Your ANNUAL PERCENTAGE RATE for purchases and the corresponding daily periodic rate appears on the folder containing the card. Your periodic rate is the applicable annual percentage rate divided by 365. Whether or not the annual percentage rate for purchases is based on the quarterly U.S. Prime Rate plus a margin is indicated on the folder containing the card.

### Variable Annual Percentage Rates for Purchases and Cash Advances:

If the annual percentage rate for purchases is based on the quarterly U.S. Prime Rate plus a margin, we will calculate the rate by adding the margin that appears on the folder containing the card to the U.S. Prime Rate published in The Wall Street Journal on the third Tuesday of March, June, September, and December of each year. If the third Tuesday is a holiday, we will use the Prime Rate published the next day. If more than one Prime Rate is quoted, we may choose the highest. The new Prime Rate causes publication of the highest Prime Rate, we may use the Prime Rate published in any other newspaper of general circulation, or we may substitute a similar reference rate at our sole discretion. Each time the annual percentage rate changes, we will apply it to any existing balances, subject to any promotional rate that may apply.

In addition, the annual percentage rate for purchases and cash advances may vary if you default under any Citibank Card Agreement because your fail to make a payment to us or any other creditor when due, you exceed your credit line, or you make a payment to us that is not honored by your bank. In such circumstances, we may increase the ANNUAL PERCENTAGE RATE

### Annual Percentage Rate for Cash Advances:

Your ANNUAL PERCENTAGE RATE for cash advances is 19.99%, which corresponds to a daily periodic rate of 0.05476%. The daily periodic rate for the cash advance/ annual percentage rate divided by 365. Please see the next section for details relating to how this rate may change if you default under your Citibank Card Agreement.

(including any promotional rate) on all balances to a higher rate of up to 25.99%. Factors considered in determining this higher rate may include the length of time the account has been open, the existence, seriousness and timing of Citibank Card Agreement defaults, and other indications of account usage and performance. Your account again become eligible for a lower annual percentage rate on new purchases, new cash advances, or both after you have met the terms of all Citibank Card Agreements for six months. The higher rate will apply until they are paid in full.

Any increase or decrease in a variable annual percentage rate takes effect on the first day of the billing period following the day on which we calculate the rate. The annual percentage rate in effect and any subsequent changes to it will appear on the billing statement. An increase in the variable annual percentage rate means you will pay a higher finance charge and perhaps a higher minimum payment.

### Promotional Rate Offers:

At our discretion, we may offer you a promotional annual percentage rate for all or a part of the purchase and/or cash advance balances. The period of time for which the promotional rate is in effect may be limited. The length of the promotional rate period, the balance to which the promotional rate applies, and the period of time during which it is in effect will appear on the folder containing the card. We may also offer you a promotional annual percentage rate to encourage specific transactions, such as transferring balances from accounts you have with other credit card issuers. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

### Finance Charges:

Finance charges will begin to accrue from the date of the advance for cash advances and from the date of the transaction for purchases (including balances you transfer from your other credit card issuer) and continue to accrue until payment in full is credited to your account. However, if you paid the total New Balance listed on the last billing statement by the payment due date on that statement and you did not transfer a balance from any other credit card issuer during that billing period, you will have until the payment due date on your current statement to pay the balance to avoid imposition of finance charges on purchases. In certain cases, this same grace period for purchases may apply even if you have transferred a balance during the billing period. If there is no such grace period for purchases, the balance transfer offer will so indicate.

We will calculate finance charges as follows:

**1** We calculate the daily balance by multiplying the beginning balance for purchases and the beginning balance for cash advances each day, and any new transaction, and lien and any finance charge on the previous day's balance. We then add any new purchases or cash advances you transfer from other creditor issuer) and the daily balance on cash advances by the applicable daily periodic rate and adding them together with other finance charges.

**2** For finance charge calculation purposes, the billing period begins on the day after the Statement/Closing Date of the previous billing period and varies with the number of days in the billing period. It includes the Statement/Closing Date of the current billing period.

**3** To calculate the daily balances, we take the beginning balance for purchases and the beginning balance for cash advances each day, and any new transactions, and lien and any finance charge on the previous day's balance. We subtract any payments or credits, and make other adjustments. Unless we elect to use "" their date, we add a new purchase to the purchase balance as

of the date of the purchase and a new cash advance balance on the date of the advance. A credit balance is treated as a balance of zero.

The "balances subject to finance charge" for purchases and for cash advances on the billing statement are each the average of the respective daily balances during the billing period. If you multiply these figures by the number of days in the billing period and by the applicable daily periodic rates, the results will be the finance charges assessed on purchases and on cash advances, except for minor variations caused by rounding.

If the balance for purchases or cash advances is subject to more than one rate (for example, because of purchases or cash advances made during a billing period), then it is possible that we may be unable to calculate the balance subject to finance charge and the resulting finance charge in the same manner as described above.

**Cash Advances and Transaction Fee:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM), through a Citibank check, through home banking, or through a financial institution; make a wire transfer; acquire a money order, traveler's check, lottery ticket, betting or casino chip, or similar item; or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 3.0% of the advance, but not less than $5, nor more than $50. This fee will be added to the cash advance balance. (The amount of the cash advance fee may include a surcharge that the ATM owner may charge.) This advance transaction fee may cause the annual percentage rate on the cash advance on which the cash advance first appears to exceed the nominal annual percentage rate.

**Minimum Finance Charge:**
If finance charges based on periodic rates are being added to your account, but the total of such finance charges for purchases and cash advances is less than $.50, we assess a minimum FINANCE CHARGE, listed on periodic rates, of $.50. We add this amount to either the purchase or cash advance balance at our discretion.

**Credit Balance:**
You may not maintain a credit balance on your account in excess of your assigned credit line. We will return to you any credit amount over $1.00 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges billed to your account.

**Security Interest for Secured Accounts:**
The folder containing the card indicates if your account is a secured account. If it is, you have given us a security interest in a certificate of deposit or a funds from the certificate of deposit to foreign accounts. If you withdraw your funds from the certificate of deposit or savings account, we will close your card account.

**Transactions Made in Foreign Currencies:**
If a transaction is made in a foreign currency, we and Visa International or MasterCard International, depending on which card is used, will convert the transaction into a U.S. dollar amount. Visa and MasterCard will act in accordance with their operating regulations or conversion procedures in effect at the time the transaction is processed. Currently, their regulations and procedures provide that the currency conversion rate they use is either

(1) a wholesale market rate or (2) a government-mandated rate in effect, one day prior to the processing date. Visa increases this conversion rate by an international reimbursement rate and MasterCard increases this conversion rate by one percent. Both Visa and MasterCard keep this increase. We increase the conversion rate provided to us by Visa or MasterCard by two percent and keep this increase. The currency conversion rate calculated in this manner that is in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is the total of two figures. The first is any amount that is past due plus any amount that is in excess of your credit line. The second is the greater of the amount of your billed finance charges or one of the following:

The New Balance on the billing statement if it is less than $20, or
$20, if the New Balance is at least $20 and not greater than $900, or
If the New Balance exceeds $900, 1/48 of the New Balance (rounded down to the nearest dollar).
You must pay at least the minimum amount by the payment due date, but you may pay more at any time. We will allocate payments to amounts owed on your account at our discretion. This includes, but is not limited to, applying payments to promotional balances, such as balances your transferred from another credit card issuer, before we apply such payments to your purchase or cash advance balances. If you pay more than the minimum, we will allocate the excess amount to the purchase or cash advance balance, at our discretion. The sooner you pay the New Balance, the less you will pay in finance charges. We may also allow you to skip a payment in which case, we will notify you. If you choose to skip a payment when offered, we will continue to assess finance charges.

**Payments:**
Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. There may be a delay of up to five days in crediting a payment if it is received at an address other than the address provided on the billing statement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or a check or negotiable instrument that is honored by your bank. We reserve the right to accept payments made in a foreign currency. If we do, we will select the currency conversion rate at our discretion.

**Over-the-Credit-Line Fee:**
We will add a $29 fee to the purchase balance for each billing period that the New Balance exceeds your credit line.

**Late Fee:**
We will add a $29 fee to the purchase balance for each billing period you fail to make the minimum payment by its due date.

**Returned Payment Fee:**
We will add a $29 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

## Citibank Checks:

Citibank checks may be used to purchase goods and services or to obtain cash up to the amount of your available cash advance limit unless that amount will cause the balance to exceed your credit line. We will treat Citibank checks as a cash advance and charge them against your cash advance limit. Each Citibank check must be in the form we have issued and must be used according to any instructions we give you. Citibank checks may be used only by the person whose name is printed on them. Citibank checks may not be used to pay any amount owed to us under this or any other Citibank Card Agreement. We will not certify any Citibank checks, nor will we return paid Citibank checks.

## Returned Citibank Check Fee:

We will add a $29 fee to the cash advance balance if we decline to honor a Citibank check. We may decline to honor a Citibank check if, for example, the amount of the check would cause the balance to exceed your cash advance limit or credit line, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

## Stop Payment Fee:

We will add a $29 fee to the cash advance balance when payment of a Citibank check is stopped at your request. You may stop payment on a Citibank check by notifying us in writing at P.O. Box 6500, Sioux Falls, South Dakota 57117 or by calling us at the telephone number listed on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order will remain in effect for six months unless renewed in writing.

Once a charge is made through the use of the card or account number we cannot "stop payment" on the charge. If there is a dispute involving a charge on your account, please refer to the section entitled "What To Do If There's An Error In Your Bill".

## Lost or Stolen Cards, Account Numbers or Citibank Checks:

If any card, account number or Citibank check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling the telephone number shown on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened. Don't use the card or the Citibank checks after we've been notified, even if they are found or returned. You may be liable for unauthorized use of the card, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

## Default:

You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed your credit line without permission, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, pay by automatic debit that is returned unpaid, or default on any other Citibank Card Agreement. If you default, we may close your account and demand immediate payment of the full balance. If you have given us a security interest in a certificate of deposit or a savings account, we may use the deposit amount to pay any amount you owe.

**Preauthorized Charges:**

If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges to that account to third-party vendors for recurring premiums or other goods or services. If preauthorized charges are suspended, you must contact the third-party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**

If we refer collection of your account to a lawyer who is not our salaried employee, you will have to pay our attorney's fee plus court costs or any other fees, to the extent permitted by law. If we collect and you win, we will pay your reasonable legal fees and court costs.

**Customer Privacy:**

We will safeguard according to strict standards of security and confidentiality any information you share with us. We will limit the collection and use of any such information to the minimum we require in order to deliver you superior service, which includes advising you about our products, services, and other opportunities, and to administer our business. We maintain physical, electronic, and procedural safeguards that comply with the proper handling of customer information, to have access to your information. Whenever we hire other organizations to provide support services, we will require them to conform to our privacy standards and to allow us to audit them for compliance.

We will always maintain control over the confidentiality of our information. We may, however, facilitate relevant marketing and promotional offers from reputable companies that meet your needs. These companies are not permitted to retain any of your information unless you have specifically expressed interest in their products or services. You may choose not to receive these offers. Be sure to include your name, address, and account number. We will remind you at least each year of your right to be excluded from these offers.

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional credit for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit line increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone, or by personal legal process served on us, in order to give you an opportunity to object to it unless the law prohibits this notice. Except as set forth in this Agreement and except for reports to credit reporting and collection agencies, information we are permitted to share with Citibank affiliates, and information we share in connection with collection of your account, no one else will be given information about your account without your knowledge, authorization or proper legal authority.

**Sharing Customer Information Among Citibank Affiliates:**

To help us serve you better and provide you with products and services that are tailored specifically to you, Citibank affiliates share information about your transactions or experiences with you. Other information you provide to us or that we obtain from third parties (for example, credit bureaus) will not be shared if you notify us that you do not want such information shared among Citibank affiliates.

You may notify us in writing of your instruction at any time. Please send your name and address (as it appears on your account statement), along with your account type, account number and Social Security number to Citibank Processing Center at CN 3778, South Hackensack, NJ 07606. We ask that you mail your instruction in a stamped envelope. If you do not want such other correspondence with us. If you have already directed us not to notify us again.

If you are also a customer of other Citigroup companies (such as Commercial Credit, Travelers Property Casualty, Primerica, Salomon Smith Barney and Travelers Financial Services) and you receive a notice of their intent to share certain information about you with their affiliates, you will need to separately notify them if you do not want such information shared.

**Telephone Monitoring and Recording:**

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Correcting Your Credit Report:**

If you think we reported erroneous information to a credit reporting agency, write us at the address listed on the billing statement. We will promptly investigate the matter and notify the credit reporting agency. If we agree with you, we will contact each agency to whom we reported and will request they correct this report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to the appropriate agencies. Your statement will become a part of your credit record with them.

**Closing Your Account:**

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time without prior notice. We may also reissue a different card or account number at any time. You must return the card to us upon request.

**Refusal of the Card:**

We are not responsible if a purchase or cash advance on your account is not approved, either by us or by a third party. Even if you have sufficient credit available, we may limit the number of purchases or cash advances which may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity. We may approve a purchase or cash advance which causes you to exceed your credit line without waiving any of our rights under this Agreement.

**Changing this Agreement:**

We can change this Agreement, including all fees and the annual percentage rate, at any time. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay off the balance, either at once or

or under the terms of the unchanged Agreement. Otherwise, the change in the notice is binding on you. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call us at the telephone number shown on the front of the billing statement. You can also call toll-free or local Directory Assistance to get our telephone number.

©1999 Citibank (South Dakota), N.A.

Thomas W. Jones
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

---

**What To Do If There's An Error In Your Bill.**

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill.*
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address shown on the front of your billing statement. While to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
☒ Your name and account number.
☒ The dollar amount of the suspected error.
☒ Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

☒ Please sign your letter.
If you have authorized us to pay your credit card bill automatically from your savings or checking account you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

9

---

*Your Rights and Our Responsibilities After We Receive Your Written Notice.*
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but your are still obligated to pay the parts of your balance that are not in question.
If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.
If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.
If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

*Special Rule for Credit Card Purchases.*
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
☒ You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
☒ The purchase price must have been more than $50.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

80491170-D
PFR 10/99 REV 0/99

10

E97506

**Form 400**

State of Minnesota    )
                   ) ss
Stearns County      )

In _____Court

_____Judicial (Circuit/District)

Midland Funding LLC,

Plaintiff

  -vs-

BRENT, ANDREA L

Defendant(s)

IVAN JIMENEZ, whose business address is 16 McLeland Road, Suite 101, Saint Cloud, Minnesota 56303, certifies and says:

1.  I am employed in the St. Cloud, MN office of Midland Credit Management, Inc., servicer of this account on behalf of Midland Funding LLC I make the statements herein based upon my personal knowledge. Midland Funding LLCis the current owner of, and/or successor to, the obligation sued upon.

2.  That by virtue of such relationship and my employment with Midland Credit Management Inc., I have personal knowledge of all relevant financial information concerning Midland Credit Management Inc.'s account number 8524186453, which includes the following information: that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty (30) days prior to making this affidavit; that the attorneys representing plaintiff Midland Funding LLC were retained on Midland Funding LLC behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to Midland Funding LLC the sum of $4,516.57.

3.  That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's CITIBANK USA account to the plaintiff.

4.  The final statement of account reveals that the defendant owed a balance of $4,516.57 on the following date: 2000-11-10; and that such balance will continue to earn interest at a rate of 8.00% as annual percentage rate calculated as required by the Federal Truth in Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment.

5.  That upon information and belief, based upon business dealings with the defendant (s), the defendant (s), is/are not a minor (s) or mentally incapacitated person (s).

I certify under penalty of perjury that the foregoing statements are true and correct.

Dated this 4 day of February 2008.

IVAN JIMENEZ

_____
Affiant's Signature

State of Minnesota

Stearns County

Subscribed and sworn to (or affirmed) before me on this 4 day of February, 2008 by IVAN JIMENEZ, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.


(signature of Notary)  (seal of Notary)

RENAE THERESA KIFFMEYER
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

Notary Public for the State of Minnesota

OH12
JAVITCH, BLOCK & RATHBONE, LLP



## IN THE SANDUSKY MUNICIPAL COURT
## ERIE COUNTY, OHIO

| | |
|---|---|
| **MIDLAND FUNDING LLC** | Case No. CVF 0800975 |
| Plaintiff, | |
| vs. | Judge |
| **ANDREA L. BRENT** | |
| Defendant and Third-Party Plaintiff | |
| vs. | **ANSWER, COUNTERCLAIM AND THIRD PARTY COMPLAINT OF DEFENDANT** |
| **MIDLAND CREDIT MANAGEMENT, INC.** 8875 Aero Drive San Diego, California 92123 | |
| Serve: **Robin R. Pruitt** 8875 Aero Drive Suite 200 San Diego, CA 92123 | |
| Third-Party Defendant | |

## ANSWER

Defendant, Andrea L. Brent, through her undersigned counsel, files her Answer to the Plaintiff's Complaint as follows:

1. Defendant denies that she originally owed any claim to CITIBANK USA at any time.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of Plaintiff's Complaint and therefore denies such remaining allegations.

2. Defendant denies the allegations contained in Paragraph 2 of Plaintiff's Complaint.

3. Defendant denies the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4. Defendant denies the allegations contained in Paragraph 4 of Plaintiff's Complaint.

5. Exhibit B is a document attached to the Plaintiff's Complaint, the contents of which speak for itself. Defendant denies the allegations, stated as facts in Exhibit B, that she had an account with CITIBANK USA, that she failed to make payments on the account, that she had any business dealings with Plaintiff and that any demand has been made upon her for payment of the alleged debt. Defendant further denies that she ever received monthly statements pertaining to the alleged account or ever had any records of the account in her possession. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Exhibit B and Paragraph 5 of Plaintiff's Complaint and therefore denies such allegations.

6. Defendant denies the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7. Defendant admits that she has made no payments to Plaintiff on the alleged debt and denies the remaining allegations contained in Paragraph 7 of Plaintiff's Complaint.

8. Defendant denies the allegations contained in Paragraph 8 of Plaintiff's Complaint.

9. Defendant denies the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10. Defendant denies that Plaintiff is entitled to the relief requested in Plaintiff's Complaint.

Wherefore, having fully answered, Defendant respectfully requests that Plaintiff's Complaint be dismissed with prejudice at Plaintiff's costs.

## COUNTERCLAIM & THIRD-PARTY COMPLAINT

Defendant, through her undersigned counsel, files her Counterclaim against Plaintiff, Midland Funding LLC ("Midland"), and her Third-Party Complaint against Third-Party Defendant, Midland Credit Management, Inc. ("MCM"). These claims are brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and the common law of Ohio.

## PARTIES

1.     Defendant/Third-Party Plaintiff Andrea L. Brent (Defendant or Brent) is a natural person residing in Sandusky, Erie County, Ohio.

2.     Upon information and belief, Midland is a Delaware Limited Liability Company, with a regular place of business in San Diego, California. Midland regularly conducts business in the sate of Ohio. Midland acquires consumer debts when in default and is engaged in the business of collecting those debts.

3.     MCM is a Kansas corporation engaged in the business of collecting debts in Ohio and throughout the country. MCM's headquarters are located in San Diego, California. MCM regularly attempts to collect debts alleged to be due another.

## FACTS COMMON TO ALL COUNTS

4.     Midland, through its attorneys, filed this Complaint in an attempt to collect the debt allegedly owed it by Defendant. Upon information and belief, Midland is and

has been a plaintiff in tens of thousands of debt collection lawsuits in Ohio and across the country.

5.    Defendant had no knowledge of this alleged debt, nor the existence of MCM and/or Midland, prior to her receipt of the summons and Complaint in this action. Defendant had no prior contact from either entity in person, by telephone or by mail.

6.    Defendant, upon learning that she had been sued for a debt she knew nothing about, became extremely upset and distraught.

7.    MCM, as servicer of the alleged Midland account hired counsel and directed counsel to initiate this action based on the representations made by an MCM employee contained in the affidavit attached as Exhibit B (Form 400) to the Complaint. (Exhibit is attached hereto as Exhibit B). Exhibit B purports to represent facts pertaining to the alleged debt within the personal knowledge of the affiant.

8.    The MCM employee who authored Exhibit B (Form 400) on February 4, 2008, swore under penalty of perjury that such employee possessed personal knowledge that:

      a. As of November 10, 2000, Defendant owed a balance of $4,516.57 on a CITIBANK USA account;

      b. That Defendant failed to make payments on the account;

      c. That demand had been made of Defendant to make payments on the account more than thirty (30) days previous to his signature;

      d. That the balance due as of November 10, 2000 continued to earn annual interest at the rate of 8%; and

      e. That the defendant is not a minor or mentally incapacitated "based upon business dealings with the defendant".

9.    Upon information and belief, Form affidavits, such as the one attached to this Complaint, are signed by MCM employees who have no personal knowledge of any of the facts asserted.

10.    Midland's Complaint alleges that Defendant entered into a written contract with CITIBANK USA and alleges that the attached Exhibit A is that agreement. Exhibit A does not identify Defendant as a party to any agreement and contains no signatures or any information pertinent to the parties to the agreement. (Exhibit is attached hereto as Exhibit A).

11.    Notwithstanding the fact that Exhibit A is not a written agreement executed by Defendant, that document states that the "terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota".

12.    South Dakota Statute 54-2-13(1) states that an action upon a contract, obligation or liability, express or implied, can only be commenced within six years after the cause of action accrues.

13.    Upon information and belief, MCM and Midland filed this suit in an attempt to collect a debt when they had no evidentiary basis to support their claims.

14.    MCM and Midland filed this suit in an attempt to collect a debt knowing that even based upon the scant factual information in their possession the suit was clearly time-barred.

15.    MCM and Midland filed this suit knowing that they did not and cannot establish that Defendant owed the alleged debt.

16.    Upon information and belief, MCM and Midland have a standard practice of filing lawsuits which have no evidentiary factual basis and that are not warranted under the applicable law, such as this one, with a goal of obtaining a default judgment.

17.     Upon information and belief, MCM and Midland attach virtually identical form affidavits to each of these lawsuits, alleging facts to which the MCM employees have no personal knowledge. MCM and Midland have no intention to pursue the claims if challenged, voluntarily dismissing the suits, or failing to appear.

18.     In the past year, Midland has filed approximately 80 consumer collection cases in Sandusky, Ohio Municipal Court. There have been filed approximately 375 additional consumer collection cases in Findlay Municipal Court, Vermilion Municipal Court, and the Municipal Courts of Lake County, Ohio alone - courts which have computerized records available for review and verification.

## CLASS ALLEGATIONS

19.     Defendant/Third-Party Plaintiff brings this action on behalf of two classes, pursuant to Rule 23 of the Ohio Rules of Civil Procedure.

20.     Class 1 consists of (a) all natural persons (b) sued in the name of Midland or MCM (c) in an Ohio court (d) where a form affidavit was attached to the complaint, and (e) the suit was filed on or after a date one year prior to this action.

21.     Class 2 consists of (a) all natural persons (b) sued in the name of Midland or MCM (c) in an Ohio court (d) beyond the statute of limitations and (e) which action was filed on or after a date one year prior to this action.

22.     The class members are so numerous that joinder is impracticable.

23.     There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

6

     a.  Whether Midland and MCM have a practice of filing false form affidavits;

     b.  Whether Midland and MCM have attempted to collect debts by filing time-barred debt collection actions, and

     c.  Whether such practices violate the FDCPA.

24.    The claims of Defendant are typical of the claims of class members. All are based on the same facts and the same legal theories.

25.    Defendant will fairly and adequately represent the interests of the class members. Defendant has retained counsel experienced in consumer credit and debt collection abuse cases.

26.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible. Many debtors may not realize that their rights are violated.

## COUNT ONE
### (Violation of the FDCPA – 15 U.S.C. § 1692 *et seq.*)

27.    Defendant re-alleges and incorporates every allegation contained in each of the preceding paragraphs as if fully set forth herein.

28.    Defendant is a "consumer" as defined by 15 U.S.C. § 1692a(2) and is alleged to have owed a "debt" of a personal, family, or household nature, as defined by 15 U.S.C. § 1692a(5).

29.    MCM and Midland are regularly engaged in the third-party collection of consumer debt and are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

30.     The acts and omissions of MCM and Midland violated the FDCPA, including, but not limited to:

a.   Using false, deceptive, and misleading representations and means in connection with Defendant's alleged debt by falsely representing the character, amount, or legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2);

b.   Using false, deceptive, and misleading representations and means in connection with the collection of Defendant's alleged debt by threatening or taking actions that cannot legally be taken or that are not intended to be taken in violation of 15 U.S.C. § 1692e(5);

c.   Using false, deceptive, and misleading representations and means in connection with the collection of Defendant's alleged debt by using false representations and deceptive means to collect or attempt to collect Defendant's alleged debt in violation of 15 U.S.C. § 1692e(10);

d.   Using false, deceptive, and misleading representations and means in connection with the collection of Defendant's alleged debt by falsely representing or implying that Defendant's alleged debt has been turned over to innocent purchasers for value in violation of 15 U.S.C. §1692e(12); and

e.   Employing other false, deceptive, or misleading representations in connection with the collection of Defendant's alleged debt in violation of 15 U.S.C. § 1692e.

31.     As a direct and proximate result of Midland and MCM's violations of the FDCPA, Defendant has suffered actual damages in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as the cost of defending the unwarranted and illegal collection lawsuit against her.

32.     As a result of Midland and MCM's violations of the FDCPA, Defendant is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from both Midland and MCM.

Wherefore Defendant prays for judgment against Plaintiffs in an amount of damages exceeding $25,000, for reasonable attorney fees, for pre and post judgment interest, for statutory damages and for such other and further relief that may be equitable, including pre and post injunctive relief.

## COUNT TWO
### (Intentional and/or Negligent Infliction of Emotional Distress)

33.     Defendant re-alleges and incorporates every allegation contained in each of the preceding paragraphs as if fully set forth herein.

34.     Midland and MCM instituted a civil debt collection lawsuit against Defendant without a reasonable ground to do so.

35.     Filing a time-barred debt collection lawsuit against a person who does not owe the debt is atrocious and utterly intolerable in a civilized community.

36.     Midland and MCM knew or should have known that filing an unjustified lawsuit created a high probability that Defendant would suffer emotional distress as a result. Midland and MCM acted with deliberate disregard of that probability.

9

37. Midland and MCM acted without ordinary care under the circumstances in instituting the lawsuit against Defendant.

38. Defendant has suffered severe and extreme emotional distress due to the actions of Midland and MCM.

39. As a result of Midland and MCM's conduct, Defendant is entitled to actual damages, punitive damages in an amount necessary and appropriate to punish them for their unlawful conduct and deter them from such future conduct, and in addition the costs of this matter.

Wherefore Defendant prays for judgment against Plaintiffs in an amount of damages exceeding $25,000, for reasonable attorney fees, for pre and post judgment interest, for statutory damages and for such other and further relief that may be equitable, including pre and post injunctive relief.

## PRAYER FOR RELIEF ON BOTH COUNTS

Defendant/Third-Party Plaintiff, Andrea Brent, prays that this Court grant the following relief in favor of Defendant and the class members against Midland and MCM:

1. Declare that Midland and MCM's collection actions violate the FDCPA;

2. Enter judgment in favor of Defendant/Third-Party Plaintiff against Midland and MCM for actual and statutory damages, punitive damages, costs, and reasonable attorneys' fees, pre and post judgment interest exceeding $25,000;

3. Certify this action as a class action and enter judgment in favor of the class members against Midland and MCM for actual and statutory damages, costs, and reasonable attorneys fees as provided by § 1692k(a) of the FDCPA in an amount exceeding $25,000; and

10

4.      Grant such further relief as deemed just, with pre and post injunctive relief.

## JURY DEMAND

The Defendant hereby demands trial by jury of the above case.

Respectfully submitted,

Dennis E. Murray, Sr., Esq. (0008783)
E-Mail Address:  dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
E-Mail Address:  dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 E. Shoreline Drive
Sandusky, Ohio  44870
Telephone:  (419) 624-3000
Facsimile:   (419) 624-0707

Attorneys for Defendant

11

## CERTIFICATE OF SERVICE

A copy of the foregoing **Answer, Counterclaim, and Third Party Complaint of**

**Defendant** was forwarded by first-class mail to the following:

Brian C. Block
Melissa Hager
Javitch, Block & Rathbone LLP
1100 Superior Ave, 19th Floor
Cleveland, Ohio 44114-2518

Attorneys for Plaintiff

This _15th_ day of May, 2008.

Donna J. Evans, Esq. (0072306)
Attorney for Defendant

E 9750[

*Citibank card*

# CITIBANK CARD AGREEMENT

This Agreement and the folder containing the card are your Citibank Card Agreement. The folder contains important account information, including the annual percentage rate and the amount of any membership fee. Please read and keep the folder and this Agreement for your records.

To simplify the rest of this Agreement for you, the following definitions will apply. The words *you, your,* and *yours* mean the person responsible for this Agreement, to whom we direct the billing statement. The word *card* means one or more cards which we have issued with your account number. The words *we, us,* and *our* mean Citibank (South Dakota), N.A. The words *Citibank checks* mean one or more checks that we may provide to access your Citibank card account. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

## Using Your Account and Your Credit Line:

The card must be signed to be used. Your initial credit line appears on the folder containing the card. A portion of your credit line, called the cash advance limit, is available for cash advances. At our discretion and at any time, we may change your credit line or cash advance limit. We will notify you if we do, either by mail or through a billing statement sent either before or after the change takes effect. You may request a change to your credit line or cash advance limit by contacting Customer Service by telephone or mail. The full amount of your credit line is available to buy or lease goods or services wherever the card is honored. Your cash advance limit is available for cash through any bank or automated teller machine that accepts the card or by using Citibank checks. The total amount charged on your account, including purchases, balance transfers, cash advances, finance charges, fees, or other charges, must always remain below your credit line. However, if that total amount exceeds your credit line you must still pay us.

## Additional Cards:

You may request additional cards on your account for yourself or others and you may permit another person to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke permission for any person you previously authorized to use your account. If you tell us to revoke another person's use of your account, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

## Membership Fee:

The folder containing the card indicates whether your account is subject to a membership fee. If it is, the fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing date of the billing statement on which the fee is billed.

A

## Billing:

Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current credit line and cash advance limit; an itemized list of current charges, payments and credits; a summary showing each of your purchases and cash advance balances, and finance charges on each balance; and other important information. If you default under this Agreement, in our sole discretion, stop sending you billing statements if we deem your account uncollectible or if we have referred your delinquency collection proceedings, or if we have taken or threatened to take legal action to collect. You must notify us of a change in your address or attorney for collection Service by telephone or mail. We will mail or deliver the billing statement to only one mailing address.

## How We Determine the Balance:

The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases and cash advances and subtract any payments and credits that we receive. We then add the appropriate finance charges and fees and make other applicable adjustments.

## Annual Percentage Rate for Purchases:

Your annual percentage rate for purchases and the corresponding daily periodic rate appears on the billing statement. A daily periodic rate is the applicable annual percentage rate divided by 365. Whether or not the annual percentage rate for purchases is variable, the applicable rate is indicated on the folder containing the card.

## Annual Percentage Rate for Cash Advances:

Your ANNUAL PERCENTAGE RATE for cash advances is 19.99%, which corresponds to a daily periodic rate of 0.05476%. The daily periodic rate is the cash advance annual percentage rate divided by 365. Please see the next section, or details relating to how this rate may change if you default under any Citibank Card Agreement.

## Variable Annual Percentage Rates for Purchases and Cash Advances:

If the annual percentage rate for purchases is based on the quarterly U.S. Prime Rate plus a margin, we will calculate the rate by adding the margin to the U.S. Prime Rate or to the U.S. Prime Rate. The U.S. Prime Rate that appears on the folder containing the card is the U.S. Prime Rate published in The Wall Street Journal on the third Tuesday of March, June, September and December of each year. If they are more than one Prime Rate listed, we will use the highest rate. If more than one Prime Rate is published, we may choose the highest rate. If The Wall Street Journal ceases publication or to publish the Prime Rate, we may use the Prime Rate published in any other newspaper of general circulation, or we may substitute a similar reference rate at our sole discretion. Each time the annual percentage rate changes, we will apply it to any existing balances subject to any promotional rate that may apply.

In addition, the annual percentage rate for purchases and cash advances may vary if you default under any Citibank Card Agreement because you fail to make a payment to us or any other creditor when due, you exceed your credit line, or you make a payment to us that is not honored by your bank. In such circumstances, we may increase the ANNUAL PERCENTAGE RATE.

(including any promotional rate) on all balances to a higher rate of up to 23.99%. Factors considered in determining this higher rate may include the length of time the account has been open, the existence, seriousness, and timing of defaults under any Citibank Card Agreement, and other indications of account usage and performance. Your account may again become eligible for a lower annual percentage rate on new purchases, new cash advances, or both after you have met the terms of all Citibank Card Agreements for six months.

Any increase or decrease in a variable annual percentage rate takes effect on the first day of the billing period directly following the month in which we calculate the rate. The annual percentage rate in effect and any subsequent changes to it will appear on the billing statement. The annual percentage rate applicable to any variable annual percentage rate change you will pay a higher finance charge and perhaps a higher minimum payment.

## Promotional Rate Offers:

At our discretion, we may offer you a promotional annual percentage rate for all or a part of the purchase and/or cash advance balances. The period of time for which the promotional rate applies may be limited. Any promotional rate, the corresponding periodic rates, and the period of time during which it is in effect will appear on the folder containing the card. We may also offer you a promotional annual percentage rate to encourage specific transactions, such as transferring balances from accounts you have with other credit card issuers. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

## Finance Charges:

Finance charges will begin to accrue from the date of the advance for cash advances and from the date of the transaction for purchases, unless there is no such grace period as such balances. You transfer a balance from your account. However, if you paid the total New Balance listed on the last billing statement, and you did not transfer a balance from your account during the payment due date on your current statement to pay your total New Balance to avoid imposition of finance charges on purchases. In certain cases, this same grace period for purchases may apply even if you have transferred a balance during the billing period. If there is no such grace period for purchases, the balance transfer offer will so indicate.

We will calculate finance charges as follows:

☒ We begin a portion of the finance charge on your account by multiplying the daily balance on purchases (which includes balances you transfer from your other credit card accounts) by the daily periodic rate for purchases and for cash advances for each day in the billing period.

☒ For finance charge calculation purposes, the billing period begins on the day after the Statement/Closing Date of the previous billing period and varies with the number of days in the billing period. It includes the Statement Closing Date of the current billing period.

☒ To calculate the daily balances, we take the beginning balance for purchases and the beginning balance for cash advances each day, add any new transaction; and fees and any finance charge on the previous day's balance (this means you pay interest on interest), and make other adjustments unless you elect to use; subtract debit, we add a new purchase to the purchase subject as

of the date of the purchase and a new cash advance to the cash advance balance on the date of the advance. A credit balance is treated as a balance of zero.

☒ The "balances subject to finance charge" for purchases and for cash advances on the billing statement are each the average of the respective daily balances during the billing period. If you multiply each of the number of days in the billing period and by the applicable daily periodic rates, the results will be the finance charges assessed on purchases or cash advances, subject to minor variations, caused by rounding.

☒ If the balance for purchases or cash advances is more than one cent (for example, because of purchases or cash advances made during a promotional rate offer), we will separately calculate the finance charge and the resulting finance charge is the same manner as described above.

## Cash Advances and Transaction Fee:

You will incur a cash advance if you obtain funds from an automated teller machine (ATM) through a Citibank check, through home banking, or through a financial institution; make a wire transfer; acquire a money order, traveler's check, lottery ticket, betting or casino chip, or similar item; or engage in a similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 3.0% of the advance but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may include a surcharge that the ATM owner imposes.) The cash advance will cause the annual percentage rate on the billing statement on which the advance first appears to exceed the nominal annual percentage rate.

## Minimum Finance Charge:

If finance charges based on periodic rates are being added to your account, but the total of such finance charges for purchases and cash advances is less than $0.50, we will assess a minimum FINANCE CHARGE, based on periodic rate, of $.50. We will allocate the amount to either the purchase or cash advance balance at our discretion.

## Credit Balances:

You may maintain a credit balance on your account in excess of $1 only if you request it. We will return to you any credit amount over $1.00 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges billed to your account.

## Security Interest for Secured Accounts:

The following applies only if your account is a secured account. If it is, you have given us a security interest in a certificate of deposit or a savings account to secure repayment of your account. If you withdraw your funds from the certificate of deposit or savings account, we will close your credit account.

## Transactions Made in Foreign Currencies:

If a transaction is made in a foreign currency, we and Visa International or MasterCard International, depending on which card is used, will convert the transaction into a U.S. dollar amount. Visa and MasterCard will act in accordance with their operating regulations or conversion procedures in effect at the time the transaction is processed. Currently, their regulations and procedures provide that the currency conversion rate they use is either

(1) a wholesale market rate or (2) a government-mandated rate in effect one day prior to the processing date. Visa increases the conversion rate by an international reimbursement rate and MasterCard this conversion rate by one percent. Both Visa and MasterCard keep this increase. We increase the conversion rate provided to us by Visa or MasterCard by two percent (our currency conversion rate). The currency conversion rate used on the processing date may differ from the rate in effect on the transaction date or the posting date.

## Minimum Amount Due:

Each month you must pay a minimum amount that is the total of two figures. The first is any previous amount that is past due plus any amount in excess of your credit line. The second is the greater of the amount of your billed finance charges, or:

☒ The New Balance on the billing statement if it is less than $20, or

☒ $20, if the New Balance is at least $20 and not greater than $960, or

☒ If the New Balance exceeds $960, 1/48 of the New Balance (rounded down to the nearest dollar).

You must pay at least the minimum amount by the payment due date, but you may prepay your account at any time without a penalty. We will apply amounts received on your account at our discretion. This includes, but is not limited to, applying payments to promotional balances, such as balances you transfer from other credit card issuers, before we apply such payments to your purchase or cash advance balances. If you pay more than the minimum, we will allocate the excess amount to the purchase or cash advance balance at our discretion. The sooner you pay the New Balance, the less you will pay in finance charges. We may also allow you to skip a payment. If we do, we will inform you if you choose to skip a payment when offered, we will continue to assess finance charges.

## Payments:

Do not send cash payments. We can accept only personal payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. There may be a delay of up to five days in crediting a payment if it is received at an address other than the address on the billing statement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. We reserve the right to accept payments made in a foreign currency. If we do, we will select the currency conversion rate at our discretion.

## Over-the-Credit-Line Fee:

We will add a $29 fee to the purchase balance for each billing period that the New Balance exceeds your credit line.

## Late Fee:

We will add a $29 fee to the purchase balance for each billing period you fail to make the minimum payment by its due date.

## Returned Payment Fee:

We will add a $29 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

~ω

## Citibank Checks:

Citibank checks may be used to purchase goods and services or to obtain cash up to the amount of your available cash advance limit unless that amount will cause the balance to exceed your credit line. We will treat Citibank checks as a cash advance and charge them against your cash advance limit. Each Citibank check must be in the form we have issued and must be used according to any instructions we give you. Citibank checks may be used only by the person whose name is printed on them. Citibank checks may not be used to pay any amount owed to us under this or any other Citibank Card Agreement. We will not certify any Citibank checks, nor will we return paid Citibank checks.

## Returned Citibank Check Fee:

We will add a $29 fee to the cash advance balance if we decline to honor a Citibank check. We may decline to honor a Citibank check if, for example, the amount of the check would cause the balance to exceed your cash advance limit or credit line, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

## Stop Payment Fee:

We will add a $29 fee to the cash advance balance when payment of a Citibank check is stopped at your request. You may stop payment on a Citibank check by notifying us in writing at P.O. Box 6500, Sioux Falls, South Dakota 57117 or by calling us at the telephone number listed on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order will remain in effect for six months unless renewed in writing.

Once a charge is made through the use of the card or account number we cannot "stop payment" on the charge. If there is a dispute involving a charge on your account, please refer to the section entitled "What To Do If There's An Error In Your Bill".

## Lost or Stolen Cards, Account Numbers or Citibank Checks:

If any card, account number or Citibank check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling the telephone number shown on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened. Don't use the card or the Citibank checks after we've been notified, even if they are found or returned. You may be liable for unauthorized use of the card, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

## Default:

You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed your credit line without permission, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, pay by automatic debit that is returned unpaid, or default on any other Citibank Card Agreement. If you default, we may close your account and demand immediate payment of the full balance. If you have given us a security interest in a certificate of deposit or a savings account, we may use the deposit amount to pay any amount you owe.

## Preauthorized Charges:

If you default, if the card is lost or stolen, or we change your account number for any other reason, we may suspend automatic charges on account number that you have registered for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third-party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

## Collection Costs:

If we refer collection of your account to a lawyer who is not our salaried employee, you will have to pay our attorney's fees plus court costs or any other fees, to the extent permitted by law. If we collect and you win, we will pay your reasonable legal fees and court costs.

## Customer Privacy:

We will always maintain control over the confidentiality of your information. We may, however, release information in our records regarding you or your account to comply with governmental agencies, court orders or subpoenas, or other legal process, or to any such entity to the minimum we require in order to deliver superior service, which includes advising you about our products, services, and other opportunities, and is administered under the strictest standards of any such information to the minimum we require in order to deliver superior service, which includes advising you about our products, services, and other opportunities, and is administered under the strictest standards of authorized employees who are trained in the proper handling of customer information, to have access to your information. Whenever we hire other organizations to provide support services, we will require them to conform to our privacy standards and to allow us to audit them for compliance.

We will hold ourselves to strict standards of security and confidentiality with respect to your information. We will limit the collection and use of your information to the minimum we require in order to deliver superior service, which includes advising you about our products, services, and other opportunities, and is administered under the strictest standards of authorized employees who are trained in the proper handling of customer information, to have access to your information. Whenever we hire other organizations to provide support services, we will require them to conform to our privacy standards and to allow us to audit them for compliance.

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we will report that information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when you review your account for a credit line increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to contest it, unless the law prohibits us the notice.

Except as set forth in this Agreement and except for reports to credit reporting and collection agencies, information we are permitted to share with Citibank affiliates, and information we share in connection with collection of your account, no one else will be given information about your account without your knowledge, authorization or proper legal authority.

## Sharing Customer Information Among Citibank Affiliates:

To enrich your relationship and provide you with products and services that are tailored specifically to you, Citibank affiliates share information about their... on a confidential basis.

Citibank affiliates are permitted by law to share any information about their...

7

---

transactions or experiences with you. Other information you provide to us or that we obtain from third parties (for example, credit bureaus) will not be shared if you notify us that you do not want such information shared among Citibank affiliates.

You may notify us in writing of your instruction at any time. Please send your name and address (as it appears on your account statement), along with your account type, account number and Social Security number to Citibank Processing Center at CPU 3174, South Hackensack, NJ 07606. We ask that you mail your instruction in a stamped envelope that does not include any other correspondence. If you have moved since we received your instruction, and want us to continue to honor it, you must notify us of each new address you use. If your name has changed, please notify us again.

If you are also a customer of other Citigroup companies (such as Commercial Credit, Travelers Property Casualty, Travelers Life & Annuity, Salomon Smith Barney, and Primerica), we may have a share of their information as well. If you wish to limit information about you with their affiliates, you will need to separately notify them if you do not want such information shared.

## Telephone Monitoring and Recording:

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

## Correcting Your Credit Report:

If you think we reported erroneous information to a credit reporting agency, write us at the address listed on the billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported the information to correct the report. If we disagree with you after our investigation, we will tell you in writing by letter and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

## Closing Your Account:

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time without prior notice. We may also reissue a different card or account number at any time. You must return the card to us upon request.

## Refusal of the Card:

We are not responsible if a purchase or cash advance on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of purchases or cash advances which may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity. We may approve purchases or cash advances which cause the balance to exceed your credit line without waiving any of our rights under this Agreement.

## Changing this Agreement:

We can change this Agreement, including all fees and the annual percentage rate, at any time. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period on which the change becomes effective. If you do not agree to the change, you must notify us by us in writing within 25 days after the effective date of the change and pay us the balance; either at once...

8

6 years

or under the terms of the unchanged Agreement. Otherwise, the change in the notice is binding on you. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call us at the telephone number shown on the front of the billing statement. You can also call toll-free or local Directory Assistance to get our telephone number.

©1999 Citibank (South Dakota), N.A.

Thomas W. Jones
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

9

**What To Do If There's An Error In Your Bill.**

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address shown on the front of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

☒ Your name and account number.
☒ The dollar amount of the suspected error.
☒ Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
☒ Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it's finally settled. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

☒ You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
☒ The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

80/4917-D
FPT 10/99 REV 8/99

10

A 5

E97506

**Form 400**

| | | |
|---|---|---|
| State of Minnesota | ) | |
| | ) ss | |
| Stearns County | ) | |

In _____Court

_____Judicial (Circuit/District)

---

Midland Funding LLC,

Plaintiff

-vs-

BRENT, ANDREA L

Defendant(s)

IVAN JIMENEZ, whose business address is 16 McLeland Road, Suite 101, Saint Cloud, Minnesota 56303, certifies and says:

1. I am employed in the St. Cloud, MN office of Midland Credit Management, Inc., servicer of this account on behalf of Midland Funding LLC I make the statements herein based upon my personal knowledge. Midland Funding LLC is the current owner of, and/or successor to, the obligation sued upon.

2. That by virtue of such relationship and my employment with Midland Credit Management Inc., I have personal knowledge of all relevant financial information concerning Midland Credit Management Inc.'s account number 8524186453, which includes the following information: that the defendant did fail to make payments on the account and that demand has been made for defendant to make payment of the balance owing on the account described above more than thirty (30) days prior to making this affidavit; that the attorneys representing plaintiff Midland Funding LLC were retained on Midland Funding LLC behalf by me or persons reporting to me for the purpose of collecting the delinquent debt owed on the defendant's account number set out above; and that there was due and owing to Midland Funding LLC the sum of $4,516.57.

3. That plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's CITIBANK USA account to the plaintiff.

4. The final statement of account reveals that the defendant owed a balance of $4,516.57 on the following date: 2000-11-10; and that such balance will continue to earn interest at a rate of 8.00% as annual percentage rate calculated as required by the Federal Truth in Lending Act, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment.

5. That upon information and belief, based upon business dealings with the defendant (s), the defendant (s), is/are not a minor (s) or mentally incapacitated person (s).

I certify under penalty of perjury that the foregoing statements are true and correct.

Dated this 4 day of February 2008.



IVAN JIMENEZ

_____
          Affiant's Signature

State of Minnesota

Stearns County

Subscribed and sworn to (or affirmed) before me on this 4 day of February, 2008 by IVAN JIMENEZ, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(signature of Notary)  (seal of Notary)

RENAE THERESA KIFFMEYER
Notary Public-Minnesota
My Commission Expires Jan. 31, 2011

OH12
JAVITCH, BLOCK & RATHBONE, LLP

Notary Public for the State of Minnesota

**SANDUSKY MUNICIPAL COURT**
**ERIE COUNTY, OHIO**

| | | |
|---|---|---|
| Midland Funding, LLC, | ) | CASE NO.: 0800975 |
| | ) | |
| Plaintiff | ) | JUDGE: |
| | ) | |
| vs. | ) | MAG. JUDGE: |
| | ) | |
| Andrea L. Brent, | ) | **Stipulated Motion for an Extension of** |
| | ) | **Time for Plaintiff and Third-Party** |
| Defendant, | ) | **Defendant to Answer, Plead, or** |
| | ) | **Otherwise Respond to Defendant's** |
| vs. | ) | **Counterclaim and Cross-Claim** |
| | ) | |
| Midland Credit Management | ) | |
| | ) | |
| Third-Party Defendant | ) | |
| | ) | |

Now comes Plaintiff, Midland Funding, LLC, and Third-Party Defendant, Midland Credit Management ("MCM"), through counsel, and requests that this Court grant them an additional 30 days to respond to Defendant's counterclaim and cross-claim.  Defendant has moved this Court to certify the matter to the Erie County Court of Common Pleas.

Therefore, to avoid any jurisdictional problems involving eventual pleadings and motions, Midland and MCM hereby request that this Court give it until July 14, 2008 to respond, or that this Court enter a ruling Defendant's Motion to Certify, thereby rendering this motion moot, at which point MCM and Midland will properly respond in the Erie County Court of Common Pleas.  In such a circumstance, Midland and MCM have agreed to file their response within 7 days after receiving notification that the matter has been certified to the Court of Common Pleas.

Defendant has consented to this Motion by e-mail, which is attached hereto as Exhibit A.

Respectfully Submitted,

_____

R. GLENN KNIRSCH, SCR#0080770
JAVITCH, BLOCK & RATHBONE
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
Ph:     (216) 623-0000 ext. 3088
Fax:    (216) 525-4962
E-mail: gknirsch@jbandr.com
Attorney for Midland Funding,
And Midland Credit Management

## Proof of Service

I hereby certify that the foregoing motion was served upon Dennis E. Murray and Donna J. Evans, Attorneys for Defendant, at Murray & Murray Co., L.P.A., 111 E. Shoreline Drive, Snadusky, OH, 44870, this June 10, 2008, via regular U.S. Mail.

_____

R. Glenn Knirsch (0080770)

## SANDUSKY MUNICIPAL COURT
## ERIE COUNTY, OHIO

| | |
|---|---|
| Midland Funding, LLC, | ) CASE NO.: 0800975 |
| | ) |
| Plaintiff | ) JUDGE: |
| | ) |
| vs. | ) MAG. JUDGE: |
| | ) |
| Andrea L. Brent, | ) **ORDER** |
| | ) |
| Defendant, | ) |
| | ) |
| vs. | ) |
| | ) |
| Midland Credit Management | ) |
| | ) |
| Third-Party Defendant | ) |
| | ) |

This Court finds that Plaintiff, Midland Funding LLC, and Third-Party Defendant, Midland Credit Management's, Motion for an extension of time to file a responsive pleading is WELL TAKEN, and hereby GRANTS the motion, such that Plaintiff and Third-Party Defendant shall have until July 14, 2008 to file a responsive pleading to Defendant's Counterclaim and Third-Party claim, or until seven days after this matter is certified to the Court of Common Pleas.

**SO ORDERED**

_____
Judge

Respectfully Submitted,


_____
R. GLENN KNIRSCH, SCR#0080770
Attorney for Midland Funding,
And Midland Credit Management