# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **MIDLAND FUNDING LLC** | Case No. 3:08-CV-1434 |
| Plaintiff/Counterclaim Defendant, | |
| vs. | |
| **ANDREA L. BRENT** | Judge David A. Katz |
| Defendant/Counterclaim Plaintiff | |
| vs. | **THIRD AMENDED COUNTERCLAIM OF DEFENDANT/COUNTERCLAIM PLAINTIFF** |
| **MIDLAND CREDIT MANAGEMENT, INC.** | |
| Counterclaim Defendant | |

## COUNTERCLAIM

Andrea L. Brent, through her undersigned counsel, files her Third Amended Counterclaim against Plaintiff/Counterclaim Defendant, Midland Funding LLC ("Midland"), Counterclaim Defendant, Midland Credit Management, Inc. ("MCM").  Plaintiff alleges as follows:

## PARTIES

1. Defendant/Counterclaim Plaintiff Andrea L. Brent ("Brent") is a natural person residing in Sandusky, Erie County, Ohio.

2. Upon information and belief, Midland is a Delaware Limited Liability Company, with a regular place of business in San Diego, California.  Midland regularly conducts business in the state of Ohio and throughout the United States of America.  Midland acquires consumer debts which are in default and is engaged in the business of collecting debts.

3. MCM is a Kansas corporation engaged in the business of collecting debts in Ohio and throughout the country. MCM's headquarters are located in San Diego, California. MCM regularly attempts to collect debts alleged to be due to another.

4. Midland and MCM are direct or indirect wholly owned companies and subsidiaries of Encore Capital Group, Inc. ("Encore"), a NASDAQ listed company trading under the NASDAQ exchange symbol of ECPG, which describes itself and its subsidiaries as "a systems-driven purchaser and manager of charged-off consumer receivable portfolios and provider of bankruptcy services to the finance industry." Encore, as parent of Midland and MCM, as of June 30, 2009, had an investment of more than $506,000,000 for portfolios of debts which it had purchased. During just the three months ending June 30, 2009, the parent company, Encore, paid only $82,000,000 to acquire more than $1,900,000,000 of such "accounts receivable" (5 cents on the dollar). As of June 30, 2009, the parent company had more than $29,000,000 of "deferred court costs" on its books, representing deposits on the tens of millions of collection cases filed throughout the United States. By June 30, 2009, the parent company had earned and accrued more than $122,000,000 of net income from its collection activities which it engaged in through MCM and Midland.

**FACTS COMMON TO ALL COUNTS**

5. Midland, through its attorneys, filed a Complaint in an attempt to collect a debt allegedly owed by Brent. Upon information and belief, Midland is and has been a plaintiff in tens of thousands of similar debt collection lawsuits in Ohio and across the country.

6. Brent had no knowledge of the alleged debt, nor the existence of MCM and/or Midland, prior to her receipt of the summons and Complaint in this action. Brent, as was

2

typical of the members of her class, had no contact from either MCM or Midland either in person, by telephone or by mail, prior to the commencement of collection activities.

7. Brent, upon realizing that she was being sued for a debt that she knew nothing about, as is typical of the members of her class, became extremely upset and distraught.

8. Midland had allegedly purchased Brent's alleged debt from Citibank USA on June 29, 2007. Upon information and belief, Midland upon its purchase of Brent's alleged Citibank account, was provided with a computer tape which only contained scanty information about Brent's alleged debt.

9. The account information provided to Midland by Citibank USA was loaded into the MCM computer system.

10. Neither the data nor any document provided to Midland regarding Brent's alleged debt included any written credit card agreements, account statements, or information pertaining to any interest rate that was part of the alleged agreement between Brent and a credit card issuer.

11. MCM commenced collection activities on behalf of Midland attempting to collect the face value of the debt plus 10% interest from the date of purchase.

12. MCM, as servicer of the alleged Brent account eventually transferred the account to hired counsel to continue collection efforts. Hired counsel was contracted on MCM's behalf by its parent, Encore. MCM's counsel initiated this action supported only by the representations made by an MCM employee contained in an affidavit attached as Exhibit B (Form 400) to the Complaint. Exhibit B purports to represent facts pertaining to the alleged debt within the personal knowledge of the affiant, who operated as an agent for Midland, MCM, and Encore.

13. The MCM employee who authored Exhibit B (Form 400) on February 4, 2008, swore under penalty of perjury that such employee possessed personal knowledge that:

    a. As of November 10, 2000, Brent owed a balance of $4,516.57 on a CITIBANK USA account;

    b. That Brent failed to make payments on the account;

    c. That demand had been made of Brent to make payments on the account more than thirty (30) days previous to his signature;

    d. That the balance due as of November 10, 2000 continued to earn annual interest at the rate of 8%; and

    e. That Brent was not a minor or mentally incapacitated "based upon business dealings with the defendant".

14. Form affidavits, such as the one attached to this Complaint and a similar form affidavit, Form 409, were generated automatically by the MCM computer upon request and were routinely provided to MCM employees who sign hundreds of these each day, however, with no personal knowledge of any of the facts asserted, in complete contradiction to the sworn affidavits filed by MCM and Midland in courts throughout the United States.

15. After the MCM employees place their signatures on the false affidavits, they are given to another MCM employee to notarize. The signatures are not witnessed by the notary. This was the typical practice of MCM, Midland, and Encore throughout the period.

16. Midland's Complaint alleges that Brent entered into a written contract with CITIBANK USA and alleges that the attached Exhibit A is that agreement. Exhibit A does not identify Brent as a party to any agreement and contains no signatures or any information pertinent to the parties to the agreement.

17. Upon information and belief, no account records are attached to the Complaint because MCM and Midland did not have any.

18. The Complaint sought a judgment against Defendant for the sum of $4,516.57, the amount alleged by MCM to be the final balance of the Citibank account as of November 10, 2000.

19. The Complaint also sought interest on the amount of $4,517.57 at the rate of 8% per annum from November 10, 2000.

20. MCM and Midland filed this suit in an attempt to collect a debt using a deceptive, misleading, and false affidavit as the only evidentiary basis to support their claims. This conduct was typical as it was applied to these class members during the class period, hereinafter defined.

21. Upon information and belief, Midland and MCM attempted to collect interest from Brent and the members of her class that was not authorized by law or agreement.

22. MCM and Midland filed this suit and millions of others against the members of the class knowing that they did not and cannot establish that Brent owed any alleged debt.

23. MCM and Midland have engaged in a pattern and practice of filing lawsuits knowingly using affidavits signed by persons who lack personal knowledge of the matters attested to.

24. MCM and Midland have used virtually identical form affidavits in bogus lawsuits commenced throughout the United States, alleging facts that are not in the possession of MCM and to which the MCM employees had no personal knowledge.

25. In the past year alone, as an example, Midland has filed approximately 140 consumer collection cases just in the Sandusky, Ohio Municipal Court. There were filed more than 375 such additional consumer collection cases in Findlay Municipal Court, Vermilion Municipal Court, and the Municipal Courts of Lake County, Ohio alone - courts which have computerized records available for review and verification. In these cases, it was routine for Midland to use the false affidavit herein complained of.

## CLASS ALLEGATIONS

26. Defendant/Counterclaim Plaintiff brings this action on behalf of two (2) classes with two subclasses for Class 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

> 27. **Class 1** consists of all natural persons sued in the name of Midland, an MCM related company, or a company directly or indirectly controlled by Encore, in a United States court where a form affidavit, such as Form 400 or Form 409 was filed with a Court in which affidavit an MCM employee falsely swore that the statements contained in the affidavit were based upon personal knowledge, and the suit was filed on or after June 16, 2007.

> **Subclass A** consists of all individuals in Class 1 with no actual damages.

> **Subclass B** consists of all individuals in Class 1 with actual damages in the form

of out-of-pocket expenses, lost wages, emotional distress and/or payment of funds to Midland, MCM or an MCM related company on a debt that they contend, in a sworn statement, that they did and do not owe.

> 28. **Class 2** consists of all natural persons, in Ohio, from whom Midland, MCM or an MCM related Encore company, or a company directly or indirectly controlled by Encore, attempted to collect interest at the rate of 10% when no interest rate was provided by the seller, on or after June 16, 2006.

6

29. The class members are so numerous that joinder is impracticable.

30. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

    a. Whether Midland and MCM have had a routine practice of filing false form affidavits throughout the United States;

    b. Whether Midland and MCM have attempted to collect interest for which they are not authorized by law or agreement;

    c. The amount that Midland and MCM have collected by way of monies from the class members as a group as result of using the false affidavits;

    d. Whether the class members are entitled to actual damages, statutory damages, and/or punitive damages;

    e. Whether such practices violate the FDCPA the OCSPA, and similar consumer protection statutes of all 50 states which prohibit unfair and deceptive acts and practices;

    f. Whether such practices caused substantial damages to class members by fraudulently depriving them of their property; and

    g. Whether such practice entitled the class to recover attorney fees and expenses.

31. The claims of Brent are typical of the claims of class members. All are based on the same facts and the same legal theories.

32. Brent will fairly and adequately represent the interests of the class members. Brent has retained counsel experienced in consumer credit and debt collection abuse cases.

33. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible. Many debtors may not realize that their rights are violated.

### COUNT ONE
### (Violation of the FDCPA – 15 U.S.C. § 1692 *et seq.*)

34. Brent realleges and incorporates every allegation contained in each of the preceding paragraphs as if fully set forth herein.

35. Bent is a "consumer" as defined by 15 U.S.C. § 1692a(2) and is alleged to have owed a "debt" of a personal, family, or household nature, as defined by 15 U.S.C. §1692a(5).

36. MCM and Midland are regularly engaged in the third-party collection of consumer debt and are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

37. The acts and omissions of MCM and Midland violated the FDCPA, including, but not limited to:

   a. Using false, deceptive, and misleading representations and means in connection with Brent's alleged debt by falsely representing the character, amount, or legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2);

   b. Using false, deceptive, and misleading representations and means in connection with the collection of Brent's alleged debt by threatening

    or taking actions that cannot legally be taken or that are not intended to be taken in violation of 15 U.S.C. § 1692e(5);

  c. Using false, deceptive, and misleading representations and means in connection with the collection of Brent's alleged debt by using false representations and deceptive means to collect or attempt to collect Brent's alleged debt in violation of 15 U.S.C. § 1692e(10); and

  d. Employing other false, deceptive, or misleading representations in connection with the collection of alleged debts in violation of 15 U.S.C. § 1692e.

 38. As a direct and proximate result of Midland and MCM's violations of the FDCPA, Brent and the members of her class have been coerced to make payments directly or indirectly to MCM or another subsidiary controlled by its parent, Encore based upon false, deceptive, and misleading representations; have suffered actual damages in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative harmful emotions, as well as the cost of defending unwarranted and illegal collection lawsuits.

 39. As a result of Midland and MCM's violations of the FDCPA, Brent and the members of her class are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) and (B); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from both Midland and MCM.

40.     Neither Brent nor the members of her class seek to, in any manner, have this Court disturb, overrule, reverse, set aside, revoke or in any other manner have any impact upon the actual decisions of any other court, especially including the various courts in which the false and fraudulent statements were filed.

Wherefore Brent on her behalf and on behalf of the members of her class prays for judgment against Midland and MCM in an amount of damages to be established at trial for reasonable attorney fees, for pre and post judgment interest, for statutory damages and for such other and further relief that may be equitable, including pre and post injunctive relief.

**COUNT TWO**
**(Violation of the Ohio Consumer Sales Practices Act – ORC § 1345 et seq. and similar consumer protection statutes of all other states)**

41.     Brent realleges and incorporates every allegation contained in each of the preceding paragraphs as if fully set forth herein.

42.     MCM and Midland's conduct as described above was unfair and/or deceptive and therefore constituted a knowing violation of the prohibitions contained in Ohio Rev. Code § 1345.02(A) and substantially similar consumer protection statutes of all other states.

43.     MCM and Midland's conduct as described above was also an unconscionable consumer act or practice and therefore constituted a knowing violation of the prohibitions contained in Ohio Rev. Code § 1345.03(A) and substantially similar consumer protection statutes of all other states.

44.     As a direct and proximate result of Plaintiff and Counterclaim Defendant's violations, Brent and the members of her class sustained damages in an amount to be proved at trial.

## COUNT THREE
**(Misrepresentation)**

45. Brent realleges and incorporates every allegation contained in each of the preceding paragraphs as if fully set forth herein.

46. MCM and Midland executed and utilized affidavits containing false and misleading information in debt collection lawsuits throughout the United States during the relevant time period of June 16, 2006 to date.

47. The affidavits signed by MCM employees affirmed that the employee had personal knowledge concerning the alleged debtors, their financial information, and the alleged debts, when MCM and Midland knew that the employees did not possess this personal knowledge.

48. The affidavits were filed with various courts as evidence of the existence and amount of the alleged debts, when Midland and MCM had no such evidence in their possession, and therefore they were material.

49. Midland and MCM acted through the use of a large number of law firms throughout the United States which all had a pecuniary interest in their representation and all of whom were acting on behalf of themselves and Midland and MCM when the false and misleading affidavits were used.

50. The affidavits were used by Midland, MCM and the large number of law firms across the country in debt collection actions.

51. The representations of personal knowledge set forth in the affidavits were false and Midland and MCM knew they were false at the time they were made, or acted with such utter disregard and recklessness as to the truth of those statements that knowledge may be inferred.

52. Any required Class members' reliance upon the validity of the affidavits is presumed.

53. As a result of Midland and MCM's negligent and/or intentional misrepresentations, class members incurred substantial damages, including, but not limited to, the payment of funds to Midland and/or MCM on debts that they did not and do not owe.

## PRAYER FOR RELIEF

Brent prays that this Court grant the following relief in favor of herself and the class against Midland and MCM:

1. Declare that Midland and MCM's collection actions violate the FDCPA;

2. Declare that Midland and MCM's actions violate the OCSPA and the other similar consumer protection statutes which existed throughout the United States.

3. Declare that Midland and MCM acted negligently and/or intentionally through employees, agents and attorneys to deprive class members of their property.

4. Enter judgment in favor of Bent and the members of her class against Midland and MCM for actual and statutory damages, punitive damages, costs, and reasonable attorneys' fees, pre and post judgment interest;

5. Certify this action as a class action and enter judgment in favor of the class members against Midland and MCM for actual and statutory damages, punitive damages, costs, and reasonable attorneys fees as provided by § 1692k(a) of the FDCPA, the OCSPA, the various state consumer protection statutes, and upon common law or equitable principles; and

6. Grant such further relief as deemed just, with pre and post injunctive relief.

## **JURY DEMAND**

Brent hereby demands trial by jury of the above case.

                                      Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
E-Mail Address: dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
E-Mail Address: dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 E. Shoreline Drive
Sandusky, Ohio 44870
Telephone: (419) 624-3000
Facsimile: (419) 624-0707

Attorneys for Defendant/Counterclaim Plaintiff

**CERTIFICATION**

This is to certify that a copy of the foregoing **Third Amended Counterclaim of Defendant/Counterclaim Plaintiff** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic system.  Parties may access the filing through the Court's system on this _____ day of December, 2009.

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
Donna J. Evans, Esq. (0072306)

Attorneys for Defendant/Counterclaim Plaintiff