**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **MIDLAND FUNDING LLC** | Case No. 3:08-CV-1434 |
| Plaintiff/Counterclaim Defendant, | |
| vs. | Judge David A. Katz |
| **ANDREA L. BRENT** | |
| Defendant/Counterclaim  Plaintiff | **REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE A THIRD-AMENDED COUNTERCLAIM FILED BY DEFENDANT, ANDREA BRENT** |
| vs. | |
| **MIDLAND CREDIT MANAGEMENT, INC.** | |
| Counterclaim Defendant | |

## I.    BACKGROUND FACTS & STATUS OF LITIGATION.

The facts of import, which give rise to Brent's request to file a Third Amended Counterclaim, are directly related to the current unique posture of this matter.   Recent developments, along with the failed efforts of the parties to find a suitable, court sponsored resolution, have been instrumental in shaping the unique posture which gives rise to this presently proposed Third Amended Counterclaim.

As this Court is aware, Brent filed counterclaims against Midland Funding LLC ("Midland") and Midland Credit Management, Inc. ("MCM") (herein collectively referred to as

"Midland"), in response to a debt collection action filed by Midland in an Ohio state court, asserting that Midland had a practice of using false affidavits to collect debts from consumers.[1] These counterclaims were, from the very onset, asserted by Brent on behalf of herself and a class of similarly situated individuals.

The Court, after discussion with the parties, determined that the case would proceed initially with discovery on liability only and a Case Management Order was issued to that effect. (ECF Doc. # 13).  Discovery for class certification purposes was to follow.  After completion of discovery on liability, a First Amended Counterclaim was filed by Brent on December 1, 2008 (ECF Doc. # 22), in accordance with the deadline set in the Court's Case Management Order for the amendment of pleadings. (ECF Doc. # 13).  This First Amended Counterclaim alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA").

This Court, in the Memorandum Opinion of August 11, 2009 (ECF Doc. # 50) granted partial summary judgment to Brent, finding that the affidavit used by Midland as part of the debt collection action was false, deceptive and misleading and in violation of the FDCPA and OCSPA.  This Court also found that there existed genuine issues of material fact as to whether Midland was entitled to collect interest at 10% which greatly exceeded the Ohio statutory limit and denied summary judgment to both parties on this claim.  Therefore, liability for the use of the false affidavit was established, but the excessive interest claim still pends.

After the Court's decision on the motions for summary judgment, the Court on August 31, 2009 held a status conference.  (ECF Doc. # 53).  Based upon statements made in Midland's opposition brief, their recollection of that status conference conflicts with Brent's counsel's

---

[1] Midland's Memorandum in Opposition to Brent's Motion incorrectly identifies this action as originating in Sandusky County.  However, the debt collection complaint was actually filed in the Municipal Court in Sandusky (Erie County) Ohio.

recollection.   As this Court will recall, Brent sought follow-up with discovery as to class certification and to set new deadlines.   However, Midland was adamant that mediation could be productive.   Had Midland not insisted on mediation, additional discovery would have been completed and class certification briefing begun.

However, Brent agreed, based upon Midland's mediation request to engage in mediation. It was ordered by this Court that Brent would file an amended counterclaim (designated as an amended complaint in the Order) within 10 days to more clearly define the issues to be discussed in mediation and to address some concerns raised in earlier discussions among the parties.   The Court stayed the case for all other purposes, pending the outcome of mediation, with the exception of filing the Amended Counterclaim and the continued briefing for the Motion for Reconsideration (ECF Doc. # 52) that had previously been filed by Midland.   Brent did file her Second Amended Counterclaim in accordance with the Order on September 10, 2009.   (ECF Doc. # 54).   The amendment alleged nationwide classes under the FDCPA and an Ohio class under the OCSPA.   The briefing as to the Motion for Reconsideration was completed.

Although Brent cannot comment on the discussions that took place in two failed mediation attempts, due to the confidentiality of the process, the discussions were beneficial in raising several issues that were important to the parties in the context of the further mediation which had been scheduled.   Brent's proposed Third Amended Counterclaim is an effort to address certain legal issues in order to clarify issues that were raised.   When it became apparent, on December 8, 2009, that mediation was unsuccessful, Brent immediately sought leave to file her Third Amended Counterclaim and to continue moving this case forward.

## II.    LEAVE TO FILE AN AMENDED COUNTERCLAIM SHOULD BE GRANTED.

Although Brent did not initially file a lengthy memorandum of points and authorities in support of her motion for leave to file the Third Amended Counterclaim, the motion was made in writing as mandated by Local Rule 7.1(b).  No trial date, or other dates for discovery and briefing deadlines have even been set, so this motion was certainly filed in advance of any future deadlines.  Midland's reference to *Back v. Nestle USA, Inc.*, No. 08-290, 2008 WL 4399492 (E.D. Ky, Sept. 23, 2008) has no relevance.  In *Back*, the plaintiff simply mentioned that he would amend his complaint if necessary in a response to a motion to dismiss and never filed a motion requesting leave to amend.  ("[A] bare request to amend a complaint ***in lieu of a properly filed motion*** is not proper under Rule 15(a).  *Id*. at *3, citing *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6ᵗʰ Cir. 1987)).[2]

Fed.R.Civ.P. 15(a)(2) states that after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  "[T]he usual practice is to grant plaintiffs leave to amend the complaint.  Generally, leave to amend is 'freely given when justice so requires.'"  *Morse v. McWhorter*, 290 F.3d 795, 799 (6ᵗʰ Cir. 2002) (quoting Fed.R.Civ.P. 15(a)).  However, the Supreme Court has instructed that leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment,

[2] Midland's attempt to make a further comparison with this Court's decision in *Checuti v. Conrail*, 291 F.Supp.2d 664, 667 (N.D. Ohio 2003)(Katz, J) is similarly *unavailing*.  Midland asserts that this Court denied a "motion for leave to amend for failure to articulate the nature of the proposed amendment." (ECF Doc. # 65 at pg. 14).  In *Checuti*, however, the Court actually granted Plaintiff's motion for leave to amend his complaint to the extent that he sought to add an additional party, but the Court noted that an additional claim Plaintiff wished to assert was futile and *that* amendment was denied.  The statement apparently alluded to by Midland appears as a footnote on page 667 and reads: "Plaintiff's first motion for leave to amend complaint neither sets forth the nature nor includes a copy of the proposed amended complaint, and is therefore denied."  Brent *did* provide this Court with a copy of her proposed amendment, and therefore this reference is also inapplicable.

4

futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Additional factors for the Court to consider may also include the need for additional discovery, strain on the court's docket, or a lack of prejudice to the opposing party when the parties are already aware of the issues addressed in the amendment. *Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787, 792 (6th Cir. 1987).  Delay alone is insufficient to deny the proposed amendment. *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 581 (6th Cir. 1990) (citations omitted).  Upon consideration of these factors, the Court should grant Brent's motion to amend.

Midland makes much of the fact that this Court's previous scheduling order set a deadline of December 1, 2008 to amend the pleadings.  What they fail to mention is the added fact that although summary judgment was granted in Brent's favor on her FDCPA and OCSPA claims for use of false affidavits, other claims still pend.  Class certification has yet to be addressed, and discovery will be ongoing.  A new scheduling order will certainly be required.  Furthermore, a schedule may always be modified for good cause, with the judge's consent.  Fed.R.Civ.P. 16 (b)(4).

A motion for leave to amend a pleading may be denied if issues of delay, prejudice, or futility are not articulated in support of the motion.  *Inge v. Rock Financial Corp.*, 388 F.3d 930, 937 (6th Cir. 2004).  However, this Court can review the facts and make an independent decision of the propriety of the amendment.

Brent recognizes the apparent deficiency in originally providing support for her request to amend, as duly noted by Midland, and will now address those issues.

**A. There is "Good Cause" to Modify the Court's Case Management Order to Permit the Filing.**

This Court may extend a scheduling order, or establish new deadlines on a showing "of good cause if the [deadline] cannot reasonably be met despite the diligence of the party seeking the extension."  Advisory Committee Notes to the 1983 Amendments to Fed.R.Civ.P. 16(b).

At the outset, there was one deadline for the amendment of pleadings set by this Court. However, from the very beginning this matter has proceeded on the basis that there would be two separate phases.

The first phase, for which the August 6, 2008 scheduling order was issued, was to concentrate on liability.  After that phase was completed, the parties were to move on to class certification.  That would require a new scheduling order, more discovery and new deadlines.

As this case moves into the class certification phase, it is imperative that the class description, as the facts evolve through discovery and indeed through failed mediation, be clearly established.   Brent is not seeking an extension of a previously issued scheduling order.  Brent seeks leave to file her amended counterclaim as part of the next phase of litigation that will be subject to a new scheduling order.

Regardless, Rule 16(b)'s "good cause" standard emphasizes the diligence of the party seeking the amendment.  *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004).  Brent *has* been diligently pursuing this litigation from the beginning.  After summary judgment was granted on one of Brent's claims, Brent, with permission of the Court, had an obligation to protect the absent class members.  Settlement through mediation was attempted. These negotiations solidified and clarified nationwide class definitions that would be of benefit to all parties and would afford relief from the prospect of litigating numerous lawsuits filed state-by-state, if Brent's classes were to be limited to Ohio.  There was no delay on the part of Brent in

6

making this request. Leave to file the proposed amended counterclaim was sought the very day that it became apparent that mediation would not be successful.

Contrary to Midland's additional assertions, judgment *has not* been entered in this case and Brent's First Amended Counterclaim *has not* been litigated to completion. (ECF Doc. # 65 at pg. 8). There is no comparison between this case and *First National Bank of Louisville v. Continental Illinois National Bank and Trust Co. of Chicago*, 933 F.2d 466, 468, where summary judgment had been granted to the defendant and the suit dismissed before the plaintiff sought to amend. Brent has been diligent and this Court has the discretion to grant Brent's motion for leave to amend.

### B. Brent's Proposed Amendments Will Not Prejudice Midland.

Although not decisive in and of itself, one factor this Court should consider is the possible prejudice to the party opposing the amendment to a pleading. *Inge,* 281 F.3d at 625. The proposed amended counterclaim is based upon the very same actions of Midland that were thoroughly described in the parties' motions for summary judgment. These facts are well-known and there should be no need for additional discovery for that purpose. Although an additional claim of misrepresentation has been added, this will require only a legal analysis for a liability determination.

The proposed amendment primarily reflects changes in class definitions. Damages for use of the false affidavits, whether statutory and/or actual, under the FDCPA are available to all class members upon certification, since liability has already been decided. Because there is a cap on statutory damages in the FDCPA, Midland will face no additional exposure under that statute if the class consists of all affected individuals across the nation, or is limited to only those in Ohio. Actual damages, if any, whether awarded under the FDCPA or under the theory of

misrepresentation or the various consumer protection acts, will be based upon the readily calculated damages of each individual class member. If these matters were not addressed in this action, for all those who were harmed, they will be sought in other actions, which will require additional time and effort of this Court and/or other venues. The amendments proposed by Brent are for the benefit of Midland and the judicial system.

Midland cites to *Gilmore v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) in support of its arguments. *Gilmore* holds that it is not proper to raise a new claim in response to a summary judgment motion. *Gilmore,* 382 F.3d at 1315. However, there are no summary judgment motions pending. Brent is not seeking to amend her counterclaim to save her case when a legal theory no longer appears viable. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 3d ed. Supp. 2005).

This Court has ruled on partial summary judgment, but not class certification. Brent's proposed amendment asserts the same claim that was already decided by this court, but on behalf of those who were hurt. There is absolutely no need to vacate the summary judgment ruling, as suggested by Midland.[3] There has always been a question of class definition, which will be addressed in the future, whether the counterclaim is amended or not. The case is ongoing and Brent's proposed amendment will benefit, rather than prejudice, the parties.

---

[3] In this respect, this case is clearly distinguished from *Cooper v. Shumway*, 780 F.2d 27 (10th Cir. 1985) and *Mitsubishi Aircraft, Int'l v. Brady*, 780 F.2d 1199 (5th Cir. 1986) where summary judgment was awarded to defendants and the cases were dismissed prior to a request to amend.

## C. The Third Amended Counterclaim Asserts Legally Sufficient Causes of Action.

Midland further asserts that Brent's motion should be denied because her proposed amended counterclaim is futile. "A proposed amendment is futile if the complaint, as amended, would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Konkol v. Diebold, Inc.*,  --- F.3d ---, 2009 WL 4909110 at * 11 (6th Cir. 2009) citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Brent's proposed amended counterclaim asserts viable causes of action and is not futile. Brent's motion for leave to file should not be denied.

### 1. Class Members Claims Are Not Time-Barred.

After arguing that Brent should not be permitted to assert the proposed new claims based upon misrepresentation and state consumer protection statutes on behalf of putative class members, Midland conveniently ignores these causes of action and argues that all the new nationwide class action claims are untimely under the *FDCPA's* one year statute of limitations.

It is true that Brent did not seek to represent consumers outside of Ohio prior to her Second Amended Counterclaim. It is also true that all FDCPA claims are subject to a one year statute of limitations. *Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1120 (11th Cir. 2004).[4] This probably means that the claims for statutory and actual damages available, **under the FDCPA,** for the non-Ohio consumers will be limited to violations that occurred within the one year prior to the present filing date of the motion to amend. However, FDCPA violations for false affidavits at any time within the one year period, prior to the filing date of Brent's

---

[4] Although the *Cliff* Court held that it is necessary for a class action defendant to have the essential information to determine both the subject matter and the size of the litigation, it also recognized that "[w]e do not lose sight of the fact that class definitions may undergo modification, possibly several times, during the course of a class action. Our opinion should not be understood to declare a rigid rule that any amendments that modify and thus enlarge a class will not relate back under any circumstances. Such a determination requires a case-by-case analysis." *Cliff*, 363 F.3d at 1133, fn 16.

proposed amended counterclaim, are most certainly not barred by the FDCPA statute of limitations.  This is because Midland continued to use the same false affidavits *after* Brent's initial counterclaim was filed, resulting in continuing violations of the FDCPA, for the period of time until this Court's grant of summary judgment.  It is simply unsupportable for Midland to claim that the limitations period has run on every single FDCPA claim for every single consumer subjected to Midland's use of false affidavits, outside of Ohio.

Brent also seeks to represent these proposed class members for additional claims under the various states unfair and deceptive practices acts and for common law misrepresentation.  There is no need to conduct an extensive relation-back analysis, as suggested by Midland for these additional claims.  As noted by this Court, the use of the false affidavit by Midland *is* an unfair and deceptive act in violation of the FDCPA.  This FDCPA violation also constitutes an unfair and deceptive act or practice in violation of the OCSPA.  (ECF Doc. # 50 at pg. 27).

Other states have also enacted comparable legislation prohibiting unfair and deceptive acts in connection with consumer transactions.  The FDCPA violations are violations of these state statutes, even if they occurred more than one year previous, but less than 3-5 years depending upon the state.  The OCSPA has a two-year statute of limitations.  Although various state UDAP statutes have limitations periods of differing durations[5], all false affidavits used by Midland in collections actions in every state, during the applicable limitations period prior to the filing date of the motion to file the Third Amended Counterclaim will result in justiciable violations of these statutes as to the proposed class members.  Furthermore, the common law claims based on the false affidavits are not time-barred from the time of the motion to file the Third Amended Complaint.

---

[5] As examples, the limitations period in Arkansas and Tennessee is 5 years; 4 years in Hawaii, Nebraska, Nevada, North Carolina, South Dakota and Washington; and 3 years in New Hampshire and Wisconsin.

## 2.  Brent Has Adequately Pled Claims of Misrepresentation.

Brent's proposed Third Amended Counterclaim alleges a claim of misrepresentation with sufficient particularity to satisfy the requirements of Fed.R.Civ.P. 9(b).  A complaint is sufficient under rule 9(b) if it alleges the time, place and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent of the defendants and the injury resulting from the fraud. *United States ex re. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 518 (6th Cir. 2009) (citations omitted).  These requirements are intended to place potential defendants on notice of the precise statement being alleged as fraudulent, which is all that is required.   A court should give due deference to the circumstances which surround the alleged fraudulent acts when invoking the requirement of particularity.  *Korodi v. Minot*, 531 N.E.2d 318, 322 (Ohio App. 1987).

In the Third Amended Counterclaim, Brent pleads specifics regarding content, time and place of the misrepresentations.  The misrepresentations were made in form affidavits, such as Form 400 and Form 409, wherein a Midland employee swore that the employee possessed personal knowledge of the customer's alleged debt; the payment history of the alleged account, as well as the age and mental status of the alleged debtor.  (ECF Doc. # 62-1 at ¶¶ 13, 14, 47, 51).   This Court has already determined that these form affidavits, executed by Midland employees asserting they are based upon personal knowledge, when the affiant did not possess such knowledge, were false, deceptive and misleading.  (ECF Doc. # 50 at pg. 15).   The affidavits containing the misrepresentations were filed in courts across the country in conjunction with debt collection lawsuits, during the relevant time period of June 16, 2006 to the present.[6] (ECF Doc # 62-1 at ¶¶ 22-24, 46, 48).   In the previous one year period, approximately 140 of

---

[6] To the extent that the claims of some putative class members in states other than Ohio may be outside the applicable statute of limitations period, such as the 2 year statutes of limitations identified for Pennsylvania and Alabama, the misrepresentation claims for individuals in those states can easily be limited to the affidavits that were filed within the appropriate limitations periods.

these debt collection lawsuits were filed in the Sandusky Municipal Court (Ohio), and another 375 collection actions were filed in the municipal courts in Findlay, Ohio, Vermilion, Ohio and Lake County, Ohio.  (ECF Doc. # 62-1 at ¶ 25).

Midland used these affidavits to collect alleged debts when they *did not possess any evidence* to support the existence of the debt.  (ECF Doc. # 62-1 at ¶¶ 17, 20, 21-24, 48). Midland could not have filed these false affidavits with the courts, without an intent that they would be relied upon by the courts and the defendants.  This Court has already held that the false claims in the affidavits are materially related to supporting the proposition that the alleged debt was valid.  (ECF Doc. # 50 at pg. 14).  Class members' reliance upon a sworn statement that: (1) appears official, (2) is notarized, (3) is allegedly based upon the affiants' personal knowledge and (4) has been filed with a Court --- can be presumed to be justified.  Midland certainly intended for the Court to rely upon the affidavits.  They cannot now honestly contend that class member reliance is not presumed nor that it was not justified.

### 3. Brent's Proposed Amendment Asserts Facts to Support a Finding of the Prerequisites of Rule 23 Class Certification.

Midland asserts that the counterclaims do not meet the commonality or predominance requirements of Rule 23.  They further contend that because Brent is challenging the validity of her debt, while others did not, Brent would not adequately protect the interests of the various proposed classes.  In addition because the claims would be based upon "divergent sets of law and facts in various jurisdictions." (ECF Doc. # 65 at pg. 18), that Brent would be inadequate.

Brent's Third Amended Counterclaim asserts facts from which this Court can reasonably infer compliance with the mandatory prerequisites of Rule 23.  Brent has sought to litigate this case, in a representative capacity, from May 2008 when she filed a counterclaim in the Sandusky, Ohio Municipal Court.  The challenges to the propriety of class certification that

Midland now attempts to assert, in the context of opposing Brent's amendment of the counterclaim, are more appropriately addressed when this Court entertains a motion for class certification.

Nevertheless, the counterclaim is sufficient, despite Midland's assertion to the contrary. The commonality requirement of Fed. R. Civ. P. 23(a)(2) can be satisfied either by showing the existence of legal or factual questions common to the class. *Farm Labor Organizing Committee, et al. v. The Ohio State Highway Patrol*, 184 F.R.D. 583, 587 (N.D. Ohio 1998). "Where a question of law refers to a standardized conduct of the defendants toward members of a proposed class, a common nucleus of operative facts is typically presented and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1994), citing *Katz v. Carte Blanche Corp.*, 52 F.R.D. 510, 514 (W.D.Pa. 1971). In this case, the standardized conduct of Midland, in utilizing an affidavit containing false information in an attempt to collect a debt from class members, is the central legal and factual issue.

There can be no dispute that the issue of Midland's liability for these actions is common to all members of the proposed classes and that it clearly predominates. With the common question of liability resolved, all that remains is the determination of statutory and actual damages suffered by each class member. *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124 (2nd Cir 2001). As to these damages, while the *amount* of actual damages may have to be proven on an individual basis, the fact of injury is common to the class. Due to the overwhelming predominance of the common factual and legal issues, there exists a clear justification for handling the dispute on a class basis.

Brent has common interests with unnamed members of the classes and has vigorously prosecuted the interests of the class for almost two years. *In re Revco Securities Litigation*, 142

13

F.R.D. 659, 668 (N.D. Ohio 1992). She has answered discovery and appeared for a deposition. It is pure conjecture by Midland that Brent will not protect the interests of the various proposed classes. Her past willingness to take up this task demonstrates otherwise.

### 4. The *Rooker-Feldman* Doctrine and *Res Judicata* Are Not Applicable to Brent's Proposed "Actual Damages" Subclass.

The *Rooker-Feldman* doctrine stands for the "unremarkable proposition that a federal district court lacks subject matter jurisdiction to review a state court decision." *Whittiker v. Deutsche Bank National Trust Company*, 605 F.Supp.2d 914, 920 (N.D.Ohio 2009) quoting *Pittman v. Cuyahoga County Department of Children and Family Services*, 241 Fed.Appx. 285, 287 (6th Cir. 2007). A recent United States Supreme Court decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), clarified that the application of the *Rooker-Feldman* doctrine is confined to "cases brought by state-court losers complaining of injuries caused by the state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 920-21, citing *Givens v. Homecomings Financial*, 278 Fed.Appx. 607, 609 (6th Cir. 2008) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284. In the wake of *Exxon Mobil Corp.*, the Sixth Circuit has "tightened the scope of *Rooker-Feldman*." *Pittman,* 241 Fed.Appx. at 287 (citing *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006). *Rooker-Feldman* only deprives a district court of jurisdiction "when the cause of the plaintiff's complaint is the state judgment itself." *Givens*, 278 Fed.Appx. at 609.

The *Rooker-Feldman* doctrine does not universally prevent a district court from exercising subject matter jurisdiction simply because a party now litigates a matter which may have been litigated in state court. Whenever the federal plaintiff presents an independent claim for which statutory violations have not been adjudicated, the federal court has jurisdiction. This

holds true even if that claim denies a legal conclusion reached by the state court. *Pittman*, 241 Fed. Appx. at 287, citing *Exxon Mobil Corp.*, 544 U.S. at 284.

The Sixth Circuit has provided guidance in differentiating between a claim that attacks a state court judgment and an independent claim over which the district court has subject matter jurisdiction:

> The inquiry then is the source of the injury plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Fledman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim. … The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393-94 (6th Cir. 2006). A claim that the state court judgment was procured by the alleged wrongdoing of the defendant is an independent claim over which the district court may assert jurisdiction. *Id.* at 392-93. In *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 437 (6th Cir. 2006), the Sixth Circuit found that the *Rooker-Feldman* doctrine did not deprive the district court of subject matter jurisdiction over plaintiff's federal claim that defendant filed a false affidavit in a state court garnishment proceeding. In *Brown v. First Nationwide Mortgage Corporation*, 206 Fed.Appx. 436, 440 (6th Cir. 2006), the Sixth Circuit held that a federal plaintiff's allegations of fraud in connection with a state court proceeding does not constitute a complaint regarding the foreclosure decree itself, but concerns defendant's actions that preceded the decree, and therefore plaintiff's claim that the foreclosure decree was procured by fraud is not barred by *Rooker-Feldman*.

In this case, the source of the injury to Brent and class members are the false affidavits used by Midland in the debt collection lawsuits. Where judgments were obtained through the use of the affidavits, the judgments themselves are not the source of the federal injuries. Those

claims are not injuries arising from the state court judgment itself.  Instead, they are injuries resulting from Midland's prior conduct in those lawsuits.  *Tolliver v. Liberty Mutual Fire Ins. Co.*, 506 F.Supp.2d 260, 267 (S.D. Ohio 2007).  Brent and class members are not asking this Court to reverse any state court judgments.  The *Rooker-Feldman* doctrine does not deprive this court of subject matter jurisdiction over those class members for whom Midland obtained judgments in state courts using the false affidavits.

It is true that res judicata may bar some claims over which the federal courts have jurisdiction.  It is also true that Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.  28 U.S.C. § 1738.  Under the doctrine of res judicata, a valid, final judgment on the merits bars all subsequent actions based upon any claim arising out of the *transaction* or occurrence that was the subject matter of the previous action.  *State ex rel. Mora v. Wilkinson*, 824 N.E.2d 1000, 1003 (Ohio 2005).  The term *transaction* has the broad meaning of a "common nucleus of operative facts."  *Davis v. Wal-Mart Stores*, 756 N.E.2d 6f57, 658 (Ohio 2001).  To determine whether FDCPA and related claims are barred by a state court collection action, it is necessary to examine the extent to which those facts, which are relevant to the FDCPA claims, had been addressed in the state court proceedings.

Midland's contention that claims for actual damages are precluded, is based on the assumption that the damages sought were caused by Midland's collection of the debts, after obtaining the state-court judgments, and that these claims could have been raised as counterclaims in the initial actions.  However, as articulated by one court "the state court suit to collect on plaintiff's debt was a different cause of action from the plaintiff's claim that she was injured in the 'collection process.'"  *Buford v. Palisades Collection, LLC*, 552 F.Supp.2d 800,

16

807 (N.D. Ill. 2008) citing *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997). "The injury of which Plaintiffs complain is the type that the FDCPA was designed to remedy: protecting consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists. *Id.* at 808 citing *Adair v. Sherman*, 230 F.3d 890, 895-96 (7th Cir. 2000). "Accordingly, the sets of facts underlying the state and federal cases do not comprise the same cause of action, and Plaintiff's claims are not barred by claim preclusion." *Id.*

Successful pursuit of FDCPA, and consumer statute violations and actual fraud and misrepresentation separate from federal and state statute *may be* brought and will not nullify the judgments that were entered in state courts. Brent in her Third Amended Counterclaim, does not seek to have any state court judgments vacated. Rather she seeks damages for the class as to Midland's actions in using the unfair and unconscionable means to collect. Actual damages, as articulated in the proposed amended counterclaim, are not those amounts collected by Midland on the judgments they received in the state courts. The "actual damages" subclass is *not defined* as a class of individuals for whom Midland obtained judgments, as Midland infers. It is the class of individuals who were *sued* by Midland using their false affidavits. (ECF Doc. # 62-1 at ¶ 27. Actual damages, as noted in the proposed amended counterclaim, include out-of-pocket expenses, lost wages and/or payment of monies to Midland, on a debt that they dispute. It is beyond dispute that many individual consumers will make a payment on a debt that they did not actually owe upon receipt of certified mail from a court, with a complaint and a sworn statement to the court that they *did* owe a certain amount. Indeed, it has also been held that nominal damages, for emotional distress, can be presumed whenever a person is sued for a debt. *Miller v. Midpoint Resolution Group LLC*, 698 F.Supp.2d 389, 394 (W.D.N.Y. 2009). The actual

damages subclass does not challenge or rely on any judgment that may have been granted in any state court.

An FDCPA claim is an independent claim that can be asserted in the district court. It is not precluded simply because a debt collection action was previously filed in another court. These claims are not barred. They constitute separate transactions from the state court judgments.

### III. CONCLUSION

For all of the above reasons, Brent's motion for leave to file her third Amended Counterclaim should be granted.

Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
E-Mail Address:  dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
E-Mail Address:  dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 E. Shoreline Drive
Sandusky, Ohio  44870
Telephone:  (419) 624-3000
Facsimile:   (419) 624-0707

Attorneys for Defendant/Counterclaim Plaintiff

### CERTIFICATION

This is to certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic system. Parties may access the filing through the Court's system on this 1st day of February, 2010.

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
Donna J. Evans, Esq. (0072306)

Attorneys for Defendant/Counterclaim Plaintiff