**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Midland Funding LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | CASE NO.: 3:08-cv-01434 |
| | ) | |
| vs. | ) | HON. DAVID A. KATZ |
| | ) | |
| Andrea Brent, | ) | |
| | ) | |
| Defendant/Counterclaimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Midland Credit Management, Inc., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| | ) | |

---

**MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT, INC.'S
JOINT MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMANT BRENT'S
CLAIM FOR ACTUAL DAMAGES**

---

Theodore W. Seitz
Dykema Gossett PLLC
201 Townsend St., Suite 900
Lansing, MI 48933
(517) 374-9149

R. Glenn Knirsch, SCR#0080770
Javitch, Block, & Rathbone LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
(216) 623-0000 ex. 3088

Attorneys for Counterclaim Defendants
Midland Funding, LLC, and Midland Credit
Management, Inc.

## I.  Introduction And Summary Of Argument

Defendant/Counter-Plaintiff Andrea Brent ("Brent") has brought several counterclaims against Midland Funding, LLC ("Midland") and Midland Credit Management, Inc. ("MCM") under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") and Ohio Consumer Sales Practices Act ("OCSPA") (also collectively referred to as the "Acts"). These claims relate to: (1) the Ivan Jiminez affidavit ("Jiminez Affidavit") that was attached to Midland's Complaint; and (2) Midland and MCM setting forth a 10% interest rate in letters to Brent, prior to Midland filing suit.

This Court has already ruled on the parties cross-summary judgment motions on liability. Doc. # 50.  However, the Court has yet to rule on damages.  Therefore, four issues remain left for adjudication by this Court: (1) whether Brent is liable to Midland for the balance on her unpaid credit card; (2) whether Midland and MCM were authorized to seek to collect 10% on Brent's credit card account; (3) whether the two putative classes should be certified; and  (4) whether Brent suffered any actual damages caused by Midland and MCM's violation of the FDCPA and OCSPA.  A jury will likely determine both the interest issue and Brent's liability on the underlying collection claim in a subsequent trial; Brent's class certification motion is pending before the Court.  Doc. #'s 76, 84, 87.

This motion is specifically aimed at addressing whether, as a matter of law, any violation of the FDCPA and OCSPA caused Brent any actual damages.  In this regard, Brent's actual damages claim must be rejected for the following reasons:

*First*, Brent failed to meet the requirements of Rule 26(a)(1) by not disclosing any support for her actual damages claim.  *Second***,** Brent cannot, as a matter of law, show any link between Midland and MCM's violation of the FDCPA, OCSPA, and any actual damages.  ***Third,***

Brent is unable to claim any actual damages arising from MCM and Midland setting forth a 10%

interest rate on letters that Brent never received; for a debt that she has never paid.

Therefore, for the reasons below, this Court should find that Midland and MCM are

entitled to summary judgment on by Brent's claim for actual damages.

## II.       Factual And Procedural Background

The facts and procedural posture of this case were well-articulated by the Court in its

Opinion regarding Summary Judgment.  Doc. #50.  As the Court stated,

> Midland and its affiliated companies are in the business of purchasing written-off
> debt from credit-issuers and then pursuing collection of that debt in a variety of
> manners.   The particular debt in question here is a credit card balance of
> $4,516.57 allegedly owed by Brent to a credit card issuer.  The original credit
> card was issued by Associates National Bank ("Associates"), and then Citibank
> USA ("Citibank") succeeded Associates in its interest.

*Id.* at 2.

Midland purchased the debt from Citibank USA.  Thereafter, it employed MCM to assist

in its collection.  MCM attempted to collect the debt by trying, unsuccessfully, to contact Brent

by mail and phone.   Next, MCM referred the matter to the law firm of Javitch, Block &

Rathbone LLP ("JBR"), who, on April 17, 2008, filed a complaint against Brent in the Sandusky,

Ohio Municipal Court (the "Complaint") to recover the amounts unpaid on the credit card. *Id.*

The Complaint seeks $4,516.57, statutory interest from the date of charge-off, and costs

of the action.  Doc. # 1, Ex. A.  The terms and conditions of the credit card account are attached

to the complaint as Exhibit A, and the Jiminez Affidavit is also attached to the Complaint as

Exhibit B.  *Id.*

Brent filed an answer through counsel where she denied each allegation contained in the

complaint but asserted no affirmative defenses.  Doc. # 2.  Brent also asserted a class action

counterclaim against Midland and a class action third-party complaint against MCM.   The

gravamen of those class claims was: (1) that the Jimenez Affidavit was false and misleading; and (2) that the Complaint was barred by the statute of limitations.  This conduct allegedly constituted a violation of five subsections of the FDCPA and was the premise of her individual claims for intentional and negligent infliction of emotional distress.  Doc. #2, ¶¶ 32-39.

Brent later amended her counterclaims to allege under both the FDCPA and OCSPA: 1) that the Jiminez Affidavit is false; and 2) that Midland and MCM impermissibly sought interest at a rate not authorized by law, in the form of the two collection letters that MCM sent in 2007.  Doc. #22, Am. Cntrclm., ¶¶ 35-40; 41-44.  Brent dropped her emotional distress and statute of limitations claims.  However, Brent alleged that "[a]s a direct and proximate result of Midland and MCM's violations of the FDCPA [and the OCSPA], Brent . . . [has] suffered actual damages in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst negative other harmful emotions, as well as the cost of defending unwarranted and illegal collection lawsuits."   Amended Cntrclm., at ¶ 39.

This Court trifurcated the issues of liability, damages, and class certification; choosing to adjudicate liability issues first.  Upon completion of discovery, each party moved for summary judgment on those issues.  See Doc #'s 34, 35, 40, 41, 42, 43, 46, 47, and 48.  Ruling on both motions, this Court found the Jimenez Affidavit to be false, and that its use violated the FDCPA and the OCSPA.  Doc. #50, at pp. 9-12.

As to Brent's claim that Midland and MCM attempted to collect an impermissible amount of interest, the Court held that "[a] genuine issue of material fact exists as to whether Midland and MCM were entitled to collect at 17.4%, and therefore not in violation of the FDCPA when they tried to collect at 10%."  *Id*., at 24.  Summary judgment was therefore denied as to both parties on that issue.  Doc. # 50 at 24-25.

After the Court amended its Summary Judgment Opinion, Brent twice moved to amend her Counterclaim.  Her proposed Second Amended Counterclaim sought to expand the scope of her class, making it nationwide.  Her proposed Third Amended Counterclaim, filed before the Court had ruled on the proposed Second Amended Counterclaim, also sought a nationwide class, but in addition added a claim for misrepresentation.  The Court denied Brent's proposed amendments via a Memorandum and Order dated February 22, 2010.  Memorandum Opinion, Doc. #72.

### III.    Law And Argument

**A.    Standard Of Review.**

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co*., 395 F. 3d. 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky., N.A*., 395 F. 3d 271, 275 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).  The Court must consider all pleading, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Although the facts are viewed in the light most favorable to the non-movant, they may not rest on the mere allegations

of her pleadings.  Fed. R. Civ. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004).

Indeed, "[a] mere scintilla of evidence is insufficient." *Humenny v. Genex Corp.*, 390 F. 3d 901,

904 (6th Cir. 2004).  Rather, a party with the burden of proof opposing a motion for summary

judgment has the burden to come forth with requisite proof to support her legal claim,

particularly where she had an opportunity to conduct discovery.  *See Cardamone v. Cohen*, 241

F. 3d 520, 524 (6th Cir. 2001).

**B.      FDCPA And OCSPA Damage Principles.**

It is axiomatic that the FDCPA caps the amount of damages available.  As explained by

the Sixth Circuit, Section 1692k of the FDCPA mandates that the maximum damages allowed—

"per action, not per violation"—are $1000 in statutory damages, actual damages, and reasonable

costs and attorneys fees.  *Wright v. Finance Service of Norwalk, Inc.,* 22 F.3d 647 (6th Cir.

1994).[1]  Specifically, Section 1692k states in relevant part that "any debt collector who fails to

comply with [the FDCPA] with respect to any person is liable to such a person in an amount to

the sum of . . . any actual damages sustained by such person as a result of such failure."  15

U.S.C. § 1692k.  Courts within the Sixth Circuit have noted that "[i]f a defendant fails to comply

with the FDCPA, a plaintiff may be awarded actual damages to compensate for out-of-pocket

expenses incurred and any humiliation, embarrassment, anguish, or emotional distress." *Kafele*

*v. Lerner, Sampson, & Rothfuss, LPA*, No. 2:02-cv-0743, 2005 WL 1379107, at *4 (S.D. Ohio

June 9, 2005).

Likewise, under the OCSPA, an aggrieved consumer may recover "any" damages caused

by the acts or omissions found to violate that Act.  R.C. § 1345.09(A); *Whitaker v. M.T.*

---

[1] For certified class actions, Section 1692k sets forth a cap of $500,000 per action on statutory damages, with the possibility of actual damages.

*Automotive, Inc.*, 111 Ohio St. 3d 177, 180-181, 855 N.E.2d 825, 830 (Ohio 2006).  Like the FDCPA, the OCSPA also caps damages, including a $5,000 cap on "non-economic damages." R.C. § 1345.09(A).

Courts have explained that the purpose of the actual damages portion of the FDCPA is to fairly compensate the consumer—not to punish or deter the debt collector.  *See Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2004).  Thus, in order to be  entitled to actual damages under the FDCPA (and the OCSPA) the debtor must demonstrate a causal nexus between the conduct which violated the Acts and the alleged injury.  *See*, *e.g.*, *Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008) (Carr, C.J.); *Becker v. Montgomery, Lynch*, No. 1:02-cv-874, 2003 WL 23335929, at *2 (N.D. Ohio Feb. 26, 2003). (Exh. A).

In this case, in addition to her individual statutory damages, Brent seeks actual damages both for her and the putative classes.  However, as set forth below, Brent's actual damages claims must be rejected.[2]

## C.  **Brent's Actual Damages Claims Are Ripe For Summary Judgment.**

### 1.  **Brent Failed To Disclose Actual Damages During Discovery.**

Rule 26(a)(1)(C) explicitly requires that a party's initial disclosures include:

A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(C).

---

[2]  As for potential attorneys fees, the Court required Brent's counsel submit a preliminary estimate of its attorneys fees and expenses through trial, including fees relating to class certification.  This estimate totaled $45,000 in fees and $7,000 in costs.  Doc. # 11.

In this regard, courts have made clear that if a party fails to disclose the damages information required by Rule 26(a)(1)(C) then that party is precluded from later seeking damages.  "Rule 37 requires virtually automatic preclusion of information not disclosed pursuant to Rule 26(a)(1)."  *Austrian Airlines Oesterrichische Lufverkehrs AG v. UT Fin. Corp.*, No. 04 Civ. 3854RCCAJP, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) (Exh. B); *see also Dickenson v. Cardiac and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) (stating "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.").  Rule 37 provides:

> If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1); *see also Roberts v. Ground Handling, Inc.,* No. 04 Civ. 4955, 2007 WL 2753862, at *4 (S.D.N.Y. Sept. 20, 2007) ("plaintiff failed to disclose these damages in her Rule 26(a)(1)(C) initial disclosures.  This alone is sufficient to preclude her from submitting evidence of it.") (Exh. C).

In this case, Brent's Rule 26(a)(1) disclosures were vague and did not mention anything regarding a claim for actual damages:

> C.     Nature and Extent of Damages
>
> Defendant/Third-Party Plaintiff is requesting compensatory damages for any personal expenses/damages incurred, statutory damages, attorney fees and costs.

Exh. D.

Likewise, Brent disclosed no documents that related to her alleged actual damages (Exh. D) and has never supplemented her initial disclosures as required by Rule 26(e).  Therefore, Brent's claim for actual damages are ripe for summary judgment on this basis alone.  *See Webb v. Chase Manhattan Mortgage Corp.*, No. 2:05-cv-0548, 2008 WL 2230696, at *14 (S.D. Ohio

May 28, 2008) (granting summary judgment in favor of defendant on plaintiff's claim for actual

damages in a putative RESPA consumer class action) (Exh. E).

> **2.     Brent's Alleged Actual Damages Are Not Recoverable, As They Do Not Derive From The Jiminez Affidavit or Alleged Incorrect Interest Amount.**
>
> > ***a.     Brent's alleged "emotional distress" actual damages are not linked to the Jiminez Affidavit.***

The Court has already determined that Midland and MCM violated the FDCPA and

OCSPA when JBR filed the Jiminez Affidavit.  However, in order for Brent  to maintain any

claim for actual damages on that claim, Brent must come forward with specific evidence

demonstrating that the Jimenez Affidavit "which falsely claim[s] that he had personal knowledge

of the debt and the debtor" caused her recoverable actual damages—separate and apart from the

stress she felt from being the defendant in a collection action.  As explained below, Brent cannot

meet her burden.

Both the FDCPA and the OCSPA permit recovery of actual damages for emotional

distress.  R.C. § 1345.09(A); *Davis,* 585 F. Supp. 2d at 971; *see* Staff Commentary on the Fair

Debt Collection Practices Act, *53 Fed. Reg. 50097,* 50109 (Dec. 13, 1988) (Section 813-Civil

Liability); *see also Becker,* 2003 WL 23335929, at *2 (holding that the FDCPA permits recovery

of actual damages for emotional distress).  However, as held by the Northern District of Ohio:

> The fact that being in debt is inherently stressful, however, does not compel a conclusion that state tort law should control damage rules under the FDCPA. It merely suggests that an FDCPA actual damages rule must only award emotional damages for actual, serious emotional distress **traceable to proscribed debt collection practices**.

*Davis*, 585 F. Supp. 2d at 976 (emphasis added); *see also* R.C. § 1345.09 (same rule).

In other words, any alleged emotional distress, asserted as actual damages must arise

from a debt collector's alleged FDCPA violation, it cannot merely relate to the stress naturally

attributable to being a defendant in a state court litigation. *Thomas v. Law Firm of Simpson &*

*Cybak* 244 F.App'x. 741, 744 (7th Cir. 2007); *see also Higgins v. Capitol Credit Services, Inc.*, 762 F. Supp. 1128, 1135 (D. Del. 1991) ("While the FDCPA was intended to protect consumers from unscrupulous debt collection practices, it was not intended to shield even unsophisticated consumers from the embarrassment and inconvenience which are the natural consequences of debt collection.").

In this case, Brent testified that the sole source of her emotional stress was being sued by Midland Funding, not the Jiminez Affidavit. Exh. F, Brent Dep., at pp. 40-41. Moreover, in response to Midland and MCM's First Set of Interrogatories, Brent stated that **all** of her emotional distress was caused by the collection lawsuit—again, nowhere does she mention the Jiminez Affidavit:[3]

> 15. Describe, in sufficient detail, the "actual damages in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as the cost of defending the unwarranted and illegal collection lawsuit against [you]" as alleged by paragraph 31 of your counterclaim.
>
> Answer: Brent objects to this Interrogatory as overly broad and impermissibly vague. Because this action is still in the discovery stage, this response is provisional and subject to revision. Subject to and without waiving the foregoing objections, Brent states that upon receipt of the Summons and Complaint she was extremely distraught. She had never heard of the Plaintiff listed in the complaint or the law firm bringing the action and had no knowledge of any debt owed on a Citibank credit card. The amount of the alleged debt caused her additional worry and concern. Brent could not make contact with Plaintiff's counsel because she received the Summons on a Saturday. The shock of the allegations in the Complaint made her sick to her stomach. She could not sleep and suffered bouts of depression. She would start crying whenever she thought about what might happen to her financially. Brent had a prior history of migraine headaches which became worse with the anxiety. Her physician prescribed medication for depression and an aid to help her sleep. To this day, Brent is very disturbed about the pending collection action initiated by MCM and Midland, which she believes was unwarranted.

---

[3] Brent's responses to Interrogatories 6 and 16, which ask Brent to describe her alleged mental anguish and emotional distress, are identical to her response to Interrogatory 15.

Exh. G, Brent's Response to Midland and MCM's First Set of Interrogatories. As with her Rule 26(a)(1) disclosures, *supra*, Brent never supplemented nor revised this response.

Indeed, at no time during the course of discovery did Brent mention the Jimenez Affidavit, nor any negative impact it had on her.  Nor could Brent's husband—whom Brent identified in her Rule 26 Disclosures as having information relating to her claims (Exh. D)— testify as to how the Jiminez Affidavit related to her claims of emotional distress:

> Q.    I was wondering, do you have any understanding as
>        to how an affidavit  relates to this case?
>
> A.    No.

Exh. H, Schwarzentraub Dep., at pp. 26-27.

The situation presented here parallels that faced by the Southern District of Ohio in *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, Case No. 2:02-cv-0743, 2005 WL 1379107 (S.D. Ohio June 9, 2005) (Exh. I).  In that case,  the plaintiff alleged that the FDCPA notice sent by the defendants did not effectively convey that plaintiff had thirty days to dispute the debt, because the FDCPA notice was attached to the state court summons and complaint seeking foreclosure on his home, which required an answer in twenty-eight days.  *Id.*  The Court agreed, and held the debt collectors liable for violating Section 1692g of the Act.  *Id.*

For the violation, the plaintiff sought actual damages for, among other items: (1) moving expenses incurred from seeking a new residence; (2) the reporting of the state court foreclosure action on his credit report which may have an adverse impact on his future ability to borrow money; (3) $300 paid to a "CPA" to review documents related to his state court foreclosure; (4) his lost home and lost future equity that would have accrued; and (5) the mental anguish he suffered as a result of having his door tagged the day before Thanksgiving.  *Id.* The defendants

moved for summary judgment, alleging that plaintiff's alleged actual damages resulted not from their FDCPA violation, but from the state court foreclosure action.

The Southern District of Ohio agreed, and granted the defendant debt collectors summary judgment on the basis that the debtor could not establish a causal nexus between his alleged and the conduct which violated the Act:

> Plaintiff's arguments are unpersuasive. Plaintiff has failed to present evidence of any actual damages stemming directly from the FDCPA violation. Instead, the actual damages claimed are direct consequences of the state court foreclosure, the sheriff's sale of his property, and plaintiff's relocation. The defendants did not act directly to cause any of the actual damages identified.

*Id.* at *5.

Similarly, the actual damages alleged by Brent stem—not from the conduct which the Court found violated the FDCPA and OCSPA—but rather, from being forced to defend herself in the underlying collection action. However, there is nothing in this Court's Orders suggesting that the act of filing the collection lawsuit against Brent was in itself unlawful or unwarranted, nor that the act of filing this case in Sandusky Municipal Court constituted a violation of either the FDCPA or OCSPA. [4]

On the contrary, this Court specifically noted that "the actual account information is probably either correct or likely thought correct in good faith by Midland and MCM (and likely a *bona fide* error if so)." Because Midland and MCM relied—"in good faith"—on the representation from Citibank that the underlying debt is valid, because there is nothing in the

---

[4] It is axiomatic that all that is required prior to filing suit in Ohio is that the party has a good faith belief that it has a claim against the defendant, and that the claim is not being interposed in bad faith, or for purposes of harassment or delay. *See* R.C. § 2323.51; Ohio R.Civ.P. 11; *Riston v. Butler,* 777 N.E.2d 857, 865 (Ohio App. 2002) ("Whether a claim is warranted under existing law is an objective consideration. The test . . . is whether no reasonable lawyer would have brought the action in light of the existing law. In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.").

record to suggest that the action was instituted in bad faith, and because there is no finding that the institution and maintenance of the collection lawsuit was unlawful, any damages caused solely by Brent being the defendant of a collection lawsuit are not recoverable in this action.

Rather, the specific conduct underlying the finding of liability here is Midland and MCM's use of the Jimenez Affidavit—not the filing of the Complaint itself, and certainly not in commencing collection activity against her:

> If the violation of the FDCPA was that the data from Citibank was faulty, these arguments could present a bona fide defense. This, however, is clearly not the violation in question. Brent alleged, and this Court finds, that Midland and MCM used false, deceptive, and misleading information not in rehashing various information acquired from Citibank, but in the statements in the affidavit of Mr. Jimenez which falsely claim that he had personal knowledge of the debt and the debtor, among other things.

Doc. #50, at p. 17.

However, because Midland and MCM's commencement and maintenance of the underlying collection action did not violate either Act, Brent's alleged actual damages are not recoverable. *See Harvey v. Great Seneca Financial Corp*. 453 F.3d 324, 330-31 (6th Cir. 2006) (holding that "the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor. *Any* attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged by Harvey cannot be said to be an abusive tactic under the FDCPA.") (emphasis in original); *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1179 (11th Cir. 1985) (a debt collector informing a consumer that legal proceedings could cause her "embarrassment, inconvenience, and further expense is a true statement . . . does not create a tone of intimidation," and "such consequences of a debt collection . . . lawsuit are so commonplace that even a consumer susceptible to harassment, oppression, or abuse would not have been harassed, oppressed, or abused by the statement in and of itself."). Thus, since Brent can come forward

with no evidence of any actual damages that relate to Midland and MCM's use of the Jiminez Affidavit, this Court should grant Midland and MCM summary judgment on Brent's claim for actual damages.

### b.  Brent can set forth no evidence demonstrating that the false affidavit misled her to her detriment.

Courts have explained that actual damages under the FDCPA are only available when the consumer "present[s] some evidence that . . . [she was] misled to . . . [her] detriment." *Muha v. Encore Receivable Management*, Inc., 558 F.3d 623, 629 (7th Cir. 2009) ("Were the plaintiffs seeking actual damages rather than just statutory damages, they would have to present some evidence that they were misled to their detriment."); *Whittiker v. Deutsche Bank Nat. Trust Co.*, Case No. 1:08-cv-300, 2009 WL 692193, at *20 (N.D. Ohio March 17, 2009) (holding that "even if DBNTC's statement of ownership of the mortgage debts made at the time the foreclosure suits were filed was false, i.e., technically incorrect, there was no deception, when viewed through the eyes of the least sophisticated consumer.") (Exh. J); *Turner v. J.V.D.B. & Associates, Inc.*, 483 F. Supp. 2d 631, 635 (N.D. Ill. 2007).  Here, there is no evidence that Brent was misled her to her detriment by the Jimenez Affidavit.  *See also Miller v. Javitch, Block and Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009).

Indeed, Brent immediately knew that she was being sued, and contacted an attorney "fairly soon" after receiving the complaint, Brent Dep., at p. 20, a perfectly rational response.  At no time has Brent alleged (nor testified) that, due to the Jimenez Affidavit, she was misled into taking one course of action over another; nor has she offered an alternative course of action she would have taken other than seeking help from an attorney but for the Jimenez Affidavit being attached to the complaint.  Since she can offer no evidence that the Jimenez Affidavit materially misled to her detriment, she cannot recover damages under the FDCPA.

**D.**     **Brent Cannot Plausibly Claim Any Actual Damages From The Communications Allegedly Seeking 10% Interest, Because She Never Received Them And Never Made Any Payment On The Debt At Issue**.

Brent alleges that "MCM commenced collection activities on behalf of Midland attempting to collect the face value of the debt plus 10% interest from the date of purchase" despite not having the legal right to collect any interest. Doc #22, Am. Cntcrlm. ¶¶ 41-44. These allegedly wrongful communications refer to two pre-complaint correspondences sent by Midland and/or MCM to her on August 8, 2007 and October 1, 2007.  This Court held that there is a genuine issue of material fact as to whether Midland and MCM were entitled to collect the debt at issue using a 10% interest rate (or a higher rate)—if not, such attempts to collect that interest potentially violate the FDCPA and OCSPA.  Doc. #50, at pp. 27-28.

Assuming that Midland and MCM violated the Acts by sending these two letters, Midland and MCM are entitled to summary judgment as to whether those communications caused Brent recoverable damages.  It is well established, and entirely logical, that "the harmful effect of illegal debt collection practices does not occur until a debtor receives the abusive collection notice[.]"  *Maloy v. Phillips*, 64 F.3d 607, 608 n.1 (11th Cir. 1995).  In other words, consumers cannot plausibly claim to have suffered actual damages from a communication which they never received.

Here, Brent testified that she did not receive any collection letters from Midland and MCM prior to the lawsuit being filed.  Brent Dep., pp. 18-24.  And she stated that she has paid nothing to satisfy the underlying debt.  *Id*.  So there is no plausible way Brent can establish actual damages which resulted from two attempted communications she knew nothing about until years after they were sent.  Therefore, this Court should grant summary judgment in MCM and Midland's favor as to any actual damages alleged to be caused by those letters, as it is undisputed that Brent did not even receive them.

### III.    Conclusion and Relief Requested

For all of the above reasons, this Court should grant Midland and MCM summary

judgment on Brent's alleged actual damages, which are asserted in her Amended Counterclaim.

Respectfully Submitted:

By: *Theodore W. Seitz*
Theodore W. Seitz
Dykema Gossett PLLC
201 Townsend St., Suite 900
Lansing, MI 48933
(517) 374-9149
tseitz@dykema.com

R. Glenn Knirsch, SCR#0080770
Javitch, Block, & Rathbone LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
(216) 623-0000 ex. 3088
gknirsch@jbandr.com

Attorneys for Counterclaim Defendants
Midland Funding, LLC, and Midland Credit
Management, Inc.

### PROOF OF SERVICE

I hereby certify that on May 26, 2010 a copy of the foregoing was filed electronically in
accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to
parties by operation of the court's electronic filing system.

*/s/ Theodore W. Seitz*
Theodore W. Seitz

LAN01\217368.4
ID\TWS - 097356/0045