**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **MIDLAND FUNDING LLC**<br><br>     Plaintiff/Counterclaim Defendant,<br>vs.<br><br>**ANDREA L. BRENT**<br><br>     Defendant/Counterclaim  Plaintiff<br><br>vs.<br><br>**MIDLAND CREDIT MANAGEMENT, INC.**<br><br>     Counterclaim Defendant | Case No. 3:08-CV-1434<br><br>Judge David A. Katz |

**COUNTERCLAIMANT, ANDREA BRENT'S, RESPONSE IN OPPOSITION TO MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT, INC.'S JOINT MOTION FOR SUMMARY JUDGMENT AS TO BRENT'S ACTUAL DAMAGES**

**I.     INTRODUCTION**

Midland seeks to deny Brent's request for actual damages under the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA").  Summary Judgment should be denied.  The facts of this case, as they have been systematically developed through the discovery process, clearly demonstrate that denial should be ordered.

Midland's motion is filled with factual inaccuracies and omissions.  Brent has provided Midland with evidence and testimony establishing the damages for which she

1

seeks compensation. These damages are linked to and arise from Midland's violations of the FDCPA and the OCSPA.

The true and complete factual record that has been developed to date, concludes that Brent has suffered actual damages. The question of the amount of these damages should be submitted to a jury for its determination.

## II. ADDITIONAL BACKGROUND FACTS

From the time that Brent filed her answer to Midland's collection complaint and asserted her Counterclaims (ECF Dkt. #2, ¶¶ 6, 31-32), she has consistently informed Midland that actual damages, including compensation for "anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment amongst other negative emotions" have been sought in this action. Brent filed an Amended Counterclaim on December 1, 2008, wherein Brent's request for this same relief was restated (ECF Dkt. # 22, ¶¶ 6, 39-40, 44).

Midland explored the same category of actual damages starting early on in the process of discovery. To respond demonstrating such actual damages, Brent answered Interrogatories, provided documents in response to Midland's requests and appeared and testified at her deposition. Midland also took the deposition of Ms. Brent's then fiancé (now husband), Jon Schwarzentraub, who concurred. Midland delved no further into the area of actual damages after this Court issued its Order granting partial summary judgment to Brent on August 11, 2009 (ECF Dkt. # 50), even though this Court had set a discovery cut-off date of April 30, 2010 (ECF Dkt. # 63).

### III. LAW AND ARGUMENT

#### A. Requirements for Summary Judgment.

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law." *Layne v. Bank One, Kentucky, N.A.*, 395 F.3d 271, 275-76 (6th Cir. 2005), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c). Brent, as the non-moving party, must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

"On summary judgment the inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). There must be evidence on which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 2005 WL 1379107 (S.D.Ohio, June 9, 2005), citing *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994) (Exh. I to Midland's Motion for Summary Judgment, ECF Dkt. # 88). With this standard in mind, it can be readily established that Brent has provided far more than enough evidence that, when construed in her favor, certainly presents a genuine issue of material fact that must be resolved by a jury.

**B. Damages Available under the FDCPA and the OCSPA.**

Statutory damages under the FDCPA of up to $1,000.00 are available to a successful plaintiff for each proceeding. 15 U.S.C. § 1692k(a)(2)(A). An award of statutory damages does not require proof of actual damages. *Cacace v. Lucas*, 775 F.Supp. 502, 506-07 (D.Conn. 1990). In addition, Brent is entitled to recover any "actual damages" she has suffered as a result of Midland's FDCPA violations, although punitive damages are not authorized. 15 U.S.C. § 1692k. The term "actual damage" under § 1692k(a)(1) is not defined in the Act. Courts have interpreted actual damages to include out-of-pocket expenses, as well as compensation for the emotional distress, anxiety, stress, embarrassment, mental anguish and personal humiliation that is suffered. *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 185 (D.Del. 1991).

Emotional distress, as part of model jury charges, does include such compensable incidents to include, for example, inconvenience. See NCLC Proposed FDCPA Jury Instruction (Attached as Exhibit 1). Inconvenience may also be considered. *Wilhelm v. Credico Inc.,* Case No. 1:05-cv-002, 2008 WL 5156660 at *4 (D.N.D., Dec. 5, 2008) (Attached as Exhibit 2).

In addition, the OCSPA provides for recovery of the consumer's actual economic damages, plus an amount not to exceed $5,000.00 in noneconomic damages. O.R.C. § 1345.09(A). In an action brought under the OCSPA, "all forms of compensatory relief, including noneconomic damages, are included within the unrestricted term "damages" under R.C. 1345.09(A). *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 181 (2006). "[C]ompensatory damages may, among other allowable elements, encompass

4

direct pecuniary loss, such as hospital and other medical expenses * * *, or loss of time or money, * * *, and physical and mental pain and suffering." *Id.* at 182, citing *Fantozzi v. Sandusky Cement Prods. Co.*, 64 Ohio St.3d 601, 612 (1992). "Usually awarded for pain and suffering, noneconomic damages can also include compensation for * * * mental anguish, or other intangible loss; and humiliation and embarrassment." *Id.*, citing *Galayda v. Lake Hosp. Sys., Inc.*, 71 Ohio St.3d 421, 425 (1994) and *Mason v. Rainbow Rentals*, 2004-Ohio-265 (2nd Dist.).

In her Counterclaim as originally filed and in the Amended Counterclaim filed on December 1, 2008, Brent has consistently requested statutory and actual damages under the FDCPA and the OCSPA on behalf of herself and the class she seeks to represent.

**C. Brent's Evidence In Support of Her Actual Damages Claim Is Sufficient To Defeat Midland's Request for Summary Judgment.**

**1. Brent Has Provided Midland With Evidence of Her Actual Damages.**

Brent's Rule 26(a)(1) initial disclosures stated that she was seeking "compensatory damages for any personal expenses/damages incurred". (See Exh. D to Midland's Motion for Summary Judgment). While it is permissible for Midland to assert that it regards this as being vague, the fact is that Brent did fully disclose the damage categories. To allege that Brent has not disclosed damages information and has failed to supplement her initial disclosures is false. In fact, Midland's declaration, that Brent did not mention anything regarding a claim for actual damages and that Brent disclosed no documents that related to her actual damages, is dead wrong. Brent has answered interrogatories, answered requests for admissions, provided documents and given sworn testimony in a deposition regarding these actual damages.

5

In answering Interrogatories Nos. 6, 15 and 16 Brent described some of her actual damages:

> Brent states that upon receipt of the Summons and Complaint she was extremely distraught. She had never heard of the Plaintiff listed in the Complaint or the law firm bringing the action and had no knowledge of any debt owed on a Citibank credit card. The amount of the alleged debt caused her additional worry and concern. Brent could not make contact with Plaintiff's counsel because she received the Summons on a Saturday. The shock of the allegations in the Complaint made her sick to her stomach. She could not sleep and suffered bouts of depression. She would start crying whenever she thought about what might happen to her financially. Brent had a prior history of migraine headaches which became worse with the anxiety. Her physician prescribed medication for depression and an aid to help her sleep. To this day, Brent is very disturbed about the pending collection action initiated by MCM and Midland, which she believes was unwarranted.

(See Brent's Answers to the First Set of Interrogatories, Attached as Exhibit 3). In addition, responding to Interrogatory No. 8, Brent disclosed the name of the physician with whom she consulted. Brent also provided copies of medical bills in her Answer to Midland's Requests for Production Nos. 1, 13 and 14. (See Brent's Responses to First Set of Requests for Production, Attached as Exhibit 4). Also, Brent specifically denied that she had "suffered no damages, humiliation, or embarrassment", or that she had "suffered no out-of-pocket or consequential damages" and she specifically denied that she "did not suffer emotional distress" in answering Midland's Requests for Admissions, Nos. 13, 14 and 20. (See Brent's Responses to Midland's First Requests for Admissions, Attached as Exhibit 5).

Brent further supplemented her Rule 26 Initial Disclosures on October 23, 2008. In this supplement, Brent provided further explanation of the formula for computation of damages, her out of pocket expenses and the damages she seeks for her emotional

distress. Brent also provided additional medical records at that time. (Attached as Exhibit 6).

In her sworn testimony, Brent testified that she cried when she read through the papers she was served with the pleadings by the Sandusky Municipal Court. (Brent Deposition at pg. 20 – Exh. F to Midland's Motion for Summary Judgment). Brent was "very disturbed" and she was "completely confused." *Id.* Brent knew she was being sued, but did not know what she was being sued for. *Id.* at pg. 21. Brent thought about the collection action constantly. Brent suffered from an upset stomach. In fact, Brent described her physical and mental consequences as "very stressful." *Id.* at pgs. 42, 44. Brent also explained that she "was stressed. [She] was upset. Physically upset, mentally upset, stressed. It's all [she] thought about. Distraught." *Id.* at pg. 48. She suffered a loss of appetite and did not sleep well. *Id.* at pg. 58. Brent's physician prescribed medication to help her sleep and for depression. *Id.* at pgs. 58-60. Brent provided Midland with copies of her medical records and of the medical bills she had received. *Id.* at pg. 64.

In addition to the emotional aspect of the damages claimed. Brent also informed Midland that she incurred out-of-pocket expenses in the form of telephone calls, expenses for travel and five days of missed work. (Brent Depo. at pgs. 51-55). Brent summed up her damages categories as mileage, missed days, telephone calls and suffering. *Id.* at pgs. 89-90.

Expert testimony is not necessary to establish emotional distress damages under the FDCPA. *Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222, 1235 (C.D. Cal. 2005). "When the emotional distress alleged to have been suffered is the sort

7

that would be experienced by reasonable people under the circumstances, some damage, even if merely nominal damage, can be presumed. … The extent of plaintiff's injury can be proved by plaintiff's testimony alone." *Miller v. Midpoint Resolution Group, LLC* , 608 F.Supp.2d 389, 394 (W.D.N.Y. 2009), quoting *In re Baker*, 18 B.R. 243, 245 (Bk.W.D.N.Y. 1982). Ms. Brent's testimony raises a triable issue of material fact as to the amount of her actual damages.

This case is distinguishable from *Kafele*, where the FDCPA violation was found to be a defective notice attached to a state court summons and complaint. The damages that were sought in *Kafele* were nothing more that costs that the plaintiff incurred as a result of the judgment in the underlying foreclosure action, the sheriff's sale of the property and expenses for the plaintiff's relocation. *Kafele*, 2005 WL 1379107 at * 5. Brent's damages do not stem from any judgment in the state court collection action.

In fact, Midland's collection action is still pending. No judgment has yet been issued. Any future judgment, once granted, will have no effect on the issue of damages under the FDCPA. The FDCPA is concerned with collection practices, not the making, validity or enforcement of any note or mortgage. "The FDCPA does not deal substantively with the validity of debts, nor does it state that a violation of the act shall have any effect on the enforcement of a note." *Kafele*, 2005 WL 1379107 at *8.

Equally inapplicable to this case is Midland's citation to *Austrian Airlines Oesterreichische Lufverkehrs AG v. UT Finance Corp.*, 2005 WL 977850 (S.D.N.Y., April 28, 2005). The plaintiff in that case did not disclose a new theory of damages until two weeks before the close of discovery. The *Austrian Airlines* court refused to "allow plaintiff Austrian Airlines to assert this new, additional damage theory at the eleventh

8

hour." *Id.* at * 2. "A party that without substantial justification fails to disclose ***information required by Rule 26(a)*** … is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or ***information not so disclosed***." *Id.*, citing Fed.R.Civ.P. 37(c)(1) (emphasis added).[1]

Brent has disclosed her theories and categories of damages she seeks from the very beginning, and has provided Midland with the information it sought throughout the discovery process. A fair and adequate amount for these damages is to be determined "through the exercise of [the jury's] judgment and experience in the affairs of the world after considering all the facts and circumstances presented during the trial of this case." *Smith*, 124 B.R. at 185. The nature of these damages does not allow for any specific computation. This is an issue for the trier of fact, and that question should be posed to them.

### 2. Brent's Damages Arise Directly From Midland's FDCPA Violation.

#### a. *The Standard for Awarding Actual Damages under the FDCPA.*

State law requirements regarding the proof of intentional or negligent infliction of emotional distress are not applicable to actual damages under the FDCPA. *Becker v. Montgomery, Lynch*, 2003 WL 23335929 at *1 (N.D.Ohio, Feb. 26, 2003) (Midland's

---

[1] Midland has also cited to *Roberts v. Ground Handling, Inc.*, 2007 WL 2753862 (S.D.N.Y., Sept. 20, 2007), a case with equally dissimilar facts. The Plaintiff in *Roberts* waited until shortly before trial to claim a new theory of liability that was not alleged in the Complaint, raised in discovery, mentioned in any motion papers, or even discussed at any court conferences held in that case. *Id.* at *3. Roberts also provided no evidence to support the new allegations. *Id.* at * 4.

Similarly, *Webb v. Chase Manhattan Mortgage Corp.*, 2008 WL 2230696 (S.D.Ohio, May 28, 2008), is inapplicable. The Plaintiff in *Webb* failed to plead emotional distress damages in her Amended Complaint, did not identify any emotional distress damages in her Rule 26(a) disclosures and argued that she suffered emotional distress damages for the first time in her Memorandum in Opposition to Defendant's Motion for Summary Judgment. *Id.* at *14.

These cases are easily distinguishable from Brent's pending action.

9

Motion for Summary Judgment, Exh.A) accord *Davis v. Creditors Interchange Receivable Management, LLC*, 585 F.Supp.2d 968, 973 (N.D.Ohio 2008). "[T]he imposition of actual damages should be interpreted as a message to other debt collectors that such conduct is inappropriate. To not award actual damages would encourage 'a race to the bottom' as debt collectors could operate in an inappropriate manner with little consequence." *Id.* at *2.

The FDCPA's drafters were greatly concerned about emotional harms inflicted by abusive debt collectors. *Davis*, 585 F.Supp.2d at 973. The Senate Committee noted that abusive debt collectors cause "suffering and anguish." *Id.*, quoting S. Rep. 95-382, at 2, U.S.Code Cong. & Admin.News 1977, pp. 1695, 1696. Courts construing the FDCPA have noted Congress's concern for emotional harms. *Id.*, See *Crossley v. Lieberman*, 90 B.R. 682, 692 (E.D.Pa. 1988); *Teng v. Metropolitan Retail Recovery, Inc.*, 851 F.Supp. 61, 68-70 (E.D.N.Y. 1994).

While mere allegations are insufficient to justify an award of actual damages under the FDCPA, nevertheless, under a "reasonable person analysis," the facts presented are sufficient for a jury to make an award. *Wilhelm*, 2008 WL 5156660 at * 4-5. (denying summary judgment in concluding that the plaintiff's claim for actual damages was extremely weak, but nevertheless finding that the determination of the actual damages falls within the province of the jury). Plaintiffs need only show that their "damages are real and quantifiable." *Davis*, 585 F.Supp.2d at 974, citing *Costa v. National Action Financial Services*, 2007 WL 4526510 at *8 (E.D.Cal.). The damages must be traceable to the proscribed debt collection practices. *Id.* at 976.

> **b. Brent's Damages Result from the use of the Jiminez Affidavit by Midland in its Collection Activities.**

Midland's FDCPA violation consists of the use of affidavits that are false. They contain the false information in order to support a state court collection action. It is undisputed that the affidavit executed by Ivan Jiminez was provided by Midland to its collection attorneys for their filing in the state court collection action. Midland intentionally used the false affidavit because Midland did not have the evidence as to the actual account information within its computer records. This Court has already determined that the use of the false affidavit was an FDCPA violation because the false claims in the Jiminez affidavit are materially related to supporting the proposition in the Complaint that the debt is valid. (Summary Judgment Opinion, ECF Dkt. #50 at pg. 14). "The contents of the affidavit itself, and in particular the fact that the affiant allegedly had personal knowledge that the debt was valid, would effectively serve to validate the debt to the reader, whether that was Brent or a court." *Id.* at pg. 15. The affidavit, false on its face, was an FDCPA violation, because of the materiality in the context for which it was used by Midland.

The Jiminez affidavit was a violation of the FDCPA because it was used in conjunction with a state court collection action. Had the affidavit merely been executed and sent to collection attorneys who chose not to use it, there would have been no FDCPA violation. What Midland chooses to ignore, is the fact that it used these false affidavits in an attempt to circumvent the Ohio Rules of Civil Procedure. It is a requirement under Civ.R. 10(D)(1) that, if a claim is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. Midland did not receive such written documentation for the accounts it

11

purchased. Therefore, it resorted to creating these false affidavits to present to the State Courts instead.

The Jiminez affidavit was attached to the Complaint filed by Midland against Brent. It was false. Under Fed.R.Civ.P. 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Midland's use of the false affidavit was the essential element of the lawsuit which it filed in court. The lawsuit, incorporating the false affidavit, is the cause of Brent's actual damages. There is no separate effect from the use of the false affidavit other than from the state court collection action. It is the use of the affidavit in the collection action that is the FDCPA violation, and Midland's use of the affidavit directly caused the damages suffered by Brent.

### c. Brent Does Not Need to Prove That She Was Mislead to Her Detriment to Show She Was Damaged.

Midland makes the outrageous statement that "actual damages under the FDCPA *are only available* when the consumer 'present[s] some evidence that . . . [she was] misled to . . . [her] detriment." (Midland Motion for Summary Judgment at pg. 13, citing *Muha v. Encore Receivable Management, Inc.*, 558 F.3d 623, 629 (7th Cir. 2009). *Muha* and the other cases cited by Midland, allegedly in support of this erroneous contention offer nothing to validate Midland's flawed arguments.

In *Muha*, the Seventh Circuit actually reversed a decision of the trial court to grant summary judgment in favor of the defendant debt collector. The plaintiffs had alleged that a dunning letter sent to credit card debtors was misleading and deceptive. The *Muha* Court stated that the recipients of an allegedly misleading dunning letter can testify that they were misled to allow the trier of fact to infer that the letter is misleading within the meaning of the FDCPA. *Muha*, 558 F.3d at 628. Statutory damages would be

12

available should an FDCPA violation be found, but if actual damages were being sought, in the context of a misleading letter, the plaintiffs would have to produce some evidence of actual damages, for example, that they were mislead to their detriment. *Id.* at 629. This statement is nothing less than a restatement of the uncontroverted requirement that there must be proof of any damages before they can be awarded.

The second case cited, *Whittiker v. Deutsche Bank National Trust Co.*, 605 F.Supp.2d 914 (N.D.Ohio 2009), does not even address the issue of actual damages. This case merely analyzes the validity of the FDCPA claim alleged to conclude that "[t]he filing of a foreclosure action by a plaintiff in the process of obtaining an assignment not yet fully documented is not a deceptive, misleading, or abusive tactic and does not violate the FDCPA." *Id.* at 931. Likewise, *Turner v. J.V.D.B. & Associates, Inc.*, 483 F.Supp.2d 631 (N.D.Ill. 2007), does not have anything to do with the question of damages. The *Turner* court reached the conclusion that no FDCPA violation occurred because the plaintiff understood that the letter from a debt collector seeking to collect a debt that the plaintiff knew was discharged in bankruptcy permitted him to dispute the debt. Finally, *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009), found the challenged statements were not misleading and rejected the plaintiff's FDCPA claim on materiality grounds. *Id.* at 596. There is no discussion of damages in this last case, as well.

The FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of any actual damage sustained by such person as a result of such failure. 15 U.S.C. § 1692k(a)(1). Brent is entitled to any actual damages that are

13

proven despite Midland's attempt to create a false condition that damages are only available to those consumers who are materially mislead.

### D. Brent Is Not Seeking Any Actual Damages On Her Claim That Midland Sought Payment of Excess Interest.

Brent seeks only statutory damages for her claim that Midland attempted to collect 10% interest on her account, thereby attempting to collect an amount that was not authorized by law. The letters sent to Brent, along with those sent to all of Midland's Ohio accounts, alleged debts for which Midland included interest which Midland calculated at 10%. Midland should have known the Ohio statutory interest rate was lower. Brent does not claim that she suffered actual damages as a result of this FDCPA violation. Some members of the putative class may have paid an amount in excess of what was legitimately owed and these members may claim actual damages for the excess payments. However, Brent is not among them.

### IV. CONCLUSION

This Court should find that Midland's Motion for Summary Judgment must be denied. Brent has asserted a valid claim for actual damages arising from Midland's use of the false affidavits in conjunction with its state court collection actions. The question of the availability and the amount of these damages should be submitted to the jury for their determination.

Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
E-Mail Address: dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
E-Mail Address: dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 E. Shoreline Drive
Sandusky, Ohio 44870
Telephone: (419) 624-3000
Facsimile: (419) 624-0707
Attorneys for Defendant/Counterclaim Plaintiff

## CERTIFICATION

This is to certify that a copy of the foregoing **Counterclaimant, Andrea Brent's, Response In Opposition to Midland Funding, LLC and Midland Credit Management, Inc.'s Joint Motion for Summary Judgment as to Brent's Actual Damages** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic system.  Parties may access the filing through the Court's system on this 12th day of July, 2010.

>  */s/Dennis E. Murray, Sr.*
>  Dennis E. Murray, Sr., Esq. (0008783)
>  Donna J. Evans, Esq. (0072306)
>  Attorneys for Defendant/Counterclaim Plaintiff