IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIDLAND FUNDING, LLC,

                        Plaintiff,                  Case No. 3:08 CV 1434

        -vs-

                                                        MEMORANDUM   OPINION

ANDREA BRENT,

                        Defendant.

KATZ, J.

Pending now before the Court are a motion for class certification (Doc. 76) filed by Defendant/Counterclaim Plaintiff Andrea Brent ("Brent"), and a motion for partial summary judgment as to Brent's claim for actual damages filed by Plaintiff/Counterclaim Defendant Midland Funding, LLC ("Midland") and Counterclaim Defendant Midland Credit Management, Inc. ("MCM").  The motion for class certification will be granted in part and denied in part, and the motion for partial summary judgment will be granted.

## I. Background

Midland is in the business of purchasing written-off debt from credit-issuers.  Midland then engages MCM to collect on that debt.  In April 2008, Midland initiated this action as a breach of contract case against Brent in the Municipal Court of Sandusky, Ohio, seeking recovery on a credit card debt.  Brent, in turn, filed class-action counterclaims against both Midland and MCM, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692a *et seq*., as well as Ohio common law.  The case was removed to federal court as involving a question of federal law.

On December 1, 2008, Brent filed an Amended Counterclaim Complaint against Midland and MCM, dropping her common-law claims and adding a claim alleging violation of the Ohio Consumer Sales Protection Act (OCSPA),, Ohio Rev.Code Ann. § 1345 *et seq.* (2008).

Both parties subsequently filed motions for summary judgment on issues relating to the FDCPA and OCSPA claims, and Brent filed a motion for class certification. The Court denied Brent's motion for class certification with leave to refile after ruling on summary judgment as to the FDCPA and OCSPA claims (Doc. 44).

In a memorandum opinion issued on August 11, 2009, this Court denied Midland and MCM's motion for summary judgment. The Court also granted Brent's motion for summary judgment in part, and denied the motion in part. The Court determined that Midland and MCM violated the FDCPA and OCSPA by attempting to collect a debt using an affidavit that was materially false, deceptive, and misleading, in the sense that the affidavit purported to be based on the affiant's personal knowledge, but was in fact signed by an MCM employee who had no personal knowledge of the debt. The Court denied Brent's motion for summary judgment as to her claim that Midland and MCM violated the FDCPA and OCSPA by attempting to collect interest at a higher rate than allowed by law, finding that genuine issues of material fact existed as to whether Midland and MCM were entitled to collect at an interest rate of 17.4%.

The Court denied Brent leave to further amend her Amended Counterclaim Complaint in a memorandum opinion and order issued on February 22, 2010.

Brent now seeks to certify two classes, based on the two theories of liability mentioned above. Brent's first proposed class ("Class 1") consists of persons sued by Midland or MCM in an Ohio court where Midland or MCM utilized a form affidavit that was materially false in that it

2

purported to be based on the affiant's personal knowledge of the debt.  Brent's second proposed

class ("Class 2") consists of persons who received a letter in Ohio attempting to collect interest at

a higher rate than that allowed by law, when no interest rate was provided by the seller.

Midland and MCM seek partial summary judgment, claiming that Brent cannot, as a matter

of law, recover actual damages for the violations of the FDCPA and OCSPA previously found by

the Court.

## II. Discussion

### A. Class Certification

The class action is an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.  It is a procedure whereby a court exercises

jurisdiction over the individual claims of each member of a class in a single proceeding.  *Califano*

*v. Yamasaki*, 442 U.S. 682, 701 (1979).

Federal Rule of Civil Procedure 23(a) sets forth four prerequisites to a class action:

(1)  the class must be so numerous that joinder of all members is impracticable;
(2)  there must be questions of law or fact common to the class;
(3) the claims or defenses of the representative parties must be typical of the claims
or defenses of the class; and
(4) the representative parties must fairly and adequately protect the interests of the
class.

Also, class certification implicitly requires both that there be an identifiable class, and that the

named representative falls within the proposed class.  *In re A.H. Robins Co., Inc*., 880 F.2d 709,

728 (4th Cir. 1989).  Once the prerequisites are satisfied, an action may be maintained as a class

action if "the court finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The district court must conduct a rigorous analysis of whether the prerequisites of Rule 23 are met before it may certify a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982); *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996). The plaintiff's mere repetition of the language of Rule 23 in the pleadings is not sufficient to certify a class. The Court begins by searching the language of the pleadings for an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled, then probes behind the pleadings, if necessary, to determine if the class action is maintainable. *American Med. Sys.*, 75 F.3d at 1079 (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)). Accordingly, the Court examines the record in this case to determine if the Rule 23 factors have been met as to each class.

**1. Class 1 (The Affidavit Class)**

Brent defines her proposed Class 1 as follows:

"(a) all natural persons (b) sued in the name of Midland or MCM (c) in an Ohio court (d) where a form affidavit, such as Form 400, was filed with a court in which affidavit an MCM employee falsely swore that the statements contained in the affidavit were based upon personal knowledge, and (e) the suit was filed on or after June 16, 2007, the date one year prior to the commencement of this action."

Midland and MCM raise several objections to certification of Class 1. They claim that Class 1 is not ascertainable, in that identification of the class will require a "mini-hearing on the merits" with respect to each proposed member. They argue that Brent has failed to show that her proposed Class 1 is sufficiently numerous. They contend further that the claims of the putative Class 1 members lack commonality, and that Brent's claims are not typical of the class's, in that

4

the question of the form affidavit's materiality depends on the factual circumstances surrounding each debt collection action.  For similar reasons, Midland and MCM contend that common questions of law and fact do not predominate over questions affecting only individual members of the proposed class, and that a class action would not be a superior means of resolving the claims of the class.  For the reasons that follow, these arguments are not well-taken.

As to the ascertainability of proposed Class 1, Midland and MCM contend that determining membership in the proposed affidavit class would require a "mini-hearing on the merits" with respect to each putative class member.  This is so, they argue, because identifying a class member would be "impossible . . . without first inquiring into whether the affidavit at issue contained a false statement that it was based on personal knowledge."  (Doc. 84 at 7-8).

However, based on the underlying facts found in this Court's previous summary judgment opinion, as well as the factual record adduced in connection with the instant motion, it appears that the misleading and unlawful aspects of the form affidavits here at issue were a result of the process by which the affidavits were produced.  The evidence indicates that the job of the Midland and MCM claims "specialists" during the relevant time period was simply to sign stacks of form affidavits (such as Form 400) without personally reviewing the information contained therein.  As stated in deposition testimony by a representative of Midland and MCM, "[t]he specialist's job is simply to sign the affidavits and to get them notarized" without personally verifying the account information.  (Doc. 76, Exh. 1 at 62).  The Court has already found that the use of affidavits produced in this manner in debt collection actions violates the FDCPA and the OCSPA.

The liability issues in this case, therefore, center on the standard business practices and operating procedures of Midland and MCM with regard to the production of the form affidavits,

not the individual circumstances of each debtor.  As such, these issues are "subject to generalized proof, and thus applicable to the class as a whole."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (Sotomayor, J.) (quoting  *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir.2000)).  Membership in Class 1 could be determined by reviewing the court file in a debt collection action to see if a Form 400, or a substantially similar affidavit, was filed during the relevant time period.  See *Lau v. Arrow Financial Services, LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007) (the task of making an inquiry into each potential class member's records may be administratively burdensome, but it is not "so daunting as to make the class definition insufficient.").

The evidentiary material proffered by Brent in this case leaves little doubt that Class 1 is sufficiently numerous to qualify for class certification. "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Curry v. SBC Communications, Inc.*, 250 F.R.D. 301, 310 (E.D. Mich. 2008).  With regard to numerosity, the plaintiff "must present more than speculation, but plaintiffs do not have to establish class size with precision." *Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 570 (N.D. Ohio 2003) (internal quotation marks omitted).

 As noted in the Court's previous summary judgment opinion, Midland employees signed hundreds of deceptive form affidavits per day.  Midland has printed over 70,527 such affidavits for Ohio consumer accounts from June 16, 2007 to the present, and approximately 40,197 lawsuits were filed in Ohio state courts by collection firms that represented a Midland entity from June 16, 2007 to October 1, 2009.  A survey sampling of debt collection cases filed in the Sandusky, Ohio Municipal Court alone found approximately 45 Midland collection actions where a Form 400

6

affidavit (the form affidavit employed in Brent's case) was used between June 16, 2007 and May 19, 2008. (Doc. 76, Exh. 4). It is reasonable to assume that the number of cases where Midland and/or MCM used a form affidavit throughout the entire state of Ohio during the same period is significantly higher. Clearly, joinder of such a large class would be impracticable.

Midland and MCM object that Brent's proposed Class 1 fails on commonality and typicality grounds. This is so, they argue, because the issue of whether the affidavit was material in a given debt collection action depends on the precise role that the affidavit played in each individual case, requiring inquiry into such issues as, for example, whether the trial court or the debtor actually relied upon the affidavit.

It is true that, as stated in the Court's previous summary judgment opinion, "[g]enerally, material facts are ones which, if known, might influence a person's decision on a matter." (Doc. 50 at 13). But the test for materiality under the FDCPA is not whether a given individual was in fact influenced by the false representation, but an "objective" inquiry into "whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). In other words, the FDCPA "creates a strict-liability rule," *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (Easterbrook, J.), and a debt collector may not escape liability simply because certain wary debtors (or judges) were not actually fooled by the false statements at issue, or chose to ignore them. The issue of materiality is thus similar for all class members, as the affiant's sworn statements to the effect that he has personal knowledge of the debt "would effectively serve to validate the debt to the reader" and are thus material under the FDCPA. (Doc. 50 at 15).[1] Midland

---
[1]

Midland and MCM also contend that the claims of at least some putative class members fall

and MCM point to no other relevant distinctions between Brent's claim and those of the proposed

affidavit class.  The Court thus finds that the commonality and typicality prongs of Fed. R. Civ. P.

23(a) are satisfied as to Class 1.

Further, the Court is convinced that Brent and her counsel will fairly and adequately

protect the interest of the class, as required by Fed. R. Civ. P. 23(a)(4).  Brent's counsel is

experienced in class actions and has a reputation for competency and skill in handling such cases.

Moreover, Midland and MCM point to nothing indicating that Brent's interests would be

antagonistic to those of the other class members.

The Court also finds that the Rule 23(b)(3) factors (whether common questions

predominate over questions particular to each class member and whether a class action is a

superior means of adjudicating the controversy) are satisfied as to Class 1.  "The Rule 23(b)(3)

predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 565 (6th Cir. 2007).

"To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the

issues in the class action that are subject to generalized proof, and thus applicable to the class as a

whole . . . predominate over those issues that are subject only to individual proof."  *Id*. (internal

quotation marks omitted).  The predominance inquiry also requires the Court "to consider how a

---

within the scope of arbitration agreements.  But "Sixth Circuit precedent provides that class
certification should not be denied merely because some class members may be subject to the
defense that their claims are barred by valid documents releasing the defendant from liability."
*Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 90-91 (M.D. Tenn. 2004) (citing
*Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir.1997)).  Any arbitration-related
defenses that Midland and MCM have to claims of certain class members may be dealt with
pursuant to Fed. R. Civ. P. 23 at a later stage in the litigation, through the creation of subclasses,
or by eliminating some members of the class.

trial on the merits would be conducted if the class were certified." *Rodney v. Northwest Airlines, Inc.*, 146 Fed. Appx. 783, 786 (6th Cir. 2005).

In this case, the Court finds that common issues as to Midland and MCM's liability predominate over any individual claims with respect to Class 1. As stated above, the unlawful aspects of the form affidavits here at issue were a result of the process by which they were produced pursuant to Midland and MCM's general business practices. Liability questions are thus amenable to class-wide proof. Moreover, the question of whether the affidavits were material for FDCPA purposes is substantially the same for each class member and does not depend on whether, for example, the debtor contested the alleged debt in court.

In determining whether a class action is superior to other methods of resolving the controversy, the Court may look to: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy ; (3) the desirability of concentrating the litigation of the claims in this forum; (4) the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. P. 23(b)(3).

Midland and MCM argue that certification of Class 1 would create severe manageability problems, forcing the Court to conduct mini-trials with respect to each member of the potentially thousands-large class. For the reasons noted above, however, the Court is convinced that certification of Class 1 would not require mini-trials or individual inquiries that would create unreasonable costs. Again, it appears that determining membership in Class 1 would require little more than reviewing the court file in a debt collection action to see if a Form 400, or a substantially similar affidavit, was filed during the relevant time period.

9

Furthermore, Rule 23(b)(3) "was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigation in individual actions to combine their resources and bring an action to vindicate their collective rights."  7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (3d ed. 2005).  The claims of the putative Class 1 members appear especially amenable to resolution by means of a class action under this logic, given that the damages claims of the individual class members are relatively small.

For the foregoing reasons, the Court will grant Brent's motion for class certification as to Class 1.

**2. Class 2 (The Interest Class)**

Brent's proposed Class 2 consists of:

"(a) all natural persons, (b) to whom Midland or MCM sent a letter in Ohio attempting to collect interest at the rate of 10% when no interest rate was provided by the seller, (c) on or after June 16, 2007, the date one year prior to the commencement of this action."

Midland and MCM do not dispute that Class 2 is sufficiently numerous for purposes of Rule 23(a).  They contend, however, that Brent cannot satisfy Rule 23(a)'s commonality and typicality prongs.  The Court agrees.

The theory of liability underlying Brent's definition of Class 2 is that Midland and MCM attempted to collect on a debt at a rate of interest, 10%, that was higher than the statutorily-permitted rate of 8% where the seller of the debt provided no interest rate to Midland or MCM, thus violating the FDCPA.  In its previous summary judgment opinion, the Court found that, with respect to Brent's claim, "[a] genuine issue of material fact exists as to whether Midland and MCM were entitled to collect at 17.4%, and therefore not in violation of the FDCPA when they

10

tried to collect at 10%," because the seller of the debt was contractually permitted to collect at 17.4% interest (Doc. 50 at 24).

If Brent's own claim is typical of those of putative Class 2 members, then commonality would be lacking as to the claims of the class: each plaintiff's claim would depend on individual questions relating to their own agreement with the seller of the debt. While Brent claims that it is "more likely than not that Midland has no additional documentation establishing a higher contractual interest rate" for the remaining class members, there is insufficient evidence in the record to justify this speculation. But even if Brent is correct, and Midland does not have additional documentation as to the other putative class members, then another problem would arise: Brent's own claim would be not be typical of those of the class. In that event, class certification would be inappropriate under Rule 23(a)(3), as vindication of the otherwise meritorious claims of the class might be thwarted by peculiarities relating to Brent's own claim.

Brent's motion to certify Class 2 will therefore be denied.

**B. Motion for Partial Summary Judgment**

Midland and MCM move for summary judgment as to Brent's claims for actual damages resulting from violations of the FDCPA and the OCSPA.

Pursuant to Fed. Rule Civ. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case

11

contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Midland and MCM urge that this Court dismiss Brent's claims for actual damages because she has adduced no evidence that the emotional distress she claims to have suffered resulted from the claimed FDCPA violations, as opposed to the general stress that accompanies any debt collection lawsuit. This argument is well-taken.

"Generally, the FDCPA permits recovery of actual damages for emotional distress." *Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008). But "an FDCPA actual damages rule must only award emotional damages for actual, serious emotional distress traceable to proscribed debt collection practices." *Id.* That is because "debt collection . . . is an inherently stressful experience for the consumer," and the FDCPA was intended to deter only abusive and unlawful debt collection practices. *Id.*

In this case, Brent alleges that the "receipt of the Summons and Complaint" in this case made her "extremely distraught," citing specifically "[t]he amount of the alleged debt" and "[t]he shock of the allegations." She offers no testimony or evidence, however, tying her emotional distress to the claimed unlawful conduct of Midland or MCM: the false attestation that the affidavit attached to the Complaint was based on personal knowledge. Instead, the emotional distress Brent claims to have suffered appears to have been due to nothing more than the "embarrassment and inconvenience which are the natural consequences of debt collection," *Higgins v. Capitol Credit Services, Inc.*, 762 F.Supp. 1128, 1135 (D. Del. 1991): the discovery that she was being sued on a debt she did not know about and was unable to pay, and not the

12

representation that the affidavit attached to the Complaint was based on the affiant's personal knowledge.

Therefore, Midland and MCM's motion for partial summary judgment is granted, and Brent's claim for actual damages is dismissed.

**III. Conclusion**

For the foregoing reasons, Brent's motion for class certification (Doc. 76) is granted in part and denied in part, as follows: the Court grants certification of Class 1, but denies certification of Class 2.

Midland and MCM's motion for partial summary judgment as to Brent's claim for actual damages (Doc. 88) is granted.

  *S/ David A. Katz*  
DAVID A. KATZ  
U. S. DISTRICT JUDGE

13