IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Midland Funding, LLC, | CASE NO.: 3:08-cv-01434 |
| Plaintiff/Counterclaim Defendant | HON. DAVID A. KATZ |
| vs. | |
| | **And Related Cases:** |
| Andrea Brent, | Case No. 3:11-cv-0096, N.D. Ohio |
| Defendant/Counterclaim Plaintiff | Case No. 3:10-cv-0091, N.D. Ohio |
| vs. | **JOINT MOTION FOR AN ORDER ENJOINING (1) PARALLEL LITIGATION OF CLAIMS TO BE RELEASED BY PROPOSED SETTLEMENT AND (2) ANY ATTEMPTED MASS OPT OUT** |
| Midland Credit Management, Inc., | |
| Counterclaim Defendant. | |

Andrea Brent, Hope Franklin, Thomas Hyder, Martha Vassalle, Jerome Johnson, on the one hand ("Plaintiffs"), and Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc., on the other hand ("Settling Defendants") (collectively "the Parties"), by their respective counsel, jointly move for an order enjoining Class Members and all persons with actual notice of the order from participating as class members in any lawsuit in any forum or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum arising out of or relating to the Settling Defendants' use of affidavits that allegedly contain false attestations of personal knowledge by affiants ("allegedly false affidavits"), unless and until such time as the Class Member involved in such action timely and validly excludes himself or herself from the Class to pursue individual relief. The parties further request that the order enjoin any attempt to pursue a mass opt-out from the proposed nationwide Class. The requested injunction is authorized under 28 U.S.C. § 1651(a) (the "All Writs Act") and 28 U.S.C. § 2283 (the "Anti-Injunction Act").

1

I.  **INTRODUCTION AND BACKGROUND**

Concurrent with the filing of this Motion, the Parties filed a joint motion seeking an order certifying this case as a nationwide class action solely for the purpose of settlement, preliminarily approving the Settlement Agreement, and approving the manner and form of providing notice to the Class Members.[1] While this Court considers whether to preliminarily approve the settlement, and until there is a final determination of whether the contemplated settlement is fair, reasonable and adequate, Class Members and all persons with actual knowledge of the order should be enjoined from continuing to litigate in any forum claims based on the use of allegedly false affidavits which are to be released by the pending settlement, and commencing any lawsuits based on such claims, unless and until such time as the Class Member bringing such lawsuit timely and validly excludes himself or herself from the Class.

Injunctions of parallel litigation are routinely granted when there is a proposed settlement in a large, complex class action such as this one. An injunction is necessary here pending final approval of the settlement because there are at least five copycat "false affidavit" putative class actions currently pending in federal and state courts nationwide. All of these other cases were filed only within the last eight months and clearly piggyback on the *Brent* action. Indeed, many specifically cite to this Court's August 2009 order in *Brent* granting Brent's motion for summary judgment as support for their alleged claims. The federal cases that the Settling Defendants are currently aware of are *Lauber v. Encore Capitol Group, Inc. et al.* ("*Lauber*"),[2] *Thompson v.*

---

[1] The Parties refer the Court to the Joint Motion for Preliminary Approval of Joint Settlement for a fuller description of the terms of the settlement and the history of the cases and settlement. All capitalized terms not defined herein have the same definition as those in the Joint Motion for Preliminary Approval of Joint Settlement.

[2] *Lauber v. Encore Capital Group Inc., Midland Funding, LLC et al.*, Case No. CV-10-5132-LRS was filed on November 10, 2010 in the United States District Court for the Eastern District of Washington. Since then it was consolidated with *Gray v. Suttell & Associates, Midland Funding, LLC et al.*, Case No. 09-CV-251-EFS, pending in the same court.

*Midland Funding, LLC* ("*Thompson*")[3] and *Rubio v. Midland Credit Management, Inc. et al.* ("*Rubio*").[4] The state cases that the Settling Defendants are currently aware of are *Franklin v. Midland Funding, LLC et al.* ("*Franklin*"), *Midland Funding, LLC v. Vallow* ("*Vallow*")[5] and *Reiman v. Brachfeld et al.* ("*Reiman*").[6]

Since the proposed settlement was publicly disclosed in Encore Capital Group Inc.'s 2010 Form 10-K two weeks ago, counsel in the *Lauber* action has accelerated the plaintiff's activity in that case, filing no less than three motions to correct defects in its pleading, add named plaintiffs and for class certification. For example, the motion for class certification was hurriedly filed before any discovery regarding class certification has even occurred and was not supported by a memorandum of points and authorities. At a February 16, 2011 status conference in *Lauber*, plaintiffs' counsel admitted that he was attempting to accelerate the case because of the pending settlement in *Brent*. Although the court in *Lauber* was informed of the pending settlement in *Brent*, including the fact that a Memorandum of Understanding had been executed, it currently appears that the court is inclined to allow the motion for class certification to be heard on March 22, 2011 as noticed by Lauber's counsel.

Activity has increased in the *Rubio* matter as well since the *Brent* settlement was announced. *Rubio* is pending in the Eastern District of Virginia, which is widely known for its

---

[3] *Thompson v. Midland Funding, LLC.*, Case No. 1:10CV312-001-A-D was filed on November 30, 2010 in the United States District Court for the Northern District of Mississippi, Eastern Division.

[4] *Rubio v. Midland Credit Management, Inc.* et al., Case No. 3:10CV464 was filed on July 7, 2010 in the United States District Court for the Eastern District of Virginia, Richmond Division.

[5] *Midland Funding, LLC v. Traci Vallow*, Case No. 10-SC-885 is pending in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois. Vallow's counterclaim against Midland, which introduced claims based on allegedly false affidavits, was filed on August 25, 2010.

[6] *Reiman v. Brachfeld et al.*, Case No. 10-529702 was filed on August 5, 2010 in the Superior Court of the State of California, County of Alameda.

"Rocket Docket." Although class certification has not yet been briefed, the *Rubio* case is currently calendared for trial beginning May 19, 2011. *Rubio* had been stayed to enable the parties to engage in mediation, however, that stay expired on March 3. Rubio's counsel has aggressively opposed an extension of the stay. And, Rubio's counsel informed counsel for the Settling Defendants that they have sent out 8,500 letters soliciting clients to file more copycat cases, they intend to file 1,200 lawsuits against Midland, and they will be encouraging their clients to opt out of the *Brent* settlement.

Without entry of the requested injunction of the copycat litigation, these parallel actions threaten to derail the settlement by, among other things, (1) impairing the flexibility of this Court to manage the nationwide settlement resolving potential claims of over 1.4 million individuals, (2) distracting defense counsel from the completion of tasks necessary to complete the settlement (*e.g.*, notice to the Class, responding to potential objections and opt outs, establishing the fairness of the proposed settlement) by forcing them to manage, conduct and respond to discovery and motion practice in these other pending cases, (3) risking that class members may receive class notices in two or more dueling class actions causing confusion and havoc as to their membership in the various classes, and (4) risking the entry of competing or conflicting orders.

## II. ALL RELATED LITIGATION SHOULD BE ENJOINED

This Court has the authority to issue the requested injunction under the All Writs Act, which broadly empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). As explained in more detail below, injunctions "in aid of jurisdiction" are commonly used where parallel federal and state actions threaten to undermine a settlement or potential settlement of a class action or multi-district litigation. *See, e.g., In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002) ("In complex cases where certification or settlement has received conditional approval, or

perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court."); *In re Prudential Ins. Co. of Am. Sales Practice Litig. (Single Premium Deferred Annuities Ins. Litig.)*, 261 F.3d 355, 367-68 (3d Cir. 2001) (upholding enforcement of injunction of related litigation); *In re Baldwin-United*, 770 F.2d 328, 335, 337 (2d Cir. 1985) (affirming injunction against all people with knowledge of district court's order from bringing actions against 18 defendants who had already settled as well as 8 defendants who were in the midst of settlement negotiations that would affect the rights of class members; "the potential for an onslaught of state actions posed more than a risk of inconvenience or duplicative litigation; rather, such a development threatened to 'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation").[7]

And while the expanse of the All Writs Act is circumscribed to some degree by the Anti-Injunction Act (which prohibits injunctions of existing state court actions unless an exception applies), that Act is not a barrier to the injunction requested here.[8] The Anti-Injunction Act expressly authorizes a federal court to issue injunctions "where necessary in aid of its jurisdiction." Notably, this language parallels the necessary "in aid of jurisdiction" in the All

---

[7] The Sixth Circuit has expressly cited *In re Baldwin-United* with approval and concluded that an injunction restraining state court proceedings is appropriate when necessary to protect a settlement in a federal action. *See In re DeLorean Motor Co.*, 876 F.2d 894 (6th Cir. 1989) (table decision), full text available at 1989 WL 63256.

[8] By its terms, the Anti-Injunction Act does not apply to the *Lauber* and *Thompson* cases, which are pending in federal court as the statute only applies to state court cases. 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."); *see also Kaufman*, 264 F.R.D. at 449 at n.8 (noting stays of federal actions "are not prohibited by the Anti-Injunction Statute"). Further, the Anti-Injunction Act only applies to existing state proceedings and does not prevent injunctions against the filing of future state court actions. *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965).

Writs Act and is construed similarly. *See, e.g., In re Baldwin-United*, 770 F.2d at 335; *In re Inter-Op Hip Prothesis Liab. Litig.*, 174 F. Supp. 2d 648, 653 (N.D. Ohio 2001).

Numerous courts citing to this "in aid of its jurisdiction" language have held that injunctions against federal and state court proceedings are proper where a district court is resolving a nationwide class action encompassing a large potential settlement class. *See, e.g., In re Diet Drugs*, 282 F.3d 220; *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003) ("Injunctions of related proceedings in other federal courts are appropriate when necessary for adjudication or settlement of a case."); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3d Cir. 1993); *Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 449 (N.D. Ill. 2009) ("There is ample authority supporting the court's power to stay pending federal and state cases to effectuate class action settlement approval."); *In re Inter-Op*, 174 F. Supp. 2d at 655 ("To allow the state court actions to proceed would 'serve only to frustrate th[is] district court's efforts to craft a settlement.'"). The complexity of class actions and multi-district litigation cases on the verge of completing a settlement require that district courts have the flexibility to bring the cases to judgment, and thus injunctions of parallel litigation such as the one requested here fall within the "in aid of jurisdiction" umbrella of the All Writs Act and are an exception to the Anti-Injunction Act. *See, e.g., In re Diet Drugs*, 282 F.3d at 236, 239.

Here, careful management will be required to keep the enormously complicated settlement process on track. The Settling Defendants estimate that the proposed settlement class includes more than 1.4 million debtors. Guiding the nationwide settlement of a class of this size through to final approval will require a substantial undertaking. The parties must develop an accurate class list; send appropriate notices to class members; review and respond to potential objectors and intervenors; and ultimately demonstrate to the Court at the Final Approval Hearing that the settlement is a fair and reasonable compromise. The time and cost associated with

participating in other competing lawsuits will distract the Parties from carrying out these critical settlement tasks and pose a threat to this Court's ability to manage the final stages of this litigation. *See In re Diet Drugs*, 282 F.3d at 236-37; *In re Baldwin-United*, 770 F.2d at 337. The recent acceleration of activity in *Lauber* and *Rubio* since the proposed settlement was announced has already had a distracting effect, and continued and additional efforts in these and potentially other cases will necessarily draw resources away from the completion of this long-negotiated settlement, risking its derailment.

Not only will there be a resource drain, but if any of the other parallel cases are allowed to proceed and class certification is pursued in another court as in *Lauber*, Class Members could receive two (or more) class action notices. As found by the *In re Inter-Op* court when it issued an injunction like the one requested here, such a situation "'presents a likelihood that the members of the [state] class will be confused as to their membership in the dueling lawsuits,'" and it "'could cause havoc.'" 174 F. Supp. 2d at 656, quoting *Carlough*, 10 F.3d at 204. *See also, In re Mexico Money Transfer Litig.*, No. 98C2407, 1999 WL 1011788, at *4 (N.D. Ill. Oct. 19, 1999) ("At least seven other state or federal cases have been filed against these defendants. All involve the same factual predicates ... Without this preliminary injunction,[] class members could be burdened and confused by potentially receiving several class notifications.")

And, in addition to considering potential interference from parallel litigation on the management of a settlement, courts enjoining related litigation have also considered whether the action before them is at an advanced stage and whether the related cases threaten disruption of what has already occurred. *See Carlough*, 10 F.3d at 204 (noting the "mature phase of the settlement proceedings" and "years of pre-trial negotiation" in connection with issuing injunction of related litigation); *In re Baldwin-United*, 770 F.2d at 337 (noting in connection with its affirmance of injunction that the action had "already consumed vast amounts of judicial time and

was nearing completion"); *Kaufman*, 264 F.R.D. at 450 (finding that the court had the authority to enjoin another action "particularly given that this action was commenced first, and that the Motion [for the injunction] was pending before any class certification ruling in the [other] action"). Here, the *Brent* case is significantly more developed than the five copycat putative class actions on the issue of allegedly false affidavits. Over the past three years this Court has presided over extensive discovery and made numerous substantive rulings regarding claims concerning allegedly false affidavits. By way of example, on August 11, 2009, this Court granted Brent's motion for summary judgment on her claim that Midland violated the FDCPA and OCSPA by attempting to collect debts using allegedly false affidavits. (ECF Dkt. #50). It is this order that the five other recently filed cases piggyback on. This Court has also enjoined Midland from "using form affidavits that falsely claim to be based on the affiant's personal knowledge," which set the stage for the inclusion of an injunctive relief component in the proposed settlement. (ECF Dkt. #56). And on November 4, 2010, the Court entered an order (1) certifying a class in the *Brent* Action of natural persons, sued in the name of Midland or MCM in an Ohio court involving an affidavit submitted by Midland, who also satisfy certain other identified criteria and (2) granting partial summary judgment in favor of Midland on Brent's claim for actual damages. (ECF Dkt. #104). Further laying the groundwork for the pending settlement, this Court also conducted an extended settlement conference in addition to the four mediation sessions the parties conducted with former Federal Judge Richard McQuade. (ECF Dkt. #'s 57-61, 94, 98). The *Brent* action is indisputably the most advanced case on the issue of allegedly false affidavits, and the parties and this Court have expended substantial time and energy negotiating a nationwide settlement. All of these other cases were filed only within the last eight months and evidence opportunistic plaintiffs' lawyers jumping on the bandwagon after this Court's August 2009 summary judgment order.

Further, without a stay, there is a risk that the parallel litigation could produce inconsistent orders and results, which is another factor supporting the injunction of related litigation. *In re Baldwin-United*, 770 F.2d at 337; *In re Joint E. and S. Dist. Asbestos Litig.*, 134 F.R.D. 32 (E.D.N.Y. 1990). As part of the settlement here, the Parties have agreed to a stipulated injunction requiring the institution of procedures reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit. The proposed settlement contemplates the appointment of the Honorable Richard McQuade as Special Master to review these procedures and make findings as to whether they are reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit. Without this Court's issuance of the requested injunction of parallel litigation, the risk exists for competing and conflicting orders to be issued regarding affidavits to be used by the Settling Defendants in the future.

Finally, an injunction issued in this case will not interfere with any Class Members' ability to pursue individual relief in separate actions because members may opt out of this proposed settlement - which rests, in part, on Rule 23(b)(3). *See Carlough*, 10 F.3d at 204 (injunction appropriate because individuals, including those in pending actions, may opt out and are at liberty to pursue litigation of their claims in the forum of their choice). No person who timely and validly opts out will be precluded by the requested injunction from litigating his or her individual claims or continuing to litigate a pending individual claim.

### III. ANY ATTEMPT TO PURSUE A MASS OPT OUT SHOULD BE ENJOINED

No authority permits a putative class plaintiff or counsel to exercise class rights en masse either by trying to effect a group-wide exclusion from an existing class or by attempting to make a class-wide objection. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998). Indeed,

to attempt such an action would violate the due process rights of the individual class members who have the right to individually decide whether to continue in a suit as a class member or to opt out. *Id.* Courts have also found that to allow mass opt outs would impair the court's ability to manage the class settlement. *Id.; Carlough*, 10 F.3d at 204 ("a mass opting out of West Virginia plaintiffs clearly would be disruptive to the district court's ongoing settlement management and would jeopardize the settlement's fruition"). Hence, courts have enjoined attempts to conduct a mass opt-out. *In re Diet Drugs*, 282 F.3d at 238 (affirming district court's order that enjoined the pursuit of an attempted mass opt out). *See also Carlough*, 10 F.3d at 204.

### IV.  THE REQUESTED INJUNCTION SHOULD BE ISSUED PENDING NOTICE TO THE CLASS AND PRELIMINARY APPROVAL OF THE SETTLEMENT

Given the issues that exist in the parallel litigation, including the rush by plaintiff's counsel in *Lauber* to certify a class when that action was only filed last November and class discovery has not even commenced, and the threat of thousands of additional lawsuits being filed by the plaintiffs' attorneys in *Rubio*, it is imperative that the requested injunction be issued immediately and, if necessary, prior to the Court's preliminary approval of the settlement and notice to the class. *Kaufman*, 264 F.R.D. at 450-51 ("settlement approval is not a necessary precondition to staying parallel actions"; court enjoined the pending litigation after denying preliminary approval of settlement and approval of notice to class); *In re Inter-Op*, 174 F. Supp. 2d at 656 (granting motion for an order enjoining related state court litigation where the notices to the class had not yet been issued as the court noted that they would be "issued shortly"). *See also In re Baldwin-United*, 770 F.2d at 337 (affirming injunction against eight defendants who had not even reached settlement but were only in settlement negotiations).

### V.  CONCLUSION

For all of the above stated reasons, the Parties jointly request that the Court issue an order (1) enjoining Class Members and all persons with actual notice of the order from participating as

class members in any lawsuit in any forum or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum arising out of or relating to the Settling Defendants' use of allegedly false affidavits, unless and until such time as the Class Member involved in such action timely and validly excludes himself or herself from the Class to pursue individual relief; and (2) any attempt to pursue a mass opt-out from the proposed nationwide Class.

Date: March 9, 2011                                    Respectfully Submitted:

/s/ Theodore W. Seitz
Theodore W. Seitz
Dykema Gossett PLLC
Counsel for Midland Funding, LLC and
Midland Credit Management, Inc.
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele: (517) 374-9149
tseitz@dykema.com

Date: March 9, 2011                                    Respectfully Submitted:

/s/ Dennis E. Murray, Sr. (w/permission)
Dennis E. Murray, Sr.
Murray and Murray CO. LPA
111 East Shoreline Drive
Sandusky, OH 44871-0019
Tele: (419) 624-3000
dms@murrayandmurray.com

## **PROOF OF SERVICE**

I hereby certify that on March 9, 2011 a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to parties by operation of the court's electronic filing system and any Non-ECF users were served via First Class Mail.

/s/ *Theodore W. Seitz*
Theodore W. Seitz