\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Midland Funding, LLC, | : | Case No. 3:09CV2248 |
| Plaintiff/Counter Defendant, | : | **SPECIAL APPEARANCE OF ANN RUBIO AND GILBERT JAMES TO CONTEST PERSONAL JURISDICTION AND MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION (Doc. No. 110)** |
| vs. | : | |
| Andrea Brent, | : | |
| Defendant/Counterclaimant, | : | |
| | | HON. DAVID A. KATZ |
| vs. | : | |
| Midland Credit Management, Inc., | : | |
| Counterclaim Defendant. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Ann Rubio and Gilbert James, upon making their special appearance, move the Court for relief from the preliminary injunction in this matter dated March 11, 2011 (Doc. No. 110).

A memorandum in support of this motion follows.

Respectfully submitted,

By   /s/ Reginald S. Jackson, Jr.
    Reginald S. Jackson, Jr. (0003558)
    E-Mail: rjackson@cjc-law.com
    Adam S. Nightingale (0079095)
    E-Mail: anightingale@cjc-law.com
    CONNELLY, JACKSON & COLLIER LLP
    405 Madison Avenue, Suite 1600
    Toledo, Ohio 43604
    Telephone:  (419) 243-2100
    Facsimile:   (419) 243-7119

    and

    Leonard A. Bennett, VSB # 37523
    (pending admission *pro hac vice*)
    E-Mail: lenbennett@clalegal.com
    Consumer Litigation Associates, P.C.
    12515 Warwick Boulevard, Suite 100
    Newport News, VA 23606
    (757) 930-3660
    (757) 930-3662 facsimile

    and

    Matthew J. Erausquin, VSB # 65434
    (pending admission *pro hac vice*)
    E-Mail: matt@clalegal.com
    Consumer Litigation Associates, P.C.
    1800 Diagonal Road, Suite 600
    Alexandria, VA 22314
    (703) 273-7770
    (888) 892-3512 facsimile

    *Counsel for Ann Rubio and Gilbert James*

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................................iii

**TABLE OF AUTHORITIES** ............................................................................................. iv

**STATEMENT OF THE ISSUES TO BE DECIDED** ............................................... vi

**SUMMARY OF ARGUMENT PRESENTED** ........................................................ vii

**DISCUSSION** ..................................................................................................................... 1

   INTRODUCTION............................................................................................................ 1

   PROCEDURAL POSTURE AND BACKGROUND ............................................... 1

   ARGUMENT ................................................................................................................... 5

      A.   The Court's Injunction Order does not Restrict Opt-out parties.................................... 5

      B.   A Court in a Rule 23(b)(3) class action may not restrict an opt-out party who chooses to exclude oneself from the Class.  To do otherwise would violate Rule 23 and Due Process. ......................................................................................................... 8

      C.   The Preliminary Injunction Should Be Dissolved Because This Court Lacks Personal Jurisdiction Over All Class Members Outside Ohio Until The Time For Them To Opt Out Has Expired.......................................................................................... 12

      D.   The Cases cited by Brent/Midland do not suggest a different conclusion. ................... 14

      E.   The difficulty that significant opt-out litigation may pose to the settlement is at best evidence that the settlement is unfair and inadequate.................................................. 17

**CONCLUSION** ................................................................................................................ 21

**PROOF OF SERVICE AND CERTIFICATION** ................................................ 23

## **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. CVS Pharm., Inc.*, 290 F.3d 854 (7th Cir. 2002) .................................................. 10

*Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415 (6th Cir. 1999)............ 10

*Belue v. Aegon USA, Inc.*, CA 7:08-3830-GRA, 2009 WL 3757468 (D.S.C. Nov. 6, 2009)......... 9

*Besinga v. United States*, 923 F.2d 133 (9th Cir. 1991) ................................................................ 11

*Bullitt County v. Washer*, 130 U.S. 142 (1889) ............................................................................... 6

*Carlough v. Amchem Products, Inc.*, 10 F.3d 189 (3d Cir. 1993) ................................. 7, 13, 14, 15

*Drelles v. Metro. Life Ins. Co.*, 357 F.3d 344 (3d Cir. 2003) ....................................................... 12

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)............................................................................... 10

*In re Corrugated Container Antitrust Litig.*, 756 F.2d 411 (5th Cir. 1985) ................................. 10

*In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002) ....................................................................... 11, 15

*In re Inter Op Hip Prosthesis Liab. Litig.*, 174 F. Supp. 2d 648 (N.D. Ohio 2001)..................... 17

*In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870 (6th Cir. 2000) ............................................. 10

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945).................................................................... 13

*Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894 (7th Cir. 1999)..................................................... 11

*Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*, 264 F.R.D. 438 (N.D. Ill. 2009).............. 17

*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th  Cir. 1977), *overruled on other grounds*,
  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)..................................................... 11

*Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003)........................................................................ 16

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) ....................................... 11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................. 9

*Sarasota Oil Co. v. Greyhound Leasing & Fin. Corp.*, 483 F.2d 450 (10th Cir. 1973) ............... 11

*Williams v. Brown*, 921 F.2d 277, No. 90-1034, 1990 WL 208669 (6th Cir. Dec.4, 1990) .......... 5

**Statutes and Court Rules**

28 U.S.C. 1651(a) .............................................................................................................. 12

Cal. Civ. Code §1700 .......................................................................................................... 3

**Other Authorities**

3 Alba Conte & Herbert Newberg, Newberg on Class Actions § 9:26 (4th ed. 2002) ................... 9

Charles Alan Wright & Arthur R. Miller, 7B Fed. Prac. & Proc. Civ. § 1798.1 (3d ed.2010)....... 8

Douglas L. Rogers & Elizabeth Grieser, *Protecting the Public from Abusive Debt Buyers*, The Consumer Advoc. July- Dec. 2009 ............................................................................... 3

Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 Ind. L.J. 507 (1987) ...... 16, 19

Fairfax County, Virginia General District Court *Best Practices:  Default Judgments/Debt Buyers* (2009) ...................................................................................................................... 3

*Notes of Rules Advisory Committee to 1966 Amendments to Rule 23*, 39 F.R.D. 69 .................. 16

Purchased Debt Cases – Don't Forget the Luggage, *Hon. Lisa A. Mayne*, Judge Fairfax General District Court, *Hon. Lorraine Nordlund*, Judge, Fairfax General District Court, *Hon. Robert A. Pustilnik*, Judge Richmond General District Court – Civil ........................................................ 4

Sara Hoffman Jurand, *Opting Out of Class Does Not Limit Discovery Rights*, Trial, March 2004 ....................................................................................................................... 12

The National Association of Consumer Advocates, Standards and Guidelines for Litigating and Settling Consumer Class Actions (2d. Ed. 2006), 255 F.R.D. 215.......................................... 21

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Did the Court intend for its Injunction to restrict opt-outs or non-class members with actual knowledge of the Order from pursuing their own claims on an individual, non-class basis?

2.      Does this Court have jurisdiction over a class member or her claims prior to the deadline for requests for exclusion from the class?

3.      Does this Court have jurisdiction over a class member or her claims once the class member has elected to opt-out?

## SUMMARY OF ARGUMENT PRESENTED

1.      Rubio and James have each objectively satisfied the procedure that this Court put in place for opting out of the class action by mailing a request for exclusion to Brent's counsel.

2.      It is improper for a Court to enter an injunction against a putative class member until it acquires jurisdiction over her by virtue of the expiration of the opt-out period and the class member's failure to exclude herself from the class.

3.      The Court currently has no jurisdiction over the putative class members, as the June 1, 2011 deadline for exclusion has not yet arrived.

4.      Even if the Court had jurisdiction over the putative class members prior to expiration of the timeframe within which the class member could opt out, it presently does not have jurisdiction over the Movants or their claims in that they have each validly opted out.

## DISCUSSION

### *INTRODUCTION*

Movants Ann Rubio and Gilbert James are Virginia residents.  They have not generally appeared in this case or in any matter vesting the Court with personal jurisdiction over them.  They do not want to participate in this case.  Pursuant to Rule 23 and basic due process principles, they retain that right.  Each has opted out of the case and are not bound by any part of it.

### *PROCEDURAL POSTURE AND BACKGROUND*

Ann Rubio filed her action as a Virginia class action in the Eastern District of Virginia on July 7, 2010.  She alleged a violation of the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq., against Midland Credit Management, Inc. and Midland Funding, LLC, based upon Midland's falsified affidavits that were used to obtain Virginia General District Court judgments on Midland's second-hand debt. Rubio ultimately paid off her debt to Midland, relying on its representations as to the correct amount owed on the debt.  After a period of open discovery, with trial set on May 19, 2011 and discovery to close on March 25, 2011, Rubio and Midland began an extended period of mediation with a formal stay under the supervision of Hon. M. Hannah Lauck, United States Magistrate Judge, on November 19, 2010.   The parties hired a private mediator –Hon .Curtis Von Kann (J., retired), with JAMS, Washington, D.C. and thereafter exchanged settlement positions limited to a Virginia-only class. Rubio's objective as a putative Virginia-class representative was to obtain the vacation of each of the fraudulently obtained judgments and the payment of damages out of a monetary fund (significantly larger than the claims amount to be made available in *Bren*t) to compensate class members for their actual

damages suffered as a result of entry of these fraudulent judgments against them.[1]  The mediation continued into January 2011 and was close to conclusion.

Gilbert James has not yet filed a legal action, however, the one-year FDCPA statute of limitations will run on April 7, 2011 unless he files a lawsuit.  Mr. James was a the victim of identity theft who never applied for, used or agreed to pay the credit card debt Midland claims it purchased.  In fact, when Mr. James first learned that Midland was attempting to collect the identity-theft account, he provided multiple disputes and sworn statements to Midland, verifying that he was not the obligor on the account.  He relied on the representation of Midland's agent that the matter was resolved until he recently learned that Midland had obtained a default judgment against him.  As with all Virginia Brent class members and opt outs, James has a right under Virginia law to have the fraudulently obtained judgment vacated, but for the text of the injunction entered by the Court that the Defendant argues bars him from doing so, and subjects his counsel to contempt proceedings.   In additional to challenging Midland's use of falsified affidavits, Mr. James also intends to litigate his personal claims against Midland and its related entities for their violation of the FDCPA, for Virginia civil conspiracy and for fraud under both Virginia common law and RICO.[2]

The Court would be incorrect if it concluded that the prosecution of these Virginia claims, or pending claims brought by other out-of-state class members were copycat actions.

---

[1] Rubio's counsel has asked Midland to waive the mediation privilege in order that she could reveal to the Court any gross disparity between the settlement offer obtained by her from Midland and the terms that were accepted by Plaintiff's counsel in Brent.  Midland has refused to allow Rubio to provide this information to the Court.

[2] Opt-out parties' counsel also represents other Virginia consumers in nearly identical circumstances – they have opted out, and while about 20 of them have claims that will expire on

There is no doubt that this Court and Plaintiff's counsel in *Brent* made an important factual

discovery – the name of the specific person at Midland in charge of regularly falsifying its

affidavits.  However, this concept, claim and factual predicate were anything but new.  They had

formed the basis for numerous written and seminar-based instruction to which Brent's counsel

was usually welcomed as an attendee or recipient.  For example, a detailed written article

explained most of the subject issues, defenses and claims to all members of the National

Association of Consumer Advocates. Douglas L. Rogers & Elizabeth Grieser, *Protecting the*

*Public from Abusive Debt Buyers*, The Consumer Advoc. July- Dec. 2009, at 1. (Exhibit "1").

Counsel is uncertain whether the *Brent* parties have so informed the Court, but it should know, of

course, that Midland does not purchase or retain any actual credit card applications, charge slips,

billing statements or other contract documents for the subject debts.  In many states this is *fatal*

to its assertion of indebtedness, particularly where the original creditor has destroyed these.  For

example, Cal. Civ. Code §1700 provides that:

> The intentional destruction, cancellation, or material alteration of a written
> contract, by a party entitled to any benefit under it, or with his consent,
> extinguishes all the executory obligations of the contract in his favor, against
> parties who do not consent to the act.

In Virginia, the issue was a problem for so long that local courts crafted unique

procedures to confront the problem by requiring that a debt buyer must show that it possesses

billing statements, a credit contract or other documentary proof before it can collect most, if not

all, of its asserted account.  Fairfax County, Virginia General District Court *Best Practices:*

*Default Judgments/Debt Buyers* (2009) (Exhibit "2").  The issue is so conclusively established in

Virginia that it was the subject of an instructional panel at the 2008 "Judicial Conference of

_____

or before April 22, 2011, most do not face the same urgency with an approaching limitations

Virginia for District Court Judges," in which three Virginia judges outlined the impediment to debt buyer lawsuits prosecuted without underlying knowledge and documents. (Purchased Debt Cases – Don't Forget the Luggage, *Hon. Lisa A. Mayne*, Judge Fairfax General District Court, *Hon. Lorraine Nordlund*, Judge, Fairfax General District Court, *Hon. Robert A. Pustilnik*, Judge Richmond General District Court – Civil).

Midland has misled the Court with the false assertion that its actions in falsifying the affidavits were harmless because most consumer debtors would still owe the debt.  It remains undetermined whether any class member actually owed any debt prosecuted by Midland.  This remains the real issue of this case; courts cannot ascertain whether consumer debtors actually owe a debt when Midland continues to falsify affidavits that make it impossible for a state court to determine if a debt is legitimate. However, even if a consumer had applied for, used, and failed to pay a debt that was later sold to Midland, in most states – or at least those to be represented before this Court (Virginia, California and Washington) – Midland would be unable to convert that purchase into a civil judgment without the false affidavits.  For Midland, given the nature and terms of its portfolio purchases of credit accounts, there were only two options – use a false affidavit or forego a civil judgment.  There was no alternate possibility of correcting the affidavits to make them both truthful and viable.

As a result, Virginia counsel (as well as the attorneys that will represent California and Washington objectors) have significant litigation experience opposite Midland. Virginia counsel have and do represent no fewer than 400 consumers with claims similar to those of Rubio and James against Midland.  Approximately 12 have settled for a confidential monetary amount. Rubio's counsel has asked Midland to waive the confidential settlement amounts to facilitate a

date.

comparison with the very minimal claim amount available to *Brent* class members. Midland has refused to allow the Court to know these amounts. Regardless, the public records as to Virginia counsel's clients demonstrating that Midland has vacated judgments in numerous Virginia cases after entry of judgment are available to the Court.

A more recent action against Midland was tried before a jury in the Northern District of Alabama by Virginia counsel during the last week of February. The facts in that case are as follows: In 2009, Midland had furnished Jamon Brim the same fraudulent affidavit as in Brent when it sued him for a debt that he did not owe. He had, without dispute, paid off the debt in full to the original creditor, Dell Financial Services, a very short time after obtaining financing for the purchase of a personal computer. The collection lawsuit it pursued was dismissed, but Midland continued its inaccurate credit reporting claiming that Brim owed the debt. The jury awarded $100,000 actual damages (for emotional distress and credit damage) and $623,000 punitive damages under the Fair Credit Reporting Act, one of the companion statutes to the FDCPA. *Rubio/Brim* counsel have nearly complete knowledge about the manner in which Midland operates, the records it maintains and the complete impossibility of Midland ever obtaining a Virginia judgment in any collection action without its false affidavits, and now only seek to represent their individual clients zealously on a non-class basis following their proper opt-out from the Brent settlement.

### ARGUMENT

**A.     The Court's Injunction Order does not Restrict Opt-out parties.**

It is axiomatic that a Court speaks only through its orders. *Williams v. Brown*, 921 F.2d 277, No. 90-1034, 1990 WL 208669, at *1 (6th Cir. Dec.4, 1990) ("Since a court speaks through its orders and judgments, the language in the judgment is controlling"); *Bullitt County v. Washer*,

130 U.S. 142, 149 (1889)(holding "the well-settled maxim that a court of record can act only through its orders made of record, when applied to judicial proceedings, means that where the court must itself act, and act directly, that action must always be evidenced by the record."). In the case *sub judice*, there are two orders relevant to Rubio and James: the Preliminary Approval Order (Docket No. 111) and the Order Granting Preliminary Injunction Against Parallel Litigation (Docket No. 110), both drafted by the *Brent* parties, but entered by the Court on March 11, 2011. Despite the arguments raised in the discussion among counsel and before the Court by telephone on March 23, 2011, nothing in either of the Court's Orders would impair either the immediate opting out or the extent and completeness of such exclusion from the Brent class.

The Brent Injunction Order in relevant part would impose two restrictions:

[1.] As of the date of entry of this order, all Class Members and all persons with actual notice of this Order are hereby enjoined from participating as class members in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum arising out of or relating to the use of affidavits in debt collection lawsuits by Encore Capital Group, Inc., and/or its subsidiaries and affiliates, including but not limited to Midland Credit Management, Inc., Midland Funding LLC, MRC Receivables Corp., and Midland Funding NCC-2 Corp, unless and until such time as the Class member involved in such action timely and validly excludes himself or herself from the class to pursue individual relief.

[2] Counsel in any lawsuit in any jurisdiction arising out of or relating to the use of affidavits in debt collection lawsuits by Encore Capital Group, Inc., and/or its subsidiaries and affiliates, including but not limited to Midland Credit Management, Inc., Midland Funding LLC, MRC Receivables Corp., and Midland Funding NCC-2 Corp, and all those acting in concert with them, are hereby enjoined from taking any action to effect or secure any purported classwide opt-out from the settlement in the above-captioned action.

Order Granting Prelim. Inj. Against Parallel Litigation 2-3, (Docket No. 110). The first paragraph prohibits "participating as class members in any lawsuit" or "otherwise filing, intervening in,

commencing, prosecuting, continuing and/or litigating any lawsuit" having anything to do with the Midland affidavit issue.  However, this is explicitly (and from a due process perspective necessarily) qualified to restrict such actions "unless and until such time as the Class member involved in such action timely and validly excludes himself or herself from the class to pursue individual relief." *Id.*  The second paragraph would not pertain to either Rubio or James as they have individually opted out as opposed to attempting a class-wide opt out.[3]

Thus, the only actual restriction on either Rubio or James is that they must first formally opt out before they can pursue their own claims and lawsuits.  The injunction does not later bar them or other person opting out from pursuing their own FDCPA affidavit-related claims, if they believe that they will be better represented and served through individual litigation.  The concern expressed by the Court by telephone conference – that opt outs are not free to pursue their own claims if those claims regard the Midland false affidavits – is not reflected or imposed in the Injunction or any other court document in *Brent*.

The foregoing argument was not the basis Midland suggested to Magistrate Judge Lauck or to Rubio's counsel in asking the Eastern District of Virginia for a further stay of the Virginia case.  Instead, Midland's counsel argued – without any support or explanation – that Rubio's opt out could not be yet valid because Midland had not yet mailed her a *Brent* settlement notice. This argument – the only one raised by Midland– does not make sense.  The preliminary approval order creates and defines the opt-out process.  In that regard, it simply states:

Class members shall have until June 1, 2011 to submit a claim form, a request for

---

[3] A class-wide opt out is when, in a competing case, a party asks their forum court to allow the party to opt out an entire class of persons. *See e.g. Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 204 (3d Cir. 1993) (Enjoining an attempt to opt out by class action all class members in another state).

exclusion or an objection to the proposed settlement.  Any class member who desires to exclude him or herself from the action must mail a request for exclusion to counsel for plaintiff by that date.  Class Counsel shall forward all opt out requests to Counsel for defendants.

Preliminary Approval Order, at 3 (Docket No. 111).  There is no "start" date specified in the Order, other than the date the Order was entered by the Court.  There is no requirement that a class member wait until he or she receives an opt-out form from Brent's counsel to opt out of the *Brent* case. In fact, Defendant's own conduct belies its assertion.  Because the injunction would only apply to Rubio to the extent she had "actual notice" of the injunction, Midland's Virginia counsel formally notified Ms. Rubio of the settlement and its related orders.  It would be not only procedurally improper and illogical, but also unjust to impose an injunction on a non-party by such an early and individualized notice, but then trap that consumer with an injunction until she received the notice in her mailbox.  Plaintiff has objectively satisfied this Court's instructions for opt-ing out of the certified Brent class.

**B.      A Court in a Rule 23(b)(3) class action may not restrict an opt-out party who chooses to exclude oneself from the Class.  To do otherwise would violate Rule 23 and Due Process.**

It is a basic tenet of class action jurisprudence that a person who opts out of a Rule 23(b)(3) class action cannot be bound by the orders, injunctions or judgment in the class action case. "[C]lass members who previously have opted out of a class settlement to pursue individual litigation cannot be enjoined under [the All Writs Act] exception even if they would be relitigating many of the same matters." Charles Alan Wright & Arthur R. Miller, 7B Fed. Prac. & Proc. Civ. § 1798.1 (3d ed.2010).  "With reference to proposed class suits under Rule 23(b)(3), it would be improper to enjoin actions by other absent class members, because class members have a right to exclude themselves from the class under Rule 23(c)(2) following receipt of notice." 3 Alba Conte & Herbert

Newberg, Newberg on Class Actions § 9:26 (4th ed. 2002).  "By definition, class members who have properly excluded themselves from a Rule 23(b)(3) class are not bound by the class judgment."  *Id.*

In 1985, the United States Supreme Court confirmed that the Constitution requires exactly what Rule 23 provides:  that absent class members must have the right to opt out with respect to their tort claims for substantial, individualized money damages.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).  The Court held, "[W]e hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court."  *Id.* at 812.[4]  If a class member opts out, "<u>he is removed from the litigation entirely</u>."  *Id*. at 810-811 (emphasis added).   As one court described the import of *Shutts*: "Those who opt out of a class settlement are not bound by the settlement court's actions."  *Belue v. Aegon USA, Inc.*, CA 7:08-3830-GRA, 2009 WL 3757468 (D.S.C. Nov. 6, 2009) (citations omitted).

This is also the clearly established law in the Sixth Circuit.  An opt-out may freely litigate their individual case regardless of its otherwise identical facts and legal theories to those pursued on behalf of a class from which the class member has removed herself.  The Court of Appeals explained as early as 1999:

> When a class is certified, Rule 23 implicitly discourages members from filing separate claims, by allowing those dissatisfied with the representation of the named plaintiffs to opt out before a specified date. <u>In other words, despite the identity of interests, facts, and legal theories that make a class possible in the first place, a plaintiff has the right to pursue his or her separate action.</u> This right remains intact even after a plaintiff initially acquiesces in representation by others. As long as

---

[4] Although *Shutts* arose in the state court system, and thus involved the due process clause of the Fourteenth Amendment to the U.S. Constitution, the Third Circuit has held that the standard of *Shutts* also applies to the due process guarantee of the Fifth Amendment, which applies to this Court.  *See In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 766 n.6 (3d Cir.), *cert. denied*, 493 U.S. 821 (1989).

> effected before the cutoff date promulgated by the court, <u>opt out is available to class members even though they may have benefitted from the economies of scale inherent in the representation up to that point by class counsel. As a result, it would defeat the clear purposes of Rule 23 to bar a group of plaintiffs, who were putative members of a class but either opted out or retained their right to opt out, from litigating separately.</u>

*Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 426 (6th Cir. 1999) (emphasis added). *See also Fidel v. Farley*, 534 F.3d 508, 512 (6th Cir. 2008) (noting that the plaintiff in the case "had the opportunity to opt out of the settlement and avoid its binding effect"); *In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 881 (6th Cir. 2000) ("The Supreme Court has repeatedly emphasized the importance of allowing affected persons to opt out of representative suits. … Rule 23(b)(3), with its notice and opt-out provisions, strikes a balance between the value of aggregating similar claims and the right of an individual to have his or her day in court.").

The law outside of the Sixth Circuit is similarly uniform. In a monetary damages class action brought pursuant to Rule 23(b)(3), the timely opt-out party is free of any restrictions on their prosecution of an individual case. This is because the only alternate constitutional basis for personal jurisdiction is Rule 23's implicit theory that by not opting out, the class member has consented to jurisdiction. The Fifth Circuit explained:

> A class action judgment cannot be used to collaterally estop an opt-out plaintiffs' action against a defendant in a separate action. An opt-out plaintiff is not a party to the class action and is not bound by the class action judgment. The doctrine of collateral estoppel cannot bind a person who was neither a party nor privy to a prior suit. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

*In re Corrugated Container Antitrust Litig.*, 756 F.2d 411, 418-19 (5th Cir. 1985). *See also e.g. Abbott Labs. v. CVS Pharm., Inc.*, 290 F.3d 854 (7th Cir. 2002) (District court's reservation of jurisdiction to enforce settlement of antitrust class action entitled it to adjudicate dispute between

defendant and party which was in class at time of settlement, but it did not create jurisdiction of claims against a party which had opted out.); *In re Diet Drugs*, 282 F.3d 220, 230 (3d Cir. 2002) (no personal jurisdiction over opt-out consumers); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 896 (7th Cir. 1999) ("[E]ach member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf."); *Sarasota Oil Co. v. Greyhound Leasing & Fin. Corp.*, 483 F.2d 450, 452 (10th Cir. 1973) ("One of the primary purposes of the [opt-out] notice requirement is to afford an opportunity for [Rule 23](b)(3) class members to avoid being bound by a class action judgment and to permit them to litigate their own claims . . . ."); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (stating that Rule 23(c)(2) guarantees members of the class "the opportunity to be excluded from the class action and not be bound by any subsequent judgment"); *Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) ("'Under Rule 23(c)(2), notice must be ordered so that class members have the opportunity to opt out and avoid being bound by the disposition of the case.'" (*quoting Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 863 (9th  Cir. 1977), *overruled on other grounds*, *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)).

A court is even without jurisdiction sufficient to limit discovery, procedure or the use of evidence from the class case in the opt-out individual cases.  In the March 23, 2011 telephone conference, this Court suggested a conclusion that the "affidavit" claims had been resolved in full in Brent.  Respectfully, this is analysis is without support. These "claims" are not bound to a Defendant or to a specific court case.  Instead, they belong to the individual plaintiffs.  If these Plaintiffs do not opt out, the class case can settle those claims.  But if individual consumers opt out, they and their claims are severed entirely from the class case.  As the Third Circuit explained in a comparable case:

> [Defendant] Metlife contends that [Opt-out] Appellees can be enjoined from making any claim or using any evidence related to the claims settled in the MDL case in order to keep the settlement from being disturbed.
>
> […]
>
> Metlife also asserts that the injunction somehow prevents Appellees from relitigating the settled claims of the class plaintiffs. <u>Appellees, however, are not re-litigating the settled claims at all here; they are suing over their own alleged mistreatment at the hands of Metlife, not over someone else's claim.</u>
>
> Allowing the preemptive approach espoused by Metlife here would essentially nullify Appellee's decision to opt out: "To permit the settlement and release to vest a right in Metlife that it can assert against non-settling plaintiffs, and so to limit or restrict those plaintiffs in the prosecution of state court suits, deprives them of the benefit of having opted out."
>
> **<u>In short, Metlife cannot point to any case law authorizing an injunction against opt-out plaintiffs like Appellees, who consciously and purposefully refused to join a class action settlement.</u>** The cases Metlife points to in support of its argument all deal with plaintiffs who are distinguishable from Appellees. *See generally In re The Prudential Ins. Co. of Am. Sales Practices Litig.,* 314 F.3d 99 (3rd Cir.2002) (class members who joined settlement tried to collaterally attack settlement in state court); *In re Diet Drugs,* 282 F.3d 220 (3rd Cir.2002) (plaintiffs were trying to opt entire unnamed subclass out of nationwide class action); *Prudential I,* 261 F.3d 355 (enjoined plaintiffs were party to settled class action); *Carlough v. Amchem Prod., Inc.,* 10 F.3d 189, 204 (3rd Cir.1993) (enjoined plaintiffs had not yet been given the opportunity to opt out, so state suit was premature).[2] We therefore uphold the denial of the injunction.

*Drelles v. Metro. Life Ins. Co.*, 357 F.3d 344, 345-347 (3d Cir. 2003) (emphasis added).  This

conclusion "protects individuals' fundamental right to bring their own suits seeking relief outside

a class action […] The right to opt out means that class members can vote with their feet […]

And it protects against abusive class action settlements."  Sara Hoffman Jurand, *Opting Out of*

*Class Does Not Limit Discovery Rights*, Trial, March 2004, at 16, 17-84 (quoting in part the

attorney from *Public Justice* who prosecuted the appeal).

**C.    The Preliminary Injunction Should Be Dissolved Because This Court Lacks Personal Jurisdiction Over All Class Members Outside Ohio Until The Time For Them To Opt Out Has Expired.**

The Settling Parties invoked the All Writs Act, 28 U.S.C. 1651(a), as authorizing this

Court to enjoin all members of the provisionally certified nationwide class.  As they noted, the

Act only empowers federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions…" (Docket No. 108 at 4).  They then proceeded to argue that this Court has subject matter jurisdiction over the "res" of the proposed settlement,[5] but completely neglected to attempt to demonstrate personal jurisdiction of the class members who reside outside Ohio.  This omission is fatal because the All Writs Act does not *create* jurisdiction, it merely authorizes certain action when the Court has jurisdiction.  Thus, as the Court in one of the very cases cited by the Settling Parties in support of their Joint Motion to Enjoin Parallel Actions (Docket No. 108 at 6) held, "the application of the Anti-Injunction and All-Writs Acts should have been *preceded* by the satisfaction of jurisdictional prerequisites."  *Carlough v. Amchem Prods., Inc*., 10 F.3d 189, 198 (3rd Cir.1993).

A federal district court has personal jurisdiction only over persons residing in the state in which it sits and those who have minimum contacts with the state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'").  As discussed *supra,* in the context of a class action seeking damages, all of the courts to consider the issue have held that a district court does not have jurisdiction to grant an injunction against an out of state class member in a damages action unless and until the

---

[5] Rubio and James do not concede that subject matter jurisdiction of such a res is present here. Among other concerns, the third party complaint in the *Brent v. Midland Funding* case in state court was actually a counterclaim and cannot be a foundation for removal jurisdiction.  *See*, *Wells Fargo Bank v. Gilleland*, 621 F.Supp.2d 545 (N.D. Ohio 2009) (where a law firm that was joined as party to a bank's foreclosure action by the defendant homeowner removed the action to this Court, subject matter jurisdiction was lacking). However, since this issue is complicated by the subsequent filing of the *Vassalle v. Midland Funding* action, and personal jurisdiction to

13

member has had an opportunity to opt out of the suit.  For example, in *Carlough v. Amchem Prods., Inc.*, the court explained:

> In *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985), the Supreme Court held that a court may bind an absent *plaintiff* class member to a class action damages judgment, despite the absentee's lack of minimum contacts with the forum, without abrogating minimal due process protection. 472 U.S. 797 at 811-12. The absentee plaintiff class member's due process rights would be satisfied if the plaintiff received reasonable notice, an opportunity to be heard and to meaningfully partake in the litigation, adequate representation, and "at a minimum ... an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Id.* at 812.…*A plaintiff class member who is afforded an opportunity to opt out, but who fails to exercise that option, may be deemed to have consented to jurisdiction. Id.* at 812 (emphasis added).

10 F.3d at 199.

The *Carlough* court stressed "the critical importance of the right to opt out in drawing any inference of consent to jurisdiction by absent plaintiff class members who otherwise would have no affiliation with the forum."  Further, "prior to notice and the opt out period, and absent minimum contacts with the Pennsylvania forum or consent to its jurisdiction, a federal injunction enjoining state action would violate due process." *Id.* at 201 (citations omitted).

According to the Preliminary Approval Order, class members have until June 1, 2011, to opt out.  (Docket No. 111).  Since the opt-out period for class members outside of Ohio has clearly not expired, this Court currently lacks personal jurisdiction over them.  The injunction issued without notice against them should therefore be dissolved.

**D.      The Cases cited by Brent/Midland do not suggest a different conclusion.**

The parties' Order, entered by the Court after it was presented, suggests by an incorporated string citation the existence of this Court's authority in a Rule 23(b)(3) class to enter

---

enjoin out of state residents is clearly lacking, Rubio and James leave it for later objectors to

a preliminary injunction against competing cases. Preliminary Injunction (Docket No. 110).

None of the cases offered to the Court as its own conclusion by Midland and Brent suggest

anything close to the conclusion which they apparently now seek: that opt-outs in a Rule

23(b)(3) class can remain bound by the orders and judgment in that case. In fact, if anything, the

few decisions offered by the parties illustrate exactly the opposite. For example, *In Re Diet*

*Drugs*, an 8th Circuit decision, has already been cited herein for its explicit conclusion that the,

"The 'minimum contacts' requirement is [only] satisfied where a class member has received

adequate notice of the action and has been afforded an opportunity-but has declined-to opt out of

the lawsuit." *In re Diet Drugs*, 282 F.3d 220, 230 (3d Cir. 2002). Similarly, the *Brent* reliance on

*Carlough v. Amchem Products, Inc.*, 10 F.3d 189 (3d Cir. 1993), would be difficult as the

decision expressly supports the position taken by Rubio and James: that opt out class members

may pursue their individual actions without restriction. The Third Circuit stated:

> We hold that given the establishment of an opt out period and the *Gore* plaintiffs'
> ability to opt out, it is within the sound discretion of the district court to enjoin
> their action in state court. The *Gore* plaintiffs individually are at liberty to pursue
> litigation of their asbestos-related injury claims in the forum of their choice.

*Id*. at 204.

The remainder of the Brent/Midland's alternate decisions are "limited fund" cases in

which the settling defendant was otherwise judgment proof beyond a modest insurance amount.

(Unlike with the Defendants here, worth hundreds of millions of dollars, the defendant's

insurance policy was the only available asset with which to satisfy any judgment). These limited

fund or "mandatory" class cases are entirely different than a Rule 23(b)(3) class, in which the

right of all class members to opt-out differs from the rights of class members in non-opt-out or

---

make this argument.

"mandatory" class actions under for a limited fund or for non-monetary relief under Rule

23(b)(2).  As one academic commentator explained:

> The threat of duplicative litigation is central to the certification decision in (b)(1)
> and (2) situations, and that concern is answered by the rules' failure to provide a
> right to opt out. The rules do not require that notice be given to class members and
> do not extend a right to be excluded. Thus, unless the judge exercises discretion to
> exclude, class members are saddled with having their claims resolved by the class
> action.[9] Because of the absence of an opt-out right, (b)(1) and (2) class actions are
> referred to as "mandatory." Their "mandatory" character derives from the practice
> in equity courts of preserving unitary jurisdiction over certain matters by
> forbidding litigation on the same matter in other courts.[10] Thus the certification
> decision is closely bound up with the imposition of coercive devices to prevent
> duplicative litigation, as will be discussed in detail in section II.
> In a (b)(3) class, the threat of duplicative litigation is not as central to the
> certification decision.  Class treatment is appropriate if questions of law or fact
> common to the class members predominate and a class action is "superior to other
> available methods for the fair and efficient adjudication of the controversy." In a
> (b)(3) class there is no assumption that other duplicative litigation will be avoided.
> Indeed, class members must be given a right to opt out, suggesting that they might
> pursue their own claims in other suits.

Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 Ind. L.J. 507, 510-11 (1987).

Any other result would violate the plain language of Rule 23.  When Federal Rule 23 was revised

and restructured in 1966, the Rules Advisory Committee recognized that class members with tort

claims for monetary damages have a much more compelling due process interest in having

individual control over their claims than do class members with claims for injunctive or

declaratory relief.  With this distinction in mind, the Committee established separate subdivisions

of Rule 23 to deal with cases seeking different types of relief. *Notes of Rules Advisory Committee

to 1966 Amendments to Rule 23*, 39 F.R.D. 69, 105.

Additionally, none of the cases cited by the *Brent* parties sought to enjoin opt-out class

members permanently against prosecution of their individual claims and cases.  In *Liles v. Del

Campo*, 350 F.3d 742, 746 (8th Cir. 2003), the enjoined parties were not opt-outs and were

seeking to prosecute a competing class action. Further, class certification in *Liles* was upon a Rule 23(b)(1) limited fund, mandatory class. Similarly, *Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 451 (N.D. Ill. 2009), considered the enjoinder of competing class actions brought by class members who had objected, not opted out. Nothing is suggested as applicable to persons who requested exclusion. *In re Inter Op Hip Prosthesis Liab. Litig.*, 174 F. Supp. 2d 648, 656 (N.D. Ohio 2001), also addressed a limited fund settlement in which the "entirety of the Defendant's assets [were] pledged to the class." Additionally, the court expressly limited its injunction to competing cases for a limited and defined time period while the settlement was being finalized because the court in this complex MDL matter with scores of parties had approved an extensive round of discovery for those challenging the class settlement. *Id.* ("It is also notable that the Court has been careful to create a mechanism ensuring that counsel representing plaintiffs in the state court actions will participate and share in discovery in this case. Indeed, under the Court's CM Order, a plaintiff electing to opt out of any settlement will still enjoy the benefits of class counsel's substantial, aggressive discovery on critical issues; the opt-out plaintiff will not need to "repeat" this discovery for himself and, in fact, probably could not obtain it as quickly on his own[.]")

As a result, in a case most demonstrative for its unusual posture and fact pattern, the court agreed to the narrow injunction – stipulated by most parties, including the litigants in the out-of-state cases – because of the "the unique circumstances of this case[.]" *In re Inter Op Hip Prosthesis Liab. Litig.*, 174 F. Supp. 2d 648, 653 (N.D. Ohio 2001). The case went on for nearly a decade with an injunction for only a narrow period of time.

**E.      The difficulty that significant opt-out litigation may pose to the settlement is at best**

**evidence that the settlement is unfair and inadequate.**

Class action procedure is designed to provide consumers who may otherwise be without an alternate remedy a means to obtain damages and redress by common effort. It is not designed as a means for a liable defendant to obstruct otherwise viable consumer claims or to offer it a shield against other litigation. There are countless problems with the *Brent* settlement – procedurally and substantively. Counsel for Rubio and James recognize and respect the considerable work the Court has accomplished in causing Midland to offer Plaintiff's counsel something to settle this case. However, as a result of significant background, history and information never disclosed to the Court – whether deliberately or because Brent's counsel was innocently unfamiliar with this field and Midland more generally – the present settlement is indefensible.[6] It operates to fully shield Midland from meaningful damage awards at the same time as it validates or affirms judgments that in most class member states, including Virginia, are voidable by simple motion. Nevertheless, Rubio and James are not objecting; they are instead simply electing not to resolve their claims in this non-mandatory Rule 23(b)(3) class settlement. Thus, to the extent it has jurisdiction over the opt-out class members, the Court this must consider the importance of protecting the settlement against the rights and motivations of individual opt-out consumers in prosecuting their own individual cases. It is not – it cannot be – assumed that the advantages of this class settlement outweigh the rights and interests of the many class members who are likely to opt out.

As a result of the limitations of the settlement, there will be a disproportionately high number

---

[6] There are numerous objective bases to object to the settlement and in a different capacity, Rubio and James' counsel will do so on behalf of unrelated Virginia consumers who have not elected to opt out.

of opt-outs in this case.[7] And an injunction to prohibit opt-out consumers from seeking for themselves the adequate relief that Brent's counsel did not insist upon – vacated judgments and meaningful monetary damages – is not only improper, but it misses the point. Opt-outs are a sign of a defective settlement. The best way to avoid opt-outs is not to declare them enjoined, but to negotiate a settlement in which class members would want to participate. As one commentator explained:

> There is one particular situation in which members' preference for individual suits can undermine the economy and efficiency benefits of a class action and thus constitute grounds for not certifying a class. [A large number of opt outs. …] But this situation is rare, and threats of massive opt-outs do not always materialize. <u>A court has broad powers to shape a class to make it attractive to the members and to insure that they are notified of the benefits of class treatment.</u>

Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 Ind. L.J. 507, 513 (1987) (emphasis added). Rather than strip opt-out consumers of their due process rights, a court would more justly deny approval to the unattractive compromise or decertify the inadequately represented class. *Id.* ("And decertification is always a remedy if massive opt-outs render the class action an empty shell.").

One of the more appalling defects in the *Brent* settlement is its apparent bar to consumers seeking to file actions to vacate Midland judgments at the same time that it does the exact opposite for Brent. At a minimum, Brent's counsel's acquiescence in Midland's effort to use the judicial powers of the Court to disrupt and restrict the assertion of collection defenses and prosecution of claims by the very class members they purport to represent is itself contrary to standard practice in the consumer protection field.

The leading organization of consumer protection attorneys in the nation is the National

---

[7] This of course was contemplated by Midland as it insisted on a very low opt-out threshold of

Association of Consumer Advocates (NACA). NACA is "an organization of more than 1500 attorneys who represent and have represented hundreds of thousands of consumers victimized by fraudulent, abusive, and predatory business practices. As a national organization fully committed to promoting justice for consumers, NACA's members and their clients are actively engaged in promoting a fair and open marketplace that forcefully protects the rights of consumers, particularly those of modest means."[8]  Its members are private and public sector attorneys, legal services attorneys, law professors and law students "whose primary focus is the protection and representation of consumers." *Id.*  In this case, every law firm prosecuting an active Midland case to be enjoined by the *Brent* settlement has as its lead counsel a member of NACA.[9]  In fact, the Washington, California and Virginia counsel teams each have one member of the NACA Board of Directors – three different attorneys and teams - as controlling counsel.  Furthermore, each of these existing cases is litigated by attorneys who are the experts in the fields of FDCPA litigation and consumer class actions – each of whom is teaching and writing heavily in this field.  It is doubtful that any law firm in the nation has litigated against Midland as substantively and over the range of cases as have the attorneys in the expected objectors group.  And yet at no time have the Brent plaintiffs or their counsel communicated or even substantively returned calls to their colleagues in these other cases.

Now, having obtained the relief needed for Brent, they now seek to bargain away the

---

2% in its settlement agreement.

[8] http://www.naca.net/about-naca last viewed on March 27, 2011.

[9] NACA includes a membership pledge that: the member is "committed to advancing the cause of just treatment for and ethical representation of consumers" and that he or she "will not, so long as [they are] a NACA member, perform services for any business or commercial client […] on a matter where that client's interests are adverse to the interests of a consumer or consumers." http://www.naca.net/sites/default/files/pdfs/3PGMembApFormNoBen4QJune10.pdf last viewed on March 27, 2011.

same opportunities and rights for the many consumers the expected objectors' counsel represent. This is contrary to the leading ethical guidance for attorneys representing consumers in class action litigation:

> Class counsel should resist preliminary orders that stay individual litigation of related claims or other actions by absent class members but do not also contain a similar restriction on defendants. If any such stay orders are nonetheless entered, they must allow individual class members with pending individual litigation an immediate right to opt out of the settlement and thus no longer be bound by the stay.

Brian Wolfman, The National Association of Consumer Advocates, Standards and Guidelines for Litigating and Settling Consumer Class Actions (2d. Ed. 2006), 255 F.R.D. 215, 227.

Regardless of the challenges placed in their way by counsel for both Brent and Midland, each of these Virginia consumers maintains an absolute due process right to opt out of the settlement class and proceed on their claims unaffected by the *Brent* litigation.

## CONCLUSION

Ann Rubio and Gilbert James respectfully ask this Court to deny Midland's request that the Court "read between the lines" of its injunction to impose restrictions not otherwise contained in same and to find as it must that Rubio and James have timely and fully opted out of the Brent settlement and class.

Respectfully submitted,

By   /s/ Reginald S. Jackson, Jr.
    Reginald S. Jackson, Jr. (0003558)
    E-Mail: rjackson@cjc-law.com
    Adam S. Nightingale (0079095)
    E-Mail: anightingale@cjc-law.com
    CONNELLY, JACKSON & COLLIER LLP
    405 Madison Avenue, Suite 1600
    Toledo, Ohio 43604
    Telephone:  (419) 243-2100

Facsimile:    (419) 243-7119

and

Leonard A. Bennett, VSB # 37523
(pending admission *pro hac vice*)
E-Mail: lenbennett@clalegal.com
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
(757) 930-3660
(757) 930-3662 facsimile

and

Matthew J. Erausquin, VSB # 65434
(pending admission *pro hac vice*)
E-Mail: matt@clalegal.com
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 273-7770
(888) 892-3512 facsimile

*Counsel for Ann Rubio and Gilbert James*

## <u>PROOF OF SERVICE AND CERTIFICATION</u>

This is to certify that a copy of the foregoing has been electronically filed with the Court on this 28th day of March, 2011.  Notice of the filing will be sent to the parties by the operation of the court's electronic filing system. The parties may access this filing through the Court's system. This matter has been assigned to the Court's standard track, but the forgoing memorandum exceeds the page limitations applicable to the Court's standard track.  A motion to enlarge these limits is filed contemporaneously herewith.

By   /s/ Reginald S. Jackson, Jr.
*Counsel for Ann Rubio and Gilbert James*

23