# DECLARATION OF CHARLES M. DELBAUM

Now comes Charles M. Delbaum, an attorney admitted to the U.S. District Court for the Northern District of Ohio in 1973 and in good standing before the Massachusetts Supreme Judicial Court, and states as follows:

1. *Judith Reimann et al. v. Eric Brachfeld, Midland Funding LLC, Midland Credit Management, LLC, et al.* was filed in California Superior Court, County of Alameda, on August 5, 2010 (Case No.10-529702). A putative statewide class action, the case is premised exclusively on California law, consisting of California's Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. ("Rosenthal Act"), and California's Unfair Competition Law (California Business and Professions Code § 17200 et seq.). On information and belief, it is the only class action case against Midland Funding and Midland Credit that is pending in a state court, rather than federal court. This is significant because the underlying offending conduct by the Midland entities took place in the state courts and California state law remedies for such misconduct are extensive.

2. Although the California Case includes the issue of Midland's fraudulent affidavits, it asserts other violations of state law as well. Several of the claims and rights differ dramatically from those at issue in Ohio. *Reimann* is not mere "copy-cat" litigation. Moreover, at the time it was filed, no pleadings seeking certification of a nationwide class were on file in the *Brent v. Midland* case in the Northern District of Ohio. For both of these reasons, the team of attorneys who brought *Reimann* viewed it as supplemental to, not in competition with, *Brent*. Indeed, the National Consumer Law Center, a nonprofit organization whose mission and credentials are described in the Firm Resume (attached hereto as Exhibit 1), chose to participate in the California Case because of the unique and significant public benefits that can be realistically pursued under powerful California state law protections and because more than 10% of the population of the United States resides

in California. Importantly, California law facilitates relief that is different and in excess of what is contemplated in the proposed settlement of the Ohio cases.

3. The California Case focuses on the misconduct perpetrated via Midland's collaboration with the Brachfeld Law Group, a California law firm specializing in the mass filing of debt collection lawsuits based on minimal to nonexistent documentary evidence. California Plaintiffs allege that Midland falsely claimed to be acting through attorneys at the Brachfeld Law Group, but in fact there was no meaningful attorney involvement. They further allege that the lack of meaningful attorney involvement permeates the collection process beginning with dunning letters, and continuing through each stage of litigation. The narrow issue of Midland's submission of false affidavits arises in a different context in the California Case than in the Ohio cases. The allegation in *Reimann* is that the fraudulent affidavits are submitted at the end of the default process to appear to satisfy the requirements of California Code of Civil Procedure § 585 and California Rule of Court 3.1800, whereas in Ohio, Midland attaches them to collection complaints at the onset of the case.

4. The Complaint in the California Case describes the misconduct, in part, as follows at paragraph 17 thereof:

> BLG's [Brachfeld Law Group] non-attorney/staff import computer spreadsheet data provided by the Midland Entities into dunning letters and, if the letters do not produce the desired payment, into form state court complaints which are filed without further attorney review. Indeed, the Midland Entities have routinely tasked BLG with sending letters and suing consumers without providing BLG with any supporting documentation. BLG obligingly files these lawsuits without knowledge of the particular contract or account which gives rise to the claim and without analysis of the merits of the claim.

5. With regard to the issue of affidavits, the California complaint describes the offending conduct, in part, as follows at paragraph 21 thereof:

> BLG is required to submit 'admissible evidence' in support of an application to obtain a default judgment. In reality, BLG routinely

submits to the state trial courts false and inadequate documentation provided by the Midland Entities, taking advantage of the fact that default judgments are, for the most part, issued as a ministerial function by court clerical personnel, who largely rely upon the representations of the attorneys who practice before the court.

6. A key aspect of California law is the availability of extensive equitable relief.  For example, under California's Unfair Competition Law, [t]he court may make such orders or judgments ... as may be necessary ... to restore to any person in interest any money or property, real or personal, which may have been acquired" by prohibited means. BPC § 17203.  This is a particularly significant source of relief because, as Midland's parent company, Encore Capital, candidly acknowledged in a July 31, 2009 letter to the FTC, "default judgments represent a significant percentage of the judgments obtained by our companies." (See Exhibit 2, attached hereto, which is a true and correct copy of a letter obtained from the Federal Trade Commission website, dated July 31, 2009).  Plaintiffs in the *Reimann* action will demonstrate that these default judgments were routinely obtained by means of fraudulent affidavits and that the funds Midland recovered as a result of such illegal activity should be restored to the victims of this practice.

7. California Plaintiffs are presenting a California state court with orders, judgments and processes alleged to be the product of fraudulent debt collection activities by Brachfeld and Midland in California's own state courtrooms.  The California state court is inherently in a superior position to any other court in its ability to fashion an appropriate remedy for this misuse of its system and abuse of consumers.

8. Attached hereto are the Declarations of Experience of two of the counsel in the *Reimann* action, the undersigned (Exhibit 3) and Stuart T. Rossman, Director of Litigation of the National Consumer Law Center, Inc. (Exhibit 4), as well as the Firm Resume of California co-counsel in that action (Exhibit 5).

Signed under pains and penalties of perjury this ⟨28th⟩ day of March, 2011.

_____
Charles M. Delbaum

# About the National Consumer Law Center

The National Consumer Law Center is America's consumer law expert.[1] For over 40 years NCLC has been the leading source of legal and public policy expertise on consumer issues for lawyers, federal and state policymakers, consumer advocates, journalists, and social services providers. NCLC is dedicated to promoting fairness and justice in the marketplace. We focus on unfair and deceptive acts and practices that squeeze precious dollars from low-income households and undermine their efforts to build wealth and get out of poverty

Our staff of experts provides a wide range of direct assistance to consumer attorneys, including consultation on legal issues, co-counseling, expert testimony, legal research, continuing legal education, and widely respected legal treatises. NCLC gives priority to providing case assistance and training targeted at legal aid and *pro bono* attorneys representing low-income clients.

NCLC is a frequent recipient of court-awarded *cy pres* funds. We have received 272 *cy pres* and class action settlement awards since 1997. Awards have been directed to NCLC by federal and state courts across the U.S., including: (E.D. Cal.), (S.D. Fla.), (Super. Ct. Cal.), (M.D. Ala.), (D. Conn.), (Mass Sup. Ct.) (D. Minn.), (W.D. Mo.), (W.D. Pa.), (D. N.M.), (E.D. Pa.), (E.D. Wis.), (E.D. Wash.), (N.D. Ill.), and (D. Neb.). Funding from *cy pres* awards is used to protect the rights of economically vulnerable consumers.

## Organizational Background

The National Consumer Law Center, founded at Boston College School of Law in 1969, is a 501(c)(3) and legal aid organization. Our tax identification number is 04-2488502. On our staff of 25 attorneys, the typical staff attorney has nearly 28 years of specialized consumer law expertise. We address the most significant consumer problems faced daily by low-income families, such as predatory mortgage loans, home foreclosures, credit card problems, debt collection harassment, credit report errors, car purchases and financing, high-cost banking and short-term lending, bankruptcy, student loans, medical debt, home utility terminations, telecommunications issues, and many others.

NCLC is governed by a volunteer national board of directors, which includes a past president of the American Bar Association, a former Arizona Solicitor General, as well as bar association representatives and clients from low-income communities.

## NCLC's Legal Treatises

---

[1] *See, e.g., Mazola v. May Dept. Stores Co.*, 1999 WL 1261312 (D.Mass.1999) ("the leading non-profit low income consumer advocacy organization in the country, the National Consumer Law Center").

EXHIBIT 1

NCLC is author of the widely praised *Consumer Credit and Sales Legal Practice Series*. This 18-volume set of treatises on consumer law are widely used by legal aid offices (at a substantial discount) throughout the country, and the private bar, and are available by subscription. The legal manuals detail state legislation and case law in all 50 states, with analysis of federal laws, regulations, cases, agency interpretations, and letters. All manuals come with a companion website and are revised or supplemented every year. They have often been cited as references by courts, most recently in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, n.12 at 1618 (U.S.2010) ("Cf. generally R. Hobbs, National Consumer Law Center, Fair Debt Collection § 7.2 (6th ed.2008 and Supp.2009) (surveying case law on scope of § 1692k(c))."); *see, e.g., Pfennig v. Household Credit Services, Inc.*, 295 F.2d 522, 530 (6th Cir. 2002) (Truth in Lending manual).

Below is a short summary of just a few of the 18 volumes:

*Unfair and Deceptive Acts and Practices* (7th ed. 2008). The most important consumer statute is a state's unfair and deceptive acts and practices (UDAP) statute, which covers a wide array of deceptive or abusive practices — auto repair and sales, insurance, landlord tenant, credit, leases, mobile homes, utilities, debt collection, foreclosures, business opportunities, and much more. NCLC's manual has been universally recognized for over 20 years as the essential guide in this area.

*Fair Debt Collection* (6th ed 2008). Consumer attorneys rely on *Fair Debt Collection* for the latest thinking and definitive analyses of the federal Fair Debt Collection Practices Act (FDCPA). For 23 years, this groundbreaking work has been the basic reference in the field.

*Foreclosures* (2d ed. 2007) This manual details legal rights, tactics, and informal approaches to saving homes from seizure. It explains how to negotiate pre-foreclosure workout agreements, and current workout options; how to challenge mortgage servicer abuses; and how to use bankruptcy to prevent foreclosure, including the new bankruptcy amendments.

*Truth in Lending* (6th ed 2007 and 2008 Supp.) For over 30 years, NCLC has been the nation's premier expert on Truth in Lending, and this volume is the definitive work in its field. It provides the leading discussion of TIL rescission rights that allow homeowners to cancel mortgages; and the most thorough, up-to-date, and innovative chapter on HOEPA, the key federal law dealing with predatory mortgages. The volume also covers credit card, open-end, closed end, variable rate, and home equity loan disclosure rules.

*The Cost of Credit*: *Regulation and Legal Challenges* (3d ed. 2005 and 2008 Supp.);
A highly influential road map for consumer litigation against creditors, this book analyzes consumer credit regulation in all 50 states and federal regulation, including points, refinancing, and Real Estate Settlement Procedures Act requirements. It explains how to challenge excessive credit charges, credit insurance, equity-skimming, and loan flipping.

*Fair Credit Reporting* (6th ed 2006 and 2008 Supp.) Over 150 million Americans have credit files with the major credit reporting agencies. As many as 50 million of these files contain errors, even though consumers view these files as one of their most important assets. This

volume is the leading book not only on Fair Credit Reporting Act litigation, but on practical steps short of litigation that lawyers can take to help their clients deal with their credit rating problems.

## NCLC Leadership in the Legal Community

NCLC has provided substantial leadership in the legal community.  The American Bar Journal review of NCLC's *Consumer Credit and Sales Legal Practice Series* of treatises described them as "... a monumental undertaking comparable to but more practical than the Restatement of Laws."  NCLC staff has appeared as counsel and amicus curiae before the United States Supreme Court, all of the United States Courts of Appeal, and numerous state courts.  Our legal expertise was cited by United States Court of Appeals in Besta v. Beneficial Loan Co., 855 F. 2d 532, 534 (8th Cir. 1988) (expert testimony of K. Keest); and Crossley v. Lieberman, 868 F.2d 566, 569 (3rd Cir. 1989) (citation to Robert Hobbs, "leading commentator"); our treatise *Unfair and Deceptive Acts and Practices* cited in Gibbons v. J. Nuckolls, Inc., 216 S.W.3d 667 (Mo. 2007), (fn. 13, citation to NCLC, "national experts"); our treatise *Truth in Lending* cited in Pfennig v. Household Credit Services, Inc., 295 F.3d 522, 530 (6th Cir. 2002); and our treatise *Consumer Class Actions* in State v. Homeside Lending, Inc. 2003 Vt. 17, 826 A.2d 997.

NCLC was the Federal Trade Commission's designated consumer representative in promulgating its Trade Regulation Rules on Creditor Remedies, 16 C.F.R. 444, and Preservation of Consumers' Claims and Defenses, 16 C.F.R. 433.  The Center's Model Consumer Credit Code was the foundation for the Wisconsin, West Virginia, and Iowa credit codes, and the federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692.  Our report on abuses in the home improvement and second mortgage industries led to the enactment of the Home Ownership and Equity Protection Act of 1994.

Staff attorneys at NCLC have been appointed to many prestigious boards and committees: the Judicial Conference Bankruptcy Rules Committee (appointed by Chief Justice Roberts), the American College of Bankruptcy Fellows, the National Conference of Commissioners on Uniform State Laws, the American Bar Association Business Law Section, and the Energy and Transportation Task Force of the President's Council on Sustainable Development.  Center staff often have been appointed by the Board of Governors of the Federal Reserve System to their statutory Consumer-Industry Advisory Committee.  Present and former Center staff have held or hold public, appointed positions of authority.

NCLC has received funding from a diverse group of foundations, corporations, and government agencies, including:  Ford Foundation, Annie E. Casey Foundation, National Conference of Bankruptcy Judges Endowment for Education, American College of Bankruptcy, Boston Bar Foundation, Massachusetts Bar Foundation, California Consumer Protection Foundation, Fannie Mae Foundation, Open Society Institute, W.K. Kellogg Foundation, Boston Foundation, Paul and Phyllis Fireman Charitable Foundation, Mifflin Memorial Fund, Energy Foundation, Freddie Mac, NeighborWorks, Sandler Foundation, the United States Departments of Energy, Health and Human Services, Housing and Urban Development, and Justice; AARP, Consumers Union, and the Massachusetts Legal Assistance Corporation.

## Benefiting Financially Distressed Consumers

*Providing Government Officials Information About Low-Income Consumers*

NCLC is recognized nationally as a preeminent expert in consumer credit law and policy, and has drawn on this expertise to provide information, analysis and market insights to federal and state legislatures, administrative agencies, and the courts.

Examples of legislative areas where NCLC has provided such assistance include:

- **Credit Card Reform Law** is bringing consumers real relief from years of abusive, confusing fine print, junk fees, and penalty charges from the credit card industry. NCLC played a key role in advising lawmakers and pushing important reforms that have eliminated many of the worst credit card abuses, especially on retroactive interest rates, fee harvester charges, interest on payment balances, and reasonable penalty fees.

- **Military Lending Act of 2006.** NCLC helped draft the substantive protections that were included in the Act. A 36-percent interest rate cap was imposed on certain loans made to active duty members of the armed forces and their dependents. The law covers consumer credit extended on or after October 1, 2007, except for residential mortgages and purchase money loans secured by a car or other personal property. The law also bans lenders from inserting mandatory arbitration clauses into loans for the military.

- **The Home Ownership and Equity Protection Act of 1994** (HOEPA) was the Congressional response to the increased incidence of "equity-skimming" -- using abusive terms in credit transactions as a means of tapping the equity in the homes of financially unsophisticated consumers. NCLC participated in the drafting of the original bill and its amendments and provided analysis to staff and testimony to Congressional committees.

- **The Truth in Lending Act Amendments** of 1995, enacted September 30, 1995, included provisions giving more mortgage lenders some retroactive immunity from liability for certain Truth in Lending errors, and a sizeable increase in the tolerance for error in disclosing the finance charge, applicable both retroactively and prospectively. NCLC's expertise was crucial in drafting a bill that preserved essential consumer protections in the Truth in Lending Act.

- **The Fair Debt Collection Practices Act**, enacted in 1978 and amended since, responded to widespread and notorious debt collection practices by setting forth national standards for third-party debt collection activities. The final version relied heavily upon language drafted by NCLC staff and, like other later chapters of the federal Consumer Credit Protection Act, reflects the testimony and expert comments of the Center.

*Amicus Curiae Briefs*

In view of its widely recognized expertise, NCLC is frequently asked to appear as amicus curiae in consumer law cases before trial and appellate courts and does so in appropriate circumstances. In addition to scores of amicus briefs in state and federal appellate courts, the many cases in

which NCLC has prepared briefs amicus curiae or appeared as counsel include:

- Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S.Ct. 1605 (2010) (in FDCPA suit against attorneys, bona fide error defense does not apply to errors of law);

- Kawaauhau v. Geiger, 118 S.Ct. 974 (1998) (only torts done with intent to cause injury are non-dischargeable in bankruptcy);

- Heintz v. Jenkins, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (federal Fair Debt Collection Practices Act requires that bank's attorney not misrepresent the amount of the debt);

- Taylor v. Freeland & Kronz, 112 S.Ct. 1644 (1992) (debtor exemption allowed by operation of law);

- Pennsylvania Dep't of Public Assistance v. Davenport, 110 S.Ct. 2126 (1990) (meaning of "debt" within the bankruptcy code);

- Memphis Light, Gas & Water Division v. Craft, 431 U.S. 1 (1978) (establishing due process right to notice prior to termination of municipal utility service);

- Fuentes v. Shevin, 409 U.S. 902 (1972) (recognizing due process rights and protections in the repossession of consumer property where state action is involved);

- Swarb v. Lennox, 403 U.S. 928 (1971) (due process rights relating to confession of judgment clauses in consumer credit contracts).

### *Technical Assistance and Case Consultation*

NCLC offers case consulting services to lawyers representing low- and moderate-income consumers. We help lawyers to:

a) identify factual and legal issues and relevant case law;
b) offer theories to pursue, settlement strategies, and litigation tips;
c) analyze contract documents, help with credit math, and spot hidden overcharges;
d) develop and/or review draft pleadings, memoranda, and discovery;
e) conduct legal research; and
f) offer legal practice publications at a substantial discount.

### *Training*

Every year NCLC trains thousands of attorneys and other advocates at over 50 national, regional, and local events. Our annual four day Consumer Rights Litigation Conference is the main source of continuing legal education for attorneys representing individual consumers. This conference typically attracts more than 900 consumer attorneys.

NCLC provides consumer law training for legal services programs, *pro bono* and other bar association sponsored programs, and government agencies. The Center develops appropriate continuing legal education sessions on consumer law after exploring the needs in the consumer attorney community. Scholarships are sometimes provided for attorneys representing low-income consumers to attend the Consumer Rights Litigation Conference. The U.S. Department of Housing and Urban Development has awarded several grants to NCLC to deliver nationwide foreclosure prevention trainings to housing counselors across the country. In addition, NCLC has trained over 5,000 attorneys on changes to the federal bankruptcy code since it was overhauled in 2005.

### Consumer Education

Apart from our publications for attorneys, NCLC writes books and other educational materials for consumers themselves and for our large network of lay advocates and social service providers. Written in clear and direct language, these materials give precise and practical advice on how to make smart choices in the face of serious consumer problems.

NCLC publishes a comprehensive guide for advocates fighting predatory lending, *Stop Predatory Lending: A Guide for Legal Advocates* (2d ed. 2007). It explains the exponential growth of predatory lending and provides a roadmap of practical legal strategies to remedy and prevent these harmful practices. *Foreclosure Prevention Counseling* (2d ed. 2009) is a practical guide for counselors assisting homeowners threatened with foreclosure. The how-to manual provides detailed advice to help advocates understand the foreclosure process.

*The NCLC Guide to Surviving Debt* (2010 edition) is written for consumers overwhelmed by financial hardship. It offers authoritative yet easy-to-understand information for people dealing with debt collection harassment, their credit rating, refinancing, car repossessions, credit card debt, student loans, and timely new chapters on mortgage workout options and stopping foreclosure.

Other NCLC publications for advocates include the guides *Consumer Rights for Domestic Violence Survivors* (2006), *Mobile Homes* (2002), *Consumer Rights for Immigrants* (2002), and *Bank Accounts and Consumer Rights* (2003). In addition, NCLC has written and disseminated scores of brochures on common consumer troubles, many of which have been translated into multiple languages. With funding from the U.S. Administration on Aging and other sources, the Center develops consumer education brochures on consumer frauds and abuses and consumer law rights, for distribution by local agencies, programs, and community groups.

NCLC responds to requests from journalists for information and disseminates policy papers on important consumer issues. We are consulted and quoted regularly by the *New York Times*, *Wall Street Journal*, *USA Today*, *Washington Post*, and other major news organizations. We work with the media to alert consumers to potential scams, and provide tips on practical steps to take to avoid abusive transactions and to obtain relief.

### Litigation Project

NCLC's staff attorneys have been lead or co-counsel in over 60 consumer class action cases, including, but not limited to, Cason v. Nissan Motor Acceptance Corp., C.A. No. 3-98-0223, U.S. D. Ct. Middle District of Tennessee; Coleman v. General Motors Acceptance Corp., C.A. No. 3-98-0211, U.S. D. Ct. Middle District of Tennessee; Morkavage v. Morgan Stanley Dean Witter, C.A. 99-40114, U.S. D. Ct. District of Massachusetts; Follansbee v. Discover Financial Services, C.A. N. 99-C-3827, U.S. D. Ct. Northern District of Illinois; and Chilson v. Associates National Bank, C.A. 2000-0776, Massachusetts (Worcester County) Superior Court; Samuel v. EquiCredit, C.A. No. 00-6196, U.S. D. Ct. Eastern District of Pennsylvania; Sandoval v. Washington Mutual, C.A. No. 01-2-06488-1, Superior Court of the State of Washington; Baltimore v. Toyota Motor Credit Corp., C.A. No. CV-01-05564 NM, U.S. D. Ct. Central District of California; Jones v. Ford Motor Credit Co., Case No. 00-Civ-8330, U.S. D. Ct. Southern District of New York; Smith v. Chrysler Financial Company, Civil Action No. 00-6003, U.S. D. Ct. of New Jersey; In Re Washington Mutual Overdraft Protection Litigation, Case No. 03-2566 ABC, U.S. D. Ct. Central District of California; Zipperer v. Supportkids, Inc., Case No. 02 CV 233, State of Wisconsin Circuit Court (Manitowoc County); Pettway v. Harmon Law Offices, P.C., Case No. 03-10932-RCL, U.S. D. Ct. District of Massachusetts; Osborne v. Bank of America, Case No. 3-02-0364, U.S. D. Ct. Middle District of Tennessee; Russell v. Bank One, Case No. 3-02-0365, U.S. D. Ct. Middle District of Tennessee; Logan v. Firstar, Case No. 3-02-0681, U.S. D. Ct. Middle District of Tennessee; Amos v. Advanced Funding, Inc., Civil Action No. 1-04-CV-2911, U.S. D. Ct. Northern District of Georgia (Atlanta Division); Borlay v. Primus Automotive Financial Services, Inc., Civil No. 3:02-0382, U.S. D. Ct. Middle District of Tennessee; Willis v. American Honda Finance Corp., Case No. 3-02-0490, U.S. D. Ct. Middle District of Tennessee; Henry v. Sturctured Investments Co., Inc., Case No. 05CC00167, Superior Court of the State of California (Orange County); Duff v. Washington Mutual Bank, Case No. 2:04-cv-2309 JLR, U.S. D. Ct. Western District of Washington at Seattle; White v. Experian Information Solutions, Inc., et al., Case No. SA CV05-2070-DOC, U.S. D. Ct. Central District of California; Mogel, et al v. UNUM Life Insurance Company of America, Case No. 1:07-cv-10955 NMG, U.S. D. Ct. District of Massachusetts; Ramirez v. Greenpoint Mortgage Funding, Inc., Case No. 08-CV-00369-EDL, U.S. D. Ct. Northern District of California; Jeffries v. Wells Fargo Bank N.A., Case No. 3:07-cv-03880-MJJ, U.S. D. Ct. Northern District of California; Lopez v. GE Consumer Finance, Inc., Case No. 2:08-cv-00479-R-FFM, U.S. D. Ct. Central District of California; Barrett v. H&R Block, Inc., Civil Action Case No. 08-10157, U.S. D. Ct. District of Massachusetts; Lopez v. Long Beach Mortgage Company, Civil Action Case No. 08-10279, U.S. D. Ct. District of Massachusetts; Ray v. BlueHippo Funding LLC, Case No. C-06-1807 JWS, U.S. D. Ct. N. D. Cal.; Yourke v. Bank of America, Case No. 09-487100 (Cal. Sup. Court, San Francisco); Rodriguez v. Chase Bank USA, Case No. 09-10614 (D. Mass.); Alleyne v. Flagstar, et al., Case No. 07-12128, U.S. D. Ct. District of Massachusetts; Puello v. Citifinancial/Citigroup,, Case No. 08-10417, U.S. D. Ct. District of Massachusetts; Faber v. Metropolitan Life Insurance Company, Civ. Act. No.: 08 Civ. 10588, U.S. D. Ct. Southern District of New York; Tammaro v. Direct Federal Credit Union, C.A. No. 08-5508-BLS2, Massachusetts (Suffolk Business Litigation Session) Superior Court; Vander Luitgaren v. Sun Life Assurance Company, et al., Case No. 09-CV-11410, U.S. D. Ct. District of Massachusetts; Powell-Perry v. Branch Banking & Trust, Inc., et al., C.A. 1:09-cv-619, U.S. D. Ct. Middle District of North Carolina; Bosque v. Wells Fargo Bank, N.A., Civil Action No. 10-10311, U.S. D. Ct. District of Massachusetts; Johnson v. BAC Home Loans Servicing , LP, Civil Action No.

10-10316, Civil Action No. 10-10316; Belyea v. Litton Loan Servicing, LLP, Case Number 1:10-cv-10931.

* * *

Through all of its activities, NCLC is committed to promoting equal access to justice for consumers. Funding is used for the benefit of consumers, especially low-income consumers, who are treated unfairly in the consumer marketplace and need legal help. NCLC's expertise is made available to public officials, attorneys, and other advocates nationwide who protect the consumer rights of Americans.



# ENCORE
## CAPITAL GROUP
*...and its subsidiary,* Midland Credit Management, Inc.

8875 Aero Drive, Suite 200
San Diego, CA 92123
Tel: (800) 825-8131 • Fax: (800) 309-6998

<u>Via electronic delivery</u>

July 31, 2009

Federal Trade Commission
Office of the Secretary
Room H-135 (Annex A)
600 Pennsylvania Avenue, N.W.
Washington, DC 20580

      Re:    Debt Collection Roundtable – Comment, Project No. P094806

Dear Federal Trade Commission:

      Thank you for the opportunity to provide written comments in advance of the roundtable discussion regarding "Protecting Consumers in Debt Collection Litigation and Arbitration", scheduled for Chicago on August 5-6, 2009. Our companies, Encore Capital Group, Inc. (NASDAQ: ECPG), Midland Credit Management, Inc. ("MCM"), and three debt-buying entities, Midland Funding LLC, Midland Funding NCC-2 Corporation and MRC Receivables Corporation, take this topic seriously and appreciate the FTC's efforts to gather information from interested parties. Xenia Murphy, Senior Manager, will be present at the roundtable to represent our views and answer any questions.

      We employ more than 1200 employees across five locations, and dedicate substantial resources to support our financial, compliance and legal outsourcing departments, and to manage our account portfolios in a responsible, ethical and profitable manner. Our efforts are directed at working with consumers to amicably and fairly resolve their delinquent accounts without a need for litigation, but legal enforcement of an underlying credit agreement is sometimes necessary to move an account toward payment.

      We have been in the collection business for 55 years and started purchasing portfolios for our own account approximately 18 years ago. From our inception through June 30, 2009, we have invested approximately $1.3 billion to acquire 27 million consumer accounts with a face value of approximately $43 billion. The receivable portfolios we purchase consist primarily of unsecured, charged-off domestic consumer credit card, auto loan deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios. After we purchase a portfolio, we continuously refine our analysis of the accounts to determine the best strategy for collection, including the use of a nationwide network of collection attorneys to pursue legal action where appropriate. We believe the use of the legal system is a necessary element of maintaining accountability in our financial system when repayment cannot be secured through the mail or by phone.

# EXHIBIT 2

The roundtable agenda identifies four broad areas to which our comments are addressed below. We believe that these subjects are among the most important in the legal environment for the FTC to review and understand in advance of any supplemental reports or recommendations for changes to current practices.

## Default Judgments and Service of Process

The processes by which any judgments, including default judgments, are entered across various jurisdictions differ greatly based upon such considerations as the amount of the debt, the documentation provided with the complaint, and the sufficiency of evidence regarding the proper service of process upon the defendant. Default judgments represent a significant percentage of the judgments obtained by our companies and others in this industry, as well as in all other cases filed in courts that must review and resolve increasingly large numbers of lawsuits. In our view, the rate of default judgments does not depend on the type of action but rather on the processes in place for a particular court or judge to make a decision in a case where the defendant has failed to file an appearance or responsive pleading, and has similarly failed to physically appear before the court. We would prefer that consumers appear so that we may discuss the account, their financial situation, and payment options, but they do not go to court, and that is the reason for the large numbers of default judgments.

While the number of cases filed to collect delinquent debts is substantial, we do not see the default judgment rate to be a reflection of certain types of debt or debt ownership, but as an indication that most defendants fail to respond to proper legal notice of a pending court action involving their interests. A reasonable default judgment process that examines both the service of process and the information and materials supporting the complaint is able to quickly resolve uncontested matters and remove them from a crowded court docket while limiting the time that local counsel must devote to such cases. In most jurisdictions, a defendant is notified of such a default judgment and provided another opportunity to appear before the court and raise available defenses to the claim. We believe that defendants are given sufficient opportunities, both before and during the litigation process, to raise defenses, ask questions, and reach a resolution to their delinquent account, and the default judgment process is important for companies such as ours to continue to collect debts in an efficient and cost-effective manner.

## Statute of Limitations

A statute of limitations, which provides a deadline for the commencement of litigation, is defined is various ways across many states, with distinctions based on the nature of a contract, availability of supporting documentation, location of activity, and other factors that are reviewed and applied by courts at different jurisdictional levels. Our company uses litigation as only one of several methods to collect debts and, for those accounts that are past the statute of limitations, we do collect on such accounts through methods such as telephone calls and letters because there is no prohibition on such actions. We do not, however, knowingly pursue litigation against those consumers whose statute has expired. As you know, the FTC issued a Consumer Alert in October 2004 that specifically concluded that collection of debt for which a statute of limitations has run is not deceptive, misleading, or prohibited by law. With only a few exceptions, the expiration of the statute of limitations does not extinguish the debt or our right to continue collections, and we do collect such debts in the same general course of business that we collect all other debts.

Through court decisions, the statute of limitations for credit card accounts has been reduced in several states, and a number of state legislatures have also proposed a reduction in the time period for litigation. It is our view that shorter statutes will not have the intended effect and will lead to a significant increase in the number of lawsuits filed. Companies will be compelled to file lawsuits earlier in the collection process to protect their interests, and will no longer have the time and flexibility to work with consumers having financial difficulties. While shorter statutes may initially appear to be favorable for consumers, the result will likely not be beneficial to them because agencies will no longer be able to wait for individuals to financially recover. Additionally, the litigation costs and court activity will only add to the burden faced by such consumers.

Finally, consumers are currently provided with detailed information about their debt and numerous notices regarding their rights, and it is our view that informing consumers about the legal status of their account is problematic. Consumers receive a validation letter each time that an account is transferred to a new servicer, and consumers have also already likely received many letters and notices from the original creditor and prior owners and servicers, so we believe that sufficient disclosures have been made to consumers and that requiring an additional notice will result in legal questions and other issues that collection agencies should not be required to address. Letters to consumers should be concise, informative and provide details regarding the subject account and payment options, but should not be complicated with legal advice related to the statute of limitations, tax consequences, or other similar issues, which will complicate letters and make them less effective and more difficult for consumers to read and understand.

Evidence of Indebtedness

As noted previously, our company purchases account portfolios from national financial institutions, major retail credit corporations, and telecom companies, as well as resellers of such portfolios, and each purchase is the subject of a comprehensive written agreement that addresses all aspects of the transaction between our company and the selling entity. Our agreements not only require representations and warranties from a seller that all consumer and account information is accurate and current, but also often provide for post-purchase support from sellers regarding additional information or documents that may be needed to address consumer or court inquiries. The electronic data obtained from sellers includes a consumer's name, address, Social Security Number, telephone number and other details that are used to confirm identity, as well as specific account information regarding the charge-off and current balance, last payment date and amount, and other account activity. All of this is provided to our law firms at the time we place an account for litigation. We intend and expect that all relevant and required information is referenced in the complaint or provided to the court and the consumer in the form of an affidavit or other exhibit.

One major concern for our company and the industry has been the elevated evidentiary standards being proposed by state legislatures and independently developed by local courts. The standards appear to be applicable only to debt collection cases and often include documentation and information requirements that are burdensome and unrealistic in a time when such physical materials are often unavailable or non-existent. Many accounts are opened, accessed, managed and transferred without any hardcopy documents, so an evidentiary standard that sets minimum filing or judgment requirements that demand the production of an original application, complete set of account statements, copies of payments and other written materials is, in our opinion, an unreasonable expectation. The burden of proof should not be higher for debt collection matters, and we meet our burden of proof using electronic information and certain documents provided to us by the sellers and warranted by contract to be true and correct.

Post-Judgment Remedies

As with the other categories, post-judgment remedies, which may include garnishments, bank levies, property liens, and other permitted activities, are governed by state laws and differ widely across jurisdictions. We rely upon our nationwide network of law firms to be familiar with local regulations and to make appropriate decisions regarding the effectiveness and benefits of the remedies available for collection of judgment balances. States impose limits on each type of remedy, ranging from the percentage of wages available to creditors to the amounts exempted from action against a consumer's bank account. We do not instruct or expect our firms to seize exempt funds, including federal benefits, but processes are available to defendants to notify firms and courts regarding exempt funds, and such amounts are quickly released from any bank freeze. We receive no benefit when our law firms seize funds that cannot be applied to a judgment, and we bear the direct cost for the filing and release of such bank garnishments, but there is no means available to indicate the presence of exempt funds in an account which contains other funds that are subject to creditor actions. It is our view that the current process is sufficient and that there is no need for additional restrictions or regulation regarding this subject.

Productive Change and Best Practices

As a publicly-traded company, and as a member of ACA International, DBA, NARCA, and other industry organizations, as well as the Better Business Bureau, we are governed by a number of entities with whom we regularly meet, solicit feedback from and comply regarding best practices and internal processes aimed at collecting debts in a responsible and productive manner. It concerns us that certain state and city legislative actions have targeted the debt collection industry for heightened scrutiny and litigation standards, and we are similarly distressed by the unpredictable nature of the local courts, where evidentiary requirements are often imposed without due consideration for the costs and reasonableness of such demands.

We believe that it is in the best interests of this industry and the consumers for there to be consistent and reasonable expectations from the courts and consumer attorneys regarding the type, form and content of the information and evidence offered in support of collection litigation, and we appreciate the FTC's leadership on these issues. It is important to note that we make great efforts and dedicate significant resources to contact and work with consumers to resolve their delinquent accounts prior to litigation. Our enforcement of a valid contract through the legal process is an expensive but necessary component of collections, and it is our hope that the roundtable discussions will provide the information needed to preserve the litigation process and protect both consumers and collection agencies against regulations that curtail the flexibility and predictability that allow us to best work with our customers to find mutually-beneficial solutions.

Thank you again for this opportunity to comment. Please feel free to speak with Xenia Murphy at the upcoming discussion and to contact me directly if I can answer any questions or provide you with additional information in the future.

Sincerely,

Lance S. Martin
Vice President, Compliance and Regulatory Affairs

## DECLARATION OF EXPERIENCE OF CHARLES M. DELBAUM

1. I am a senior attorney at the National Consumer Law Center in Boston, Massachusetts, where I have been employed since 2005.

2. I graduated from Harvard Law School in 1971 and Amherst College (B.A., *cum laude*) in1968.

3. I was admitted to practice before the Massachusetts Supreme Judicial Court in 1973, the Ohio Supreme Court in 1974, and the Louisiana Supreme Court in 1993 (the latter two admissions are on voluntary inactive status), and have also been admitted to practice before the United States District Courts for Massachusetts, the Northern District of Ohio, the Eastern and Western Districts of Louisiana, as well as the Sixth Circuit Court of Appeals, the Fifth Circuit Court of Appeals, and the Federal Circuit.

4. From 1971 to 1973, I served as a law clerk to the Hon. Malcolm Muir, U.S. District Court, M.D. Pa.

5. From 1973 to 1975, I was an associate engaged in general trial practice at Berkman, Gordon and Kancelbaum, Cleveland, Ohio.

6. From 1975 to 1979, I was a staff attorney in the law reform division of the Cleveland Legal Aid Society was lead or co-counsel in several class actions on behalf of nursing home patients, residents of mental health facilities, and prisons, including *Jane Resident v. Emmanuel Family Training Center, Inc.*, CCH Medicaid- Medicare Guide para. 29,908, U.S. Dist. Ct. (N.D. Ohio 1978) and *Register v. Denton*, No.1:78-cv-01680-DDD, U.S. Dist. Ct. (N.D. Ohio).

7. From 1979 to 1992, I was a partner in the firm of Stege, Delbaum and Hickman, Cleveland, Ohio engaged in general civil trial practice, including conducting a dozen jury trials as lead counsel.

8. From 1992 to 2005, I was Director of Litigation and Advocacy at New Orleans Legal Assistance and lead or co-counsel in several class actions, until congressional restrictions prohibited such representation in 1996, including *Blanchard v. Forrest*, 71 F.3d 1163 (5th Cir. 1996)(retroactive Medicaid benefits); cert. denied, 116 S.Ct. 2540 (1996); *Wiggins vs. HANO*, No. 93-1319, U.S. Dist. Ct. (E.D. La.)(public housing tenants' rights); *Tubre v. RTA*, No. 93- 4124, U.S. Dist. Ct. (E.D.La.)(transportation services for disabled individuals); *Dugas v. Hoffpauir*, No. 93-1699, U.S. Dist. Ct. (W.D. La.)(social security disability determination process).

# EXHIBIT 3

9.     While at New Orleans Legal Assistance, I also supervised the Tulane Law
       School consumer/foreclosure clinic, co-authored a chapter on Louisiana
       Consumer Law for the 2001 and 2005 Louisiana Legal Services Desk books,
       and presented on various consumer topics at numerous CLEs.

10.    I am the Co-Editor of and a contributing author to the most recent editions of
       the following manuals published by NCLC: Consumer Class Actions, Fair
       Debt Collection, Credit Discrimination and Fair Credit Reporting.  I have
       been a presenter at numerous NCLC national conferences on Class Action
       Developments and Fair Debt Collection and Fair Credit Reporting issues. I
       have been joint coordinator of and moderator at the annual NCLC Consumer
       Class Action Symposium for the past five years.

11.    From 2007 to the present, I have served on occasion as a consultant on
       consumer law topics at the Sandra Day O'Connor School of Law legal clinic
       at Arizona State University.

12.    I am, or have been, co-counsel in numerous consumer class action cases,
       including but not limited to In Re Washington Mutual Overdraft Protection
       Litigation, Case No. 03-2566 ABC, U.S. D. Ct. Central District of California;
       Duff v. Washington Mutual Bank, Case No. 2:04-cv-2309 JLR, U.S. D. Ct.
       Western District of Washington at Seattle; Hood v. Santa Barbara Bank &
       Trust, Case No. 1156354, Superior Court of the State of California (Santa
       Barbara County) (settlement approved and final judgment entered); Pettway v.
       Harmon Law Offices, P.C., Case No. 03-10932-RCL, U.S. D. Ct . (D. Mass.)
       (settlement approved and final judgment entered); Mogel v. UNUM Life
       Insurance Company of America, Case No. 07-cv-10955-NMG, U.S. D. Ct. (D.
       Mass.) (settlement preliminarily approved; final approval pending; White v.
       Experian Information Solutions, Inc, Case No. 05-cv-01070-DOC and related
       cases, U.S. D. Ct. C. D. Cal) (settlement preliminarily approved; final
       approval pending); Blake v. Riddle and Wood, Case No. 08-12033 (D. Mass.)
       (settlement preliminarily approved; final approval pending); Tammaro v.
       Direct Federal Credit Union, Case NO. 08-5508-BLS2 (Ma. Superior Court)
       (settlement preliminarily approved; final approval pending); Yourke v. Bank
       of America, Case No. 09-487100 (Cal. Sup. Court, San Francisco); Rodriguez
       v. Chase Bank USA, Case No. 09-10614 (D. Mass.); Ramirez v. Greenpoint
       Mortgage Funding, Case No. 08-369 (N.D. Cal.); Alleyne v. Flagstar, et al.,
       Case No. 07-12128, U.S. D. Ct. District of Massachusetts; Puello v.
       Citifinancial/Citigroup., Case No. 08-10417, U.S. D. Ct. District of
       Massachusetts; Barrett v. Option One/ H& R Block Bank, Case No. 08-10157,
       U.S. D. Ct. District of Massachusetts; Faber v. Metropolitan Life Insurance
       Company, Civ. Act. No.: 08 Civ. 10588, U.S. D. Ct. Southern District of New
       York; Tammaro v. Direct Federal Credit Union, C.A. No. 08-5508-BLS2,
       Massachusetts (Suffolk Business Litigation Session) Superior Court; Vander
       Luitgaren v. Sun Life Assurance Company, et al., Case No. 09-CV-11410,
       U.S. D. Ct. District of Massachusetts; Powell-Perry v. Branch Banking &

Trust, Inc., et al., C.A. 1:09-cv-619, U.S. D. Ct. Middle District of North
Carolina; Bosque v. Wells Fargo Bank, N.A., Civil Action No. 10-10311, U.S.
D. Ct. District of Massachusetts; Johnson v. BAC Home Loans Servicing,
LP, Civil Action No. 10-10316, Civil Action No. 10-10316; Belyea v. Litton
Loan Servicing, LLP, Case Number 1:10-cv-10931.


Signed under the pains and penalties of perjury this 28 day of March, 2011.


Charles M. Delbaum, Mass. Bar # 543225
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 542-8010

## STATEMENT OF EXPERIENCE
## STUART T. ROSSMAN

1.      I am a senior attorney and Director of Litigation at the National Consumer Law Center in Boston, Massachusetts.

2.      I have been admitted to practice before the Massachusetts Supreme Judicial Court since 1978, and the United States District Court for the District of Massachusetts and the First Circuit Court of Appeals since 1979.

3.      I am a graduate of the Harvard Law School (J.D., *cum laude*, 1978) and the University of Michigan (B.A., *magna cum laude*, 1975).

4.      From 1978 to 1991 I was first an associate, and then a partner, in the litigation department at the Boston law firm of Gaston & Snow.  My practice consisted entirely of civil trial cases, including, but not limited to, litigation on behalf of consumers injured by unfair and deceptive business practices.

5.      From 1991 to 1999 I served as an Assistant Attorney General in the Massachusetts' Attorney General's Office.  From 1991 to 1995 I was Chief of the Trial Division, representing government agencies in a wide variety of civil litigation cases, primarily in defensive, but also in affirmative, matters.  The nature of the cases I supervised or tried included a full spectrum of tort and contract claims brought against the Commonwealth.  The practice also included representation of government agencies in employment disputes, environmental and civil rights violation claims.

6.      From 1995 to 1999 I was Chief of the Business and Labor Protection Bureau.  The newly created Bureau focused on combating white-collar economic fraud through criminal and civil enforcement.  It consisted of the Insurance Fraud Division, the Unemployment Fraud Division, the Medicaid Fraud Control Unit and the Fair Labor and Business Practices Division.

7.      Since 1993 I have been a member of the adjunct faculty at the Northeastern University School of Law teaching annual courses in Civil Trial Advocacy.  During the Fall, 2010 term at Northeastern University School of Law I have been the Givelber Distinguished Visiting Lecturer in Public Interest Law teaching a seminar on Predatory Lending litigation.  In 2003 I co-taught a Consumer Law Class at the Suffolk University School of Law.  I also have lectured frequently and/or chaired litigation oriented educational programs for PLI, the American Association for Justice, the National Association of Consumer Advocates, the National Legal Aid and Defenders Association, MCLE, the Massachusetts Bar Association and the Boston Bar Association.

8.      On July 1, 1999, I became the Director of Litigation at the National Consumer Law Center where I am responsible for coordinating and litigating cases on behalf of

## EXHIBIT 4

income and/or age qualified individuals, primarily in the areas of consumer financing, utilities regulation and affordable housing.  In that capacity, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in class actions filed in over 80 cases, including matters formerly or currently pending in the United States District Courts for the Southern District of New York, New Jersey, Eastern District of Pennsylvania, Puerto Rico, Georgia, Central District of Tennessee, Northern District of Illinois, Kansas, the Central and Northern Districts of California and the Western District of Washington.  In addition, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in class actions filed in the state courts of California, Ohio, Rhode Island, Washington and Wisconsin.  Finally, I have participated in numerous consumer class actions filed in the United States District Court for Massachusetts and the courts of the Commonwealth of Massachusetts.

9.     While at the National Consumer Law Center I have been lead or co-counsel in over 80 filed consumer class action cases, including, but not limited to, <u>Cason</u> v. <u>Nissan Motor Acceptance Corp.</u>, C.A. No. 3-98-0223, U.S. D. Ct. Middle District of Tennessee; <u>Coleman</u> v. <u>General Motors Acceptance Corp.</u>, C.A. No. 3-98-0211, U.S. D. Ct. Middle District of Tennessee; <u>Morkavage</u> v. <u>Morgan Stanley Dean Witter</u>, C.A. No.99-40114, U.S. D. Ct. District of Massachusetts; <u>Follansbee</u> v. <u>Discover Financial Services</u>, C.A. N. 99-C-3827, U.S. D. Ct. Northern District of Illinois; and <u>Chilson</u> v. <u>Associates National Bank</u>, C.A. 2000-0776, Massachusetts (Worcester County) Superior Court; <u>Samuel v. EquiCredit</u>, C.A. No. 00-6196, U.S. D. Ct. Eastern District of Pennsylvania; <u>Jones v. Ford Motor Credit Co.</u>, Case No. 00-Civ-8330, U.S. D. Ct. Southern District of New York; <u>Smith v. Chrysler Financial Company</u>, Civil Action No. 00-6003, U.S. D. Ct. of New Jersey; <u>Sandoval v. Washington Mutual</u>, C.A. No. 01-2-06488-1, Superior Court of the State of Washington ; <u>Baltimore v. Toyota Motor Credit Corp.</u>, C.A. No CV-01-05564 NM, U.S. D. Ct. Central District of California; <u>Borlay v. Primus Automotive Financial Services, Inc.</u>, Civil No. 3:02-0382, U.S. D. Ct. Middle District of Tennessee; <u>Willis v. American Honda Finance Corp.</u>, Case No. 3-02-0490, U.S. D. Ct. Middle District of Tennessee; <u>Osborne v. Bank of America</u>, Case No. 3-02-0364, U.S. D. Ct. Middle District of Tennessee; <u>Russell v. Bank One</u>, Case No. 3-02-0365, U.S. D. Ct. Middle District of Tennessee; <u>Logan v. Firstar</u>, Case No. 3-02-0681, U.S. D. Ct. Middle District of Tennessee; <u>Zipperer v. Supportkids, Inc.</u>, Case No. 02 CV 233, State of Wisconsin Circuit Court (Manitowoc County); <u>In Re Washington Mutual Overdraft Protection Litigation</u>, Case No. 03-2566 ABC, U.S. D. Ct. Central District of California; <u>Hood v. Santa Barbara Bank & Trust</u>, Case No. 1156354, Superior Court of the State of California (Santa Barbara County); <u>Pettway v. Harmon Law Offices, P.C.</u>, Case No. 03-10932-RCL, U.S. D. Ct. District of Massachusetts; <u>Wilborn v. Bank One Corp.</u>, Case No. 03-cv-02674, Ohio Common Pleas Court (Mahoning County); <u>Amos v. Advanced Funding, Inc</u>, Civil Action No. 1-04-CV-2911, U.S. D. Ct. Northern District of Georgia (Atlanta Division); <u>Henry v. Structured Investments Co., Inc.</u>, Case No. 05CC00167, Superior Court of the State of California (Orange County); <u>Duff v. Washington Mutual Bank</u>, Case No. 2:04-cv-2309 JLR, U.S. D. Ct. Western District of Washington at Seattle; <u>White, et al. v. Experian Information Solutions, Inc., et al.</u>, Case No. SA CV05-2070, U.S. D. Ct. Central District of

California; <u>Alleyne v. Flagstar, et al.</u>, Case No. 07-12128, U.S. D. Ct. District of Massachusetts; <u>Mogel v. Unum Life Insurance Company of America</u>, Case No. 07-CA-10955, U.S. D. Ct. District of Massachusetts; <u>Puello v. Citifinancial/Citigroup.</u>, Case No. 08-10417, U.S. D. Ct. District of Massachusetts; <u>Barrett v. Option One/ H&R Block Bank</u>, Case No. 08-10157, U.S. D. Ct. District of Massachusetts; <u>Blake v. Riddle & Wood, P.C.</u>, Case N. 08-12033, U.S. D. Ct. District of Massachusetts; <u>Faber v. Metropolitan Life Insurance Company</u>, Civ. Act. No.: 08 Civ. 10588, U.S. D. Ct. Southern District of New York; <u>Tammaro v. Direct Federal Credit Union</u>, C.A. No. 08-5508-BLS2, Massachusetts (Suffolk Business Litigation Session) Superior Court; <u>Rodriguez v. Chase Bank USA, N.A.</u>, Case No. 1:09-CV-10614, U.S. D. Ct. District of Massachusetts; <u>Vander Luitgaren v. Sun Life Assurance Company, et al.</u>, Case No. 09-CV-11410, U.S. D. Ct. District of Massachusetts; <u>Powell-Perry v. Branch Banking & Trust, Inc., et al.</u>, C.A. 1:09-cv-619, U.S. D. Ct. Middle District of North Carolina; <u>Yourke v. Bank of America, N.A., et al.</u>, Civil Action No. 09-02186, U.S. D. Ct. Northern District of California; <u>Bosque v. Wells Fargo Bank, N.A.</u>, Civil Action No. 10-10311, U.S. D. Ct. District of Massachusetts; <u>Johnson v. BAC Home Loans Servicing , LP</u>, Civil Action No. 10-10316, Civil Action No. 10-10316; <u>Durmic v. J.P. Morgan Chase Bank, N.A.</u>, Civil Action No. 10-10380; <u>Reyes v. Indymac Mortgage Services, FSB</u>, Civil Action No. 10-10389; <u>Belyea v. Litton Loan Servicing, LLP</u>, Case Number 1:10-cv-10931.LLP.

10. The National Consumer Law Center ("NCLC") has been referred to as the "leading non-profit low-income consumer advocacy organization in the country. Memorandum and Order, January 27, 1999, <u>Mazola, et al v. The May Department Stores Company</u>, United States District Court for the District of Massachusetts, 97-CV-10872-NG (J. Gertner). NCLC has been representing low-income consumers before government agencies, Congress and state legislatures since 1969. It has appeared in the United States Supreme Court and federal and state courts and has successfully presented many important cases affecting consumer borrowers. It provides consultation and assistance to legal services, private and government attorneys in all fifty states. NCLC publishes a nationally acclaimed series of manuals on all major aspects of consumer credit and sales. It also conducts training sessions nationally on the rights of consumer borrowers for attorneys, paralegals and other counselors. NCLC works closely with lawyers representing low- income consumers, and with federal and state officials, labor unions, and community and civil rights organizations to promote justice for consumers. NCLC maintains offices in Boston, Massachusetts and Washington, D.C.

11. The Center's staff of 44 permanent employees includes 20 attorneys who possess over 200 cumulative years of specialized consumer law expertise, and one energy/utilities advocate. In addition, a changing mix of special projects attorneys, consultants, fellows, and temporary hires normally supplements the regular staff. NCLC is governed by a volunteer national board of directors that includes a past president of the American Bar Association, a former Arizona Solicitor General, as well as bar association representatives and clients from low-income communities.

12. As Director of Litigation at the National Consumer Law Center I have coordinated the National Consumer Law Center's annual Consumer Class Action Symposium since its first presentation in Baltimore, MD, in October, 2001. I am the co-editor of the 7th Edition of the NCLC Consumer Class Actions manual.

Signed under the pains and penalties of perjury this 28th day of March, 2011.

/s/ Stuart T. Rossman

Stuart T. Rossman B.B.O. #430640
National Consumer Law Center
7 Winthrop Square 4th Floor
Boston, MA 02110
(617) 542-8010

## BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

Bramson Plutzik, Mahler & Birkhaeuser, LLP is a San Francisco Bay Area law firm that specializes in representing plaintiffs in class actions, derivative suits and other complex litigation.

Members of the firm serving as lead or co-lead counsel have successfully handled class actions in which hundreds of millions of dollars have been recovered for the class members. Among these cases are: *In re Unocal Toxic Spill Litigation,* in which $80 million was recovered for victims of a release of toxic chemicals; *Clark v. Ford Motor Credit Co.,* in which the plaintiff class recovered $58.25 million; *Klussman v. Cross Country Bank,* in which the class achieved a $21 million recovery; *Nguyen v. Verizon Wireless,* which also produced a $21 million recovery; *Patrick v. Blue Shield of California,* in which $20 million was recovered for the class; *Gross v. Barnett Bank,* in which over $19 million was recovered; *Ganal v. Toyota Motor Credit,* in which an $18 million recovery was achieved; *Henderson v. First Interstate Bank of California,* in which $16.25 million was recovered for the plaintiff class; *Guyette v. Viacom, Inc.,* in which a settlement was negotiated that included a cash payment to the class of $13 million; *Reed v. Bank of America,* in which $9 million was recovered; *In re Worlds of Wonder Securities Litigation,* a securities fraud action which resulted in a $9 million recovery; *Whitehouse v. Westcorp Financial Services, Inc.,* in which an $8 million settlement was achieved. The firm's partners have represented clients in class action and derivative cases in federal and state courts throughout the United States.

In addition to its expertise in class actions and derivative litigation, the firm has also achieved prominence and expertise in the areas of telecommunications law and First Amendment litigation. The firm's efforts in these areas have resulted in a substantial number of significant published decisions, including two favorable rulings from the United States Supreme Court -- *Community Communications v. City of Boulder,* 455 U.S. 40 (1982) and *City of Los Angeles v. Preferred Communications,* 476 U.S. 488 (1986). *See also Preferred Communications v. City of Los Angeles,* 13 F.3d 1327 (9th Cir.), *cert. denied,* 114 S.Ct. 2738 (1994).

### Robert M. Bramson

Robert M. Bramson has more than twenty-eight years of experience in the litigation of antitrust and consumer cases, class actions and other complex litigation. Mr. Bramson received his undergraduate degree in economics, summa cum laude, from the University of California at Berkeley in 1977, and obtained his law degree from the Boalt Hall School of Law in 1981.

Mr. Bramson has represented both plaintiffs and defendants in numerous antitrust cases, and has acted as lead counsel in two such actions taken to trial – *Pacific West Cable Co. v. City of Sacramento,* et al. (E.D. Cal.) ($12 Million settlement on 24th day of trial, at close of plaintiff's case; Sherman Act §2 monopolization claims) and *Coleman et al. v. Sacramento Cable Television* (Sacramento Sup. Ct.) ($2.4 Million judgment after 17-day trial; class action/B & P §17200 case; B & P §17024 discriminatory pricing claims).

Mr. Bramson specializes in antitrust, business torts and communications litigation, as well as in class action cases. He served for many years on the Board of Directors of the National Association of Consumer Advocates and co-chaired its class action committee. He is a contributing author to the National Consumer Law Center's publication Consumer Class Actions. He acted as reporter for the National Association of Consumer Advocates in preparing its influential Standards and Guidelines For Consumer Class Actions, 176 F.R.D. 375 (1997).

# EXHIBIT 5

61988

Mr. Bramson's lecture topics have included "Strategic and Ethical Issues in Litigating 17200 Cases" (Bar Association of San Francisco, San Francisco 2001), "Equitable Remedies In Class Actions and Under California's Section 17200 Statute" (National Association of Consumer Advocates, Chicago 2000), "Ethical Issues Arising in Class Action Settlements" (National Consumer Law Center, Wash. DC and San Diego 1999 and 1998) "California's Business & Professions Code Section 17200" (California Bar Association, Lake Tahoe 1997), "Preparation of Competitive Business Practices Cases" (Continuing Education of the Bar, Sacramento 1997), and "The Cable Communications Policy Act of 1984" (California State University, Fullerton 1993).

### Robert M. Bramson Representative Cases

*Klussman v. Cross Country Bank* (Alameda County Superior Court) Honorable Ronald Sabraw and Honorable Lawrence Appel, presiding. Co-counsel for a consumer class against credit card issuer. Shortly before trial was due to commence, a settlement was negotiated that resulted in the recovery of consideration exceeding $21 million.

*Boltz v. Buena Vista Home Entertainment, et al.* (Los Angeles Superior Court) Honorable Anthony Mohr, presiding. Co-counsel on behalf of a nationwide class of hard of hearing persons seeking "close captioning" of content on the DVDs distributed to the public by four major motion picture studios. Case was settled by stipulations to industry-changing injunctions requiring greater captioning.

*Acree v. General Motors Acceptance Corp.* (Sacramento Superior Court; Third District Court of Appeal) Honorable James Long, presiding. Class action challenging insurance charges imposed upon borrowers by defendant. Following extended trial and multiple appeals, judgment for class and award of fees against defendant totaling approximately $7,000,000 upheld on appeal.

*In re Unocal Refinery Litigation* (Contra Costa Superior Court) Honorable Ignacio Ruvulo, presiding. One of two co-lead counsel for a class of victims exposed to a toxic chemical spill. Following extensive discovery, including several months of daily depositions, an $80,000,000 settlement was negotiated.

*Pacific West Cable Company v. City of Sacramento, et al.* (U.S. District Court, E.D. Cal.) Honorable Milton L. Schwarz, presiding. Antitrust jury trial on behalf of plaintiff. Case settled for $12,000,000 after month-long presentation of plaintiff's case in chief.

*Coleman v. Sacramento Cable Television* (Sacramento Superior Court) Honorable Roger K. Warren, presiding. Judgment of $2,400,000 obtained for clients in Bus. & Prof. Code §17200 "quasi-class" case, following 26 day trial.

*Campisi v. Chavez, et al.* (Arbitration) Charles E. Farnsworth, Esq., Referee, presiding. Defended clients against claims of breach of contract and breach of fiduciary duty. Three week arbitration proceeding resulting in ruling limiting plaintiff to amount stipulated as due.

*Pacific West Cable Company v. City of Sacramento, et al.* (U.S. District Court, E.D. Cal.) Honorable Milton L. Schwarz, presiding. Twenty-nine day jury trial challenging municipal cable franchising activities. Favorable jury verdicts (see 672 F. Supp. 1322) led to $6,000,000 settlement for client as well as injunction permitting access to the market.

*Nor-West Cable Communications Partnership v. City of St. Paul* (U.S. District Court, D. Minn.) Honorable Joseph Alsop, presiding. Three month jury trial challenging municipal policy fostering monopolization of local cable television market.

*Furniture Creations, Inc. v. Universal Furniture* (Los Angeles Superior Court) Honorable Robert Einstein, presiding.  Three week jury trial in breach of contract case resulting in $1,000,000 verdict for clients.

## Robert M. Bramson Selected Published Decisions:

*Klussman v. Cross Country Bank*, 134 Cal.App.4th 1283 (2005).

*Acree v. General Motors Acceptance Corp.*, 92 Cal.App.4th 385 (2001).

*Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D. Kan. 1995).

*Preferred Communications, Inc. v. City of Los Angeles*, 13 F.3d 1327 (9th Cir.), *cert. denied*, 512 U.S. 1235 (1994).

*Gordon v. Ford Motor Credit Corp.*, 868 F. Supp. 1191 (N.D. Cal. 1992).

*Century Federal, Inc. v. City of Palo Alto*, 710 F.Supp. 1559 (N.D. Cal. 1988).

*Pacific West Cable Company v. City of Sacramento*, 672 F. Supp. 1322 (E.D. Cal. 1987) and 693 F. Supp. 865 (E.D. Cal. 1988).

*Colorado Springs Cablevision, Inc. v. Lively*, 579 F. Supp. 252 (D. Colo. 1984).

## Alan R. Plutzik

Alan R. Plutzik specializes in complex business litigation in federal and state courts. Areas of particular emphasis include consumer class actions, securities fraud and corporate governance litigation, antitrust and communications law.  Mr. Plutzik is admitted to practice in California and the District of Columbia Bar (inactive member) and is a member of the bars of the United States Supreme Court, the Second, Third, Eighth, Ninth, Tenth and District of Columbia Circuits and numerous federal district courts.

Mr. Plutzik joined the firm upon his graduation from the University of California at Berkeley's Boalt Hall School of Law in 1977.  He received his undergraduate degree from St. John's College, Annapolis, Maryland, in 1971, and holds an M. A. from Stanford University. From 1981-1986, Mr. Plutzik was resident partner in the firm's Washington, D.C. office.  He practiced with the San Francisco law firm of Gold & Bennett from 1986-1994, and returned to the firm as a partner in 1995.  Over the course of his thirty-four year career, Mr. Plutzik has handled a wide variety of class actions and derivative cases.  He has represented, among other clients,

- corporate shareholders and limited partners challenging conduct by their general partners, officers or directors;

- consumers and businesses harmed by price-fixing and other anticompetitive conduct;

- victims of consumer fraud;

- investors in securities fraud cases and derivative suits;

- employees in ERISA and wage/hour cases;

3

61988

- purchasers of mislabeled and defective products;

- victims of toxic pollution;

- persons harmed by defective products; and

- telephone, cellular and cable television subscribers.

Mr. Plutzik has also represented high-tech companies in litigation and arbitration, and broadcasters, cable television companies, communications common carriers and consumers in litigation and in administrative proceedings before the Federal Communications Commission and the California Public Utilities Commission.

Mr. Plutzik has written or lectured on topics that include class actions, California consumer law, substantive and procedural issues under the federal securities laws, First Amendment issues applicable to new media, cable television franchising and legal issues arising from cable television companies' access to utility poles and real estate developments. He has appeared as a guest radio commentator on the Len Tillem Show on KGO-Radio in San Francisco, discussing class actions, consumer protection law and investor rights.

Mr. Plutzik has served as a judge *pro tem* on the Contra Costa County Superior Court. He is also Co-President of the Warren W. Eukel Teacher Trust, a community-based charity that honors outstanding teachers in Contra Costa County, California.

### Alan R. Plutzik Representative Cases

*Patrick v. California Physicians' Service dba Blue Shield of California* (San Francisco County, California Superior Court and United States District Court for the Northern District of California). Mr. Plutzik represented the plaintiffs in a class action for consumer fraud, unfair business practices and violations of ERISA arising from allegedly deceptive and unfair practices by a health insurance company in connection with patient co-payments for hospital treatment. A settlement of $20 million was negotiated after the close of discovery.

*In re Cellphone Termination Fee Cases* – Handset Locking Actions (Alameda County, California Superior Court). Mr. Plutzik served as co-lead counsel in five coordinated cases challenging the secret locking of cellphone handsets by major national wireless carriers to prevent consumers from activating them on competitive carriers' systems. Settlements have been approved in all five cases on terms that require the cellphone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions. The settlements fundamentally changed the landscape for cellphone consumers regarding the locking and unlocking of cellphone handsets.

*In re Cellphone Termination Fee Cases* – Early Termination Fee Cases (Alameda County, California Superior Court and Federal Communications Commission). In separate cases that are a part of the same coordinated litigation as the Handset Locking Cases, Mr. Plutzik is Liaison Counsel and a member of the plaintiffs' Executive Committee in connection with claims challenging the validity under California law of early termination fees imposed by national cellphone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million. In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint PCS had collected from California consumers over an eight-year period were void and unenforceable.

4

*Guyette v. Viacom, Inc.* (Alameda County, California Superior Court). Mr. Plutzik was co-counsel for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with the subscribers. A settlement was negotiated shortly before trial under which defendants paid the class $13 million in cash and paid for all expenses of notice to the class and settlement administration.

*Green v. Metropolitan Life Insurance Co.* (San Francisco County, California Superior Court). Mr. Plutzik was co-counsel for a California class of MetLife policy holders in a class action alleging that MetLife had engaged in "twisting," "churning" and other misconduct in the sale of replacement life insurance policies. The claims asserted included fraud, negligent misrepresentation, breach of fiduciary duty, breach of the covenant of good faith and unfair business practices. After the California class was certified, the case settled on a nationwide basis for consideration in excess of $1 billion.

*In re Pacific Lumber Company Securities Litigation* (United States District Court, Southern District of New York). Mr. Plutzik was counsel for the plaintiff class in a securities class action arising out of a tender offer for Pacific Lumber Company by a corporate raider. The plaintiff class recovered in excess of $140 million.

*In re Worlds of Wonder Securities Litigation* (United States District Court, Northern District of California). Mr. Plutzik was co-lead counsel for the plaintiff class in a securities fraud class action against officers, directors, venture capitalists and auditors of failed toy company. After percipient and expert discovery, summary judgment, appeal and remand, a settlement was reached against the company's auditor, Deloitte & Touche, LLP, for $9 million. The case resulted in a number of published opinions – *e.g., In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407 (9th Cir. 1994), cert. denied, 516 U.S. 868 (1995); 694 F. Supp. 1427 (N.D. Cal. 1988); 721 F. Supp. 1140 (N.D. Cal. 1989); 1990 U.S. Dist. LEXIS 18396, [1990-91 Transfer Binder] Fed. Sec. L. Rep. (CCH) 95,689 (N.D. Cal. 1990); 147 F.R.D. 208 (N.D. Cal. 1992).

*McCall v. Newkirk Capital LLC* (Connecticut Superior Court, New Britain Judicial District). Mr. Plutzik represented a class of investors in 90 limited partnerships in a suit arising out of a consolidation or "rollup" of the partnerships. A settlement was negotiated and approved by the Court that provided for the class to receive significant consideration, including cash, additional partnership units and a restructuring of certain assets and agreements with the general partner and its affiliates.

*In re Daisy Systems Securities Litigation* (United States District Court, Northern District of California). Mr. Plutzik represented a plaintiff class in a securities fraud class action against the directors and officers of a Silicon Valley company. A $13.1 million settlement was reached.

*Hodge v. Franklin Select Realty Trust* (San Mateo County, California Superior Court). Mr. Plutzik was co-counsel for a shareholder class in a claim for fraud, negligent misrepresentation, breach of fiduciary duty and aiding and abetting breach of fiduciary duty against directors and officers of a real estate investment trust, arising out of merger with two other related companies. A settlement of $4 million was negotiated.

*Barnett v. Glenborough Pension Investors* (San Mateo County, California Superior Court). Mr. Plutzik was co-counsel for a plaintiff class of limited partners in a claim for fraud, negligent misrepresentation, breach of fiduciary duty and aiding and abetting breach of fiduciary duty against general partners, attorneys and lenders arising from the restructuring of a real estate limited partnership. A settlement of approximately $3 million was reached after the close of expert discovery.

*In re Technical Equities Federal Securities Litigation* (United States District Court, Northern District of California). Mr. Plutzik represented the plaintiff class in securities fraud class action against directors, officers, auditors, attorneys, lenders and investment bankers of a public corporation that was alleged to have operated a complex Ponzi scheme. A global classwide settlement in the amount of $13 million was reached shortly before trial. *See In re Technical Equities Federal Securities Litigation*, 1988 U.S. Dist. LEXIS 15813, [1988-89 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 94, 093 (N.D. Cal. Oct. 3, 1988)

*Daniels v. Centennial Group* (Orange County, California Superior Court). Mr. Plutzik was co-counsel for the plaintiff class in a claim for fraud, negligent misrepresentation and breach of fiduciary duty against general partners and promoters arising from a "roll-up" of six real estate limited partnerships. A settlement of approximately $4 million was reached on behalf of the investors. The case resulted in an important published opinion regarding the standards for class certification under California law – *Daniels v. Centennial Group, Inc.*, 16 Cal.App.4th 467 (1993).

*Harbor Finance Partners v. BKP Capital Management et al.* (San Francisco County Superior Court). Mr. Plutzik was co-counsel for a plaintiff class consisting of both individual and institutional investors in an action asserting claims of misrepresentation, breach of fiduciary duty and unfair business practices against a hedge fund, its general partner, its auditor and others. The action settled on terms favorable to the class.

*McCullough v. Jameson* (United States District Court for the Northern District of California) – Individual and derivative case on behalf of shareholders of a privately held oil company for alleged misappropriation of corporate opportunities and other breaches of fiduciary duties. The case settled favorably.

*Stock Options Backdating Derivative Cases* (United States District Court, Northern District of California) – Mr. Plutzik has served as Liaison Counsel in a number of options backdating derivative cases in the United States District Court for the Northern District of California, including *In re Integrated Silicon Solutions Derivative Cases*, *In re Actel Derivative Cases* and *In re Chordiant Derivative Cases*. Successful results were achieved in all of those cases.

*In re Washington Public Power Supply Securities Litigation* (United States Court of Appeals for the Ninth Circuit) – Mr. Plutzik represented a class action law firm in a case that established important principles regarding the compensation of plaintiffs' counsel in federal class actions. The case resulted in a published opinion. *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

*Antitrust Direct and Indirect Purchaser Class Actions* – Mr. Plutzik has served in a leadership position in numerous antitrust class actions, including *In re Methionine Direct Purchaser Antitrust Litigation* (United States District Court for the Northern District of California), *In re California Indirect Purchaser MSG Antitrust Litigation* (San Francisco County Superior Court) and *In re California Infant Formula Indirect Purchaser Antitrust Litigation* (San Francisco County Superior Court).

*California Community Television Association v. Pacific Gas & Electric Company* (Alameda County, California Superior Court), *Group Cable v. PG&E* (United States District Court for the Northern District of California) and *California Community Television Association v. Pacific Gas & Electric Company* (California Public Utilities Commission) – associational and class action cases alleging antitrust and related business tort claims for denial of access to utility poles on reasonable terms, and administrative action seeking regulatory ruling setting fair and reasonable prices and terms, brought on behalf of California cable television companies against a

6

public utility. The cases were settled on terms that permitted favorable conditions of access to the poles.

*Condes v. Evercom et al.* (Alameda County, California Superior Court). Mr. Plutzik was co-counsel for a class of recipients of inmate telephone calls. A partial class settlement which, together with individual settlements, resulted in the recovery of more than $1 million was negotiated and approved by the Court.

*Lucero v. Frederick's of Hollywood, Inc.* (Santa Clara County, California Superior Court). Mr. Plutzik served as lead counsel for an employee class in this wage and hour class action. A $950,000 settlement was approved by the Court.

*USA Media Group LLC v. Truckee Donner Public Utility District* (United States District Court for the Eastern District of California). Mr. Plutzik represented a cable television company in a claim brought against a public utility district for constitutional and antitrust violations and related state-law claims arising from restrictions imposed by the public utility district on the cable television company's access to utility poles owned by the public utility district, which was planning to offer competitive cable television service. The case settled on terms that permitted the cable television company to continue to obtain access the poles on reasonable terms and conditions.

*Tele-Communications of Key West, Inc. v. United States* (United States District Court, District of the District of Columbia). Mr. Plutzik represented a cable television company in constitutional litigation arising from its provision of service on Homestead Air Force Base. *Telecommunications of Key West, Inc. v. United States*, 757 F.2d 1330 (D.C. Cir. 1985).

*Citizens Cable Communications Co. v. Cox Cable Communications Co.* (United States District Court for the Northern District of Indiana). Mr. Plutzik represented a cable television company in litigation arising from an option to purchase a cable television system in a neighboring community. The case settled favorably during trial.

### Daniel E. Birkhaeuser

Daniel E. Birkhaeuser received his law degree from the University of California, Davis in 1988. While at Davis, he served as an Editor of the *U.C. Davis Law Review*.

Following graduation, Mr. Birkhaeuser joined the law firm of McCutchen, Doyle, Brown and Enersen. At the McCutchen firm, he represented plaintiffs and defendants in a wide variety of complex civil litigation matters including real estate, bankruptcy and environmental litigation. In 1991, Mr. Birkhaeuser co-chaired an eight week trial in *Quadrant Corporation v. First Interstate Bank*, Contra Costa County Superior Court Action No. C90-03855 recovering for his client over $15 million which, at that time, was the largest jury verdict in Contra Costa County history.

In 1992, Mr. Birkhaeuser began to focus his career on class action litigation at the trial and appellate levels. One such matter, *Harris v. Chase Manhattan Bank*, N.A. (1994) 34 Cal. App. 4th 1563, resulted in a favorable decision, the reasoning of which was affirmed by the California Supreme Court in a companion case entitled *Smiley v. Citibank* (1995) 11 Cal. 4th 138, and ultimately by the United States Supreme Court in the same case. *Smiley v. Citibank* (1996) 517 U.S. 735.

Mr. Birkhaeuser joined the firm in 1994 and became a partner in 1997. At the firm, he has prosecuted class action cases involving insurance, false nutritional labeling, price fixing and securities fraud. Mr. Birkhaeuser served in a leadership position in *In Re Kansas Vitamin*

7

*Antitrust Litigation* and *In re Wisconsin Vitamin Antitrust Litigation,* which were coordinated through proceedings in the District of Columbia and consolidated with *parens patriae* actions brought by attorneys general in 23 jurisdictions; and in *In re DRAM California Indirect Purchaser Antitrust Litigation* and *In re California Polyester Indirect Purchaser Antitrust Litigation,* in which he serves on the plaintiffs' Executive Committee. He has also served as a judge *pro tem* in the Contra Costa Superior Court.

**Other Significant Cases:**

*Van Warmerdam v. Honey Hill Farms* (arbitration) Honorable William Boone, presiding. Lead counsel in complex contract dispute resulting in verdict in client's favor on complaint and cross-complaint.

*Meadow Wood Land Company v. Landmark Vineyards, Ltd, et. al.*, First Appellate District No. AO43692. Lead counsel for defendants and respondents in case which settled favorably after the filing of Respondents' brief on appeal.

*Lesher Communications, Inc. v. City of Walnut Creek,* 52 Cal. 3d 531 (1991). Landmark decision under California Environmental Quality Act addressing City's ability to amend general plan by voter initiative.

*Acree v. General Motors, Inc.,* 92 Cal. App. 4th 385 (2001). Important decision defining scope of covenant of good faith and fair dealing and reasonableness of fee award after class action trial against tenacious defendant.

*Morelli v. Weider Nutrition Group, Inc.,* 275 A.D.2d 607, 712 N.Y.S. 2d 551 (1st Dept. 2000). Case of first impression holding that plaintiffs' claims for false nutritional labeling were not preempted by the Nutritional Labeling and Education Act.

## Jennifer S. Rosenberg

Jennifer S. Rosenberg is senior counsel with the firm. She received her A.B. in political science, with great distinction in general scholarship, in 1981 from the University of California at Berkeley. She is a member of Phi Beta Kappa. Ms. Rosenberg obtained her law degree from the University of California at Berkeley (Boalt Hall) in 1985.

From 1985 to 1987, Ms. Rosenberg was an associate with the law firm of McKenna, Conner & Cuneo. Before joining Bramson, Plutzik, Mahler & Birkhaeuser, she was associated with McCutchen, Doyle, Brown & Enersen. As an adjunct professor at the University of San Francisco, she has taught business law and business ethics in the undergraduate and MBA programs of the McLaren School of Business.

Ms. Rosenberg is a contributing writer for Justice Maria Rivera's *California Practice Guide: Civil Procedure Before Trial Forms* (The Rutter Group), and is the principal drafter of the guide's class action forms. She has published articles in *California Lawyer* and *Business Voice* magazines and edited the 1994 edition of Remy, Thomas & Moose's *Guide to the California Environmental Quality Act.*

At Bramson, Plutzik, Mahler & Birkhaeuser, Ms. Rosenberg has focused on the prosecution of consumer class actions. Ms. Rosenberg is admitted to practice in California and is a member of the bars of the federal district courts of California and of the Ninth Circuit. She has acted as a judge pro tem for civil matters and a small claims appeals judge in Superior Court and as a fee arbitrator.

8

**Selected Published Decisions:**

*Figueroa v. Sharper Image Corporation,* 517 F.Supp.2d 1292 (S.D. Fla. 2007)

*Acree v. General Motors Acceptance Corporation,* 92 Cal. App. 4th 385 (2001)

*Mangini v. Aerojet-General Corporation,* 230 Cal.App.3d 1125 (1991)

## Michael S. Strimling

Michael S. Strimling has extensive experience in complex litigation and class actions. He received his J.D. from Boalt Hall Law School at U.C. Berkeley and was admitted to the California Bar in 1980. As well as actively prosecuting class actions and mass tort litigation while at Lieff, Cabraser, Heimann & Bernstein, at Bramson, Plutzik, Mahler & Birkhaeuser, LLP, and of counsel in other complex litigation, he has defended class actions while associated with Bartko, Zankel, Tarrant & Miller and Wendel, Rosen, Black & Dean.

In addition, Mr. Strimling has served as the Research Attorney for the Complex Litigation Department of Santa Clara County Superior Court, as a Senior Research Attorney to the California Sixth District Court of Appeal, as a Research Attorney to the Alameda County Superior Court, as a Legal Advisor to the Solomon Islands government in the United States Peace Corps, and as a three-term member of the California State Bar's Committee on the Administration of Justice. In addition to admission before State and Federal District Courts he has been admitted to the Bar and argued before the U.S. Court of Federal Claims in Washington, D.C., lectured in continuing legal education seminars, published articles on derivative litigation, and been admitted to the New Zealand and Solomon Islands Bar.

## Paul F. Mahler (Of Counsel)

Paul F. Mahler is a 1980 graduate of the University of California, Boalt Hall School of Law. After working several years in-house at a major educational company headquartered in San Francisco, Mr. Mahler joined the firm in 1985, became a partner in 1997 and is currently of counsel to the firm.

Mr. Mahler handles business transactions, representing primarily small and medium-sized businesses. Mr. Mahler's transactional work includes entity formation and agreements among owners; the purchase and sale of assets, stock or other interests; intellectual property issues; employment matters; and commercial real estate matters, primarily in leasing. His clients include high technology companies, biotechnology companies, accounting and insurance firms and companies with significant retail store operations.

61988