**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Midland Funding, LLC, | ) | CASE NO.: 3:08-cv-01434 |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | HON. DAVID A. KATZ |
| | ) | |
| vs. | ) | |
| | ) | **And Related Cases:** |
| Andrea Brent, | ) | |
| | ) | Case No. 3:11-cv-0096, N.D. Ohio |
| Defendant/Counterclaim Plaintiff | ) | Case No. 3:10-cv-0091, N.D. Ohio |
| | ) | |
| vs. | ) | **DEFENDANTS' OPPOSITION TO** |
| | ) | **ANN RUBIO AND GILBERT** |
| Midland Credit Management, Inc., | ) | **JAMES' MOTION FOR RELIEF** |
| | ) | **FROM PRELIMINARY** |
| Counterclaim Defendant. | ) | **INJUNCTION** |
| | ) | |

## I.     INTRODUCTION

On March 11, 2011, this Court preliminarily approved a nationwide settlement of three class actions – *Brent*, *Franklin*, and *Vassalle* – arising from Midland's use of affidavits in debt collection lawsuits where the affiant allegedly did not have personal knowledge of the facts contained in the affidavit. Aware that there were multiple class actions pending in various state and federal courts that were based on the same alleged facts as the *Brent*, *Franklin*, and *Vassalle* cases, and recognizing that these actions could seriously impair the Court's ability to oversee the orderly and efficient management of the proposed nationwide class settlement, this Court also issued an order preliminarily enjoining parallel litigation (the "Preliminary Injunction"). The Preliminary Injunction enjoins "all Class Members and all persons with actual notice of [the] Order" from:

> participating as class members in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum arising out of or relating to the use of affidavits in debt collection

1

> lawsuits by Encore Capital Group, Inc., and/or its subsidiaries and affiliates, including but not limited to Midland Credit Management, Inc., Midland Funding LLC, MRC Receivables Corp., and Midland Funding NCC-2 Corp, unless and until such time as the Class member involved in such action timely and validly excludes himself or herself from the class to pursue individual relief.

Order Granting Preliminary Injunction Against Parallel Litigation [Dkt. 108], pp. 2-3.

Courts overseeing complex nationwide class action settlements commonly grant such injunctions and are empowered to do so under the All Writs Act. This is because related litigation threatens the district court's jurisdiction over the settlement by creating the risk of inconsistent orders, exposing the settlement to collateral attacks in other fora, draining the parties' resources, and distracting them from critical settlement tasks.

One case that was halted by the Preliminary Injunction was *Ann Rubio v. Midland Funding*, which is pending in the Eastern District of Virginia. *Rubio* – filed nearly two years after the *Brent* action – is a copycat case in which the plaintiff alleges that Midland violated the Fair Debt Collection Practices Act ("FDCPA") by filing affidavits in debt collection lawsuits where the affiant did not have personal knowledge of the facts contained in the affidavit. In the instant motion, Rubio asks this Court for relief from the Preliminary Injunction so that she can take her case to trial on May 19, 2011 – almost two months before the July 11 Final Approval Hearing in this case. Gilbert James, another Virginia consumer represented by the same attorneys ("Virginia Counsel"), also seeks relief from the Preliminary Injunction. Virginia Counsel wants to immediately sue Midland on James's behalf under various federal and state laws based on the same allegedly false affidavits at issue in *Brent*, *Franklin*, *Vassalle*, and *Rubio*.[1]

---

[1] Virginia Counsel has also filed a motion to intervene and motion to "clarify" the Preliminary Injunction on behalf of another of their clients; Midland will timely respond to these motions pursuant to L. Rule 7.1(d).

Rubio and James (the "Virginia Plaintiffs") do not deny that allowing their cases to go forward would potentially disrupt the settlement – to the contrary, disrupting the settlement is Virginia Counsel's <u>express goal</u>. The motion papers they filed with this Court are filled with attacks on the settlement and the *Brent* parties, including vague insinuations that Midland lied to the Court, untrue and irrelevant allegations about Midland's document retention policies, improper references to confidential settlement negotiations, and unsupported assertions that the settlement is unfair because the class members are entitled to have the collection judgments against them vacated – an argument that this Court has already rejected.[2] Insofar as the Virginia Plaintiffs do not offer any real reason why they would be harmed by deferring their claims for a few months,[3] it seems that the real impetus behind their rush to trial is that Virginia Counsel wants to prejudice Midland's ability to administer and defend the settlement at the Final Approval Hearing by forcing it to dedicate substantial time and resources to a May 19 trial on the merits in the *Rubio* case. Allowing the *Rubio* case to go forward will also bolster Virginia Counsel's efforts to undermine the settlement by opening another forum for them to attack it, and by creating a risk of inconsistent court orders – for example, if Rubio obtains injunctive relief that would conflict with the stipulated injunction included in the *Brent* settlement.

To justify their attempts to move forward in Virginia despite the Preliminary Injunction, Rubio and James insist that their cases are not enjoined because they have somehow already "opted out" of the *Brent* settlement – even though the class notice has not been disseminated and

---

[2] Midland disagrees with all of Virginia Counsel's arguments attacking the settlement, and will address them in detail in connection with the Final Approval Hearing.

[3] Virginia Counsel argues that James's FDCPA claim will be barred by the statute of limitations if he is not permitted to file suit by April 7, 2011. This is not correct. The filing of a class action tolls the applicable statute of limitations for all class members until class certification is denied. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983); *see also Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 887, 894 (E.D. Va. 2010) (holding that Virginia state law claims are tolled by federal class action).

the opt-out period has not begun. This argument is without merit. In its Preliminary Approval Order, this Court approved a form and process for class notice that satisfies due process and Rule 23. Compliance with these procedures will ensure that class members have the opportunity to make informed decisions about whether to participate in or withdraw from the class action. Here, it appears that Virginia Counsel simply printed blank claim forms from the electronic docket and had Rubio and James sign them. Virginia Counsel are not entitled to circumvent the Preliminary Injunction by creating their own "opt out" process.

The conduct of Virginia Counsel both illustrates why the Preliminary Injunction was necessary and underscores why the procedural safeguards of a proper, court-approved notice and opt-out process are critical in this case. Virginia Counsel have made no secret of the fact that their goal is to derail the *Brent* settlement, including by soliciting mass opt-outs and attacking the settlement in this and other courts. On February 22, 2011, Virginia Counsel announced that they had sent out 8,500 letters soliciting clients to file lawsuits against Midland, they intend to file 1,200 such lawsuits, and that their clients would be opting out of the *Brent* settlement.[4] The fact that this occurred <u>before</u> the settlement was publicly filed on March 9, 2011 raises the serious ethical question of how Virginia Counsel could have been advising clients to opt out of a settlement when counsel <u>did not even know the settlement terms</u>. After they were informed of the Preliminary Injunction, Virginia Counsel immediately violated it by arguing to the District Court in Virginia that the settlement was a "sham" and that the *Rubio* case should be permitted to proceed despite the Preliminary Injunction.[5]

Even more troublingly, Virginia Counsel's attempts to improperly "opt out" their clients are not limited to Rubio and James. Over the past several days, Class Counsel has received approximately fifty additional "opt out" claim forms from Virginia residents. All of the forms

---

[4] Declaration of Jonathan Dyal ("Dyal Decl."), ¶ 2, Exh. 1.
[5] *See* Exh. 2, Declaration of Kathryn Grace ("Grace Decl."), Ex. A.

were obviously filled in by the same person – possibly <u>after</u> being signed by the class members – and a number of the forms were clearly altered, *i.e.*, the class member checked the box indicating that he or she wanted to be included in the class, but someone later checked the "opt out" box before mailing the form.[6] This evidences a concerted effort by Virginia Counsel to disrupt the settlement in this case, and casts grave doubt on whether any of these purported "opt-outs" – including Rubio and James – were the product of informed consent. It also suggests that if the Court allows Rubio and James to proceed, Virginia Counsel will soon be back before this Court with fifty additional "opt-outs" demanding to immediately file lawsuits against Midland. The Court should prevent these transparent attempts to undermine the settlement and affirm that "opt-out" forms submitted prior to the notice period are invalid.

In addition to claiming that they have "opted out" of the settlement, the Virginia Plaintiffs also attack the Preliminary Injunction on the ground that this Court lacks personal jurisdiction over non-Ohio class members. This argument is also without merit. As numerous courts – including both the Northern and Southern Districts of Ohio – have recognized, a district court overseeing a nationwide class action settlement may enjoin parallel litigation pursuant to the All Writs Act <u>without</u> an independent basis for personal jurisdiction over absent class members. Accordingly, since Rubio and James have not validly opted out of the class, and since the Court had jurisdiction to bar their claims while the settlement is pending, the Virginia Plaintiffs' motion for relief from this Court's Preliminary Injunction should be denied.

## II. THE VIRGINIA PLAINTIFFS HAVE NOT VALIDLY OPTED OUT OF THE *BRENT* SETTLEMENT CLASS

The Virginia Plaintiffs dedicate a substantial portion of their motion to arguing that the Court cannot permanently enjoin class members from opting out of the *Brent* settlement class.

---

[6] *See* Exh. 3 hereto. The altered claim forms are at pp. 1-6. The only form that does not appear to be filled in by the same person is that of "Anthony L. Banks" who apparently elected to be included in the *Brent* class action settlement.

5

This is not in dispute. Neither the *Brent* parties nor this Court have ever suggested that the Virginia Plaintiffs are permanently barred from opting out. Likewise, neither the parties nor the Court have ever contended that class members who validly opt out cannot eventually pursue their individual claims. In fact, the concept that class members can opt out of the settlement to pursue individual claims is expressly incorporated in the Preliminary Injunction. *See* Order Granting Preliminary Injunction Against Parallel Litigation [Dkt 108], pp. 2-3 (enjoining class members and others with notice of the injunction from pursuing parallel litigation "unless and until such time as the Class member involved in such action timely and validly excludes himself or herself from the class to pursue individual relief").

What is in dispute, however, is Virginia Counsel's contention that the Virginia Plaintiffs somehow "opted out" of the class even before the Court-approved notice and opt-out procedures have even commenced. Class members cannot validly opt out of a class before notice is disseminated. "The notice disseminated to class members is 'crucial' to the entire scheme of Rule 23." *Georgine v. Amchem Products, Inc.*, 160 F.R.D 478, 490 (E.D. Pa. 1995) (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985). "Notice 'sets forth an impartial recital of the subject matter of the suit, informs members that their rights are in litigation, and alerts them to take appropriate steps to make certain their individual interests are protected.'" *Id*. (citing *Erhardt v. Prudential Group, Inc*., 629 F.2d 843, 846 (2d Cir. 1980)). "It is essential that class members' decisions to participate or to withdraw be made on the basis of independent analysis of their own self interest, and the vehicle for accomplishing this is the class notice. . . . Accordingly, it is essential that the district court closely monitor the notice process and take steps necessary to ensure that class members are informed of the opportunity to exclude themselves or to participate in the judgment." *Id*. (internal citations omitted); *see also In re Host America Corp. Sec. Litig.*, No 3:05-CV-01250, 2008 WL 4425932 at *2 (D. Conn. Sept. 25,

6

2008) ("By the very terms of Rule 23, <u>both</u> notice and the opportunity to opt out are mandatory[.] . . . The clear intent of the rule is to include in a class all those who do not <u>after notice</u> elect to be excluded.") (emphasis added).

Here, the Court's Preliminary Approval Order specifically approved notice and opt-out procedures that meet the due process requirements of F.R.C.P. 23(a)(2)(B). *See* Preliminary Approval Order [Dkt. No. 111], at ¶ 6. Among other things, the Court approved the contents of Defendant's class-wide settlement notice and required that notice to be sent to all class members on or before April 22, 2011. *Id.* at ¶ 5. The Order then gives class members until June 1, 2011 – more than a month – to review, complete and submit their accompanying claim forms / opt-out requests. *Id.* at ¶ 7. The only way to ensure a thorough and accurate administration of this already-complex class-wide settlement is for <u>all</u> class members (and their counsel) to abide by the same rules and procedures approved by the Court.

The necessity of complying with the Court-approved notice and opt out procedure is especially pronounced here, since that process provides due process safeguards that are not present when plaintiffs' lawyers independently solicit opt-outs to further their own interests. As noted above, Virginia Counsel have admitted that they intend to induce mass opt-outs, *see* Dyal Decl., ¶ 2. Among other things, this appears to be part of a strategy to ultimately argue that the settlement must be unfair because so many consumers opted out. *See* Motion for Relief from Preliminary Injunction [Dkt. 115], pp. 18-19 (predicting that "there will be a disproportionately high number of opt-outs in this case" and arguing that "opt-outs are a sign of a defective settlement.").

Virginia Counsel are not permitted to unilaterally invent a special "opt out" procedure for their own clients without court approval – especially when that procedure is directed toward securing a large number of opt-outs and not toward providing class members with the

information necessary to make their own informed decisions. *See Georgine*, 160 F.R.D. at 489-497 (holding that opt-outs were invalid, and requiring second notice and opt-out period, where various plaintiffs' attorneys provided one-sided information about the settlement of an asbestos class action as part of a nationwide campaign to solicit mass opt-outs).

Indeed, the approximately fifty additional purported "opt-outs" from Virginia that Class Counsel has received thus far raise serious concerns about whether the class members who purportedly opted out – including Rubio and James – made informed decisions based on impartial information about the settlement and their rights under it. It is clear on the face of the opt-out forms that they were all filled out by the same person – possibly <u>after</u> being signed by the class members. *See* Exh. 3. Most troublingly, a number of the forms were obviously altered after the class member signed them. *See, e.g.*, Exh. 3, pp. 1-6. All but two of the forms arrived in envelopes affixed with the same pre-printed address label, which further demonstrates the existence of a concerted opt-out campaign by Virginia Counsel. *See* Exh. 4.

Moreover, even if the Virginia opt-out requests were valid – which they are not – they are not final. *See Bailey v. Cost Control Mrktg. and Sales Mngmt of Va., Inc.*, 132 F.R.D. 435, 437 ("as long as the party makes its wishes known to the Court prior to the deadline set for the requests for exclusion and those wishes are clear and unequivocal, then that party should be able to rescind any prior contrary communication to the Court asking to be excluded from the class."); *see also In re Remeron End-Payor Antitrust Litig.*, No. CV 02-2007 FSH, CIV 04-5126 FSH, 2005 WL 2230314 at *17, fn.6 (D.N.J., Sept. 13, 2005) (granting request to rescind class members' opt-out notices). Moreover, the Court may determine the length of time an injunction is to be in place, and may extend the injunction beyond the close of the opt-out period, if necessary to meet the needs of the settling case. *See In re Community bank of Northern Virginia and Guaranty Bank Second Mortgage Litig.*, MDL No. 1674, Civ. No. 03-425, 2008 U.S. Dist.

LEXIS 27684 at *21 (finding proposed injunction "of a brief, and definite duration" of twenty days after the end of the opt-out period to be appropriate).

### III. THE VIRGINIA PLAINTIFFS' ATTACKS ON THIS COURT'S JURISDICTION ARE WITHOUT MERIT

The Virginia Plaintiffs' contention that the Preliminary Injunction does not bind non-Ohio class members because the Court lacks personal jurisdiction over them has no merit and should be rejected. The Preliminary Injunction was issued pursuant to All Writs Act, which broadly empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). It is well-settled that a district court – such as this one – which is resolving a nationwide class action encompassing a large potential settlement class may, pursuant to the All Writs Act, issue an order enjoining related litigation pending final approval of the settlement. *See, e.g., In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002); *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 449 (N.D. Ill. 2009); *In re Inter-Op Hip Prothesis Liab. Litig.*, 174 F. Supp. 2d 648, 655 (N.D. Ohio 2001).

As numerous courts have recognized, the complexity of class actions on the verge of completing a settlement requires that district courts have the flexibility to bring the cases to judgment. Thus, injunctions against parallel litigation fall within the "in aid of jurisdiction" umbrella of the All Writs Act and within an exception to the Anti Injunction Act. *In re Diet Drugs*, 282 F.3d at 236 ("In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.").

Courts have identified a number of reasons why parallel litigation threatens the jurisdiction of a court tasked with effectuating a nationwide class action settlement. For

example, parallel litigation creates the risk of inconsistent orders and has the potential to undermine the finality of the settlement. *See In re Baldwin-United Corp*, 770 F.2d 328, 336-337 (2d Cir. 1985); *In re Joint E. and S. Dist. Asbestos Litig.*, 134 F.R.D. 32 (E.D.N.Y. 1990). Additionally, the time and costs associated with litigating multiple related actions in different fora would distract the parties from the critical tasks necessary to guide a complex nationwide settlement through to final approval, such as developing an accurate class list; developing and sending appropriate notices to class members; responding to objectors and intervenors; and ultimately demonstrating to the Court at the Final Approval Hearing that the settlement is a fair and reasonable compromise. *See In re Diet Drug*, 282 F.3d at 236-37; *In re Baldwin-United*, 770 F.2d at 337.

Because parallel litigation threatens the jurisdiction of the court overseeing the settlement, the court can enjoin such litigation under the All Writs Act even in the absence of a traditional basis for personal jurisdiction over absent class members. As held by both the United States Supreme Court and the Sixth Circuit: "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *U.S. v. New York Tel. Co.,* 434 U.S. 159, 174 (1977); *United States v. City of Detroit*, 329 F.3d 515, 523 (6th Cir. 2003) (same, citing *New York Tel. Co.*); *see also In re Baldwin-United*, 770 F.2d at 338 ("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction.").

When a district court enjoins parallel litigation in connection with a nationwide class action settlement, class members – like the Virginia Plaintiffs here – commonly attack the

injunction on the ground that the court lacks personal jurisdiction over non-resident third parties. Such attacks are commonly rejected. *See Baldwin-United*, 770 F.3d at 338 (holding that preliminary injunction barring state attorney general actions against defendants who were in the process of settling complex class action was proper under the All Writs Act, and that the injunction was valid even though it applied to states other than New York); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1434 (D. Minn. 1993) (rejecting argument that the court did not have the power to enjoin parallel litigation because it lacked personal jurisdiction, and explaining that under the All Writs Act "there is ample authority for the proposition that the court has jurisdiction to enjoin other actions even if the parties were not members of the . . . class"); *U.S. Intern'l Bhd of Teamsters, Chauffeurs, Warehouseman and Helpers of America, AFL-CIO*, 728 F. Supp 1032, 1048 (S.D.N.Y. 1990) ("Virtually all subordinate entities argue that this Court has no personal jurisdiction over them . . . . These contentions ignore the fact that personal jurisdiction is not required to bind such entities under the All Writs Act. The All Writs Act gives the Court the power to bind those who are 'not parties to the original suit.'").

Consistent with the case law cited above, both the Northern and Southern Districts of Ohio have recognized that an independent basis for personal jurisdiction is <u>not required</u> for courts overseeing nationwide class action settlements to enjoin parallel litigation under the All Writs Act. For example, in *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, No. 101CV9000, 2001 WL 1842158 at *2 (N.D. Ohio Dec. 20, 2001) (O'Malley, J.), the Northern District of Ohio entered an order enjoining related state court litigation pending court approval of a nationwide class action settlement relating to defective knee implants. *Id*. at *1. Counsel for a group of state court plaintiffs argued – as Virginia Plaintiffs do here – that the Court did not have personal jurisdiction over absent class members and therefore could not enjoin the state court litigation. *Id*. at *2. The Court squarely rejected this argument, explaining that it had personal

jurisdiction over the absent class members because "an 'important feature' of the All Writs Act 'is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." *Id*.

Likewise, in *Wemer v. Ohio Nat'l Life Ins. Co*., No. C-1-97-950, 2007 WL 2769694 (S.D. Ohio Sept. 18, 2007) (Weber, J.), the district court issued an injunction against parallel litigation in connection with a nationwide class action settlement relating to deceptive insurance sales practices. *Id*. at *1. After the settlement was approved, a group of plaintiffs attempted to sue in Alabama state court on claims that were barred by the injunction. *Id.* at *8. In proceedings brought by the settling defendants to enforce the injunction, the plaintiffs argued that the injunction did not bind them because they did not have minimum contacts with Ohio. *Id*. at *11. The district court rejected this argument, holding that "Under both Acts [the All Writs Act and the Anti-Injunction Act], a federal court acquires personal jurisdiction over anyone (including non-parties) who threaten to relitigate a federal court judgment." *Id*. at *10.

The Third Circuit case cited by the Virginia Plaintiffs for the proposition that a court must establish personal jurisdiction over absent class members before it can enjoin parallel litigation – *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3d Cir. 1993) – has never been followed by any court within this Circuit and, in fact, was expressly rejected by the Northern District of Ohio in *In re Sulzer Hip Prosthesis*, 2001 WL 1842158 at *2, fn. 3. Moreover, *Carlough*'s holding on this issue was later contradicted by the Third Circuit's opinion in *In re Diet Drugs*, 282 F.3d 220, in which the Court recognized that injunctions against parallel litigation may be appropriate <u>even prior to preliminary approval</u>. *See In re Diet Drugs*, 282 F.3d at 236 (Recognizing that "[m]any – though not all – of the cases permitting injunctions in complex litigation involve injunctions issued as the parties approached settlement," and explaining that "[i]n complex cases where certification or settlement has received conditional

approval, <u>or perhaps even where settlement is pending</u>, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.") (emphasis added.) This holding would make no sense if parallel litigation could not be enjoined prior to the notice period.

In sum, Virginia Plaintiffs' contention that they are not bound by the Preliminary Injunction because this Court lacks personal jurisdiction over them is without merit, and should be rejected.

## IV. CONCLUSION

There are no grounds for relieving the Virginia Plaintiffs from the preliminary Injunction. The Preliminary Injunction is solidly grounded in the law, and binds all members of the nationwide class – even those who are not Ohio residents. The Virginia Plaintiffs have not validly opted out of the class, and if they are permitted to go forward with their claims while the settlement is pending, there is a serious risk that this Court's ability to effectively manage the settlement and bring these cases to a successful resolution will be undermined. Not only do the Virginia Plaintiffs not deny this fact, but disrupting the settlement is transparently their goal. Accordingly, Midland respectfully requests that the Virginia Plaintiffs' motion be denied.

Date: April 1, 2011                                              Respectfully Submitted:

/s/ *Theodore W. Seitz*
Theodore W. Seitz
Dykema Gossett PLLC
Counsel for Midland Funding, LLC and
Midland Credit Management, Inc.
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele: (517) 374-9149
tseitz@dykema.com

13

## PROOF OF SERVICE

    I hereby certify that on April 1, 2011 a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to parties by operation of the court's electronic filing system.

*/s/ Theodore W. Seitz*
Theodore W. Seitz

LAN01\233373.1
ID\TWS - 097356/0045