IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **MIDLAND FUNDING LLC** | Case No. 3:08-CV-1434 |
| Plaintiff/Counterclaim Defendant, | |
| vs. | |
| | Judge David A. Katz |
| **ANDREA L. BRENT** | |
| | **And Related Cases:** |
| Defendant/Counterclaim Plaintiff | |
| | Case No. 3:11-cv-0096, N.D. Ohio |
| vs. | Case No. 3:10-cv-0091, N.D. Ohio |
| **MIDLAND CREDIT MANAGEMENT, INC.** | |
| Counterclaim Defendant | |

**DEFENDANT-COUNTRCLAIM PLAINTIFF'S RESPONSE TO ANN RUBIO AND GILBERT JAMES' MOTION FOR RELIEF FROM PRELIMINARY INJUNCTION**

   **I.   The Rubio/James Opt-Outs.**

Purported Class Members Ann Rubio and Gilbert James have entered a special appearance in this action seeking relief from the Order Granting Preliminary Injunction Against Parallel Litigation issued by this Court on March 11, 2011 (ECF Doc. No. 110). The specific relief sought is a determination by this Court that Ms. Rubio and Mr. James have timely and fully opted out of the *Brent* settlement and class and should immediately be permitted to pursue any individual actions they may have against the Midland parties in another court.

Ann Rubio filed an action against Midland Credit Management, Inc. and Midland Funding, LLC in the United States District Court, Eastern District on Virginia on July 7, 2010. (Exhibit 1). In this action Ms. Rubio alleged that the Midland defendants violated

1

the Fair Debt Collection Practices Act ("FDCPA") by filing a sworn statement titled "Affidavit – Default Judgment" and a "Form 400" affidavit as part of the collection action. This Court had already determined on August 11, 2009 (ECF Doc. No. 51) that the use of the Form 400 affidavit in the *Brent* collection action was a false and misleading practice in violation of the FDCPA and the Ohio Consumer Sales Practices Act ("OCSPA") and issued an injunction against Midland, under the OCSPA, prohibiting its use. The Rubio case contains FDCPA class action allegations, seeks injunctive relief under Fed.R. Civ.P. 23(b)(2) and also seeks individual relief for Plaintiff Rubio under the FDCPA.

It is alleged in the Motion for Relief from the Preliminary Injunction that Gilbert James has a similar cause of action but has not yet filed and the one-year FDCPA statute of limitation will run on April 7, 2011. It is asserted that Mr. James intends to challenge Midland's use of falsified affidavits, as well as other common law and statutory claims. However, there is no further information provided in the motion about the affidavit to determine if James is actually a class member. In addition, Virginia counsel states that he represents no fewer than 400 consumers with claims similar to Rubio and James against Midland.

Class Counsel notes that Ann Rubio completed and signed an undated copy of the claim form approved by this Court in the provisional approval of the settlement negotiated by the parties and mailed it to Class Counsel. (Exhibit 2). However, as of this date, Class Counsel has not received a Claim Form executed by Gilbert James, indicating his desire to opt out.

Class counsel has no way to verify that Ms. Rubio and other purported class members who sent in Claim Forms were provided with the Class Notice and were aware of all of the particulars regarding the proposed settlement. The Class Notices have not been mailed, so the purported Class Members would not have been apprised of the settlement through normal channels. Nevertheless, we presume that Rubio and James' counsel, Leonard Bennett, provided the Claim Forms to his clients after this document was made available through this Court's online docket,[1] but, there is no identifying information included on the majority of these forms that would enable the Settlement Administrator to confirm they actually are Class Members. It is not certain whether the Class Notice was made available to each of these individuals, as well, and that they would be in possession of adequate information to make an informed decision.

Although Rubio contends she has validly opted out of this settlement, that fact is not the case. Class Counsel, by no means, wishes to undermine the right of Class Members to opt out and pursue any individual claims they believe they may have. However, they must do so through the proper channels. This orchestrated attempt to circumvent (and speed up) the process is what has called into question the validity of their opt-out status as of this date.

## II.    This Court Has the Authority to Issue an Injunction.

This Court conditionally certified, for settlement purposes, a national class action on March 11, 2011. This Court further ordered that notice be sent to the Class, on or

---

[1] As of this date a total of 64 Claim Forms have been received by Class Counsel from Virginia residents who purport to be class members. These appear to have been generated by a single source, as they contain identical markings and a pre-printed check mark in the box to opt out. (See several examples, attached). (Exhibit 3). Ten alleged class members have indicated that they would prefer to participate in the settlement. One of these individuals used correction fluid to "white-out" the check-marked opt-out box and the others simply checked the other election box. (Exhibit 4).

before April 22, 2011, advising them of the conditional certification and settlement. Class members have until June 1, 2011 to submit a claim form, a request for exclusion or an objection to the proposed settlement.

In conjunction with this conditional certification, a preliminary injunction was issued, enjoining Class Members in this case from "participating as class members in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum arising out of or relating to the use of affidavits in debt collection lawsuits by Encore Capital Group, Inc. and/or its subsidiaries and affiliates * * *, *unless and until such time* as the Class member involved in such action *timely and validly excludes himself or herself* from the class to pursue individual relief." (ECF Doc. # 110). (emphasis added).

Under the All Writs Act "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This broad grant of authority is then limited by the Anti-Injunction Act, which bars a federal court from enjoining a proceeding in a state court unless that action is "expressly authorized by Acts of Congress, or where necessary in aid of jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2238. When a federal court has jurisdiction over its case in chief, the All-Writs Act grants it ancillary jurisdiction to issue writs "necessary or appropriate in aid of" that jurisdiction. This provision permits a district court to enjoin action where necessary to prevent relitigation of an existing federal judgment, or to preserve jurisdiction or authority over an ongoing matter. *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2nd Cir. 1985) (internal citations omitted).

4

"[C]ourts have the authority [under the Anti-Injunction Act] to enjoin non-parties who 'are in a position to frustrate the implementation of a court order.'" *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203 n.7 (7th Cir. 1996), citing *United States v. New York Tel.*, 434 U.S. 159 (1977). In the case of *United States v. New York Telephone*, the Supreme Court noted that the power conferred by the Anti-Injunction Act to enjoin those who could frustrate the implementation of the court's order extends to "even those who have not taken any affirmative action to hinder justice." 434 U.S. at 174. The power to bind non-parties distinguishes injunctions issued under the Act from injunctions issued in situations in which the activities of the third parties do not interfere with the very conduct of the proceeding before the court. *In re Baldwin-United*, 770 F.2d at 338.

While this settlement is pending, any parallel action conducted has the distinct potential to subject the parties to conflicting orders. This is especially true where the *Rubio* action explicitly asserts that Midland was in violation of the injunction issued by this Court and "seeks an Order of [the Virginia] Court pursuant to its inherent equitable power, enforcing the Orders entered in the Northern District of Ohio and specifically enjoining the Defendant from continuing to file false collection affidavits in the courts of the Commonwealth of Virginia". (See Exhibit 1 *Rubio* Complaint at ¶ 22 and Prayer for Relief on page 8). "When a court issues an injunction, it automatically retains jurisdiction to enforce it." *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993). This Court, alone, should make that decision. Other courts' interpretations of the injunction, and determinations as to whether Midland was in violation, while the settlement in *Brent* is pending and prior to the time the membership of the Class has been finalized with the

5

closing of the opt-out period, would doubtlessly create confusion as to the rights of the Class Members and the obligations of Midland.

Injunctions may be issued where necessary to prevent another court from "interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coastline R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970). This is especially true when there is a potential for an onslaught of duplicative litigation while the district court is attempting to craft and approve an appropriate settlement. *In re Baldwin-United Corp.*, 770 F.2d at 337.

### III. This Court has the Authority to Determine the Time Frame of the Injunction.

All Class Members have an absolute right to opt-out of this action and pursue their own individual relief, under Fed.R,Civ.P. 23(B)(3). Class Counsel does not suggest that this right be infringed upon, *in any way.* The Court's injunction against parallel litigation only encompasses the time frame necessary to enable this Court to exercise its jurisdiction over the settlement, and all orders related to it. Class members who choose to opt out are free to pursue individual actions upon the issuance of the final orders. No individual Class Member is barred from opting out and pursing individual claims in Virginia or elsewhere.

In cases where "certification or settlement has received conditional approval . . . the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court." *In re Diet Drugs*, 282 F.3d 220, 236 (3rd Cir. 2002) (citations omitted). The Court must

6

decide when a Class Member has effectively "opted-out" See *Carlough v. Amchem Prods.*, 10 F.3d 189, 204 (3rd Cir. 1993) (enjoined plaintiffs had not yet been given the opportunity to opt out, so parallel suit was premature). The Court may also determine the length of time an injunction is to be in place, as long as the duration of an injunction is tailored to meet the needs of the case. See *In re Community Bank of Northern Virginia and Guaranty Bank Second Mortgage Litigation*, MDL No. 1674, Civil Action No. 03-425, 2008 U.S. Dist. LEXIS 27684 at *21 (finding a proposed injunction "of a brief, and definite, duration" of twenty days after the end of the opt out period to be appropriate) and *In re: Inter-Op Hip Prosthesis Product Liability Litigation*, 176 F.Supp.2d 758, 764-65 (N.D. Ohio 2001) ("pending cases, if allowed to continue independently, will seriously hinder the ability of the court to evaluate the adequacy and fairness of the proposed settlement" and "a plaintiff who later chooses to opt out will be delayed, at most, about six months, given the Court's aggressive scheduling of the fairness hearing.").

## IV. Conclusion

Counsel for Rubio and James seem to have made, in the heat of the moment, some few arguments, alluding to the insufficiency of the *Brent* settlement and the lack of knowledge or naivety of the parties' counsel and this Court. These comments are ill conceived and dead wrong, and are not germane to the question of the authority of this Court to issue the injunction that it did. This Court had and has jurisdiction to enjoin parallel action for a reasonable period of time to allow it to "protect or effectuate" its judgment. Class Members Rubio and James are entitled to opt out and pursue their own claims for individual damages. They should be allowed to do so, at the time and in the

7

manner that this Court determines to be reasonable, to aid this Court's jurisdiction and allow it to finalize a settlement in this matter.

        Respectfully submitted,

        */s/ Dennis E. Murray, Sr.*
        Dennis E. Murray, Sr. (0008783)
        (dms@murrayandmurray.com)
        Donna Jean Evans (0072306)
        (dae@murrayandmurray.com)
        Murray & Murray Co., L.P.A.
        111 East Shoreline Drive
        Sandusky, Ohio 44871-0019
        Telephone: (419) 624-3000
        Facsimile: (419) 624-0707
        Attorneys for Defendant/Counterclaim Plaintiff

**CERTIFICATION**

This is to certify that a copy of the foregoing **Defendant-Counterclaim Plaintiff's Response to Ann Rubio and Gilbert James' Motion for Relief from Preliminary Injunction** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic system. Parties may access the filing through the Court's system on this 1st day of April, 2011.

                                           */s/Dennis E. Murray, Sr.*
                                           Dennis E. Murray, Sr., Esq. (0008783)
                                           Donna J. Evans, Esq. (0072306)
                                           Attorneys for Defendant/Counterclaim Plaintiff