1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
2                          WESTERN DIVISION

3     MIDLAND FUNDING, LLC.,                Case No. 3:08CV1434
                                            Toledo, Ohio
4                     Plaintiffs,           April 6, 2011
                                            10:00 a.m.
5              -vs-

6     ANDREA L. BRENT, et al.,

7                     Defendants.

8                     TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE DAVID A. KATZ
9                  UNITED STATES DISTRICT JUDGE

10    APPEARANCES:
      For Plaintiff:        Theodore W. Seitz
11                          Dykema Gossett
                            201 Townsend Street
12                          Lansing, Michigan  48933
                            (517) 374-9100
13
      For Defendant:        Donna Jean Evans
14                          Murray and Murray
                            111 East Shoreline Drive
15                          Sandusky, Ohio  44870
                            (419) 624-3000
16
      For Intervenors:      Reginald Jackson, Jr.
17                          Adam S. Nightingale
                            Connely, Jackson & Collier
18                          405 Madison Avenue, Suite 1600
                            Toledo, Ohio  43604
19                          (419) 243-7119

20                          Leonard A. Bennett
                            Matthew J. Erausquin
21                          Consumer Litigation Associates
                            1800 Diagonal Road, Suite 600
22                          Alexandria, Virginia  22314
                            (702) 273-7770
23
      Court Reporter:       Judith A. Gage, RMR-CRR
24                          (216)  357-7238

25    Proceedings recorded by mechanical stenography.
      Transcript produced by computer-aided transcription.

1              P R O C E E D I N G S

2

3              THE COURT:  I presume we have a court

4    reporter?

5              THE CLERK:  Yes, sir, we do.

6              THE COURT:  I think everyone should identify

7    themselves for the record, please.  Since the movants

8    will go first, I'd appreciate it if they would identify

9    themselves for the court reporter.

10              MR. BENNETT:  Your Honor, my name is Leonard

11   Bennett.  I'm at the podium here at the mike at our

12   counsel desk.  We don't have the ability to see Your

13   Honor, but --

14              THE COURT:  No great loss.

15              MR. BENNETT:  Yes, sir.  I'm here together

16   with co-counsel with my law firm, Matthew Erausqin, who

17   is in our Alexandria office, and Susan Rotkis in our

18   Newport News office.  We are in the Court, it is a

19   classic wood panel courtroom.  Your camera has myself

20   and the local Midland counsel.  You cannot see us in

21   the camera, but we are off to what would be your, I

22   guess, right, my left at our counsel table.  But

23   otherwise, it is a typical environment, I suspect, Your

24   Honor.

25              THE COURT:  Very good.  And I presume there

1   are in Toledo a group of folks gathered?

2           MR. SEITZ:  Yes, Your Honor.  Ted Seitz

3   appearing on behalf of the defendants Midland Funding

4   and Midland Credit Management.

5           THE COURT:  You will have to approach the

6   podium.

7           MR. SEITZ:  I apologize, Your Honor.  Ted

8   Seitz on behalf of Midland Credit Management and

9   Midland Funding.  I am here with Donna Evans on behalf

10  of the plaintiffs.  In addition, Mr. Jackson is also

11  here on behalf of Rubio and James, along with

12  Mr. Nightingale as well.

13          THE COURT:  I hope the sound is coming

14  through better.

15          MS. EVANS:  I don't think it is, Your Honor.

16          MR. SEITZ:  We are getting feedback here.

17          THE COURT:  Very good.  All right.  What is

18  the request of time allocation from the moving party?

19          MR. BENNETT:  Your Honor, having grown up as

20  a lawyer in the Eastern District of Virginia, I suspect

21  that we would be comfortable with ten minutes.

22  Certainly Your Honor has had an opportunity to review

23  our pleading, but I don't believe that I would

24  necessarily need to restate all of those arguments.

25          THE COURT:  All right.  I assumed that I

1    would give you at least 20 minutes, of which you can

2    reserve a portion for rebuttal.

3            MR. BENNETT:  Thank you, Judge.  I would like

4    to reserve half of that for rebuttal.

5            THE COURT:  Very good.  Please proceed.

6            MR. BENNETT:  Thank you, Your Honor.  Judge,

7    we are here and you are there on behalf of two groups

8    of individuals.  The first are two individuals that we

9    allege we represent that have opted out of the

10   litigation in Ohio.  Those were Rubio and James, and

11   they present the argument that it is valid to opt out,

12   their opt-outs are legal.

13           And in fact, the law in the Sixth Circuit,

14   the law in this country is that the Court has

15   jurisdiction over consumers or over parties in a class,

16   class members who are not present in Ohio and who

17   otherwise have not been in contact in Ohio only upon

18   the failure to opt out.  That is, it is sort of an

19   assumed consent to jurisdiction.  If a plaintiff or

20   class member does not opt out, then they are presumed

21   to consent to jurisdiction, and the minimum contact

22   concerns, the process concerns are in part applicable.

23           And the law in this regard, Your Honor, is

24   not controversial, and I recognize that you have

25   disparate briefs but conflicting briefs.  There is no

1     court that has ruled that you can have jurisdiction in

2     a money damages class action, that is, one under Rule

3     23(b)(3), without the minimal contact or the inferred

4     consent of the opt-out.

5            Certainly Miss Rubio and Mr. James, Mr. James

6     is an identity theft victim that wants to go to court

7     immediately to have this judgment he just discovered

8     vacated and renew his credit.  Miss Rubio has been in

9     litigation long before Your Honor's case turned into a

10     national class in February, and both have exercised

11     their right to opt out.

12            As just a brief aside, Your Honor, we have

13     filed a declaration, an extraordinary filing that

14     normally would have been done based on -- and I

15     understand that these were not intended to disparage

16     us, but the accusation had been made in briefing by the

17     Plaintiff that we had manipulated the opt-outs.  The

18     insinuation that was had mailed them, that we had

19     checked boxes and filled them out, which certainly is

20     false, and I have sworn not simply as an officer of the

21     Court but under penalty of perjury that that is not the

22     case.

23            Mr. James' opt-out has been attached.  It was

24     mailed and he received the information that was

25     provided to Mr. Murray.  They seek through proceedings

 1 | to recover their own financial lives, correct their
 2 | credit, go to court, and obtain relief.
 3 | We had briefed the issue at length in our
 4 | memo.  At the Court's initial telephone conference, it
 5 | appeared to us that Your Honor's direction for that
 6 | issue was whether or not you could continue to pursue
 7 | claims after opting out or after the settlement in
 8 | general if you have opted out, that were otherwise to
 9 | be released, and the defendant has not argued that
10 | position, nor do I think they can.
11 | We briefed it -- an opt out, from the
12 | litigation in the other venue.  On behalf of -- the
13 | defendant also makes the argument as to Rubio and
14 | James, Your Honor, that you are not allowed to opt out
15 | until the opt-out period closes.  There is no law on
16 | that to the contrary.  The law is that you cannot
17 | enjoin a class member [inaudible] because you cannot
18 | presume that minimal contact is happening, so there is
19 | nothing, there is no evidence, Your Honor, other than
20 | the assertions of Midland that we would just rush in
21 | for a settlement, Your Honor, as the opt-outs continue
22 | to and seek to proceed.
23 | And the only other instance in which we were
24 | able to find a case in which an injunction was granted
25 | during the required final approval of the closing and

1    opt-out is where there was evidence that it was

2    impossible for the parties in the litigation in the

3    settling venue to put together the settlement.  They

4    didn't have the resources because there were, you know,

5    a large number of other cases that were going to trial

6    and litigation.

7          In this instance, Midland has a totally

8    separate defense team.  They have not had any

9    interaction in this case prior to this process now with

10   the folks you are dealing with in Ohio.

11         The second, Judge, we also made the arguments

12   on behalf of objector in the motion to intervene.  The

13   defendant has not contested that, Mr. Herring.  The

14   tolling issue is significant, and we raised it.  The

15   two biggest issues is, number one, we simply ask that

16   the injunction be modified so that claims are tolled to

17   the same degree that claims are enjoined, and the law

18   in your circuit, the law nationally, is the same.  In

19   your circuit, *Wyser-Pratte*, a Sixth Circuit case was

20   cited, as well as Northern District of Ohio case *In Re*

21   *Vertrue Marketing*, both of which say, respectively,

22   first, that the party that is not in the, in the class

23   case, for example, the debt collectors here in

24   Virginia, the debt collectors in California or

25   Washington, they, you cannot enjoin those individual

1    defendants because they, you cannot toll claims against

2    them.  They are not present in your court.  You don't

3    have jurisdiction over them.

4           So, we seek to clarify that not just that,

5    that in those instances, because you are unable to

6    affect tolling as to those nonparties, the non Encore,

7    non Midland parties, that you allow us to clarify this

8    injunction, that it does not enjoin us and others from

9    pursuing those claims, and secondly, Judge, the law in

10   your district, the law nationally, the *In Re Vertrue*

11   *Marketing* case in the Northern District of Ohio says

12   that if a claim is not pled, it is not tolled.  And in

13   this instance, the only claim we have pled is an

14   Ohio-based Fair Collection Debt Practices Act claim,

15   and there are a large number of other claims that are

16   not tolled and there is no pleading that alleged a

17   national class, and that, Your Honor, can cure, despite

18   Midland rejecting your offer and our offer of agreeing

19   to toll during the pendency of the settlement process.

20          We ask that Your Honor enforce that and amend

21   the injunction so that all the claims that have been

22   tolled -- or enjoined, rather, are also tolled, and I

23   would certainly be happy to answer any question Your

24   Honor may have.

25          THE COURT:  Well, I do have a couple

1    questions.  With respect to the opting out, it seems to

2    me that under Rule 20 -- God, I hear myself coming

3    back.

4           23(c)(2) and under *Newberg* that was written

5    on class actions, the notice must be mailed and

6    received by the person seeking to opt out before an

7    opt-out can be recognized as effective, and the reason

8    for that is because until receipt of the notice, the

9    individual does not have the ability to make a reasoned

10   judgment because the notice contains that upon which he

11   or she relies to be covered as part of the class, or to

12   opt out.  Therefore, until the date of mailing, I

13   cannot see how under 23(c)(2) the opting out would be

14   effective.

15          MR. BENNETT:  First, Your Honor,

16   respectfully, I strongly disagree, that the language of

17   23(c)(2) does not say this.  It just simply says the

18   notice requires that you inform your consumer of the

19   opt out, and if you were to take this the other

20   direction and look at basic concepts of fairness, the

21   defendant has succeeded in enjoining our clients by

22   sending an email letter and copies of the settlement to

23   our clients by us as their counsel and has obtained the

24   benefit of an injunction that of course we have alleged

25   is not effective until the opt-out process is over, but

1    the defendant in this court has held otherwise in the

2    order that Your Honor signed.

3            The effect is that you would be permitting

4    notice to be made by counsel to counsel, but you would

5    require that our client sit there and stare at their

6    mailboxes.

7            Candidly, Judge, there would be significant

8    efforts made to explain to Your Honor why the mail

9    process itself is a very bad idea by a number of

10   objectors in separate matters, separate pleadings.

11           THE COURT:  I beg your pardon?  Would you

12   repeat that?

13           MR. BENNETT:  Yes, Judge.  We have not

14   substantively challenged the settlement in the current

15   motion.  We are simply asking Your Honor to preserve

16   the status quo, that's what we are trying to do, while

17   the objectors have an opportunity to present to Your

18   Honor their arguments, their evidence, and the law with

19   respect to even whether the notice should go out.

20           For example, in the *Makson versus Portfolio*

21   *Recovery* case, Portfolio Recovery being one of

22   Midland's primary debt buyer rivals, that case settled

23   in our district here about two years ago and it also

24   dealt with the affidavits and pleadings that PRA was

25   filing with the Virginia state court, and the concern

1   that we had was that you would be sending out a notice

2   to consumers that debtors, that this defendant

3   currently in Virginia -- I don't know how it is outside

4   of Virginia -- is currently continuing all of its

5   garnishment and levying and debtor interrogatory

6   efforts collecting against these class members right

7   now as we speak, and you would be sending a notice to

8   them saying Midland is sending you notice, a court

9   notice so that you can fill out information and confirm

10   your identity and send it back for the possibility at

11   most of a ten dollar check.

12          It is a common practice of debt collectors to

13   send small checks to debtors so that they can get their

14   bank account information and their credit information,

15   their personal information.  It is the most effective

16   skip trace in the world.

17          And so you will receive testimony from some

18   of the top debt collector defense experts who will

19   provide you the explanation or analysis that it is a

20   disaster to send notices out to these unrepresented, in

21   most instances, consumers that Midland will have full

22   access to at the same time they are continuing to try

23   to collect.

24          And so people make arguments; that is one of

25   a number of arguments that are shortly forthcoming from

1   the National Consumer Law Center, from the National

2   Association of Consumer Advocates, board members that

3   represent clients in a variety of contexts.

4          THE COURT:  I'm obviously non plussed by that

5   argument because you did it.  To the bottom of the

6   argument, you are saying class actions cannot be

7   effective.  You cannot send out notices.

8          MR. BENNETT:  No, sir.

9          THE COURT:  If that's true, no class action

10  would be resolvable.

11         MR. BENNETT:  For example, in the *Makson*

12  case, Judge, we included in our order a prohibition

13  such that the defendant debt collector would have no

14  access to any of the data.  It would not know which

15  consumers were active, it would not know their current

16  addresses, and it could not use any of that information

17  for debt collection.  And certainly we have settled,

18  and this is not as an objector, but in most

19  circumstances we are consumer class action counsel, and

20  so that --

21         THE COURT:  Do you notice where these returns

22  are to go?  They don't go to Midland, as I recall.

23         MR. BENNETT:  It would go to a class

24  administrator that Midland has full access to, and that

25  is ordinary.  In most circumstances, the defendant is

 1   not adverse to the class members any longer.  In this
 2   instance it is different, because you have a debt
 3   collector with judgments against the lion's share of
 4   these folks, and is continuing to this moment, to this
 5   day, to garnish and to levy and to file adversary
 6   pleadings and collection pleadings against these class
 7   members, and to suggest, Judge, getting back to the
 8   question that it should be significant, even though it
 9   is not in Rule 23 and there is no case law on this,
10   that it should be significant that our clients, by the
11   way, all of whom are represented, all of whom have
12   counsel, that you should facilitate a means by which
13   this debt collector should circumvent that, to be able
14   to have the direct contact with the represented
15   consumer debtors who have been sued in the past by
16   Midland, and force them to go through this exercise
17   twice is unjust.
18           The purpose of the process is to protect the
19   class member.  That's the purpose.  That's the only
20   purpose of the Rule 23 approval process, is to make
21   sure that as a fiduciary, in the interest of the class
22   members, that this settlement and the whole process
23   leading up to it is fair, and we represent individuals,
24   Judge, who have selected and asked us to represent
25   them.  The opt-outs that have been sent through

1    Mr. Murray have been mailed by each class member.  You

2    have my sworn testimony as to that --

3             THE COURT:  I understand.  Let me interrupt

4    you there.

5             Of those that I have seen, at the top of each

6    is the name with the same writing.  The exact same

7    writing.

8             Additionally, some have both boxes, opting

9    in, opting out, remaining as checked, and one at least,

10   Morrow, has only the opt-in -- I use that, my own

11   term --

12            MR. BENNETT:  Yes, sir.  That certainly

13   confirms the process that I outlined in our

14   declaration, that we sent these, our clients, we sent

15   them a copy of the settlement agreement with the notice

16   and this form, with an instruction that they could

17   choose to opt out.  Some have elected not to opt out,

18   and that is not unexpected.

19            THE COURT:  But some have done both.

20            MR. BENNETT:  And some have done both, and

21   certainly I think that there is legitimate concern

22   about the message that those who are checking those

23   boxes are conveying, but that is not Mr. James and that

24   is not the vast majority.  It is one percent of all the

25   individual opt-outs, Your Honor.

1          THE COURT:  Let's move on.  I want to ask you

2     about tolling.

3          MR. BENNETT:  Yes. sir.

4          THE COURT:  I want you to comment on the

5     *Wyeth* case in the Eastern District Virginia last year,

6     *Torkie Tork v Wyeth*.

7          It would seem to me that that case permits

8     class action tolling because parallel state claims

9     would be tolled under Virginia law.  I would then have

10    no occasion to seek whether particular Virginia claims

11    would be tolled under the present process, and I would

12    therefore have no need to amend the injunction

13    language.

14         MR. BENNETT:  Judge, to the extent that --

15    well, first, *American Pipe* and *Crown Cork*, and Your

16    Honor, the Northern District of Ohio's decision in

17    *In Re Vertrue*, all say that this pertains to a unity of

18    parties and claims, and the rule -- and it is a

19    relation back under a Rule 15 analysis -- is that to

20    the extent that the defendant had notice of the, that

21    is, a future defendant, a defendant that sued in the

22    future.  If the defendant had notice of the claim and

23    notice of the magnitude of the claim, then it is

24    tolled, and so there is a -- a pleading at some future

25    point that would file the action.  Midland would say

1   your statute of limitations is expired, and we would

2   say, well, this claim was related to, it was a Virginia

3   conspiracy claim or an abuse of process claim under

4   State law and it was related to the Fair Debt

5   Collection Practices Act claim, and there is a couple

6   significant problems with that process.

7           Number one is it means there is uncertainty,

8   and in the future there is the possibility that our

9   claims are tolled, even for that subcategory.

10  Importantly, all of the tolling analysis assumes that

11  you have a unity of parties in the pleading, and

12  normally what is done, Your Honor, when a class action

13  settlement occurs, is you almost always have an amended

14  complaint that is filed that redefines the class, and

15  that is what would have been necessary and could still

16  be done, an amended complaint that changes the Ohio

17  Fair Debt Collection Practices Act to a national class.

18          Beyond that, you also have difficulty,

19  because there are claims that are not directly related,

20  but might -- that is, the defendant would argue that

21  they are not exactly the same, such as an abuse of

22  process claim or such as a civil conspiracy, or the

23  case of the identity theft victim and the credit

24  reporting issues that are still related in part, based

25  on the breadth of Your Honor's injunction to that, so

1    we are simply asking, and there has not been an

2    argument made by the other side, and Your Honor is

3    known for your fairness on all accounts, we are asking

4    for a fair outcome which simply doesn't prejudice

5    anybody.

6            It is, Your Honor, amend the injunction to

7    clarify that all claims by all national class members

8    with respect to Encore and Midland companies are

9    tolled, and there is no fair opposition to that.

10           And if it is true, as Your Honor suggests,

11   and as Midland or the plaintiff notes in simply a

12   footnote, that the state claims are tolled, then there

13   is no prejudice to anybody.  I simply clarify the

14   order.  We are not -- this is not an overreach at all,

15   Your Honor.

16           THE COURT:  I understand now where you are

17   coming from.

18           MR. BENNETT:  And Judge, it also doesn't

19   pertain, respectfully, regardless, you cannot toll

20   claims.  You don't have the jurisdiction,

21   unfortunately, because that would be a simple fix.

22           You don't have the jurisdiction over

23   non Encore parties in both the Washington and

24   California cases, and in our other cases that would be

25   filed with Mr. James, we would bring action against the

1    debt collector bills in the State of Virginia that had

2    no connection to Encore Midland.  You don't have

3    jurisdiction over those non parties at all.  They are

4    not a family member of Encore, and so you don't have

5    the ability to toll.  The way the injunction is

6    written, it certainly --

7              THE COURT:  Why would you ever interpret the

8    injunction to reach non party defendants?

9              MR. BENNETT:  The injunction says you cannot

10   file any action anywhere against anyone based on the

11   affidavits, and in fact, we think that Encore Midland

12   is violating its own injunction by continuing to

13   garnish and to levy class members during the pendency

14   of this injunction, but it is very wrong.  And I

15   understand Your Honor did not draft it but it is Your

16   Honor's words, and we are asking now that you clarify.

17   Again, if that's the case, then there is no prejudice

18   or harm by simply confirming in an order that it does

19   not pertain to those non parties.

20             You have a similar confusion coming from the

21   Attorney General of Minnesota.  I think that there will

22   be other Attorneys General that, as I understand,

23   will --

24             THE COURT:  Are those criminal matters?

25             MR. BENNETT:  The matter of the State

1   Attorney General in Minnesota is not at all a criminal

2   matter, Judge.  It is as well a civil matter.

3            THE COURT:  Thank you.

4            MR. BENNETT:  Thank you, Judge.

5            THE COURT:  Mr. Seitz.

6            MR. SEITZ:  Thank you, Your Honor.  Let me

7   move towards the podium here.  I will be brief, Your

8   Honor, but I do want to remind the Court and maybe some

9   of the --

10           THE COURT:  Before you start, I want to find

11  out if Judge Lauck is in the courtroom.

12           Can you hear me?  I just want to say hello,

13  and thank you very much.   (Inaudible.)

14           MR. SEITZ:  Do you want me to go forward,

15  Your Honor?

16           THE COURT:  Yes.

17           MR. SEITZ:  Your Honor, I just wanted to

18  remind some of the parties in Virginia and other places

19  that what is really in front of the Court as far as the

20  cases, because I hear a lot of statements from Virginia

21  counsel about how --

22           THE COURT:  If Mr. Seitz is speaking, I

23  cannot hear him.

24           THE CLERK:  They have us muted on the bridge.

25  I sent an E-mail.

```
 1              MR. BENNETT:  It seems like the other site is

 2    muted.

 3              THE COURT:  David, you might check and see if

 4    your site is muted.

 5              IT TECH:  If it is muted, it is being done by

 6    the bridge.  The courtroom is not muted.

 7              (Pause.)

 8              THE CLERK:  I think we reestablished.  Looks

 9    like we may be unmuted now.

10              MR. SEITZ:  Your Honor, can you hear me?

11              THE COURT:  Yes.

12              MR. SEITZ:  It appears after this long

13    arduous case, Your Honor, I finally have been muted for

14    a while.

15              THE COURT:  I can only hear every other word.

16              IT TECH:  I have no answer.

17              MR. SEITZ:  Do we want to take maybe five --

18              IT TECH:  Talk slow, into the microphone.

19              MR. SEITZ:  Your Honor, can you hear me now?

20              THE COURT:  Yes.

21              MR. SEITZ:  I will talk slow, and if I move

22    too fast, please remind me.

23              I just wanted to start off by reminding the

24    Court and the counsel in Virginia, they may not be

25    aware or sensitive to the fact, they mentioned in their
```

1    argument to start off that this was an Ohio-based

2    class, and while *Brent* was an Ohio-based class, as the

3    Court is aware, the *Vassalle* cases and the *Franklin*

4    cases have always been pled as national class actions,

5    and they are part of this settlement as well.  The

6    other thing that I wanted to remind the parties about

7    is this is not only a (b)(3) settlement, this is also a

8    (b)(2) injunctive relief settlement as well.

9           So where I would like to start out is the

10   opt-out notice being effective, and clearly our view,

11   Your Honor, which I know is supported by law, is that

12   the opt-out that Miss Rubio and the other 55 people

13   have submitted is not effective, and in fact, Mr,

14   Bennett's own declaration supports why they are not

15   effective when he states that for those that are marked

16   both with, as you call it, Judge, the opt-in and the

17   opt-out boxes checked, even by his own admission there

18   would need to be some other follow-up or clarification

19   or affidavit from those people as to what they meant by

20   their notice.

21          This only underscores the importance of why

22   the notice process has to be followed in such a

23   rigorous manner, that it must be mailed out in a

24   neutral forum, then received by the class members, and

25   at that point they can go to counsel, other counsel,

1    and ask questions and ask advice on whether they should

2    opt in or opt out, or whether they should object to the

3    settlement, but until that time, until they receive it,

4    it is not effective, and this is in the cases that we

5    point out to the Court in our brief, and in addition, I

6    found another case which I did not have a chance to put

7    in our brief of which I know Mr. Bennett is familiar

8    with, and it is a case out of the Central District of

9    California called *White versus Experian Information*

10   *Solutions*, and the cite is 2009 Westlaw 4267843.

11          There have been a series of opinions in the

12   case, and the opinion I have is dated November 23,

13   2009.  It talks about a situation where competing

14   counsel, a counsel that had objection to the

15   settlement, had sent out a competing notice, as the

16   Court called it, and tried to reach out to class

17   members, and the Court said, "The class members'

18   decision whether or not to opt out is a matter of

19   extreme importance, committed to the discretion of the

20   Court, not the litigants, and therefore a neutral

21   notice is sent to the parties.  A party sending out its

22   own competing, argumentative notice and invitation to

23   the class members to opt out defeats the purpose of the

24   Court insuring that class members receive a neutral

25   notice."

1    In this case, as per Mr. Bennett's own

2    declaration that he submitted yesterday, he mentions in

3    Paragraph 14, "We began to counsel our clients they

4    needed to either opt out or object," and this is when

5    they sent out that proposed notice form that was a

6    preliminary approval order along with the other

7    documents that he says were submitted, and so in that

8    case, Judge, I would say this is actually a competing

9    notice.  It is not neutral when he sends it out.

10   These people need to receive neutral notice

11   in the format that the Court has set forth in order for

12   any opt-out to ever be effective, so --

13   THE COURT:  Excuse me.  Excuse me.  I don't

14   get double or triple pay for this torture, and I don't

15   mean what you are saying, but it is coming across

16   triple times.  I have my right arm and my brain on this

17   matter.

18   Now, would you speak, and don't take this for

19   the record until I tell you.  Do some speaking, would

20   you please, Ted?

21   (Discussion off the record.)

22   THE COURT:  Back on the record.

23   MR. SEITZ:  We'll try it again, Your Honor.

24   As I mentioned before, Judge, in this case,

25   the opt-outs that have been submitted, or alleged

1   opt-outs, are not effective.  The Court needs to wait

2   and the class needs to wait for this notice to be

3   mailed out and then for valid opt-outs to be submitted.

4          And the other thing I wanted to mention, Your

5   Honor, which I think the Court has a clear view of, is

6   that if claims are tolled and you have the power to

7   toll it, pursuant to the *Torkie* case, which the Court

8   pointed out and which we also had attached to our

9   brief, in addition, I would like to note that under

10  Virginia law, Section 801-229(c), the statute of

11  limitations is tolled by an injunction.  So while the

12  Court's injunction is effective in this case, claims

13  related to affidavits of the class members are tolled.

14  If the claims are not related to the affidavits, then

15  Your Honor, they are not tolled, and I want to make

16  sure that we're clear on that point.

17         If what Mr. Bennett suggested was to amend

18  the injunction so that any and all potential claims

19  against Midland are tolled while it is pending, I don't

20  think that is correct, Your Honor, especially if that

21  would include non class members.  They can interpret

22  what that means.

23         So if it is related to an affidavit, the

24  claim is tolled.  I think that that is clear.  Once the

25  injunction is gone and the class settlement has been

1   approved and the opt-outs are effective, then those

2   people who have opted out as to those claims are free

3   to do so.  Their claims have been tolled while the

4   class action, while the injunction was pending.

5           THE COURT:  Let's go off the record for a

6   moment, please.

7           (Discussion off the record.)

8           MR. BENNETT:  The Judge had another matter

9   she wanted to leave for.  She wanted to express to Your

10   Honor her apologies.  We confirm that we'll provide a

11   copy of the transcript to Judge Lauck.

12           THE COURT:  And I will call her this

13   afternoon.  Thank you.

14           Mr. Seitz, if you would continue.  We're back

15   on the record.

16           MR. SEITZ:  Yes, Your Honor.  We have a

17   little bit of an echo here, but I think since the other

18   two locations are fine, we'll just bear it.  I think we

19   can do so.

20           I guess with that, and what I said last time,

21   before we were cut off, maybe the best thing for me to

22   do is to ask if the Court has any questions or any

23   areas it wants me to address.

24           THE COURT:  It seems to me that with this

25   problem and it being so difficult for me to hear, I'm

 1   going to have to look at the transcript of this and go

 2   from there.

 3        With that in mind, I would like to suggest,

 4   but not demand, that there be some post-hearing

 5   briefing, very short, please, to the point, limited to

 6   five pages on each side, unless counsel agrees with one

 7   another that ten pages are appropriate.

 8        All right.  What I would like Mr. Bennett to

 9   touch on are two issues in particular.  One, any new

10   light to shed on the tolling issue.  Two, requested or

11   suggested language in amending the injunction, and the

12   explanation of why you believe it is appropriate.

13        It would seem to me that Mr. Bennett would go

14   first, and Ted Seitz would respond.  And Donna, if you

15   wish to speak, you may do so, and/or reserve for

16   briefs, whichever you wish.

17        MS. EVANS:  Thank you, Your Honor.  I just

18   have a few comments that I would like to make, and for

19   the record, I also wanted to let you know that counsel,

20   class counsel did receive the opt-out form from Gilbert

21   James in our mail Monday.  It was postmarked on March

22   31st.  So that form was not in our office at the time

23   the brief was filed.

24        Class counsel does respect the right of every

25   class member to opt out, if that is their choice.  I

1    want to make that clear.  And I think the issue at this

2    point comes down to when the opt-out is valid and when

3    it is timely, as the injunction stated.  I believe that

4    that issue has been addressed completely, so I won't go

5    into that any further.

6         The other thing I wanted to bring out is it

7    seems to me that Mr. Bennett in his oral argument has

8    strayed from the request that he made in his motion.

9    He made two points, first having to do with the

10   opt-out, and second was this Court's jurisdiction to

11   enter the injunction in the first place.

12        As we stated in our briefs, this Court does

13   have the authority to issue an injunction against third

14   parties in aid of its jurisdiction, and I believe that

15   in this case, with the settlement pending, with the

16   fairness hearing going to be contested, as Mr. Bennett

17   states, he has already filed a motion for one of his --

18   one of the class members to intervene, and we do expect

19   that he is going to follow through on that, so we will

20   be opposing that motion.

21        However, as long as the fairness hearing is

22   going to be contested, this Court needs to retain

23   jurisdiction over those absent class members and the

24   opt-outs against any parallel litigation that could

25   produce conflicting results and could cause more

1    confusion for the class members, especially if the

2    litigation would be commenced prior to the actual

3    opt-out date.

4         At that point, I think those are the two

5    issues that I wanted to address with this Court, and I

6    will entertain any questions should you have any.

7         THE COURT:  Thank you very much.

8         Mr. Bennett, you have the opportunity to

9    respond, briefly, as well as areas covered by briefing.

10        MR. BENNETT:  Thank you, Judge.  And I'll

11   keep it brief.

12        If I could, Your Honor, take the first

13   opportunity to try to elicit from Your Honor a flushing

14   out of the first issue, a new light on the tolling

15   issue.

16        I certainly want to brief, given the very

17   targeted sides, to be on point, and is there anything

18   Your Honor can suggest to inform us of the issue

19   that -- beyond the new light on the tolling issue that

20   you would suggest for that first point?

21        THE COURT:  The only issue that I want you to

22   address is the response to Ted Seitz' assertions with

23   regard to that tolling issue, both in the Virginia

24   cases and elsewhere, the cases he cites.  If you

25   believe you have already covered it, then I will reread

1    your previously-submitted memorandum.

2         MR. BENNETT:  Yes, Judge.  I don't believe

3    that we had addressed some of the arguments that were

4    made, and I will address them in the brief.

5         If I may, then, use my minutes to respond

6    briefly to the arguments that have been made.

7         THE COURT:  Of course.

8         MR. BENNETT:  Your Honor, it was our effort

9    with the targeted filings that were made not to try to

10   advance the position that the objections we made were

11   the substantive objections that I think Your Honor will

12   receive, may make.  It was simply to ask for a

13   preservation of the status quo until Your Honor could

14   hear another side to the story, and you have not heard

15   any arguments at all as to what prejudice or harm would

16   befall either parties by the tolling.

17        In fact, with respect to the opt-outs, Judge,

18   the best way to moot the need to speed ahead with our

19   causes of action with respect to the opt-outs is to

20   make sure that their claims are fully protected, and

21   failing that, and to the extent that everybody agrees,

22   the parties, the opt-outs, the objectors all agree that

23   these claims should and would be tolled, that it should

24   not be a difficult exercise to reduce that.

25        We will propose an order hopefully this time

1   around that you will agree with, and I appreciate class

2   counsel's acknowledgement of the importance of the

3   right to opt out in accordance with law and class

4   action guidelines.

5          Your Honor, the other issue, briefly, there

6   is this case, *Wyeth versus Experian*, that was

7   discussed, and that was our $51 million dollar

8   settlement in a consumer credit case in California, and

9   in fact the National Consumer Law Center is also part

10  of that.

11         In that instance, we defended as class

12  counsel to the Ninth Circuit.  The objectors which were

13  part of our group that broke away, they wanted the

14  Court's blessing on a specific letter, and the Court

15  said you can send whatever letter you want, objector,

16  but you cannot get my blessing on it, and the last line

17  of the Court's order was just that.  And the Ninth

18  Circuit recently sustained our defense of the Court's

19  order in concluding that nothing about the order

20  prohibited the communications by the objectors to their

21  clients, and that is a method of informing those

22  individuals and those class members who had all opted

23  out.

24         So, to the extent that *Wyeth v Experian* and

25  our case are similar, it strongly supports the position

1     we take, which is that there is not an inhibition to

2     the bar at all on advising your clients, those that we

3     represent as to the settlement, in providing the copies

4     of the documents.

5              So I appreciate, I know that Your Honor has

6     had a lot of patience.  I thank you for setting this

7     up.  I would remind Your Honor that Mr. James at least

8     has a statute of limitations that would expire

9     tomorrow, on the 7th, hence the urgency.  And while I

10    will do my best to get our briefing out this evening or

11    first thing in the morning, that is a concern and --

12             THE COURT:  I wanted to touch on that.  I had

13    thought about that and I mentioned that as a reason for

14    rushing to set this hearing.  But I, as much as I would

15    like to, can not rule by tomorrow.  It would seem to me

16    that there would be a way to protect Mr. James.

17             I'm going to say this, and I don't mean it --

18    and not to offend the Court, I'm not talking about the

19    Judge -- not offend the injunction would be better

20    said, if you believe that it is necessary for you to

21    file by the end of the day tomorrow, it would seem to

22    me that I could say there is no penalty if you were

23    proven wrong.  It is a difficult conundrum, I would

24    admit.

25             What say you, Mr. Seitz?

1          MR. SEITZ:  Your Honor, we would be fine with

2    no penalty if Mr. James filed his claim by tomorrow.

3          THE COURT:  Yes.  I think that's a

4    resolution.  I would like to suggest that if you feel

5    that you need to file, we will find other ways to

6    address the issue as we move down the road.

7          MR. BENNETT:  Your Honor, may I suggest that

8    in that we currently represent 20 individuals who opted

9    out that have statutes of limitation expiring in the

10   month of April, what I would suggest is that we would

11   file, not serve, and immediately provide plaintiff's

12   counsel copies of that, in addition to our letter

13   confirming that we are not intending to serve, and that

14   would preserve the statute of limitations, as Your

15   Honor suggests, without disrupting Your Honor's

16   settlement, if Midland's concern is founded.

17         THE COURT:  Well, the other course which we

18   take up in other matters like this is to make a

19   voluntarily extension of the statute of limitations as

20   between your firm and Midland as to the clients you

21   represent, and you and Mr. Seitz are encouraged to

22   explore that.

23         MR. BENNETT:  Yes, Judge.  The one additional

24   asterisk, the additional grace concern that the clients

25   we represent have is our read, if we take the broadest

 1   read of the Court's injunction, which a lawyer with 16

 2   years in Federal Court without a sanction, like myself,

 3   you always take the broadest view, and we believe that

 4   the broad reading of the injunction to bar our clients

 5   from seeking to vacate their judgments in our state

 6   collections court or even to defend against the

 7   garnishments that Midland is engaged in

 8   (unintelligible) then we would be fine.  Your Honor's

 9   suggestion would get certainly on the record the

10   Court's belief that the injunction doesn't reach the

11   vacations of judgments.  I believe Your Honor's

12   suggestion is, would be effective.

13           THE COURT:  Thank you.  In the interest of

14   completeness, anyone else wish to make any statement at

15   this time before we discuss the timing of the briefing?

16           All right.  It would seem to me that by

17   Monday next, Mr. Bennett, if you could file your

18   brief -- is that sufficient?

19           MR. BENNETT:  It will be, Your Honor, yes.

20           THE COURT:  And Donna and Ted, if you would

21   by the end of the week -- that is, a week from this

22   coming Friday, that will be the 15th, your response.

23           MR. SEITZ:  That is fine, Your Honor.

24           MR. BENNETT:  If Your Honor please, we

25   actually have due on Monday all of our response briefs

```
 1    to the multiple Midland briefs, post trial briefs in

 2    our Midland jury trial in Alabama.  Those are due on

 3    Monday.  They will require my full time between now and

 4    then.

 5             THE COURT:  What about -- the only issue is

 6    the tolling issue that you have to brief.  If we are

 7    getting around that, why don't we say the 18th.

 8             MR. BENNETT:  Yes, sir.

 9             THE COURT:  That's a week from Monday.

10             MR. BENNETT:  Yes, sir.

11             THE COURT:  And Ted, the 25th.

12             MR. SEITZ:  That is fine, Your Honor.

13             MS. EVANS:  That is fine.

14             THE COURT:  Is that all right, Donna?

15             MS. EVANS:  Yes, Your Honor.

16             THE COURT:  Okay.  Anything else?

17             MR. BENNETT:  Just to alert Your Honor, I'm

18    certain, I know that at least -- and we're not the one,

19    but you will have significant objection briefing and

20    subject matter jurisdiction being filed from the

21    Washington group, probably today or tomorrow.  I expect

22    you will have similar substantive objections in terms

23    of court resources that would be coming in Your Honor,

24    in the same period.

25             THE COURT:  Let me ask you, let's talk about
```

1    the length of the briefs.  Most of us can't say hello

2    and good-bye in five pages.

3              MR. BENNETT:  Yes, Judge.

4              THE COURT:  What is your feeling, gentlemen

5    and lady, about the length?

6              MR. BENNETT:  We will give as much as the

7    Court's resources will accommodate.  If ten pages is

8    the larger of the two options, we ask for ten.

9              MR. SEITZ:  Ten is fine, Your Honor.  I think

10    we can do it in five.  I'm from Michigan.  They have a

11    five page limit for reply briefs.  If Mr. Bennett wants

12    ten, that's fine, he can take ten; I'll take ten, too.

13              THE COURT:  Well, max ten.  Thank you very

14    much.  I want to thank everybody for being available.

15    I want to thank you, those of the technical staff who

16    made this possible.  Judge Lauck certainly.  And we'll

17    move on from there.

18              MR. SEITZ:  Thank you, Your Honor.

19              THE COURT:  Thank you.

20              MS. EVANS:  Thank you, Your Honor.

21              THE CLERK:  Thank you, Judge.

22                        -  -  -  -

23              (Proceedings concluded at 11:21 a.m.)

24                        -  -  -  -

25

1                     C E R T I F I C A T E

2

3           I, Judith A. Gage, Federal Official Court
    Reporter, certify that the foregoing is a correct
4   transcript from the record of proceedings in the above
    entitled matter.

5

6                                      _____

7   April 14, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25