**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Midland Funding, LLC, | ) | CASE NO.: 3:08-cv-01434 |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | HON. DAVID A. KATZ |
| | ) | |
| vs. | ) | |
| | ) | **And Related Cases:** |
| Andrea Brent, | ) | |
| | ) | Case No. 3:11-cv-0096, N.D. Ohio |
| Defendant/Counterclaim Plaintiff | ) | Case No. 3:10-cv-0091, N.D. Ohio |
| | ) | |
| vs. | ) | **COUNTERCLAIM DEFENDANTS** |
| | ) | **MIDLAND FUNDING, LLC AND** |
| Midland Credit Management, Inc., | ) | **MIDLAND CREDIT** |
| | ) | **MANAGEMENT, INC.'S RESPONSE** |
| Counterclaim Defendant. | ) | **TO THE STATE OF MINNESOTA'S** |
| | ) | **MOTION FOR CLARIFICATION** |

**I.     INTRODUCTION AND BACKGROUND**

On March 11, 2011, this Court preliminarily approved a nationwide settlement of three class actions – *Brent*, *Franklin*, and *Vassalle* – arising from Midland's use of affidavits in debt collection lawsuits where the affiant allegedly did not have personal knowledge of the facts contained in the affidavit. This was after a year of settlement negotiations conducted with the assistance of a mediator (former Federal Judge Richard McQuade) and this Court. Aware that there were multiple class actions pending in various state and federal courts that were based on the same alleged facts as the *Brent*, *Franklin*, and *Vassalle* cases, and recognizing that these actions, as well as any similar future actions that might be brought by others, could seriously impair the Court's ability to oversee the orderly and efficient management of the proposed nationwide class settlement, this Court also issued an order preliminarily enjoining parallel

1

litigation (the "Preliminary Injunction") [Dkt. 110] along with the Preliminary Approval Order [Dkt. 111].

Courts overseeing complex nationwide class action settlements commonly grant such injunctions and are empowered to do so under the All Writs Act. 28 U.S.C. § 1651. This is because related litigation threatens the district court's jurisdiction over the settlement by creating the risk of inconsistent orders, exposing the settlement to collateral attacks in other fora, draining the parties' resources, and distracting them from critical settlement tasks.

On March 28, 2011 the State of Minnesota, via its Attorney General, filed a Motion for Clarification of the Preliminary Injunction Order [Dkt. 120], which also contains: (1) a proposed state court complaint against Midland Funding, LLC and Midland Credit Management, Inc.; and (2) a proposed Order to Clarify this Court's Preliminary Injunction. [Dkt. 120, Exhs. A and B]. In its motion, the Minnesota Attorney General seeks permission to file its proposed complaint despite the Preliminary Injunction.

As an initial matter, Midland recognizes the right of the State of Minnesota to bring an enforcement action for alleged violations of Minnesota law. However, Minnesota is not entitled to seek relief that would interfere with this Court's jurisdiction over the settlement agreement – for example, restitution for class members or injunctive relief that conflicts with the stipulated injunctive relief provided for in the class settlement. The proposed Minnesota state court complaint contains a series of factual allegations that in large part mirror the allegations in *Brent*, and includes citations to the deposition testimony of Ivan Jiminez taken in the *Brent* case. [Prop. Cmplt. ¶¶'s 34-35 and 38-42]. Ultimately, the proposed complaint contains two causes of action: Count 1 –Contempt of Court; and, Count II –Minnesota's Collection Agencies Act ("MCPA") [Prop. Cmplt. ¶¶'s 71-82], which specifically incorporates the Fair Debt Collection Practices Act

("FDCPA"). [Prop. Cmplt. ¶¶ 79-81]. The proposed state court complaint also seeks a variety of different forms of relief against Midland, including but not limited to an injunction relating to alleged violations of the MCPA and "disgorgement of profits." [Prop. Cmplt. "Relief"]

Accordingly, before being permitted to file the proposed complaint, the Minnesota Attorney General should confirm to this Court that it is not seeking any relief, including, but not limited to, any form of restitution, that implicates in any way the relief provided as part of the *Brent* class settlement. Additionally, the Minnesota Attorney General should provide assurances that the proposed state court lawsuit is not designed to be an indirect attempt to interfere with or alter either the monetary or injunctive relief currently provided for in the *Brent* settlement. Midland has recently retained counsel to represent it in connection with the potential Minnesota proceeding, and believes that it may be possible to reach an agreement on these points informally and without Court intervention.

## II. ANALYSIS

The Minnesota Attorney General claims that this Court cannot enjoin it from bringing an enforcement action against Midland in state court, so long as it does not seek restitution, including any form of damages relating to the *Brent* settlement class. This is not in dispute. However, prior to this Court allowing Minnesota's proposed state court action to proceed, more clarification is required from the Minnesota Attorney General to make clear that the proposed action does not and will not actually seek such relief. As set forth in further detail below, this course of proceeding is supported by the statutes and cases cited in the State of Minnesota's Motion for Clarification.

As an initial matter, as recognized by the State of Minnesota, the Preliminary Injunction in this case was issued pursuant to All Writs Act, which broadly empowers federal courts to

3

"issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). It is well-settled that a district court – such as this one – which is resolving a nationwide class action encompassing a large potential settlement class may, pursuant to the All Writs Act, issue an order enjoining related litigation pending final approval of the settlement. *See, e.g., In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002); *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 449 (N.D. Ill. 2009); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 174 F. Supp. 2d 648, 655 (N.D. Ohio 2001).

There is also no dispute that this Court has jurisdiction to enjoin state attorney generals. Because parallel litigation threatens the jurisdiction of the court overseeing the settlement, the court can enjoin such litigation under the All Writs Act even in the absence of a traditional basis for personal jurisdiction. As held by both the United States Supreme Court and the Sixth Circuit: "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *U.S. v. New York Tel. Co.,* 434 U.S. 159, 174 (1977); *United States v. City of Detroit*, 329 F.3d 515, 523 (6th Cir. 2003) (same, citing *New York Tel. Co.*); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2nd Cir. 1985)("An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction.").

When a district court enjoins parallel litigation in connection with a nationwide class action settlement, non-parties, including states attorney generals, have sought to attack the

4

injunction on the ground that the court lacks jurisdiction over non-class member parties. Such attacks have been rejected. *See Baldwin-United*, 770 F.2d at 338 (holding that preliminary injunction barring state attorney general actions against defendants who were in the process of settling complex class action was proper under the All Writs Act); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1434 (D. Minn. 1993) (rejecting argument that the court did not have the power to enjoin parallel litigation because it lacked personal jurisdiction, and explaining that under the All Writs Act "there is ample authority for the proposition that the court has jurisdiction to enjoin other actions even if the parties were not members of the . . . class"); *U.S. Int'l Bhd of Teamsters, Chauffeurs, Warehouseman and Helpers of America, AFL-CIO*, 728 F. Supp 1032, 1048 (S.D.N.Y. 1990) ("Virtually all subordinate entities argue that this Court has no personal jurisdiction over them . . . . These contentions ignore the fact that personal jurisdiction is not required to bind such entities under the All Writs Act. The All Writs Act gives the Court the power to bind those who are 'not parties to the original suit.'").

As Minnesota recognizes, this Court has the power to enjoin state actions that seek relief on behalf of class members. Minnesota relies heavily on the analysis set forth by the Second Circuit in *In re Baldwin-United*, 770 F.2d at 340–342, to claim that because it is not acting in a "representative" capacity, sovereign immunity applies, which allows it relief from the Court's Preliminary Injunction. As explained by the Second Circuit in *Baldwin-United*, for sovereign immunity purposes, actions instituted by state officials, such as attorneys generals, in a representative capacity present an exception to the Eleventh Amendment. *Id.* at 341 (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 600, 602 (1982)); *Pennsylvania v. New Jersey,* 426 U.S. 660, 665 (1976) (declining to find the state the real party in interest for the purpose of original Supreme Court jurisdiction when the state was attempting to vindicate the

5

individual rights of its citizens). Thus, "when relief against such representative actions by the state is sought, the state's sovereign immunity is not a bar." *Id*. (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia,* 311 F.Supp. 149 (S.D.N.Y.1970)). However, as further explained by the Second Circuit in *Baldwin-United*,

> State criminal or regulatory actions, in contrast, are brought in a state's capacity as sovereign. A state's right to pursue such remedies is therefore within the protection of sovereign immunity, unless the state action violates the Constitution or federal law, provided the proceedings are not being used by the state as a means of coercing the defendants into increasing a civil settlement offer to persons who might be represented by the state, *see, e.g.,* 42 U.S.C. § 1983 (1982); 18 U.S.C. § 1951 (1982).

The Second Circuit went on to explain that the district judge in the *Baldwin-United* case correctly defined the parameters for how sovereign immunity related to his injunction, which, like *Brent*, was put in place to manage the proposed class settlement:

> [H]e properly concluded only that the states would be violating federal law *if* they should bring administrative and criminal proceedings in order to induce the defendants to contribute more toward the settlement being reached in the federal court. His order does not enjoin the states from seeking prospective injunctive relief against unlawful business practices by defendants or from exercising law enforcement or regulatory powers, provided these actions do not "seek to in any way affect the rights of any plaintiff or purported class member in any proceeding under MDL 581."
>
> Thus the injunction only precludes state officials from bringing actions in a de facto or de jure representative capacity on behalf of the plaintiffs in the federal actions. Accordingly, the injunction affects conduct outside the protection of the states' sovereign immunity. Given the clear intent and directive of the injunction and the district court's willingness to advise the states on whether proposed conduct would fall within the bounds of the injunction or not, we cannot say that it was error for [the district court judge] to issue the injunction in the form he chose.

*Id*. at 341–42.

Finally, the Second Circuit noted that there may be some state laws not available to private plaintiffs that enable a given state to bring proceedings seeking restitutionary damages for the

6

benefit of certain of its citizens. *Id.* at 341 (citing, Me. Rev. Stat. Ann. tit. 5, § 209 (Supp. 1984-85) (providing that in an action brought by the state to declare a practice unlawful the court may "make such other orders or judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason" of the unlawful practice "any moneys or property ... which may have been acquired by means of such method"). However, as the court explained, "the invocation of such a restitutionary remedial provision does not cause the claim to lose its representative character. Although only the state can act under the state statute, its claim is essentially derivative. Any recovery would not go to the state but ultimately to the plaintiffs-investors in the federal action, who are the real parties in interest." *Id.*

Here, the State of Minnesota contends that its actions are not brought in a "representative" capacity, and thus, its proposed state court action is not subject to this Court's Preliminary Injunction under sovereign immunity. However, further clarification by the State of Minnesota is required in order to ensure that the Preliminary Injunction does not bar its proposed state court lawsuit. This is especially true given the fact that many of the factual allegations and causes of action in the proposed Minnesota state court action appear to be substantially similar to those at issue in the *Brent*. Likewise, at this point it is unclear as to whether the relief sought by the State of Minnesota implicates the class relief in *Brent*. Further, prior to entering any clarification order, the Court should be satisfied that the State of Minnesota's proposed state court action is not being brought as an inducement for Midland to provide greater relief to the class members subject to the *Brent* settlement. Accordingly, Midland respectfully requests that the State of Minnesota's motion be denied, or in the alternative stayed, so that the Court can allow the parties to meet and discuss a proposed order, which supplies the Court with the necessary information to provide the appropriate relief from the Preliminary Injunction.

Date: April 14, 2011 Respectfully Submitted:

        */s/ Theodore W. Seitz*
        Theodore W. Seitz
        Dykema Gossett PLLC
        Counsel for Midland Funding, LLC and
        Midland Credit Management, Inc.
        Capitol View
        201 Townsend Street, Suite 900
        Lansing, MI 48933
        Tele: (517) 374-9149
        tseitz@dykema.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

        */s/ Theodore W. Seitz*
        Theodore W. Seitz

LAN01\233892.1
ID\TWS - 097356/0045