\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Midland Funding, LLC, | : | Case No. 3:08CV1434 |
| Plaintiff/Counter Defendant, | : | **POST-HEARING BRIEF OF INTERESTED PARTIES ANN RUBIO AND GILBERT JAMES AND INTERVENOR LADON HERRING** |
| vs. | : | |
| Andrea Brent, | : | HON. DAVID A. KATZ |
| Defendant/Counterclaimant, | : | **And Related Cases** |
| vs. | : | Case No. 3:11-cv-0096<br>Case No. 3:10-cv-0091 |
| Midland Credit Management, Inc., | : | |
| Counterclaim Defendant. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Interested parties (and opt-out class members) Ann Rubio and Gilbert James, and Objecting Intervener Ladon Herring (collectively "Movants") file this supplemental brief in support of their respective positions as to the tolling of claims and proposed amendment of the Court's party-drafted injunction order.[1] Also, attached for the Court's convenience is a proposed

---

[1] The present brief is also informed by the Brent parties' recent filings in opposition to Herring's motions (Docket Nos. 142-144), however it remains limited to the subject suggested by the Court, and Herring will reply separately to the party filings.

Order (Exhibit 1). Only Movant Herring tenders the proposed Order. Movants Rubio and James continue their involvement in this case only by special appearance.

The Movants seek clarification regarding the injunction and its impact on tolling in several regards. In response, despite the Court's overture at the initial conference call on the matter, Midland has not agreed to a formal tolling agreement. And it does not agree to a simple order clarifying the injunction (which Midland itself drafted) to eliminate any future confusion. Given the position Midland now takes in briefing and argument - that all claims are tolled - the change requested by class members the Court is charged to protect should be uncontroversial. However, Midland still opposes it. Why? Given Midland's litigation history, stretching far beyond the dishonesty this Court found in its collection affidavits, class members have a right to be concerned about whether Midland will hold to the same positions in future matters. Further, even if tolling arguments are now made easier for the three Virginia Movants, the issues before the Court also pertain to class members who may not be in Virginia and may not be informed of the positions taken by Midland in oral argument or in its opposition to Herring's Motion to Intervene. All that is requested in the present regard is the clarification of the otherwise ambiguous Order. No new advantage is sought. Movants simply ask to preserve the status quo.

As already established in the Rubio/James memorandum (Doc. No. 115), the uncontroversial jurisprudence is that the Court does not have jurisdiction to enjoin class members who (a) have not had an opportunity to opt out because the opt-out process is still open, or (b) who have opted out. Contrary to the conclusions suggested by the Parties and by the Court, the timing of the opt-out process works in favor of class members, not against them. The injunction cannot begin until <u>after</u> the opt-out process has ended. It is not the other way around. This is because the Court lacks "minimal contacts" personal jurisdiction otherwise. This is true when

there are money damages at stake, even if a Rule 23(b)(2) order is also included.

In its oral argument, Midland suggests it is material that it included a statement in its settlement papers that the Brent settlement is both a Rule 23(b)(3) and 23(b)(2) class disposition. But the Due Process restriction is not attributed to one rule or another, but rather the existence of a settlement that would dispose of monetary claims. The Supreme Court stated:

> *If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection.* The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. …. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628 (1985) (emphasis added) (citations omitted).

Midland also raised an argument based upon its limited understanding of the District Court's decision in *White v. Experian Information Solutions*, 2009 WL 4267843 (C.D. Cal. 2009). As Midland acknowledges, this was a case in which Mr. Bennett was one of the executive committee class counsel.[2] However, Midland is incorrect that the case found it improper that objector's counsel contacted class members regarding the settlement. Judge Carter's decision in *White* was consistent with Mr. Bennett's position in that case as class counsel – the settling court cannot restrict communication between an attorney and his clients. (The part of the White decision Midland cites is offered out of context and pertains to communications with unrepresented class members). Further, in *White*, the court even expressly permitted communications with unrepresented class members provided that they were not

---

[2] The Fair Credit Reporting Act case settled for $51 million.

3

incendiary. Finally, and unlike *White*, the notice presented by the Parties in this case is anything but "neutral." It even includes a section highly unusual in respectable class settlements that is headed, "Is This a Fair Settlement?" and includes the opinions of the Parties that, of course, it is. (Exhibit 2).

Midland in its brief next concedes the equitable concept upon which Movants make this argument – that all claims that are enjoined should be formally tolled. Mr. Seitz admitted hearing: "And the other thing I wanted to mention, Your Honor, which I think the Court has a clear view of, is that *if claims are tolled and you have the power to toll it, pursuant to the Torkie case*, which the Court pointed out and which we also had attached to our Brief I would like to note that under Virginia law, Section 801-229(c), the statute of limitations is tolled by an injunction." (Hearing Tr. 24:4-13) (emphasis added). If the law is acknowledged, then the Court should wonder why Midland opposes the clarification requested.

There are several reasons unstated by defendant to explain why it really opposes this motion. First, ambiguity favors Midland's flexibility in future matters. Defendant is a huge and very well-funded debt collector that most often faces unfunded and *pro se* consumers. In this matter, Rubio/James/Herring are opposed by Midland EVEN on a motion that by superficial appearances it claims not to in principle oppose. The Court does not need to challenge its imagination to understand that other class members who later file actions will face Midland's opposite and inconsistent argument that their statute of limitations period has expired. Clarifying by order that which Midland claims is implied offers a significant benefit to class members.

These ambiguities are in part apparent when the Court considers carefully Midland's written argument. For example, as to class member claims against third parties who are not owned or employees of Encore/Midland, it should seem self-evident that the settlement in this

4

case does not and cannot restrict, enjoin or release claims against third-party law firms violating the law in their own right in a manner otherwise related to Midland's affidavits. They were not named Defendants. They are not subject to Encore control. They have not paid for claims that would be released if the settlement were otherwise interpreted. This interpretation is also the one understood by this Court and by U.S. District Judge Shea in Washington. Judge Shea recently addressed the narrowing of the Washington class action to amend around what that court believed barred by the Brent injunction. However, the court (correctly) interpreted the Brent settlement release and injunction to not apply to the third-party law firm serving as Midland's collection mill in Washington state courts. *Gray v. Suttel, et al*, CV-09-251 (April 15, 2011) (Exhibit 3, 9:2-6).

Similarly, this Court asked Movants' counsel during the April 6, 2011 hearing, "Why would you ever interpret the injunction to reach non-party defendants?" (Hearing Tr. 18:7-8). However, Midland is still attempting to overreach to suggest an interpretation of the release and injunction to also exonerate and restrict actions against third parties. (Def. Opp. To Intervenor Ladon Herring's Motion to Modify, Amend or Clarify Preliminary Injunction, Docket No. 144, p. 10) ("Because claims against third parties were the subject of the class release, these claims were properly included in the Preliminary Injunction.") It is difficult to believe, as Midland does, that the Court has approved a settlement of countless third parties worth millions of dollars for the same limited consideration to be paid in this case (a claims cap of $10). Nevertheless, even if somehow true, Midland does not address the real concern that class members have that their claims against these third-party collectors would not be tolled as the third parties are not a party to the action and do not even necessarily have notice of it themselves. The Court would violate the separate Due Process rights of the numerous third-party firms in other states if it attempted to

5

impose tolling on them without notice and an opportunity to be heard. Midland's position is also truly bold, as it presumes that the present settlement could ever survive a Final Fairness hearing and appeal.

Midland also does not address in argument, but does address in its belated Herring briefing, Movants' argument that the injunction be clarified so as to confirm that it does not restrict state-court procedures to vacate or set aside Midland's fraudulently-obtained judgments. These include an expected action in Washington to force judgment vacation on a class basis and in Virginia on an individual basis, accompanied by attorneys fees and costs related to the motion. Movants ask that the injunction be clarified to make clear such actions are not enjoined.

Similarly, Movants ask that class members subject to ongoing Midland collection proceedings be free to assert all claims – including FDCPA claims related to the affidavits. Midland argues that the FDCPA claim is not a valid counter-claim. Such position is sadly ironic given the posture of this case – it was just such an action. Defendant's position is patently unfair as well. It would allow Midland to continue its aggressive collections actions in state courts, but restrict the tools class members could use to defend themselves. Alternatively, the simplest remedy is to interpret the injunction as it was written in such regard, barring any party from taking any action related to the affidavits. These certainly include Midland collection proceedings against class members.

Finally, Midland suggested at oral argument a judicially-burdensome scheme in which some consumer claims against Midland arising from the same debts or accounts would be tolled while others would not be. For example, the claims related to Midland's affidavit perjury as to Opt Out class member James would be tolled and enjoined, while his claims related to Midland's ignoring of his evidence that he was an identity theft victim and its prosecution of the collection

action against him in an unlawful venue would not be tolled. So in theory he would prosecute part of his case, prevail, and then after the opt-out period he would try the exact same facts again for the separate opted-out affidavit claim. Midland should not be able to have it both ways. The benefit it would obtain from the Court's continued enjoining of the affidavit claims should more than justify the modest and temporary tolling of those non-affidavit, but related transactional claims. Anything less would leave every judge in the nation forced to consider these matters pondering – as did Virginia and Washington – what claims are "related to the affidavit" claims and which ones are not.

        Respectfully submitted,

By  /s/ Reginald S. Jackson, Jr.
    Reginald S. Jackson, Jr. (0003558)
    E-Mail: rjackson@cjc-law.com
    Adam S. Nightingale (0079095)
    E-Mail: anightingale@cjc-law.com
    CONNELLY, JACKSON & COLLIER LLP
    405 Madison Avenue, Suite 1600
    Toledo, Ohio 43604
    Telephone: (419) 243-2100
    Facsimile:  (419) 243-7119

and

Leonard A. Bennett, VSB # 37523
(admitted *pro hac vice*)
E-Mail: lenbennett@clalegal.com
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
(757) 930-3660
(757) 930-3662 facsimile

and

        Matthew J. Erausquin, VSB # 65434
        (admitted *pro hac vice*)
        E-Mail: matt@clalegal.com
        Consumer Litigation Associates, P.C.
        1800 Diagonal Road, Suite 600
        Alexandria, VA 22314
        (703) 273-7770
        (888) 892-3512 facsimile

        *Counsel for Ann Rubio, Gilbert James, and Ladon Herring*

## PROOF OF SERVICE AND CERTIFICATION

This is to certify that a copy of the foregoing has been electronically filed with the Court on this 18th day of April, 2011. Notice of the filing will be sent to the parties by the operation of the court's electronic filing system. The parties may access this filing through the Court's system. Further, this brief meets the 10-page limit set by the Court.

        By /s/ Reginald S. Jackson, Jr.
        *Counsel for Ann Rubio, Gilbert James, and Ladon Herring*