**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Midland Funding, LLC, | ) | CASE NO.: 3:08-cv-01434 |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | HON. DAVID A. KATZ |
| | ) | |
| vs. | ) | |
| | ) | **And Related Cases:** |
| Andrea Brent, | ) | |
| | ) | Case No. 3:11-cv-0096, N.D. Ohio |
| Defendant/Counterclaim Plaintiff | ) | Case No. 3:10-cv-0091, N.D. Ohio |
| | ) | |
| vs. | ) | |
| | ) | |
| Midland Credit Management, Inc., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| | ) | |

**MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT, INC.'S
MOTION AND MEMORANDUM IN SUPPORT FOR AN ORDER REQUIRING
VIRGINIA COUNSEL TO DISCLOSE OPT-OUT SOLICITATIONS**

*EXPEDITED CONSIDERATION REQUESTED*

Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. (collectively, "Midland"), by their counsel, hereby move this Court for an order requiring Leonard Bennett and Matt Erausquin, and their firm, Consumer Litigation Associates, to produce to the parties and the Court, **within three (3) business days from the filing of this Motion**: (i) copies of all mailings, solicitations, and any other non-privileged communications they sent to putative class members; and (ii) a list identifying all persons to whom the aforementioned mailings, solicitations, and communications were sent. This order is authorized under F.R.C.P. 23(d)(1)(C) and (E), and the points and authorities cited in the memorandum set forth herein.

## I. INTRODUCTION

Leonard Bennett and Matt Erausquin, and their firm, Consumer Litigation Associates (collectively, "Virginia Counsel"), are plaintiffs' lawyers who apparently hoped to reap substantial attorneys' fees by filing copycat affidavit class actions – only to have their aspirations dashed when the parties in this case reached a nationwide class settlement that included a class award of up to six times the statutory maximum award for an FDCPA class action and injunctive relief benefitting the class.

Since the settlement was announced, Virginia Counsel has attempted to interfere with it by, among other things, soliciting thousands of Virginia consumers to opt out of the class. Weeks before the Court-approved notice was finalized and sent to putative class members, Virginia Counsel sent their own mailings to putative class members in Virginia. One mailing was a solicitation apparently sent to Virginia consumers who had been sued by Midland, informing them that "Midland used false affidavits in order to obtain the underlying judgment against you," and urging them to retain Consumer Litigation Associates to file a lawsuit against Midland. *See* Ex. 1 hereto.[1] Another mailing, which presumably urged putative class members

---

[1] Exhibit 1 has been filed under seal for this Court's *in camera* review.

1

to "opt out" of the class, apparently included either a claim form (printed from the ECF system) with the opt-out box pre-selected, or a form "opt out" letter, as well as an envelope addressed to Class Counsel. Although Midland has not seen this mailing in its entirety, it likely contained some other communication relating to the settlement, which instructed the recipients to sign the forms and letters and mail them to Class Counsel. To date, Class Counsel has received approximately 250 claim forms and opt-out letters as a result of Virginia Counsel's campaign.

There is evidence that Virginia Counsel's unauthorized, pre-notice mailings are confusing and misleading putative class members. For example, Class Counsel recently received one of the Virginia form opt-out letters which the class member had signed, then written below her signature: "I do not want to be excluded." Ex. 2 (emphasis in original). Class Counsel also recently received another form opt-out letter which the class member altered to indicate that she wished to remain in the class. Ex. 1, p. 2. Additionally, a number of the claim forms sent by putative class members in Virginia have both boxes checked – the "opt-out" box that was preselected by Virginia Counsel, and the box indicating that the class member elects to remain in the class. *See* Ex. 3. These responses suggest the putative class members who received Virginia Counsel's mailings did not understand that they were attorney solicitations and instead believed that they were the official, court-approved notice and claim form that had to be returned. Further evidencing the class member confusion, just recently, a Virginia class member called the Settlement Administrator because he did not know what to do about the two mailings he had received. He received the Court-approved class notice – and also another letter that he believed was from Class Counsel that he was to sign and return. The communication he thought was from Class Counsel was actually the communication from Virginia Counsel, which included the form opt-out letter. Not only does this demonstrate that Virginia Counsel's mailing is confusing

2

putative class members; it also raises troubling questions about what Virginia Counsel's mailing says that would lead class members to believe it was sent by Class Counsel.

The parties and the Court are entitled to know (i) to whom Virginia counsel sent their opt-out solicitations; and (ii) the content of Virginia Counsel's communications about the settlement to putative class members who are not their clients. Critical issues turn on the answers to these questions. To the extent that Virginia Counsel's mailings are misleading or confusing putative class members, then Virginia Counsel is interfering with their rights to make independent and informed decisions about whether to remain in the class. If this is the case, then Virginia Counsel must be ordered to stop, and they may be subject to sanctions. Additionally, it may be necessary to invalidate the Virginia opt-outs and send a curative notice to these individuals. This will allow them to elect whether to remain in the class, free from the influence of lawyers with a financial interest in collecting opt-outs, and insure that the due process requirements of Rule 23 are satisfied. Should this step be necessary, Virginia Counsel should be ordered to pay for the additional mailing.

The Court unquestionably has the authority to require Virginia Counsel to provide this information. Misleading communications to class members from attorneys – like Virginia Counsel – who oppose the settlement and have a financial interest in securing opt-outs pose a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice. Under Rule 23 and the relevant case law, "it is essential that the district court closely monitor the notice process and take steps necessary to ensure that class members are informed of the opportunity to exclude themselves or to participate in the judgment."[2] Accordingly, courts are empowered to issue appropriate orders to prevent and/or

---

[2] *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 490 (E.D. Pa. 1995) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985)).

3

remedy interference with the class notice process, including requiring that communications by third parties to class members be disclosed to the settling parties, limiting communications with class members, requiring corrective notices and/or disclaimers in future communications from the counsel who sent out the misleading notices, and sanctions.[3]

It is already clear that Virginia Counsel's mailing is confusing putative class members and interfering with the court-approved notice process. The only way to ascertain the scope of the damage and remedy is for Virginia Counsel to produce their mailings and identify the persons to whom they were sent. Accordingly, Midland respectfully requests that the Court order Virginia Counsel to provide the settling parties and the Court with (i) copies of all mailings, solicitations, and any other non-privileged communications from Virginia Counsel to putative class members; and (ii) a list identifying all people to whom the aforementioned mailings, solicitations, and communications were sent.

## II. VIRGINIA COUNSEL'S CAMPAIGN TO SOLICIT MASS OPT-OUTS

Virginia Counsel represent the plaintiffs in two copycat affidavit lawsuits pending in the Eastern District of Virginia. The *Rubio* class action (Exhibit 4 hereto) was filed in July 2010, and the *James* case (Exhibit 5 hereto) was filed two weeks ago. The complaints in both cases cite this Court's August 2009 summary judgment opinion and seek damages on the basis that

---

[3] See, e.g., *Georgine*, 160 F.R.D. at 490 (requiring a curative notice be sent); *Jacobs v. CSAA Inter-Insurance*, No. C-07-00362 MHP, 2009 WL 1201996, at *3 (N.D. Cal. May 1, 2009) (enjoining plaintiff's attorneys in parallel state action from communicating with class members in federal class action that was conditionally certified for settlement); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000) (requiring curative notice be sent to class members who received confusing and misleading opt-out solicitation, and requiring future communications to contain disclosures and be prominently labeled as advertisements); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1485 (S.D.N.Y. 1986) (sanctioning party for disseminating false and misleading communications to class members); *In re Lupron Mktg. and Sales Practices Litig.*, No. MDL 1430 Civ. A. 01-10861-RGS, 2005 WL 613492, at *1 (D. Mass. Mar. 16, 2005) (court sanctioned intervenors for sending unauthorized and misleading communications to class members); *see also* pp. 8-9 herein.

4

Rubio and James were sued using the same affidavits this Court found to violate the FDCPA in *Brent*. *See* Ex. 4, ¶¶ 22-30; Ex. 5, ¶¶ 28-45. Both complaints demand attorneys' fees for Virginia Counsel. *See* Ex. 4, ¶¶ 41-44; Ex. 5, ¶¶ 60, 64, 72, 76, 80, 85. Virginia Counsel recently announced that they planned to dismiss the Rubio case, but as of the date of this filing they have not yet done so.

Ever since learning that a nationwide settlement in this case was imminent, Virginia Counsel made no secret of their plan to encourage large numbers of people to opt out. Their motivation appears to be twofold. With their ability to reap massive attorneys fees in an affidavit class action thwarted, they are apparently trying to round up clients for thousands of individual affidavit lawsuits – each of which could potentially result in a fee award.[4] They also want to encourage a high number of opt-outs so they can argue to this Court at the Fairness Hearing that the large number of opt-outs demonstrates that the settlement is unfair to the class. This argument was foreshadowed in the motion for relief from the preliminary injunction they filed on behalf of Rubio and James. *See* Motion for Relief from Preliminary Injunction [Dkt. 115], pp. 18-19 (predicting that "there will be a disproportionately high number of opt-outs in this case" and arguing that "opt-outs are a sign of a defective settlement.").

Underscoring the fact that their plan was not motivated by any good faith objection to the settlement, Virginia Counsel started soliciting opt-outs <u>even before they knew the terms of the settlement</u>. On February 15, 2011, Encore disclosed in its Form 10-K that it had reached an agreement-in-principle to settle this action. The disclosure did not specify the amounts being

---

[4] In what appears to be an intimidation tactic, Virginia Counsel have filed over 50 individual FDCPA cases against Midland in the past two months in Virginia County Courts. Some were filed <u>after</u> this Court entered its preliminary injunction against parallel litigation on March 11, 2011. Virginia Counsel has dismissed each of the cases a day or two before the return date so as to narrowly avoid a contempt motion. There are a number still pending, with return dates in May and June 2011.

5

paid to class members or other benefits to the class, such as stipulated injunctive relief. A week later, on February 22, 2011, Virginia Counsel informed Midland's counsel in Mississippi that they had sent out 8,500 letters soliciting clients to file lawsuits against Midland, they intended to file 1,200 such lawsuits, and that their clients would be opting out of the *Brent* settlement – which Virginia Counsel had not even seen yet. Declaration of Jonathan Dyal [Dkt. 122, Ex. 1], ¶ 2. The details of the settlement – including the amount each class member would receive, and the injunctive relief benefitting all class members – were not publicly disclosed until the settlement agreement was filed on March 9, 2011. Aside from demonstrating that Virginia Counsel's opt-out campaign was not motivated by genuine objections to the settlement terms, this conduct raises the obvious question of how Virginia Counsel could have been ethically advising consumers to opt out of a settlement when they did not even know the settlement's terms.

After the *Brent* parties filed the settlement agreement and motion for preliminary approval – but before the court-approved class notice was distributed – Virginia Counsel apparently sent multiple mass mailings to Virginia consumers who were members of the conditionally-certified settlement class. One mailing was apparently sent to Virginia consumers who were sued by Midland within the class period; it informed the consumers that Midland "used false affidavits in order to obtain the underlying judgment against you" and urged them to retain Consumer Litigation Associates to sue Midland. *See* Ex. 1. There was apparently also a separate mailing, which included a copy of the claim form, printed from the Court's ECF system, which Virginia Counsel altered by crossing out the section for the class member to provide contact information, writing each class member's name across the top, and checking the "opt out" box. *See* Ex. 3. Recipients were apparently instructed to sign the claim forms (with the "opt out" box having been preselected by Virginia Counsel) and mail them to Class Counsel in a

6

pre-addressed envelope that was included in the mailing. *See, e.g.,* [Dkt. 130, Bennett Declaration, ¶¶. 13-18]; April 6, 2011 Hearing Transcript, pp. 4-14. Virginia Counsel also sent yet another mailing that included a form "opt out" letter, with a flag instructing the class member to "sign here," and a pre-addressed envelope directed to Class Counsel. *See* Ex. 6. Presumably, these mailings also included some communication regarding the settlement and instructions on what to do with the form and/or opt-out letter. The mailings were not approved by the Court or provided to the *Brent* parties. As noted above, Class Counsel has received approximately 250 of these purported opt-outs from Virginia consumers.

It is evident that Virginia Counsel's unauthorized, pre-notice mailings have caused considerable confusion among putative class members in Virginia. For example, more than one potential class member returned Virginia Counsel's form opt-out letter to Class Counsel with a notation that they wanted to be <u>included</u> in the class. *See* Exs. 1 & 2. Another Virginia class member called the toll-free number for the Settlement Administrator, confused because he received two mailings: the court-approved Class Notice and Virginia Counsel's mailing. Troublingly, the class member believed that Virginia Counsel's mailing had been sent by Class Counsel – which should not have been the case if Virginia Counsel had disclosed their identity and accurately described the settlement and the purpose of the mailing, and their own financial interest in encouraging opt-outs.[5] Additionally, a number of the pre-filled-out claim forms had <u>both</u> boxes checked – the "opt out" box, which was checked by Virginia Counsel, and the box indicating a desire to remain in the class, which was checked by the class member. *See* Ex. 3. These forms, which are not valid as either claims or as opt-outs, provide further evidence that putative class members in Virginia were confused by Virginia Counsel's mailing and likely did

---

[5] *See Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 494-95 (E.D. Pa. 1995) (opt-out solicitations were misleading where they failed to disclose that the authors had a strong pecuniary interest in encouraging opt-outs).

7

not understand the significance of the form or that returning it meant that they would no longer be included in the class.

### III. THE COURT SHOULD ORDER VIRGINIA COUNSEL TO DISCLOSE THEIR COMMUNICATIONS TO PUTATIVE CLASS MEMBERS

Before the Final Approval Hearing, the Court will need to determine how to handle the 250 purported opt-outs that resulted from Virginia Counsel's campaign. The necessary first step in making this determination is to order Virginia Counsel to produce the solicitations they sent to putative class members in Virginia, so the Court can determine whether they were so misleading that the resulting opt-outs were likely not the product of informed consent. Virginia Counsel should also produce a list of all people who received the solicitations, so that the extent of the damage can be ascertained and any claim Virginia Counsel might make that all of the recipients were clients of their firm can be thoroughly examined.

There is ample authority for such an order. Parties engaged in a mass opt-out campaign may be ordered to produce copies of their solicitations and other non-privileged communications with class members, so that it can be determined whether the materials are likely to mislead class members and whether corrective action is therefore necessary. *Fleury v. Richemont North America, Inc.*, No. C-05-4525 EMC, 2007 WL 2349284, at *3 (N.D. Cal. Aug. 15 2007) (requiring party opposing settlement to disclose to settling parties all communications to class members); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104, n.20 (1981) (instead of issuing order prohibiting communications with class members, district court should have adopted less burdensome remedy, and noting that "an order requiring parties to file copies of nonprivileged communications to class members with the court may be appropriate in some circumstances").

If opt-out solicitations are found to be misleading, district courts have a number of remedies at their disposal. For example, they can invalidate the opt-outs and require a second, curative notice to be sent to affective class members, in order to ensure they are able to make an

8

informed decision free from the influence of lawyers with a financial interest in securing opt-outs. *See, e.g., Moulton v. U.S. Corp.,* 581 F.3d 344, (6th Cir. 2009) (affirming district court order invalidating opt-outs and extending opt out period for class members affected by misleading communications); *Georgine*, 160 F.R.D. at 490 (invalidating opt-outs and requiring curative class notice to be sent, where lawyers had engaged in a misleading campaign to solicit opt-outs); *In re McKesson HBOC, Inc. Secs. Litig*., 126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000) (requiring curative notice be sent to class members who received confusing and misleading opt-out solicitation).

When a second class notice is required, the attorneys or parties responsible for the misleading solicitation will be required to bear the cost. *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1485 (S.D.N.Y. 1986) ("[B]ecause the explanatory notice is necessitated by Mishkin's previous misconduct . . . Mishkin is hereby required to reimburse plaintiffs' attorneys for the cost of preparing and distributing notice of this opinion to the class members."); *see also In re Lupron*, 2005 WL 613492, at *1 (counsel for intervenors who sent misleading opt-out solicitations to class members were required to pay for the distribution of a corrective notice). The Court can also require Virginia Counsel to pay costs and attorneys' fees associated with proving and applying for relief from their misconduct. *Tedesco*, 629 F. Supp. at 1486.

In addition, when lawyers are found to have sent misleading opt-out solicitations, the courts can enjoin them from sending further unauthorized communications to class members. *See Jacobs v. CSAA Inter-Insurance*, 2009 WL 1201996, at *3 (enjoining plaintiff's attorneys in parallel state action from communicating with class members in federal class action that was conditionally certified for settlement). Alternatively, they can require that any further solicitations contain court-approved disclosures and be prominently labeled as advertisements.

9

*See In re McKesson*, 126 F. Supp. 2d at 1246 (requiring future communications from attorneys opposed to the settlement to contain disclosures and be prominently labeled as advertisements).

Finally, attorneys responsible for misleading opt-out solicitations are subject to sanctions. *See In re Community Bank of Northern Virginia*, 418 F.3d 277, 313, n.30 (3d Cir. 2005)("if the District Court finds that all or some of the letters sent in this case were materially misleading, it is free to so hold and, among other things, censure those responsible."); *Tedesco*, 629 F. Supp. at 1485 (sanctioning party for disseminating false and misleading communications to class members); *In re Lupron*, 2005 WL 613492, at *1 (court sanctioned intervenors for sending unauthorized and misleading communications to class members).

Accordingly, Virginia Counsel should be ordered to produce, within 48 hours of the Court's order: (i) copies of all mailings, solicitations, and any other non-privileged communications from Virginia Counsel to the class members; and (ii) a list identifying all class members to whom the aforementioned mailings, solicitations, and communications were sent. This will allow the parties and the Court to determine, in advance of the July 11 Fairness Hearing, whether the mailings were so misleading as to require a curative notice to be sent, and whether any other remedies or sanctions should be imposed.

## IV. CONCLUSION

For the foregoing reasons, Midland respectfully requests that the Court grant this motion, and order Virginia Counsel to produce, **within three (3) business days from the filing of this Motion:** (i) copies of all mailings, solicitations, and any other non-privileged communications from Virginia Counsel to putative class members; and (ii) a list identifying all persons to whom the aforementioned mailings, solicitations, and communications were sent.

10

Date: May 12, 2011							Respectfully Submitted:


							/s/ *Theodore W. Seitz*
							Theodore W. Seitz
							Dykema Gossett PLLC
							Counsel for Midland Funding, LLC and
							Midland Credit Management, Inc.
							Capitol View
							201 Townsend Street, Suite 900
							Lansing, MI 48933
							Tele: (517) 374-9149
							tseitz@dykema.com


**PROOF OF SERVICE**

    I hereby certify that on May 12, 2011 a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to parties by operation of the court's electronic filing system and was served via First Class Mail to any non-ECF users.

							*/s/ Theodore W. Seitz*
							Theodore W. Seitz


LAN01\234717.1
ID\TWS - 097356/0045

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW 201 TOWNSEND STREET SUITE 900•LANSING, MICHIGAN 48933