# EXHIBIT 5

**FILED**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

2011 APR -7 P 4: 56

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

GILBERT JAMES,

      Plaintiff,

v.

ENCORE CAPITAL GROUP, INC.

    8875 Aero Drive, Suite 200
    San Diego, CA 92123

    SERVE:   Secretary of the Commonwealth
                  Richmond, Virginia

MIDLAND FUNDING, LLC

    8875 Aero Drive, Suite 200
    San Diego, CA 92123

    SERVE:   Secretary of the Commonwealth
                  Richmond, Virginia

CIVIL ACTION NO:

3:11CV221 REP

MIDLAND CREDIT MANAGEMENT, INC.

    8875 Aero Drive, Suite 200
    San Diego, CA 92123

    SERVE:   Secretary of the Commonwealth
                  Richmond, Virginia

EQUIFAX INFORMATION SERVICES, LLC

    SERVE:   Corporation Service Company
                  11 South 12th Street
              Richmond, VA 23219

    Defendants.

## COMPLAINT

COMES NOW the Plaintiff, Gilbert James (hereafter, "James" or "Plaintiff"), by counsel, and as for his Complaint against the Defendants, he alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and treble damages, declaratory and injunctive relief, costs, and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq* ("FDCPA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq* ("RICO"), for the Defendant's abuse of process, and for the civil conspiracy that it engaged in. An additional count is also brought against Defendant Equifax pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq* ("FCRA").

### JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1367.

### PARTIES

3. The Plaintiff is a natural person and a resident of the Commonwealth of Virginia

4. Defendant Encore Capital Group, Inc. (hereafter, "Encore") is a Delaware corporation with its principal place of business located in San Diego, California and which regularly conducts business in Virginia. The Defendant's principal business is debt purchasing and recovery. Specifically, it does so by purchasing debts and then using its subsidiaries, Midland Funding, LLC and Midland Credit Management, Inc., to collect the purchased debts.

5. Defendant Midland Funding, LLC (hereafter, "Midland Funding") is a Delaware Limited Liability Company which purchases portfolios of consumer debts and then directs the

2

actions of Defendant Midland Credit Management, Inc. in filing collection actions on its behalf and in many cases, obtaining default judgments by the use of manufactured false affidavits. The Defendant's principal business purpose is the collection of debts, and it is a debt collector as that term is defined at 15 U.S.C. §1692a(6).

6. Defendant Midland Credit Management, Inc., (hereafter, "MCM") is a foreign corporation with its principal place of business located in San Diego, California and which regularly conducts business in Virginia. The Defendant's principal business purpose is the collection of debts, and it is a debt collector as that term is defined at 15 U.S.C. §1692a(6). Specifically, it does so by causing lawsuits to be filed across the Commonwealth of Virginia on behalf of Defendant Midland Funding. MCM is primarily responsible for generating the false evidence served upon consumers and submitted to courts in its collection actions.

7. Defendant Equifax Information Services, LLC (hereafter, "Equifax") is a foreign corporation doing business in Virginia. At all times relevant hereto, it was a "credit reporting agency" as defined by the FCRA.

## STATEMENT OF FACTS

8. Defendants operate as a debt buying enterprise. Midland Funding purchases large portfolios of debts that had been deemed uncollectible by a previous creditor or debt collector.

9. However, the only information contained in the portfolios purchased by Midland Funding is an electronic list of consumers and their last known addresses with an amount the creditor claims is owed. Often the interest rate of the original debt is not included, dates of birth or social security numbers of the consumers are not included, and consumers' addresses are not current.

10. Midland Funding does not actually purchase and receive the full set of documents

3

necessary to properly prosecute a collection case, or to even know with any reasonable degree of confidence that a specific debtor opened, used and then failed to pay a debt for a sum certain, or what interest rate the debtor actually agreed to.

11. For a number of years, debt buyers such as Defendants Encore, MCM, and Midland Funding, did not need this information because they had created a means to circumvent the rigors and fairness of state court – the law firm that did nearly all such collection work nationally had secretly purchased a company – previously founded by the credit card industry – the National Arbitration Forum (hereafter, "NAF"). This law firm, together with debt buyers such as the Defendants, used the sham arbitration as a means to avoid the proof required by judges who would critically consider the debt buyer's evidence, or lack thereof. See e.g. *http://www.businessweek.com/magazine/content/08_24/b4088072611398.htm; Midland Funding NCC-2 Corp. v. Johnson*, 2008-Ohio-3900.

12. However, this golden goose collapsed for Midland and its industry affiliates when the NAF was exposed by the Minnesota Attorney General as a front owned by the same collectors claiming to use it as an objective neutral arbitrator. (The Minnesota Attorney General now seeks to prosecute contempt claims against these Defendants for these acts on behalf of the citizens of Minnesota (see, *e.g.*, Exhibit A), but she is awaiting a ruling from the Northern District of Ohio which has entered an injunction which enjoins, "individuals with actual notice of the injunction", among others, from pursuing claims against these Defendants based on a class action settlement that the Defendants and others are seeking to have approved in that District which provides a maximum of $10 to the class members that file claims. It is anticipated that the Minnesota Attorney General will file the Complaint attached hereto at Exhibit A, once the

Northern District of Ohio clarifies the scope of its injunction with regard to her. At any rate, Plaintiff has mailed his request to be excluded from that settlement so that he might pursue these claims individually).

13. After the Minnesota Attorney General's exposure of the scheme, the NAF consented to end all consumer arbitration. The national collection firm that relied on these arbitrations as its business model – Mann Bracken – was placed into receivership. http://www.nytimes.com/2009/07/20/business/20credit.html. The State of Maryland judiciary has now issued an order staying, and as appropriate, vacating all of its Maryland judgments.

14. As a result, Midland found it necessary to return to the practice of filing civil lawsuits to collect their purchased debt, but was faced with having to collect on accounts lacking any the information and documents necessary to prove a case by a preponderance of evidence, that a specific consumer had opened an account, or even that the accounts were in default.

15. In late 2008 or early 2009, Plaintiff learned that various credit card accounts had been opened in his name without his knowledge or consent. One of these accounts was a Capital One account with an account number ending in -2987 (hereafter, the "account).

16. Thereafter, Plaintiff was contacted by Defendant MCM, on behalf of Defendant Midland Funding, and it claimed that it now owned this alleged debt and was seeking to collect it from him.

17. Plaintiff clearly and unambiguously notified the Defendants Encore, Midland Funding and MCM that he was not the individual who had opened the accounts and was not responsible for the debt.

18. In response, and with actual knowledge that Plaintiff was not responsible for the

5

Capital One -2987 account, Midland Funding sued Plaintiff in the General District Court for the City of Richmond in an attempt to collect this debt.

19. At all times relevant hereto, Plaintiff was a resident of Hanover County, Virginia.

20. At all times relevant hereto, including at such time as it initiated the lawsuit against him, the Defendants Encore, Midland Funding and MCM were aware that Plaintiff was not a resident of the City of Richmond.

21. Given that the Defendants Encore, Midland Funding and MCM had no evidence from Capital One that Plaintiff had opened the account, and with full knowledge of Plaintiff's prior disputes that he was the victim of identity theft and not responsible for the debt, they conspired to manufacture evidence to be served on the Plaintiff and used in support of their effort to obtain a judgment against the Plaintiff.

22. Specifically, Defendant Midland Funding, the owner of the account, conspired with Defendant MCM, its collection agent, to generate an affidavit in which a MCM employee would falsely swear under penalty of perjury to have personal knowledge that Plaintiff was responsible for the account, for the purpose of collecting money to be funneled back to Midland Funding, and ultimately to Defendant Encore.

23. Defendant Encore is a publicly traded company and investors value its securities, in whole or in part, by the amount of the profits that Encore receives from the conduct alleged herein.

24. The Defendants were joined in this enterprise by Virginia debt collection law firms who had actual knowledge that the debts they were collecting for Midland could not be supported by admissible evidence at the time of the filing of the collection case. These firms

would, consistent with their role in the enterprise, assist in ordering and coordinating the false affidavits and their presentation to consumer debtors, such as Mr. James, and the courts in which they were attempting to collect.

25. Defendants Midland Funding and MCM have a long history of falsifying such affidavits and collection documentation in an effort to collect debts from consumers who do not owe the underlying debt.

26. For example, Defendant MCM was previously sued in this Court by Jordan Schneider, *Civil No. 3:05cv717-REP*, another identity theft victim from whom Midland attempted to collect money via a collection lawsuit within the past 10 years, as well as credit defamation and the subsequent assertion to third parties that it had conducted an investigation and determined that she was the obligor on the accounts in question, despite numerous direct disputes to the Defendants by Ms. Schneider that her identity had been stolen.

27. Judgment was entered against Midland based on the claims made by Jordan Schneider in the federal lawsuit referenced in the preceding paragraph.

28. Pursuant to MCM's contract with Midland Funding, MCM engages in litigation activity on the Midland Funding accounts.

29. The litigation activity includes the mass generation of hundreds of affidavits per day signed by MCM employees who had no personal knowledge of the veracity of their contents.

30. The litigation affidavits are also created and deliberately worded to conceal from the target consumer and the court that the Defendants do not possess the full set of documents necessary to prove via admissible evidence that the target debtor actually opened or used the account and thus owes a certain, specific sum of money to an originating creditor. They are

7

designed to create the opposite inference by the reader of the affidavit, and create a belief that the Defendants are in possession of these documents.

31. If MCM revealed the truth in its affidavits, there would be no legal basis by which it could obtain a civil judgment in a Virginia court.

32. Notwithstanding the lack of personal knowledge by the affiants used by the Defendants Encore, Midland Funding and MCM in furtherance of their enterprise, the affiants state that they have personal knowledge of the contents of the affidavits.

33. The third party debt collection firms responsible for collecting against Virginia consumers do and did, for Mr. James and others, make a specific request to the Defendants for an affidavit from MCM via their directly connected computer system which travels over interstate wires.

34. After they are ordered by the third party debt collection law firms, the affidavits then "come out of the printer" (as one Midland deponent described when asked where the affidavits originate), 2 pages per affidavit, and are then carried in a large stack to a table with a certain affiant's name on them.

35. The MCM employee, located in Minnesota, then sits down at the table with another MCM employee and begins signing these affidavits – under penalty of perjury - without even reading them or without personal knowledge of the statements contained in them. See, e.g., Deposition of Elizabeth Neu dated October 25, 2010, Exhibit B. According to deposition testimony in prior cases, these affiants sign at least 300 to 400 such affidavits per day. Ms. Neu ultimately lost her employment at Midland, due to her work performance. She was simply unable to keep up with the number of affidavits Midland was requiring her to sign each day.

8

36. After signing, the MCM employee then passes the affidavit to another MCM employee who signs a name to the affidavit and purports to notarize it.

37. Once signed and notarized, Defendant MCM's employees place the affidavit in an envelope to be sent via the United States Postal Service or other public mail carrier and mailed to the local collection firm to be used in a collection lawsuit.

38. In addition to the exchange of the affidavits by mail, on information and belief, the Plaintiff alleges that the same enterprise exchanges money across state lines by either bank wire or mail.

39. Upon information and belief the third party members of the enterprise also exchange numerous documents aside from the unlawful affidavits by mail. They also have ongoing and regular telephone communications across state lines.

40. This pattern of conduct – the generation and signing of a false affidavit, and the transmission of the same via the use of the United States mail and/or electronic wires and related unlawful acts connected thereto – constitutes "racketeering activity", as that term is defined at 18 U.S.C. §1961. This conduct constitutes, without limitation, mail fraud (18 U.S.C. §1341), wire fraud (18 U.S.C. §1343), obstruction of justice (18 U.S.C. §1503), and witness tampering (18 U.S.C. §1512).

41. This practice was used by the Defendants with respect to numerous affidavits that their enterprise caused to be filed in General District Courts across the Commonwealth of Virginia since as far back as at least 2008.

42. According to the most recent data provided by the Executive Secretary of the Supreme Court of Virginia, the Midland Defendants filed an average of 28.8 such lawsuits in

9

Virginia's General District Courts per calendar day for a 473 day period.

43. Plaintiff's counsel has reviewed the actual court files from more than 600 such cases filed by the Defendant, and nearly all of these contain such an affidavit.

44. Plaintiff was served with one of the affidavits described herein.

45. At the time that the Midland Defendants served the Plaintiff with one of the affidavits described herein, they were enjoined by the United States District Court for the Northern District of Ohio from filing these affidavits falsely claiming personal knowledge.

46. Thereafter, in response to the collection lawsuit and affidavit, Plaintiff communicated to Midland Funding and MCM again that this was not his debt. He even provided a sworn Federal Trade Commission identity theft affidavit to the Defendants – one contained his true personal knowledge that he had not opened the account at issue.

47. Midland Funding, MCM and/or one of their agents received the affidavit from the Plaintiff.

48. Midland Funding, MCM and/or one of their agents misrepresented to the Plaintiff that upon receipt of the sworn statement, it would discontinue the litigation against him.

49. Mr. James relied on the Defendants' representation that the litigation would cease.

50. The Richmond General District Court relied on Defendants' representations made in the false James affidavit, and others that were submitted to the Court over the past 10 years.

51. Thereafter, in August of 2010, and without Plaintiff's knowledge, the Defendants obtained a default judgment against the Plaintiff in the amount of One Thousand Sixty One and 85/100 Dollars ($1,061.85), plus six percent interest from the date of judgment and Fifty Three

($53.00) in judgment costs.

52. Plaintiff first learned that the Defendant Midland Funding had fraudulently secured this judgment against him when he began the process of attempting to purchase a house that he would move into with his future wife. He learned from a mortgage broker that this judgment was included in his credit file.

53. Plaintiff was instructed that because of the existence of this judgment, he was required to pay the judgment off before he could even be considered for a mortgage loan.

54. Plaintiff was thereafter forced to pay off the amount of the fraudulent debt in full to the Defendants, suffering actual, out-of-pocket damages as a result.

55. Even after Plaintiff paid the fraudulent debt, a national public records vendor – LexisNexis, employed by Equifax, continued to report that the fraudulent judgment was outstanding.

56. Despite the litigation of the Soutter matter before this Court, *Civil No, 3:10cv107-REP*, a case involving the very same General District Court (for the City of Richmond), Defendant Equifax continues to rely on LexisNexis and has included a notation within Plaintiff's Equifax file that this judgment is due and owing, and has not been satisfied, despite that this judgment has been noted as satisfied in the court file.

## COUNT ONE:
### Defendants Encore, Midland Funding and MCM
### (Violation of 15 U.S.C. § 1692e - FDCPA)

57. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

11

58. Defendants Midland Funding and MCM used false, deceptive and misleading representations or means in connection with the collection of the alleged debt from the Plaintiff, in violation of 15 U.S.C. §1692e.

59. Defendant Encore is liable for the actions of Defendants Midland Funding and MCM pursuant to the doctrine of respondeat superior because they conducted the actions described herein while acting at the direction of Defendant Encore and for its direct benefit.

60. The Defendants are each liable to the Plaintiff for his actual damages sustained, statutory damages, and reasonable attorney's fees and costs as provided for by 15 U.S.C. §1692k.

## COUNT TWO:
### Defendants Encore, Midland Funding and MCM
### (Violation of 15 U.S.C. § 1692e(2))

61. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

62. Defendants Midland Funding and MCM falsely represented the character, amount and legal status of the alleged debt, in violation of 15 U.S.C. §1692e(2).

63. Defendant Encore is liable for the actions of Defendants Midland Funding and MCM pursuant to the doctrine of respondeat superior because they conducted the actions described herein while acting at the direction of Defendant Encore and for its direct benefit.

64. The Defendants are each liable to the Plaintiff for his actual damages sustained, statutory damages, and reasonable attorney's fees and costs as provided for by 15 U.S.C. §1692k.

## COUNT THREE:
## Defendants Encore, Midland Funding and MCM
## (Violation of 15 U.S.C. § 1692e(11)

65. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

66. At the time that the collection lawsuit was filed, the Defendants sent a communication to the Plaintiff that bore the legend "Affidavit – Default Judgment". (hereafter, "Affidavit 1"). They also caused the same to be served upon him by law enforcement.

67. The Defendants sent this communication to the Plaintiff at a time when he was not in default, in an effort to deceive the Plaintiff.

68. The Defendants further sent a communication to the Plaintiff that bore the legend "Affidavit of Nancy Kohls" (hereafter "Affidavit 2"). They also caused the same to be served upon him by law enforcement.

69. The Defendants further sent a communication to the Plaintiff that bore the legend "Summary Screen", and which purported to contain information indicating the details of the account. They also caused the same to be served upon him by law enforcement.

70. Affidavit 1, Affidavit 2 and the "Summary Screen" each failed to inform the Plaintiff that the Defendants were debt collectors, that they were attempting to collect a debt, and/or that any information obtained would be used for that purpose, in violation of 15 U.S.C. §1692e(11).

71. Defendant Encore is liable for the actions of Defendants Midland Funding and MCM pursuant to the doctrine of respondeat superior because they conducted the actions

13

described herein while acting at the direction of Defendant Encore and for its direct benefit.

72. The Defendants are each liable to the Plaintiff for his actual damages sustained, statutory damages, and reasonable attorney's fees and costs as provided for by 15 U.S.C. §1692k.

## COUNT FOUR:
### Defendants Encore, Midland Funding and MCM
### (Violation of 15 U.S.C. § 1692g)

73. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

74. Defendants Midland Funding and MCM failed to, at any time, send the Plaintiff a written notice that complied with the requirements of 15 U.S.C. §1692g(a) and which informed him of his right to request verification of the debt.

75. Defendant Encore is liable for the actions of Defendants Midland Funding and MCM pursuant to the doctrine of respondeat superior because they conducted the actions described herein while acting at the direction of Defendant Encore and for its direct benefit.

76. The Defendants are each liable to the Plaintiff for his actual damages sustained, statutory damages, and reasonable attorney's fees and costs as provided for by 15 U.S.C. §1692k.

## COUNT FIVE:
### Defendants Encore, Midland Funding and MCM
### (Violation of 15 U.S.C. § 1692i)

77. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

78. Defendants Midland Funding and MCM brought a legal action on a debt against the Plaintiff, but did not bring the action in the judicial district or similar legal entity in which Plaintiff signed the contract sued upon; or in which the Plaintiff resided at the commencement of the action.

79. Defendant Encore is liable for the actions of Defendants Midland Funding and MCM pursuant to the doctrine of respondeat superior because they conducted the actions described herein while acting at the direction of Defendant Encore and for its direct benefit.

80. The Defendants are each liable to the Plaintiff for his actual damages sustained, statutory damages, and reasonable attorney's fees and costs as provided for by 15 U.S.C. §1692k.

## COUNT SIX:
### Defendants Encore, Midland Funding and MCM
### (Violation of 18 U.S.C. §1961 - Racketeer Influenced and Corrupt Organizations Act)

81. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

82. Defendants and their third party collection law firms constitute an "enterprise" as defined by 18 U.S.C §1961, as distinct corporations or legal entities. In the alternative, the Defendants acting together in their separate corporate capacities, with or mutually under the direction of Defendant Encore, or the natural persons acting as their employees or agents working in concert each constituted an "enterprise".

83. The racketeering proceeds obtained by Defendant MCM as a result of the activities of the enterprise flowed through Defendant MCM, to Defendant Midland Funding, and ultimately to Defendant Encore to increase its balance sheet, profitability, and appeal to

investors. The proceeds were also used by each such person in continued furtherance of the enterprise, including, but not limited to continuing to pay the salaries of the employees who continued to sign and transmit the affidavits through the mail, as well as the salaries of those who supervised them and directed their actions, including, but not limited to, Mary Nelson.

84. The transmission of the false affidavits through the United States mail system for re-transmission by the local collection firms (again back through the United States mail system) to consumers and various state courts affected interstate commerce. The transmission of the racketeering proceeds back to the Defendants by use of the United States mail system or via electronic wires also affected interstate commerce.

85. Plaintiff was injured as a result of the Defendants' violations of 18 U.S.C. §1962 and is entitled to treble his actual damages, the cost of this suit, and a reasonable attorney's fee.

86. Plaintiff also seek an injunction ordering Defendant Encore to divest itself of any interest in any enterprise pled herein, including the receipt of racketeering profits, prohibiting the Defendants from continuing to engage in any enterprise pled herein, and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

## COUNT SEVEN:
### Defendants Encore, Midland Funding and MCM
### (Virginia Civil Conspiracy)

87. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

88. As alleged herein, Defendants combined to accomplish by concerted effort – together and with their third party collection law firms – to use unlawful means for an unlawful purpose. By example and without limitation, the unlawful means was the perjury and false

16

statement and the unlawful purpose was to use such false affidavits to make a false statement to a civil court – one that the parties knew was false when made and to obtain a civil judgment on a debt the Defendants knew they could not otherwise verify or prove.

89. Defendants conducted themselves in this manner with intent to defraud and with legal and actual malice as to the Plaintiff and to the civil court. The Plaintiff is entitled to and each Defendant is obligated to pay punitive damages.

90. As a result of Defendants' civil conspiracy, Plaintiff suffered actual damages in the form of economic injury to his credit and the need to have paid to Defendants a debt that he never owed. He also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

## COUNT EIGHT:
### Defendants Encore, Midland Funding and MCM
### (Virginia Abuse of Process)

91. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

92. Defendants' filing of the state court collection lawsuit was accomplished with the improper motive and purpose of obtaining a judgment on a debt that it could not confirm or know was actually owed by the Plaintiff.

93. Defendants' use of the false affidavit in the state court lawsuit, and the use of service of process to serve it on him, was not proper

94. Defendants conducted themselves in this manner with intent to defraud and with legal and actual malice as to the Plaintiff and to the civil court. The Plaintiff is entitled to and

17

each Defendant is obligated to pay punitive damages.

95. As a result of Defendants' abuse of process, Plaintiff suffered actual damages in the form of economic injury to his credit and the need to have paid to Defendants a debt that he never owed. He also suffered substantial unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt.

## COUNT NINE:
## Defendant Equifax
## (Violation of 15 U.S.C. § 1681e(b))

96. Plaintiff realleges and reincorporates all previous paragraphs as if fully set out herein.

97. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports that it published and maintained concerning the Plaintiff.

98. Defendant Equifax's conduct, actions, and inaction were willful, rendering it liable for statutory and punitive damages, and attorney's fees and costs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Your Plaintiff demands judgment for compensatory, statutory, punitive and treble damages against the Defendants; for declaratory and injunctive relief pursuant to RICO; for his attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**GILBERT JAMES**

18

By: _____
    Of Counsel

MATTHEW J. ERAUSQUIN, VSB #65434
LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:  (703) 273-7770
Fax:  (888) 892-3512
matt@clalegal.com

19