\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Midland Funding, LLC, | : | Case No. 3:08CV1434 |
| Plaintiff/Counter Defendant, | : | **RESPONSE OF INTERVENOR'S COUNSEL TO COURT ORDER DATED MAY 17, 2011** |
| vs. | : | |
| Andrea Brent, | : | HON. DAVID A. KATZ |
| Defendant/Counterclaimant, | : | |
| vs. | : | |
| Midland Credit Management, Inc., | : | |
| Counterclaim Defendant. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pursuant to this Court's May 17, 2011 Order, Leonard Bennett and Matthew Erausquin, and their law firm Consumer Litigation Associates, P.C. ("CLA"), submit further information to supplement their earlier filing and the Declaration of Leonard Bennett previously provided to the Court and Midland on April 5, 2011. (Docket No.130). The short response is simple – **no information or communication whatsoever regarding the proposed settlement in this case was sent by Intervenor's Counsel to any *Brent* class member prior to the formation, in writing, of an attorney-client relationship with Intervenor's Counsel.** Erausquin Decl., Exhibit A.

1

**BACKGROUND**

Midland's counsel filed the proposed settlement, together with its Preliminary Approval motion on March 9, 2011. The injunction was then communicated by e-mail to Erausquin and Bennett on March 11, 2011. As detailed in the Erausquin Declaration, the individual consumers with whom counsel communicated after the settlement agreement was filed were *only* retained clients – each had already signed and provided a written Attorney Retainer agreement. Once these individuals were represented by counsel, they were entitled to legal advice. Neither Midland nor Class Counsel may fairly intervene in or impede that relationship.

The documents ordered by the Court are attached hereto or already before the Court. They include (a.) the "Initial Contact" letter mailed by CLA to 7,500 *Rubio* putative class members on March 8, 2011, with the printing and mailing process started in February 2011; and (b.) the proposed attorney representation agreement. These two documents comprise the entirety of the mailing to the 7,500 members of the putative *Rubio* class prior to the formation of an attorney-client relationship by that individual with Intervenor's Counsel, and do not contain a single reference to this settlement whatsoever.

To be clear, Intervenor's Counsel specifically identifies the documents Midland has already filed as Docket No. 154, (Sealed) Exhibit 1, pages 4 through 7 only (beginning with the document labeled "Attorney Solicitation Communication" on the bottom. *These are exemplars of the only documents contained in the mailing to the 7,500 putative Rubio class members or otherwise provided prior to the formation of an attorney-client relationship.* The Court has also requested the list of consumers to whom the solicitation was mailed. Respondents have provided this list in a spreadsheet to the Brent parties' counsel via electronic mail, and will file it with the Court under seal, if necessary. It consists of the 7,500 names of *Rubio* putative class members to

whom the Initial Contact letter was sent. As of the date of this filing, CLA represents approximately 592 of these individuals with claims against Midland. Erausquin Decl. ¶ 9. Each has claims that are not covered by the proposed settlement in this case. Since their decision, in writing, to retain CLA as their counsel, there have been different and ongoing attorney-client privileged communications with these clients, as preparations have been made for the filing of a consolidated action regarding non-*Brent* claims. A copy of this lawsuit, now filed, is attached hereto as Exhibit B.

The answer to the Court's query is simple – Intervenor's Counsel made absolutely no statements about the *Brent* settlement, nor did they provide any forms or draft letters requesting exclusion, to individuals that had not retained them as their counsel.

**A.     Intervenor's Counsel mailed a solicitation letter to Virginia consumers, exactly as they promised the Encore Defendants they would in their mediation discussions.**

In February 2011, Bennett and Erausquin set in motion the mailing of a contact letter to putative class members in the *Rubio* matter. The stay in that case was about to imminently expire. The trial date was still on the Court's calendar. Settlement talks in that case had broken down. During the January mediation in Washington, D.C., Bennett and Erausquin had formally suggested a means to litigate and resolve the Virginia claims by way of such a letter and the later representation of individual consumer claims. (Exhibit A, Declaration of Matthew Erausquin, ¶ 4-8). In fact, this was explicitly presented to Midland's counsel in that mediation process just before the Rubio class member letter was mailed. (Id, at ¶ 8). When Midland disengaged from that mediation effort, the process of printing, signing and mailing 7,500 letters began in mid-February before the Brent settlement was even completed.

**As referenced above, the letter mailed to unrepresented Virginia consumers did not mention the *Brent* settlement; did not suggest that any consumer should opt out; and did**

3

**not offer anything other than the fact that the Rubio putative class member may have any number of claims against Midland.** The letter additionally included only a proposed attorney-client retainer agreement. It did not include a draft opt-out form of any sort. (Erausquin Decl. ¶ 11). The Court has the template of these two documents in its possession, under seal.

Bennett and Erausquin have long ago informed Midland of these salient facts – that no mention was ever made of the *Brent* settlement to consumers that CLA did not already represent. Despite its actual knowledge of these facts, and the earlier filing of the Bennett declaration which was clear on these points, the Encore Defendants falsely and unfairly accuse Bennett and Erausquin of attempting to subvert the Court's notice process. This effort represents Midland's attempt to gain an advantage in the wave of Virginia individual litigation, unrelated to the *Brent* settlement in all regards, that it has known about since December of 2010. This Court should not condone this litigation tactic.

**B.     CLA's contact with the *Rubio* putative class members, and with the Midland victims generally, was entirely proper.**

The Court has expressed concern as to the nature of representations made to Brent class members, and has expressly excluded privileged communications – those between CLA and those consumers with whom it had and hass an attorney-client relationship. (Docket No. 156, Order of May 17, 2011). As stated above, no such misrepresentations were made. In fact, no opinion or even mention of the *Brent* case or settlement was made in the non-privileged letter sent to the putative *Rubio* class members. But of course, it is not really any specific misrepresentation, and of course not the protection of the consumers in the class that motivates Midland. Defendant is attempting to use the *Brent* settlement to attempt to extend its litigation immunity beyond the bounds that this Court ever contemplated, and this attack on Virginia counsel as a tool by which to gain an advantage in the hundreds of cases that it will soon find

4

itself litigating.

Midland has been, since before *Brent* was ever removed to this Court, a recidivist lawbreaker. It has settled a dozen such "false affidavit" cases in Virginia over the past year. In February 2011, Bennett tried a related Fair Credit Reporting Act case to a jury for a *Brent* class member. Midland had falsely represented first to a collection court and then to the credit bureaus that it had actual knowledge that the class member was obligated on the zombie debt it was attempting to collect. The jury awarded $ 723,000.00, a verdict sustained by the trial court on May 4, 2011. (Exhibit C).

Similarly, while this present matter was in process, the Encore Defendants resolved another false affidavit case it had filed in Virginia against Rene Jones, also a *Brent* class member. The Encore Defendants offered to dismiss its pending collection action, which it did last week, and pay $25,000.00 to settle the class member's claims against the Encore Defendants. *Midland Funding LLC, v. Rene Jones*, Docket No. GV10-13720, Newport News General District Court. (Exhibit D) [1] While the amount of this settlement reveals much about the consideration offered to *Brent* class members, this settlement actually under value for these claims against this Defendant. The only reason that this claim settled for so little compared to its true value against these Defendants was the quality of its defense counsel representation in that matter – the Encore Defendants retained a significant national consumer defense litigation team and the litigation cost/benefit analysis weighed in favor of early resolution.

Finally of course, the Court is already familiar with the *Rubio* case previously pending in the Eastern District of Virginia. That case alleged a Virginia only class. As of early February

---

[1] The Encore Defendants proposed settlement agreement in that case attempted to impose confidentiality, a term that was never agreed between the parties. Midland's proposed agreement is therefore attached as Exhibit "E".

5

2011, Rubio, Bennett and Erausquin still believed that mediation was in process. Bennett has retained two telephone messages on his cell phone from the JAMS mediator that detailed the status of the settlement discussions. In these messages, the mediator requested a counter to Midland's previous offer to settle on a Virginia statewide class basis, specifically a counter to Midland's offer as to the percentage of the judgments and underlying debts that it was agreeable to dismiss and forgive for consumers statewide. Intervenor's Counsel has asked Midland to waive the mediation privilege so that these details can be provided to this Court. It has refused to do so and opposes revealing the positions it was taking with Bennett and Erausquin in February – during the period it was trying to strike a weaker deal with Brent. Intervenor's Counsel concede the right to keep such details hidden. But these Defendants cannot then misrepresent to the Court an incorrect motive for the contacts CLA initiated during that same period with Virginia consumers and *Rubio* putative class members, when this mailing was explicitly discussed and contemplated by the Encore Defendants prior to their decision to focus on the Ohio litigation as their vehicle for a more cost-effective release of the Virginia claims.

It was only after the Encore Defendants became unresponsive to the JAMES mediator and Intervenor's Counsel that CLA drafted the Initial Contact letter to *Rubio* putative class members. Following the unfortunate disclosure by Mr. Murray to Midland of these privileged communications from a class member that he also represents, the Court now has the exact text of the Initial Contact letter sent to the 7,500 putative *Rubio* class members, as well as the proposed representation agreement in its possession under seal. (The Court will note that Midland redacted the page contained highly privileged communication between this client and CLA, even when it filed this document under seal).

This "Initial Contact" letter mentioned the claim in *Rubio* and now expanded in this

6

settlement – use of the fraud affidavits in Virginia collection cases – and it also discussed unrelated claims against Midland for other unlawful conduct, including actionable abuse in its collection calls. CLA sought to represent those Virginia consumers victimized by the Encore Defendants.

To date, no fewer than 592 Virginia consumers responded with fully executed retainer agreements. They have the right to seek the counsel of their choosing. Intervenor's Counsel has the right to represent them. And once counsel accepts such representation, they have a duty to advise their clients about the potential ramifications of remaining a part of a class settlement that directly and adversely impacts their rights. Bennett is a member of the Board of Directors of the National Association of Consumer Advocates (NACA), an organization that requires its members not to represent interests adverse to consumers, and to adhere to the NACA Class Action Guidelines when settling class cases. CLA has been representing low income and other disadvantaged consumers since its foundation – this is that all it does. Intervenor's Counsel will continue to bring this Court's attention to the myriad of potential issues that presently exist with this settlement as framed, so that the Court may be adequately informed when it makes its decision on final approval. Counsel will also vigorously and zealously pursue the claims of their clients in the Eastern District of Virginia, and will notify each Virginia Court of the fraud perpetuated upon it on behalf of their clients, as they are ethically required to do.

**C. CLA's communications with their clients provided full, accurate and complete information regarding the terms of the proposed *Brent* settlement.**

The Court has asked for all non-privileged communications. As previously stated, the only communications responsive to this inquiry are the Initial Contact letter and the CLA representation agreement that were filed by Midland following their receipt of the same from Class Counsel. Midland's efforts to enlist the Court in restricting or barring CLA's

7

communications with its clients, presumably to gain an advantage in the wave of individual litigation in Virginia that it has known was coming since December of 2010, contravenes the important protections afforded a consumer and client's right to attorney advice. Upjohn Co. v. United States, 449 U.S. 383, 388 (1981). Respondents do not read the Court's order to suggest that they disclose the substance or details of their communications with retained clients.

Furthermore – and while not applicable to facts here - attorneys who oppose a settlement as unfair or inadequate have a constitutionally protected right to communicate with class members – even those they do not then represent. And they have a constitutional right, as well as a mechanism provided for by Rule 23, to express their opinion of the challenged settlement to the Court and others. See In re Cmty. Bank of N. Va., 418 F.3d 277, 310-13 (3d Cir. 2005) (reversing order barring lawyers from informing absent class members of the lawyers' views on the merits of a proposed class action settlement); *see also* Gulf Oil v. Bernard, 452 U.S. 89, 101-02 (1981); Shapero, 486 U.S. 466 (declaring unconstitutional a ban on mailed lawyer solicitations); *id.* at 479 (Brennan, J., concurring) ("[S]o long as the First Amendment protects the right to solicit legal business, the State may claim no substantial interest in restricting truthful and non-deceptive lawyer solicitations . . . ."); Edenfield v. Fane, 507 U.S. 761, 765 (1993) (declaring unconstitutional a restriction on in-person solicitation by accountants and holding "it is clear that this type of personal solicitation is commercial expression to which the protections of the First Amendment apply").

**D.     Every single Virginian represented by CLA who has now opted out was provided with a copy of the Class Notice approved by this Court and the Settlement Agreement prior to such time as they requested exclusion from the class.**

In its speculative motion, Midland also misleads the Court to believe that it has knowledge that those CLA clients who have mailed opt out forms to Brent's class counsel and/or

8

the Brent settlement administrator somehow did so on imperfect information because they did so without the benefit of the official Brent class notice. This is simply false. This Court now has sworn testimony from Intervenor's Counsel that every single Virginian represented by CLA who has now opted out was sent a copy of the Class Notice approved by this Court and the Settlement Agreement prior to such time as they requested exclusion from the class. The consumer client was free to decide to opt out or to stay in the case. To date, only approximately 320 of CLA's 592 retained clients have decided to opt out.

The Court's conclusion that an opt-out right cannot be exercised unless the consumer has first had the benefit of the *Brent* class notice is thus moot. Every one of CLA's clients opted out only after they were sent both the Class Notice and a copy of the Settlement Agreement. This is far <u>more</u> information than the vast majority of the class has received, in that they were not sent a copy of the settlement agreement. In fact, because Midland was not required by the settlement to do anything to update or verify the currency of class member addresses, many of the CLA clients who are or were by definition class members would not have received notice at all, but for the assistance of their CLA attorneys.

Intervenor's counsel are likewise aware of individuals who are class members by definition but who did not receive the notice or claim form as of May 20, 2011. They are similarly aware of non-class members (individuals that were sued by the Encore Defendants, but an affidavit was not used in their case), but who <u>have</u> received notice and a claim form – thus tending to deplete the already meager common fund unnecessarily, to the detriment of the class. Intervenor's Counsel will continue to make themselves available to inform the Court of potential issues via written objection and otherwise, at the Court's convenience.

9

Respectfully submitted,
**LADON HERRING,**


By /s/ Leonard A. Bennett
Leonard Anthony Bennett, VSB #37523
Consumer Litigation Associates, P.C.
12515 Warwick Blvd, Suite 100
Newport News, VA 23606
Tel:  757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com

*Counsel for Intervenor Ladon Herring and Interested Parties Ann Rubio and Gilbert James*


**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been electronically filed with the Court on this 20th day of May, 2011.  Notice of the filing will be sent to the parties by the operation of the court's electronic filing system. The parties may access this filing through the Court's system.

By /s/ Leonard A. Bennett
*Counsel for Intervenor Ladon Herring and Interested Parties Ann Rubio and Gilbert James*