# DECLARATION OF MATTHEW J. ERAUSQUIN

I, Matthew J. Erausquin, an adult individual, depose upon my oath and declare the following to be true and correct:

1. I am an attorney with the law firm of Consumer Litigation Associates, P.C. As of May 12, 2011, I represent 592 individuals who have retained my office in writing for representation with respect to various claims against Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc. (hereafter, the Encore Defendants).

2. The assertions made by the Encore Defendants in their Motion for an Order Requiring Virginia Counsel to Disclose Opt-Out Solicitations are objectively inaccurate in many regards. This Declaration is responsive to that Motion, as well as the Order of this Court dated May 17, 2011 which issued 5 days after the filing of the Defendant's Motion.

3. On December 2, 2010, our office engaged in mediation with the Encore Defendants before a JAMS mediator – Ret. J. Curt Von Kann. During this mediation, the parties explicitly discussed two possible methods of resolution.

4. The first option discussed with the Encore Defendants on that date was settlement of a class as pled in Rubio -- a settlement limited only to Virginians, and then only those consumers regarding whom a Form-400 was used. My firm was aware of the pendency of other class actions, limited geographically by state. My firm also aware that this Court had denied *Brent*'s motion to expand her case to national coverage. At all times, my firm only sought to certify a Virginia-only class. The allegations made by the Encore Defendants and Class Counsel that our action was a "copy-cat case" are entirely mis-founded. Until the *Brent* settlement was announced, it appeared from the results of Class Counsel's motions and the prior rulings of this Court that the only claims that would be prosecuted in Ohio were those for residents of Ohio. Given this Court's rulings, it appeared that the affidavit claims for Virginians would expire due to the statute of limitations.

5. The second option discussed with the Encore Defendants on that date was that our firm would send a letter to Virginians advising them of their claims, and that those Virginians that responded would settle the affidavit claims, and any other "abuse" claims that they might have against the Encore Defendants in a mass settlement. The Encore Defendants initially expressed interest in this idea given that such a settlement would not require the formalities of class approval, and would be less costly for both sides. My firm also advised the Defendant that if we were not able to reach a settlement, we intended to proceed down this path independently, by sending a mailing to each Virginian that was sued by the Encore Defendants. We further indicated that we would pursue not only the "false personal knowledge" claims, but also all other claims that we ascertained, including, but not limited to those based upon:

a) Encore's false representations as to the principal vs. interest components of the accounts sued upon in its Virginia-specific "Account Summary Sheet" forms;
b) Encore's failure to include the disclosures required by 1692e(11) on its Virginia-



specific "Warrant in Debt" form;
    c) Encore's failure to include the disclosures required by 1692e(11) on its Virginia-specific "Account Summary Sheet" forms;
    d) Encore's telephonic abuse of Virginia consumers;
    e) Encore's communication with third party co-workers, family members and neighbors in its efforts to collect debts from Virginia consumers; and
    f) False representations made by local Virginia law firms as they prosecuted claims against Virginians
    g) Fair Credit Reporting Act claims
    h) Telephone Consumer Protection Act claims;

(hereafter, the "non-affidavit" claims)

    6. Following the mediation, we received word that the Defendants preferred the settlement framework described in paragraph 4 – as a traditional class settlement limited to Virginians, but at the Defendants' request, expanding the negotiations to include all affidavits used, and not just the Form-400 type affidavit. As we had made substantial progress towards our mediation goal of obtaining the state-wide vacation of judgments obtained using perjured affidavits, forgiveness of a percentage of the debt, the establishment of a substantial common fund, and the removal of credit reporting information related to these accounts, we held back on the mailing to Virginians described in paragraph 5.

    7. However, as the month of January progressed, the Encore Defendants became less responsive to us and to the mediator. As we already represented more than a dozen other individuals with various substantial claims including telephonic abuse, and contact with their employers (causing one to nearly lose his job), we approached the Encore Defendants about entering into a tolling agreement with regard to their claims as we continued to negotiate. The Encore Defendants agreed to such an agreement tolling their claims. The point here is that these Defendants were clearly aware at all times that we already represented numerous other consumers and that we intended to pursue a mailing to all Virginians if the settlement did not move forward. Their representations to the Court otherwise, or of surprise by this mailing, are flatly disingenuous.

    8. When it became clear that the Encore Defendants had completely disengaged from the mediation efforts, and at a time prior to the completion of the *Brent* settlement, we began the process of drafting, printing, signing and mailing letters to the 7,500 Virginians listed in the spreadsheet that has been sent to *Brent* counsel. The letter and draft representation agreement sent to these Virginians is identical to the document filed by the Encore Defendants in their motion as (sealed) Exhibit 1, beginning at page 4 and ending at page 7. Nothing else, including page 3 of the Exhibit (draft letter requesting exclusion), was included in this mailing. To be clear - no advice, no opt out form, and no draft letter requesting exclusion was ever provided to any *Brent* class member regarding the proposed settlement, prior to such time as these Virginians engaged our firm, in writing, to represent them.

    9. We were ultimately retained by 592 individuals (as of the date of this declaration). Thereafter, and only after an attorney-client relationship was established in writing, did we

advise some of our clients as to the value of the claims released in the *Brent* settlement contrasted with the value of those claims that they could pursue by opting out, at a minimum, by seeking vacation of the fraudulent judgments. While these communications are privileged, we can represent to the Court that our firm believes that the right to challenge and vacate a judgment obtained by perjury is far greater than the two to ten dollars that consumers may receive as a result of this settlement.

10. In Virginia, these consumers are entitled to vacation of judgments obtained by fraud. The Encore Defendants are using garnishments based on these fraudulent judgments to clean out bank accounts and seize paychecks, leaving some low income Virginians abruptly unable to pay their basic rent and utilities. At least five of our currently retained clients are in this exact position. While this Court has clarified this week that class members are not enjoined from pursuing the reversal of fraudulent judgments prior to the Fairness Hearing, the sweeping language of the release would still ultimately prevent class members from doing so. When one considers the monetary value of these claims (at least $1,000 pursuant to the FDCPA), and with treble or punitive damages available based on strong Virginia civil conspiracy, Virginia abuse of process, Virginia Consumer Protection Act and/or federal RICO claims), it is clear that those class members that remain in the class not only receive nothing from the settlement, but actually end up at a net loss and left defenseless against further collection activity. The Encore Defendants have demonstrated their continued willingness to use the full force of the judicial system of the Commonwealth of Virginia to enforce these judgments obtained by perjury and wrench money from the pockets of Virginia consumers, leaving them without the ability to provide basic necessaries for their families.

11. Each of our clients was provided with a copy of the settlement agreement, and the class notice in the exact form approved by this Court prior to such time as we provided advice regarding the decision to opt out or to remain in the class. Each of our clients that so requested was also provided with either a form approved by this Court, or a standard letter template for our client to use to request exclusion if they desired. Given that this Court's order that requires individuals wishing to opt out to send their request for exclusion to Mr. Murray, we directed our clients to sign the forms themselves and to forward their request for exclusion to him.[1] This was accomplished by the clients, and not by our firm. By the number of requests for exclusion that Class Counsel and the Encore Defendants have filed in which the former class member left the signature tab on the page, or chose inclusion rather than exclusion, it should be abundantly clear that all of our clients mailed these forms themselves, and made independent decisions regarding whether they should opt out or not. To the best of our knowledge, as of the date of this declaration, a total of 320 of our 592 clients have sent a request for exclusion to Mr. Murray, as required by this Court's order. Every single one of these individuals was provided with the Notice and the Settlement Agreement approved by this Court prior to such time as they made the decision to request exclusion from the settlement.

---

[1] The Court should note that the Class Notice conflicts with this Court's order, and instead requires the request for exclusion to be returned to the Class Administrator in order to be effective. It follows that many of our clients had questions as to where the opt-out forms needed to be sent in order to properly exercise their right to exclude themselves.

12. To be very clear, our firm did not provide advice to any individual regarding whether they should or should not opt out of the *Brent* settlement until such time as that individual entered into an attorney-client relationship with us, memorialized in writing.

13. My firm has now filed the lawsuit attached to this Response as Exhibit B for 100 of our clients in the Eastern District of Virginia with an upcoming statute of limitations. Despite that many of these Plaintiffs have mailed a request for exclusion directly to Mr. Murray – exactly as this Court ordered – the Court may note that, out of an abundance of caution, this lawsuit does not contain any claims within the scope of the proposed settlement in this matter, by any interpretation of the language of the broad release that the Defendants hope to ultimately obtain in this matter from millions of Americans.

Under penalty of perjury under the laws of the United States of America, I hereby declare and affirm that the foregoing information is true and correct to the best of my information, knowledge and belief.

Dated: May 20, 2011

Matthew J. Erausquin, Esq.
Virginia State Bar #65434