IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIDLAND FUNDING, LLC,

                          Plaintiff,                  Case No. 3:08 CV 1434

    -vs-

ANDREA L. BRENT,                        <u>MEMORANDUM  OPINION</u>
                                        <u>AND JUDGMENT</u>

                       Defendant.

KATZ, J.

On March 11, 2011, this Court granted preliminary approval to a nationwide class settlement in three related cases, *Midland Funding v. Brent* (No. 3:08-cv-1434), *Franklin v. Midland Funding* (No. 3:10-cv-00091), and *Vassalle v. Midland Funding* (No. 3:11-cv-00096) (*Vassalle* Doc. 7).  As part of its order preliminarily approving the settlement, the Court provisionally certified a nationwide class of persons who had been sued by Defendants, Midland Funding LLC and Midland Credit Management, Inc., Encore Capital Group, Inc., and related entities (collectively, "Midland") between January 1, 2005 and the date of the approval order, in debt collections suits where Midland used affidavits attesting to facts about the underlying debt. The Court appointed as Class Counsel the law firm of Murray & Murray, counsel for Andrea Brent, Martha Vassalle, Jerome Johnson, and Hope Franklin, the Named Plaintiffs in these suits, and approved the proposed form of notice to the class.

This matter is now before the Court on the joint motion of Named Plaintiffs and Defendants for an order granting approval of the class action settlement they have reached (*Vassalle* Doc. 131), and Class Counsel's motion for an award of attorney's fees (*Vassalle* Doc. 134).  The Court held a Fairness Hearing regarding the proposed settlement pursuant to Fed. R. Civ. P. 23(e)(2) on July 11, 2011.  The Court has carefully reviewed the memoranda that have

been filed in connection with these motions, as well as the Objections that have been filed. For the following reasons, the motions will be granted, and the settlement approved..

## I. Background

The settlement here at issue relates to three class action lawsuits arising from similar factual predicates. The oldest of these, *Midland Funding v. Brent* (No. 3:08-cv-1434), began life as a debt collection action filed by Midland Funding LLC against Andrea Brent in the Municipal Court of Sandusky, Ohio, on April 17, 2008. (*Brent* Doc. 1, Exh. A). Attached to the initial complaint in that action was an affidavit signed by one Ivan Jimenez, an employee of Midland Credit Management, Inc., claiming on personal knowledge that Brent owed a debt to Midland Funding of $4,516.57. In response, Brent filed an answer as well as a class-action counterclaim against Midland Funding and Midland Credit Management, asserting claims for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (FDCPA), and for intentional and/or negligent infliction of emotional distress under the common law of Ohio. Brent's counterclaim sought certification of two classes, with one class consisting of "(a) all natural persons (b) sued in the name of Midland or MCM (c) in an Ohio court (d) where a form affidavit was attached to the complaint, and (e) the suit was filed on or after a date one year prior to this action," and the other class consisting of Ohio debtors who had been sued by Midland beyond the statute of limitations. Brent's counterclaim alleged, *inter alia*, that form affidavits, such as the one attached to complaint filed by Midland against Brent, were signed by MCM employees who had no personal knowledge of the facts asserted.

*Brent* was removed to this Court on the basis of federal question jurisdiction on June 13, 2008. Discovery commenced in August 2008. The discovery process was hard-fought and

extensive, with Class Counsel conducting substantial inquiry into Midland's debt-collection procedures.  Specifically, Class Counsel investigated the procedures Midland used in printing and signing the affidavits it used in collection actions; the process by which Midland purchased debts and received information concerning those debts; the availability of account information in Midland's computer system; how that account information was utilized; how accounts were referred to collection attorneys for suit through the business logic component of Midland's computer programming; the role of the affiants in the collection process; and Midland's organizational structure generally.  As part of this investigation, Class Counsel conducted several depositions, engaged experts to gain an understanding of Midland's computer system (at substantial monetary expense), and propounded extensive written discovery, resulting in Midland producing over four hundred pages of documents.  Class Counsel also researched public filings of Midland to understand the full extent of prospective damages arising from its alleged practices.  Information gained during discovery resulted in Class Counsel filing an Amended Counterclaim Complaint with more detailed factual allegations on December 1, 2008.  The Amended Counterclaim Complaint also added a claim alleging violation of the Ohio Consumer Sales Protection Act, Ohio Rev. Code Ann. § 1345 *et seq.* (2008) (OCSPA), removed the common-law negligent and/or intentional infliction of emotional distress claim, dropped the statute-of-limitations class, and added two proposed classes based on the interest rate at which Midland attempted to collect.  The discovery process was hard-fought and contentious, resulting in numerous discovery disputes.  Ultimately, the Court was forced to intervene, holding a discovery conference on December 5, 2008 to resolve contested issues.

The parties then began extensive motion practice, with both parties filing summary judgment motions in February 2009.  After both motions had been fully briefed, the Court issued its decision in a memorandum opinion on August 11, 2009.  *Midland Funding v. Brent*, 644 F.Supp.2d 961 (N.D. Ohio 2009) (*Brent* Doc. 50) .  In a landmark ruling, this Court became the first in the country to hold that the practice of "robo-signing" affidavits in debt collection actions violates the FDCPA.  The Court found that Midland generated affidavits for law firms to use in debt-collection actions by means of a computer system.  "Specialists" in Midland's litigation support department would sign between 200 and 400 of these automatically-generated affidavits per day.  While the affidavit stated that the statements therein were based on the signer's personal knowledge, deposition testimony revealed that Midland's "specialists" who signed the affidavits did not have personal knowledge of the accounts at issue.  While the Court noted that "the actual account information is probably either correct or likely thought correct in good faith by Midland" (*Brent* Doc. 50 at 12), the Court nonetheless found the affidavit both false and misleading as a whole for purposes of the FDCPA, "notwithstanding the fact that some of the data in it are correct," due to the false attestation of personal knowledge. *Id*.  The Court also found that the falsehoods were material, as "the fact that the affiant allegedly had personal knowledge that the debt was valid[] would effectively serve to validate the debt to the reader." *Id*. at 15.  The Court also rejected the notion that the errors in question were "bona fide errors" under the FDCPA.

The Court also held that the practice of "robo-signing" affidavits violates the OCSPA. While the Court found that declaratory and injunctive relief were not appropriate under the FDCPA, the Court ordered such relief with respect to the OCSPA.  The Court also held that

genuine issues of material fact precluded summary judgment on Brent's claims involving the interest rate at which Midland attempted to collect.

Midland then filed a Motion for Reconsideration, challenging this Court's grant of injunctive relief under the OCSPA. In response, the Court issued a memorandum opinion upholding its decision to enter an injunction under the OCSPA but clarifying that the injunction was limited to Midland's use of affidavits that falsely claim to be based on the affiant's personal knowledge, and not affidavits that may be false in other respects, such as cases where the original creditor has supplied inaccurate information about the debt.

The Court's August 11, 2009 memorandum opinion set off a wave of class action complaints in other states that relied upon and cited this Court's summary judgment opinion. Among these cases was one filed on July 7, 2010 in the Eastern District of Virginia, *Rubio v. Midland Funding* (No. 3:10-cv-00464). The plaintiff in *Rubio* was represented by Consumer Litigation Associates, the same firm that represents Intervenor Ladon Herring, who objects to the settlement in this case. The complaint in *Rubio* sought class certification and, *inter alia*, "an Order of this Court . . . enforcing the Orders entered in the Northern District of Ohio and specifically enjoining [Midland] from continuing to file false collection affidavits in the courts of the Commonwealth of Virginia." (*Brent* Doc. 154, Exh. 4). Other subsequent class actions include *Gray v. Suttell & Associates* (E.D. Wash. No. CV-09-251), brought by Kelli Gray, an Objector in this case (*Brent* Doc. 144, Exh. 1), and *Reimann v. Brachfeld* (Alameda County, Ca., Superior Court, No. 10-529702), brought by a party represented by Charles Delbaum, attorney for objector Robert Clawson (*Brent* Doc. 144, Exh.2).

5

Following issuance of the Court's August 11, 2009 memorandum opinion, and at Midland's request, the parties began mediation with the Hon. Richard McQuade, a retired federal judge experienced in resolving class action cases. On August 31, 2009, the Court ordered the case stayed pending the outcome of the mediation (*Brent* Doc. 53). The parties first met with Judge McQuade for mediation on October 29, 2009. At the session, which lasted all day and took weeks to prepare for, the parties engaged in intense discussions and negotiations, but left without settling the case. Class Counsel reluctantly agreed to continue attempts to resolve the case through mediation with Judge McQuade, though he filed a Notice of Mediation Status on October 30, 2009, seeking to partially lift the stay in order to litigate class certification issues while still attempting mediation (*Brent* Doc. 57). The Court held another status conference on November 9, 2009, and issued an order holding that the stay would continue in force through the parties' second scheduled mediation session with Judge McQuade on December 8, 2009 (*Brent* Doc. 60).

The December 8, 2009 mediation was also unsuccessful, and Brent requested that the case be restored to active status on the Court's docket (*Brent* Doc. 61). The Court held a status conference on December 15, 2009, at which it lifted the stay and established a new briefing and discovery schedule (*Brent* Doc. 63). The Court denied Brent's motion to file an amended complaint (which Midland opposed) on timeliness and futility grounds on February 22, 2010 (*Brent* Doc. 72). The parties engaged in two additional day-long mediation sessions on June 29, 2010, and September 10, 2010, again with Judge McQuade, both of which were unsuccessful.

Brent filed a motion for class certification on March 24, 2010, seeking certification of two classes: one class that had been sued by Midland in an Ohio court using an affidavit that falsely claimed to be based on the affiant's personal knowledge, and another class that had been sued by

6

Midland in an Ohio court where Midland sought to collect on a higher interest rate than was allowed by law  (*Brent* Doc. 76).  Midland challenged every aspect of the class certification motion, arguing, *inter alia,* that the proposed affidavit class could not satisfy any of the elements necessary for certification under Fed. R. Civ. P. 23(a) or (b) (*Brent* Doc. 84).  Midland also filed a motion for partial summary judgment on Brent's claim for actual damages (*Brent* Doc. 88).

After both motions had been fully briefed, the Court issued a memorandum opinion on November 4, 2010, granting in part Brent's motion for class certification and granting Midland's motion for partial summary judgment on the issue of actual damages (*Brent* Doc. 104).  The Court certified the proposed affidavit class, finding that it satisfied each of the requirements of Fed. R. Civ. P. 23(a) and (b), but found that the proposed class based on the interest rate at which Midland sought to collect failed on both commonality and typicality grounds.  The Court also found that Brent could not show emotional distress resulting from the aspects of the affidavit that violated the FDCPA and OCSPA, as opposed to the general stress that accompanies being sued in a debt collection action, and thus dismissed her claim for actual damages.  That holding limited her (and similarly-situated debtors) to seeking recovery of statutory damages and attorneys fees.

On December 9, 2009, Hope Franklin and Thomas Hyder, represented by Class Counsel, filed the *Franklin v. Midland Funding* action in Erie County, Ohio Common Pleas Court, bringing a claim for common-law misrepresentation against Midland based on their alleged use of affidavits that falsely claimed to be based on the affiant's personal knowledge.  The action was removed to this Court pursuant to the jurisdictional provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Midland moved to dismiss the complaint on the grounds that Hyder's claims were subject to binding arbitration, and Franklin had not alleged facts indicating that she

relied on false statements in the affidavit, an element of common-law misrepresentation. On October 6, 2010, the Court granted the motion to dismiss (Doc. 18), and the Plaintiffs appealed to the Sixth Circuit. The parties attempted to resolve the *Franklin* appeal via discussions with the Sixth Circuit mediator, with sessions beginning on December 22, 2010.

Upon the dismissal and appeal of the *Franklin* action, Martha Vassalle and Jerome Johnson, represented by Class Counsel, filed the *Vassalle v. Midland Funding* action with this Court on January 17, 2011, bringing claims against Midland on behalf of a nationwide class for common-law fraudulent misrepresentation, negligence, and unjust enrichment, again based on Midland's alleged practice of filing affidavits that falsely claimed to be based on the affiant's personal knowledge.

With motion practice in *Brent* concluded, the parties agreed to participate in a settlement conference with the Court. The Court conducted settlement conferences beginning on January 28, 2011, and continuing for two weeks. After much hard-fought negotiating, the parties finally reached an agreement in principle to resolve the litigation on February 11, 2011. Even then, the parties required an additional month of negotiations, including further assistance from the Court, to finalize the agreement. The parties finally presented their agreement to the Court on March 9, 2011, with the filing of joint motions for preliminary approval of the class proposed settlement (*Brent* Doc. 107) and for entry of an order enjoining parallel litigation of claims to be released by the proposed settlement (*Brent* Doc. 108).

In the settlement agreement, which applied to the *Brent*, *Franklin*, and *Vassalle* actions, the parties stipulated to the certification of the following class:

> All natural persons (a) sued in the name of Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity (collectively, "Midland"), (b) between January 1, 2005 and

8

the date the Order of Preliminary Approval of Class Action Settlement is entered by the Court, (c) in any debt collection action in any court (d) where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit.

(*Brent* Doc. 107, Exh. A. ["Settlement Agreement"] at 6).  In order to settle the case on the basis of this nationwide class, Midland agreed to pay $5.2 million into an interest-bearing fund for the benefit of the class.  Attorney's fees of no more than $1.5 million would be paid out of this fund to Class Counsel, as would the costs of administration.  The remainder of the fund would be used to make payments to class members who timely returned a claim form and were determined to be eligible by the Class Administrator.  All eligible class members were to receive $10 each.  Class Counsel represented to the Court that, if significant funds remained, the amount payable to class members would increase.  In addition, if sufficient funds remained, the Named Plaintiffs would receive $8,000 collectively, Class Counsel would be reimbursed for out-of-pocket expenses of up to $9,000, and any funds left over would be awarded *cy pres* to an organization to be determined by Class Counsel with approval of the Court.  None of the money would revert to Midland.  In addition, if the settlement fund were insufficient to pay each eligible class member $10, Midland would pay the lesser of the amount necessary to cover a payment of $10 to each eligible class member, or $500,000.

In fact, the response rate has been such that each eligible class member is now expected to receive $17.38 if the settlement is approved (*Vassalle* Doc. 153).

The settlement agreement also included injunctive relief.  The parties stipulated to entry of an injunction mandating that Midland create and implement written procedures for the generation and use of affidavits in debt collection lawsuits in order to prevent the use of affidavits where the affiant lacks personal knowledge of the facts set forth in the affidavit.  The parties requested that

9

Judge McQuade be appointed as Special Master to monitor Midland's compliance with the injunction, at Midland's expense.  Midland would submit their affidavit procedures to the Special Master for approval within thirty days of entry of the stipulated injunction.  The Special Master would then make findings as to whether the affidavit procedures are reasonably assured to prevent the use of affidavits of the sort the Court has found unlawful.  If the Special Master finds the procedures inadequate, Midland would have thirty days to revise the procedures so as to cure any defects identified by the Special Master.  The stipulated injunction would expire at the end of twelve months; at that time, Midland would be required to submit to the Special Master a declaration confirming that the affidavit procedures approved by the Special Master have been implemented.  During the twelve-month term of the stipulated injunction, either party would have the right to seek relief from or modification of the stipulated injunction from the Special Master based on an "unfair burden on the business" or a change in law.

In exchange for the monetary and injunctive relief noted above, the settlement contained a classwide release.  The classwide release provided that each class member who chose not to opt out would release Midland, its affiliates, and specified third parties (including attorneys) "from all causes of action, suits, claims and demands, whatsoever, known or unknown, based on state or federal law, which the class now has, ever had or hereafter may have against the Released Parties, arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." (*Brent* Doc. 107 at 11-12).

The settlement also contained a broader release that applied only to the Named Plaintiffs. The Named Plaintiffs agreed to release Midland, affiliated entities, and specified third parties from "all causes of action, suits, claims demands, whatsoever . . .under any legal theory," not just those based on Midland's use of affidavits in debt collection lawsuits.  (*Brent* Doc. 107 at 12-13).

10

Midland also agreed to release the debts owed by the Named Plaintiffs, though it did not agree to release debts owed by other class members.  (*Brent* Doc. 107 at 13).

The Court granted the motion for preliminary approval of the class settlement on March 11, 2011 (*Brent* Doc. 111; *Franklin* Doc. 25; *Vassalle* Doc. 7), finding that the proposed settlement was within the range of fairness and reasonableness.  The Court also found that the proposed nationwide class met all the requirements for class certification, and it approved the form of notice, finding that it met the requirements of due process and Fed. R. Civ. P. 23(c)(B).  The Court gave class members until June 1, 2011 to submit a claim form, request for exclusion, or an objection to the proposed settlement, and scheduled a Fairness Hearing for July 11, 2011.  The Court also granted the motion for a preliminary injunction against parallel litigation (*Brent* Doc. 110; *Franklin* Doc. 24; *Vassalle* Doc. 6).

The Court appointed Class Action Administration ("CAA") as Claims Administrator.  Pursuant to the Preliminary Approval Order, CAA sent a copy of the Class Notice and Claim Form to the last postal address of each class member, as updated through the United States Postal Service National Change of Address Service.  Class members could return a postage-paid claim form if they wished to file a claim or opt out of the settlement.  Out of a class of approximately 1.4 million, more than 133,000 class members, or about 9.2% of the class, have filed claims, while 4,262 (about .3%) opted out and 61 (about .004%) filed objections.  Of the opt-outs, almost six hundred submitted form letter-type opt-outs (presumably generated by their attorney).  Over half of these form opt-outs were submitted by parties represented by Consumer Litigation Associates, the firm that was pursuing the *Rubio* case in the Eastern District of Virginia.

A copy of the Class Notice was published in the legal section of *USA Today* on April 18, 2011, and in the *USA Today*'s marketplace section on April 21, 2011.  In addition, a website was

11

established to provide class members with information at www.BrentSettlement.com.  Under

Class Counsel's supervision, CAA established a toll-free interactive voice response system to

provide answers to frequently asked questions.  Callers could also speak to a live operator.  Class

members who wanted additional information could contact CAA through an email box on the

settlement website, and Class Counsel responded to questions from Class Members via telephone,

email, and U.S. Mail, over 100 calls and emails in total.

The Court subsequently clarified the scope of its preliminary injunction in a memorandum

opinion and order issued on May 17, 2011.  (*Brent* Doc. 156; *Franklin* Doc. 28, *Vassalle* Doc. 8).

The Court also denied motions to dissolve the preliminary injunction, granted a motion to

intervene filed by Ladon Herring, and granted a motion to dismiss the *Brent* action for lack of

jurisdiction.  That jurisdictional defect was technical in nature: the federal question that formed

the basis for Brent's claims was found in a counterclaim, not the original complaint filed by

Midland.  Neither the Court nor the parties were aware of the jurisdictional error until it was

pointed out in a motion filed by putative class members Kelli Gray and Marla Herbert, and the

Court will consider the course of the *Brent* action in determining the fairness of the proposed

settlement.  The various opinions issued by the Court and efforts undertaken by the parties in the

*Brent* action have created important precedent that would guide this Court and others in dealing

with the claims both of the Named Plaintiffs and similarly-situated parties.

## II. Pending Motions

Now pending before the Court are: the joint motion of Midland and the Named Plaintiffs

for an order granting approval to the class settlement (*Vassalle* Doc. 131); a motion for attorneys'

fees and reimbursement of expenses filed by Class Counsel (*Vassalle* Doc. 134); and a motion to

strike (*Vassalle* Doc. 135) the declaration of Stephen Gardner (*Vassalle* Doc. 26), filed by Robert

Clawson and Ladon Herring in support of their Objection to the settlement (*Vassalle* Doc. 25).

Clawson and Herring have also filed joint memoranda in opposition to the motion for an

order approving the class settlement (*Vassalle* Doc. 148) and in opposition to the motion to strike

Gardner's affidavit (*Vassalle* Doc. 147).  Putative class member Elaine Pelzer has filed a joinder

in Clawson and Herring's memorandum in opposition to the class settlement (*Vassalle* Doc. 149),

as well as an Objection of her own (*Vassalle* Doc. 42).[1]  Putative class member Kelli Gray has

filed an Objection to the settlement (*Vassalle* Doc. 32), as well as a response to the joint motion

for approval of the class settlement (*Vassalle* Doc. 150).  In addition to the aforementioned

Objections, 61 individuals have filed Objections to the settlement (*Vassalle* Docs. 57-117), one of

which was subsequently withdrawn (*Vassalle* Doc. 140).

The attorneys general of 38 states have filed a brief *amicus curiae* opposing the settlement

(*Vassalle* Doc. 27), as has the Federal Trade Commission (FTC) (Doc. 55).

Midland has filed a memorandum in response to the Objections of Clawson, Herring, Gray

and Pelzer (*Vassalle* Doc. 133), and a memorandum in response to the Objections of putative class

members Lutchmin Persaud, Sarai Ossers, Christopher Guest, Manuela Rivera, Sylvia Yeado, and

Ada Carter (Doc.130).  Midland has also filed memoranda in response to the *amicus* briefs of the

state attorneys general (*Vassalle* Doc. 124) and the FTC (*Vassalle* Doc. 125). The Named

Plaintiffs have joined in Midland's response to the attorneys general (*Vassalle* Doc. 126), and

---

[1]

Pelzer has appealed from the partial denial of her motion to intervene (Doc. 157).  But her appeal
concerns an ancillary matter, and does not affect this Court's jurisdiction to determine matters not
involved in the appeal.  See *Shevlin v. Schewe*, 809 F.2d 447, 451 (7th Cir. 1987).

have filed their own response to the Objections (Doc. 127).  Objectors Guest (*Vassalle* Doc. 145) and Rivera (*Vassalle* Doc. 146) have filed replies to Midland's response to their Objections.

### III. Positions of the Parties

The Objections to the settlement filed with the Court contain several common themes.  The Objections interpret the class release as applying to *any* claim of falsity in an affidavit used by Midland, not just false attestations of personal knowledge.  Thus, the Objectors see the class release as barring class members from contesting statements in a Midland affidavit as to the amount of a debt, even if the amount is false, or as to service of process, even they were never properly served.  In Objectors' view, then, the release is overly broad, in that class members who do not opt out are giving up their rights to defend themselves in debt collection actions, to vacate improperly obtained default judgments against them, or to seek potentially lucrative monetary relief under state debt collection statutes.

The monetary relief to the class, the Objectors argue, is paltry and incommensurate with the scope of the release.  The Objectors criticize the incentive payments and broader release afforded to the Named Plaintiffs, contending that the debts of all class members should be vacated. The Objectors also decry the attorney's fees agreed to by the parties as excessively high.  While acknowledging that putative class members may opt out if they wish to avoid these consequences, the Objectors argue that they will be deterred from doing so because they will not want to provide Midland with their current address, which Midland would then use in its debt-collection activities. Midland deserves much harsher punishment for its practices than the settlement provides for, in the view of the Objectors.

In addition, the Objectors contend that the settlement was collusive, not the product of arms-length negotiations.  Some of the Objectors argue that their attorneys should have been

14

included in the settlement negotiations, but were purposefully kept in the dark. The Objectors contend that Midland engineered a "reverse auction," whereby they cherry-picked "the most ineffectual class lawyers" with whom to negotiate a settlement, apparently finding them in the Northern District of Ohio (*Vassalle* Doc. 57 at 13).

The Objectors also take issue with the adequacy of the injunctive relief contained in the settlement, taking issue with the fact that it lapses after one year, and that Midland may petition the Special Master to modify the injunction. Finally, they take issue with the notice provided to the class, contending that it failed to inform putative class members that they would be forfeiting all rights to challenge affidavits filed by Midland (based on their interpretation of the release).

Midland and the Named Plaintiffs respond that the release is not as broad as Objectors suggest. They point out that the release only applies to claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." (Settlement Agreement at 6). That is, the release, by its plain terms, only bars class members from asserting claims against the Released Parties where the basis for relief is the affidavit itself, as opposed to some other issue– that the class member did not owe the debt sued upon, or was not validly served. Midland and the Named Plaintiffs thus argue that the Class Notice was adequate based on this understanding of the release. They contend that, while the settlement does not address all the harms associated with alleged practices of Midland, it was not designed to, and is a fair and adequate means of addressing defects in affidavits used by Midland that falsely claimed to be based on personal knowledge. They further argue that a mass vacatur of judgments would only result in needless time and expense to the court system as Midland sought to relitigate formerly closed cases.

Midland and the Named Plaintiffs point out further that statutory damages under the FDCPA are capped at $1000 per individual and $500,000 in class actions like this one, where the

15

Defendant's net worth exceeds $50,000,000.  Moreover, pursuant to this Court's earlier ruling, actual damages resulting from unlawful aspects of Midland's affidavits would be very difficult to prove.  That holds true as well for state-law claims, where class members would face a difficult challenge proving they were damaged by an affidavit that contained accurate information about the debt but was not based on the affiant's personal knowledge.  Therefore, Midland and the Named Plaintiffs argue that the monetary provisions of the settlement are fair and adequate, given the small potential individual recovery and the fact that the class settlement in this case far exceeds the FDCPA class action damages cap.  Further, they point out that any class member who believes he or she can obtain a greater recovery on an individual claim can opt out of the class.  Class Counsel argues that his attorney's fees are justified by value of the settlement and the amount of work he has done in this case over three years on a contingency-fee basis.

Pointing to the multiple attempts at settlement and extensive motion practice in these cases, as well as the participation of Judge McQuade as a third-party mediator during settlement talks, Midland and the Named Plaintiffs assert that the settlement was the result of arms-length negotiations between adversaries, and was not collusive.  They defend the incentive payments to the Named Plaintiffs as reasonable considering the efforts they expended in pursuing these cases, as well as the broader scope of the release to which they have agreed.

Regarding injunctive relief, Midland and the Named Plaintiffs assert that the one year term is reasonable and comparable with injunctive relief approved in other debt-collection cases, and point out that Judge McQuade would have to approve any modification.

Finally, with regard to the use of class members' current addresses, Midland and the Named Plaintiffs point out that the settlement is being administered by an independent class action administrator; the address information used in this case came from Midland's own existing

records; and that Midland has access to the U.S. Postal Service's National Change of Address

Data. Moreover, Midland has stipulated that none of the information obtained through the claims

process will be used for the purpose of collecting debts of the class members. (*Vassalle* Doc. 125

at 4).

## IV. Discussion

### A. *Class Certification*

In order to approve the class settlement in this case, the Court must grant certification of

the proposed nationwide class. In determining whether to grant certification, the Court must find

that the class satisfies each of the four requirements set forth in Fed. R. Civ. P. 23(a):

> (1) the class must be so numerous that joinder of all members is impracticable;
> (2) there must be questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and
> (4) the representative parties must fairly and adequately protect the interests of the class.

Also, class certification implicitly requires both that there be an identifiable class, and that the

named representative falls within the proposed class. *In re A.H. Robins Co., Inc.*, 880 F.2d 709,

728 (4th Cir. 1989). Once the prerequisites are satisfied, an action may be maintained as a class

action if "the court finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3).

In this case, the court finds that the proposed nationwide class meets the standards for

certification. The class, which contains more than 1.4 million members, is sufficiently large that

joinder would be impracticable. All class members seek resolution of a common legal question:

whether Midland's use of affidavits purporting to be based on the personal knowledge of the affiant is an unfair and deceptive debt collection practice.  Resolution of this common question will affect the class as a whole, and can be most efficiently resolved in the context of a class action.  The claims of the class representatives are typical of those of the class, as their claims arise from the same factual predicate (being sued by Midland using an affidavit falsely claiming to be based on the affiant's personal knowledge) as those of the rest of the class.

In considering whether the class representatives will "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), the Court looks to two factors: "(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  The Court finds both factors satisfied in this case.  The class representatives share with the putative class members a desire to recover from Midland for the use of false affidavits in debt collection actions, and a desire to prevent Midland from employing such deceptive practices in the future.  Further, the Court finds that Class Counsel is qualified and has vigorously pursued this action.

The Court also finds that the Rule 23(b)(3) factors (whether common questions predominate over questions particular to each class member, and whether a class action is a superior means of adjudicating the controversy) are satisfied.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 565 (6th Cir. 2007).  "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individual proof." *Id.* (internal quotation

marks omitted).  In addition, "[a]n action in which both injunctive relief and money damages are sought may be certified as a class under Rule 23(b)(2), as long as money damages do not constitute the predominate type of relief requested."  *Hoffman v. Honda of America Mfg., Inc.*, 191 F.R.D. 530, 536 (S.D. Ohio 1999) (emphasis omitted).

The question of whether affidavits used by Midland were deceptive and unlawful lies at the heart of this litigation, and is susceptible to classwide proof.  As the Court found in its previous opinion on class certification in *Brent*, " the unlawful aspects of the form affidavits here at issue were a result of the process by which they were produced pursuant to Midland and MCM's general business practices.  Liability questions are thus amenable to class-wide proof." *Midland Funding v. Brent*, 2010 WL 4628593 (N.D. Ohio Nov. 4, 2010) (*Brent* Doc. 104 at 9). Moreover, the request for monetary relief does not predominate over the request for injunctive relief, while the affidavit issues do predominate over any claims subject only to individual proof.

In determining whether a class action is superior to other methods of resolving the controversy, the Court may look to: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy ; (3) the desirability of concentrating the litigation of the claims in this forum; (4) the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. P. 23(b)(3).

Given the limited resources of the typical class member and the meager monetary relief they could expect to recover, there is a strong interest in litigating these claims in a single forum. In addition, this case is far more procedurally advanced than the other actions bringing similar claims, ensuring that the class members may obtain relief more speedily than if the litigation were permitted to proceed piecemeal.

19

Thus, the Court finds that the proposed nationwide class meets all the requirements of Fed. R. Civ. P. 23(a) and 23(b), and certifies same.

### B. Standard of Review of the Class Settlement

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2002); accord *Int'l Union, United Auto, Aerospace, and Implement Workers of America v. General Motors Corp.*, 477 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). The Sixth Circuit has recognized that complex litigation is "notoriously difficult and unpredictable." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). Thus, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada*, 962 F.2d at 1205.

"In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion." *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989). Fed. R. Civ. P. 23(e) provides,

> The Court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

The typical process for approving class action settlements in federal court is: 1) preliminary approval of the proposed settlement at an informal hearing; 2) dissemination of mailed and/or published notice to all affected class members; and 3) a formal fairness hearing at which interested

20

parties may comment on the proposed settlement.  *Williams v. Vukovich*, 720 F.3d 909, 920-921

(6th Cir. 1983).  All three of these steps have now taken place in this case.

In considering whether the settlement is fair, reasonable, and adequate, the trial court

considers the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense and

likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the

likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6)

the reaction of absent class members; and (7) the public interest.  *Int'l Union*, 497 F.3d at 631.  A

class settlement is presumptively reasonable upon preliminary approval, and an individual who

objects consequently has "a heavy burden" of demonstrating that the settlement is unreasonable.

*Vukovich*, 720 F.2d at 921.  In general, a reviewing court's task "is not to decide whether one side

is right or even whether one side has the better of these arguments. . . . The question is rather

whether the parties are using settlement to resolve a legitimate legal and factual disagreement."

*Int'l Union*, 497 F.3d at 632.

### C. Scope of the Release

Much of the disagreement between the Objectors and the Settling Parties revolves around

the scope of the release.  Objectors contend vigorously that the release would effectively prevent

any class member from raising a legal challenge in a case where Midland has used an affidavit,

including cases where Midland has sued upon an incorrect amount, or where the debtor has not

been served.  The Court finds that this interpretation is unsupported.  By its terms, the release

applies only to claims "arising out of or relating to the Released Parties' use of affidavits in debt

collection lawsuits."  (Settlement Agreement at 6).  Thus, the release is limited to claims where

the basis for relief is the affidavit itself, such as those of the Named Plaintiffs, who sought

damages based upon Midland's use of an affidavit.  Claims that the debtor did not owe the amount

21

being sued upon, or was not validly served, are not covered, because the factual basis for the claim is something other than the affidavit. Certainly, nothing in the release prevents a class member from pointing to evidentiary deficiencies in the proof offered by Midland in defending a debt collection action. Nor does the release apply to actions being pursued by state attorneys general against Midland, as it only applies to "class members," defined as "natural persons" in the release. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[I]n common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it.") The release simply prevents a deficient affidavit from furnishing the basis for an independent claim for damages against Midland, be it pursuant to the FDCPA or some state-law cause of action.

Therefore, the release is properly limited to claims that share a factual predicate with the claims pled in the complaint: that is, claims based on the allegation that an affidavit used by Midland falsely purports to be based on the affiant's personal knowledge. See *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a factual predicate with the claims pled in the complaint") (internal quotation marks omitted). The fact that the release does not include language specifically stating that it will only apply in cases sharing the same factual predicate as those released does not render it overbroad, nor does the potential that Midland may in some future case urge a broader interpretation of the release. See *In re WorldCom, Inc. Secs. Litig.*, 388 F.Supp.2d 319, 342 n. 36 ("The Release does not state that its application is bounded by the "identical factual predicate" doctrine, but the addition of language releasing claims "arising from the same facts," or similar

formulations, would be unnecessary and redundant. It is, after all, a given that the Release will only be applied insofar as its application conforms to the law.").

The Objectors also contend that the release would be overbroad if interpreted to apply to Midland's attorneys.  The Court finds that the language of the release, which references "agents," "representatives," and "attorneys" of Midland, applies to attorneys who filed Midland's affidavits in state court collection proceedings.  While the Court held that the preliminary injunction previously entered in this matter did not apply to third parties such as attorneys, that was due entirely to concern that tolling would not apply to claims against such persons, based on the rule that "class action tolling does not apply to a defendant not named in the class action complaint." (*Vassalle* Doc.8 at 9) (quoting *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 567 (6th Cir. 2005)).

The fact that the release applies to attorneys associated with Midland does not render it unfair and inadequate.  In the Court's long experience, it is standard to include the defendant's agents, assigns, and attorneys within the scope of a release.  There is nothing improper about a class action settlement releasing claims against non-parties where, as here, "the claims against the non-parties being released [are] based upon the same underlying factual predicate as the claims asserted against the parties to the action being settled."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 109 (2d Cir. 2005), quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31553577 at *11 (S.D.N.Y. Nov. 26, 2002); see also  4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 12:16, (4th ed. 2002) ("A settlement may ... seek to discharge parties who have not been served with process and are therefore not before the court.").

Based on the limited scope of the release as outlined above, the Court reaffirms that the notice provided to class members was adequate.  Under Fed. R. Civ. P. 23(e), before ratifying a

23

proposed settlement agreement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the [Fairness Hearing]." 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 8.32, (4th ed. 2002). "Class member are not expected to rely upon the notices as a complete source of settlement information." *Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975). Upon review, the notice provided to the class in this case was more than adequate to meet the standards of Fed. R. Civ. P. 23(e) and due process. It was not necessary for the Court to incorporate the Objectors' attorneys' dubious interpretation of the release into the Class Notice.[2]

### D. Fairness, Reasonableness, and Adequacy of the Settlement

After considering the extensive briefing of the issues and oral presentations at the Fairness Hearing, the Court finds the settlement to be fair, reasonable, and adequate.

### 1. The Risk of Fraud or Collusion

Initially, the Court finds that the evidence indicates beyond any doubt that the settlement was the product of arms-length negotiation. The Objectors concede that they "have no direct evidence of fraud and collusion between the settling parties." (*Vassalle* Doc. 148 [Joint Memorandum in Opposition to Motion for Approval of Class Settlement] at 9). This lack of

---

[2]

The Court notes additionally that Midland's stipulation that it will not use any address information obtained during the claims process, along with the fact that most of the address information used to identify and contact class members came from Midland's own files, effectively addresses the concerns that have been raised about Midland using information gathered from the class settlement process in order to pursue class members for debts.

evidence alone indicates that the Court should reject the argument that the settlement was collusive, as "the courts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered."  4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.51 (4th ed. 2002).

But the history of this litigation, recounted above, positively belies any contention that the settlement was collusive.  The parties reached their agreement only after three years of litigation, four mediation sessions with Judge McQuade, and several more settlement conferences with the Court.  "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."  *Hainey v. Parrot*, 617 F.Supp.2d 668, 673 (S.D. Ohio 2007). Moreover, the Court notes that Class Counsel in this case has almost fifty years of experience in litigating class action matters, and has a track record of integrity and vigorous advocacy on behalf of clients.  The Objectors' insinuations that the settlement was collusive are entirely unsupported.

The Objectors take issue with both the incentive payments of $8,000 to Named Plaintiffs and the broader release the Named Plaintiffs have obtained from Midland.  But courts have recognized that incentive payments of a few thousand dollars to class representatives are appropriate, and have frequently approved class settlements including same where the class settlement has resulted in the creation of a common fund for the benefit of the class.  See, *e.g.*, *Huguley v. General Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989) ("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne."); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving payment of $2,000 to five class representatives).  Moreover, the Named Plaintiffs have agreed to a much broader release than the other class members, agreeing to release

all claims, not just those based on affidavits, that they may have against Midland.  (Settlement Agreement at 12-13).  In view of the time, effort, risk, and expense the Named Plaintiffs have undertaken in pursuing this litigation (including participation in discovery and settlement efforts); the broader release to which they have agreed; and the substantial common fund that their efforts have created for the benefit of the class, the Court finds the incentive payments justified.

## 2. The Complexity, Expense, and Likely Duration of Continued Litigation

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y.2000).  Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002).

In view of its complexity and likely expense, this class action is no exception.  "The Fair Debt Collection Practices Act is a set of complex laws with many components." *Wess v. Storey*, 2011 WL 1463609 (S.D. Ohio Apr. 14, 2011) (granting final approval of class settlement of FDCPA and OCSPA claims).  The instant case would be very expensive to fully litigate, and might take years to finally resolve through the course of trial and appeal, creating additional attorney's fees and reducing any potential payout to the class.

## 3. The Amount of Discovery Engaged in by the Parties

This litigation was commenced in April 2008 with the filing of the *Brent* action.  In the nearly three years between the filing of *Brent* and the settlement, the parties undertook extensive discovery and motion practice, recounted above.  The Court has no doubt that, after two rounds of motion practice that had established the strength of each side's legal claims and several rounds of

settlement negotiations, the experienced attorneys who negotiated this settlement had an accurate understanding of the strength of their respective cases.

**4. The Likelihood of Success on the Merits**

As noted above, Brent prevailed upon her motion for summary judgment on liability issues.  But, in its subsequent partial summary judgment opinion on damages, the Court held that she could not recover actual damages under the FDCPA, because she could not show that any of her actual damages resulted from the unlawful aspects of the affidavit (the false attestation that it was based on the affiant's personal knowledge), as opposed to the general stress of the debt collection process. (Doc. 104 at 12-13) (citing *Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968 (N.D. Ohio 2008) and *Higgins v. Capitol Credit Services, Inc.*, 762 F.Supp. 1128, 1135 (D. Del. 1991)).  This holding severely limits the damages obtainable by Brent and similarly-situated persons who had received an unlawful Midland affidavit.  That is, such persons can only recover statutory damages under the FDCPA, capped at $1000, on an individual claim, along with attorney's fees.  Few debtors could be expected to bear the cost and uncertainty of litigation in pursuit of such a meager potential recovery, a fact which weighs in favor of approving the settlement in this case.

Indeed, the class settlement in this case far exceeds the FDCPA statutory damages cap of $500,000 per class action that would otherwise obtain in this case.  See *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 650-651 (6th Cir. 1994) (holding that the FDCPA limits damages to "per proceeding," not "per violation" in class actions).  While Objectors decry the monetary relief afforded to the class by the settlement as a "pittance," "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 369

(S.D. Miss. 2003) (quoting *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000)).  Given the damages cap applicable to FDCPA cases, the monetary relief provided for in the class settlement here is well in line with that provided for in other FDCPA class settlements that have been approved.  See, *e.g.*, *Catala v. Resurgent Capital Services L.P.*, 2010 WL 2524158 at *3 (S.D. Cal. Jun. 22, 2010) (approving FDCPA settlement of $35,000 distributed *cy pres*, with no payment to class members); *Cope v. Duggans*, 203 F.Supp.2d 650, 653 (E.D. La. 2002) (approving FDCPA settlement where class members who returned claim forms would receive $11.90 each); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 at *7 (E.D.N.Y. Dec. 11, 2006) (approving FDCPA settlement of $45,000 *cy pres*, with no payment to class members); see also *Jerman v. Carlisle*, 271 F.R.D. 572, 576-77 (N.D. Ohio 2010) (certifying class even though FDCPA damages cap would limit relief to $3.10 per class member).

While Objectors contend vigorously that they have lucrative claims against Midland arising from false affidavits under both state and federal law, the Court is unconvinced.  Most of the lawyers who filed affidavit class actions against Midland following this Court's August 11, 2009 summary judgment opinion included only FDCPA claims which, as noted above, would be subject to the FDCPA's statutory damages cap.  Even with respect to those claims, success on the merits is not assured.  See, *e.g.*, *Myers v. Asset Acceptance LLC*, 750 F.Supp.2d 864 (S.D. Ohio 2010) (dismissing FDCPA claim based on false affidavits on summary judgment, and distinguishing this Court's August 11, 2009 opinion in *Brent*); *Albritton v. Sessoms & Rogers, P.A.*, 2010 WL 3063639 at *7 (E.D.N.C. Aug. 3, 2010) (dismissing FDCPA claim based on affidavits that falsely claimed to be based on the affiant's personal knowledge at the pleading stage, decrying "the absurd results that could come from plaintiff's interpretation, wherein every

28

*de minimis* error would render a debt collector liable under the FDCPA and every debt collection defense would turn into a hunt for the slightest misspelling, mislabeling, or minute technical falsity").

The argument that has been submitted with respect to potential state-law affidavit claims against Midland is speculative and inconclusive.  No strong precedent exists that convinces this Court that class members would be able to recover significant relief under state law with respect to affidavits that correctly state the amount the debtor owes, but which falsely claim to be based on the affiant's personal knowledge.  The two cases now pending bringing state-law claims against Midland based on affidavits, *Gray v. Suttell & Associates* (E.D. Wash. No. CV-09-251) and *Reimann v. Brachfeld* (Alameda County, Ca., Superior Court, No. 10-529702), have not been litigated to judgment, and the plaintiffs in both face significant hurdles to obtaining their desired relief.  The Court is satisfied that the speculative possibility that certain class members may have more lucrative claims under state law should not prevent the classwide settlement of this case. See *In re M3 Power Razor System Marketing and Sales Practices Litig.*, 270 F.R.D. 45, 61 (D. Mass. 2010) (certifying national settlement class over objections of California plaintiffs; noting that "California consumer protection laws present differences that are, in the context of this case, both minimal and speculative); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) (approving nationwide settlement class and explaining that "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims.").  Moreover, any class member who believes he or she can obtain a greater recovery has been free to opt out of the class.

The settlement is also not defective because it does not vacate all state-court judgments obtained by Midland using the affidavits.  It is unsurprising that such relief was not included in the

settlement agreement, because under the *Rooker-Feldman* doctrine, a mass vacatur of state court judgments would be beyond the power of this Court to grant if this litigation proceeded to judgment. Moreover, such a resolution, if contained in a settlement, would result in needless time and expense, as Midland would seek to relitigate formerly closed judgments where the debtor was sued on the correct amount, but the affidavit contained a technical defect.

**5. The Opinion of Class Counsel and Class Representatives**

The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement. See *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Skilled and experienced counsel in this case recommend the settlement as a fair, adequate, and reasonable.

**6. The Reaction of Absent Class Members**

Of approximately 1.4 million total class members, only 61 (about .004% of the class) objected, and 4,262 (.3%) opted out. By comparison, more than 133,000 class members (9.2%) filed a claim form. The fact that very few class members opted out or objected indicates that the settlement is adequate. See *In re Delphi Securities Litig.*, 248 F.R.D. 483, 498-499 (E.D. Mich. 2008).

**7. The Public Interest**

The Court finds, finally, that the settlement is beneficial to the public interest. The settlement aggregates many claims that would likely not go to trial, resulting in a $5.2 million common fund that provides relief to the class far above the otherwise-applicable damages cap of $500,000, while significantly penalizing Midland for its prior unlawful acts. In addition, the settlement provides substantial injunctive relief, requiring it to submit policies for ensuring the accuracy of its affidavits to a third-party Special Master, and to implement those policies.

For the foregoing reasons, therefore, the Court finds the settlement fair, reasonable, and adequate, and approves it.

**E. Attorney's Fees**

As stated by the U.S. Supreme Court, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Such an award may be based "on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 900 n. 16 (1984). The rationale for such an award is "the equitable notion that those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). This "common fund doctrine" has been recognized by the Sixth Circuit. See *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances.").

In considering the reasonableness of a fee award, the Court looks to six factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

Here, Class Counsel seeks a common fund fee award of $1.5 million, approximately 29% of the total $5.2 million settlement amount. This amount is in line with percentages approved in other common fund cases. See, *e.g.*, *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933

(N.D. Ohio Mar. 8, 2010) (33% of settlement amount); *Clevenger v. Dillards, Inc.*, 2007 WL

764291 (S.D. Ohio Mar. 9, 2007) (29% of settlement fund); *New England Employees Pension*

*Fund v. Fruit of the Loom*, 234 F.R.D. 627, 634) (W.D. Ky. 2006) (25% of the total settlement

fund).  Additionally, the Court finds that the reasonableness of Class Counsel's fee request is

supported by a review of the six *Ramey* factors.

Class Counsel's efforts have rendered a substantial benefit to the class.  The settlement

amount is nearly ten times the applicable FDCPA class-action damages cap, and the injunctive

relief reasonably ensures that the class will not again be subjected to Midland's unlawful

practices.  The award is also supported by society's stake in providing an incentive for other

attorneys.  Class Counsel took this case on a contingency-fee basis, with no guarantee of receiving

anything, and has invested more than $1 million of time, unreimbursed fees, and out-of-pocket

expenses over more than 38 months of hard-fought litigation.  His efforts have resulted in

substantial relief for low-income debtors, whose claims under the FDCPA for false affidavits

would ordinarily not provide a sufficient monetary incentive to litigate on an individual basis.

The risk Class Counsel undertook in pursuing this litigation militates in favor of the fee award.

Class Counsel's fee award is also supported by the value of his services on an hourly basis.

The lodestar figure in this case amounts to $939,200.  The Court has reviewed the documentation

supporting this figure, and finds the amount reasonable in light of the description of work

undertaken in this case.  (*Vassalle* Docs. 155, 134-1).  The requested fee thus constitutes a

multiplier of approximately 1.5, well within an acceptable range.  See *Barnes v. City of*

*Cincinnati*, 401 F.3d 729, 746-747 (6th Cir. 2005) (upholding multiplier of 1.75).  The use of a

multiplier is supported by the substantial risk Class Counsel undertook in prosecuting this matter

so vigorously on a contingency-fee basis, and his efforts in establishing groundbreaking legal precedent to benefit low-income debtors.

The complexity of the litigation also supports the requested fee award.  Class Counsel has litigated the *Brent* matter through two rounds of complex motion practice that took over three years to resolve, involving novel FDCPA issues.  Finally, the award is supported by the professional skill and standing of counsel for both sides.  Both are distinguished practitioners who have provided competent and skillful representation in this matter.

### *F. Motion to Strike*

Midland moves to strike (*Vassalle* Doc. 135) the Declaration of Stephen Gardner, an attorney, which was filed in connection with Objection of class members Clawson and Herring. The Declaration sets forth Gardner's opinions about the fairness of the settlemens.  The Court has reviewed the Declaration, and finds that its consideration would not affect the Court's ultimate conclusion that the settlement is fair and adequate.  Thus, the motion is denied as moot.

## V. Conclusion

The Court hereby grants final approval of the settlement of this class action litigation.  The motions to approve the settlement (*Vassalle* Doc. 131) and for an award of attorney's fees (*Vassalle* Doc. 134) are granted.  The motion to strike the Declaration of Stephen Gardner (*Vassalle* Doc. 135) is denied as moot.

The Court hereby dismisses with prejudice the *Vassalle v. Midland Funding* (No. 3:11-cv-00096) and *Midland Funding v. Brent* (No. 3:08-cv-1434) actions.  With respect to *Franklin v. Midland Funding* (No. 3:10-cv-00091), which was previously dismissed with prejudice but is now before the Court on a limited remand, the Court again dismisses the matter.  The Court awards attorney's fees in the amount of $1,500,000, and reimbursement of unpaid expenses in the amount

of $9,000.  The Court retains jurisdiction over the parties, including all members of the class, with respect to the implementation and enforcement of the settlement.

The Court hereby permanently enjoins and restrains all class members who did not duly request exclusion from the class in the time and manner provided for in the Class Notice from commencing or prosecuting any action, suit, claim or demand against any of the parties released by virtue of the Settlement Agreement arising out of or related to the released parties' use of affidavits in debt collection lawsuits.

The Court enjoins Midland as follows, based on the factual predicate stipulated as between the parties.  (*Vassalle* Doc. 151 at 1-3).  Midland, throughout the United States, will create and implement written procedures for the generation and use of affidavits in debt collection lawsuits (the "Affidavit Procedures").  These procedures shall be reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit.  Midland shall appoint a person responsible for ensuring compliance with the Affidavit Procedures.

The Court hereby appoints the Hon. Richard McQuade as Special Master to monitor Midland's compliance with this injunction.  Within thirty (30) days of entry of this injunction, Midland shall submit its Affidavit Procedures to the Special Master for review.

Upon review of the Affidavit Procedures, the Special Master shall make findings as to whether the Affidavit Procedures are reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit.  In the event that the Special Master finds that the Affidavit Procedures are not reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant

does not have personal knowledge of the facts set forth in the affidavit, Defendants shall have thirty (30) days to revise procedures so as to cure any defects identified by the Special Master.

This injunction will lapse and expire twelve (12) months after the Effective Date, as defined in Section V.-A of the Settlement Agreement.  At the end of the twelve month injunction, Midland shall submit to the Special Master a declaration from the responsible person confirming that the Affidavit Procedures approved by the Special Master have been implemented.  A copy of such declaration shall be filed with this Court.

During the 12-month term of this injunction, both parties have the right to seek relief from, or modification of, this injunction based on an unfair burden on the business, or a change in the law.  Any request for alteration or modification of the injunction shall be made to the Special Master.  Any alteration or modification of the injunction shall not extend or contract the length of its 12-month term.  Any alteration or modification shall only apply prospectively for the remainder of the 12-month injunction.  The Court shall retain jurisdiction to enter further orders as may be necessary to implement and/or enforce the provisions of this injunction.

IT IS SO ORDERED.

_   s/ David A. Katz_____
DAVID A. KATZ
U. S. DISTRICT JUDGE